**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **LEONARD GIPSON,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **No.: 2018 CV 05120** |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | **Judge Steven C. Seeger** |
| **Defendants.** | ) | |

**DEFENDANTS' COMBINED MOTION
<u>FOR SUMMARY JUDGMENT</u>**

NOW COME Defendants, by and through their respective counsels, and pursuant to Fed. R. Civ. P. 56, move for summary judgment against Plaintiff, Leonard Gipson. In support thereof, Defendants state as follows:

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ............................................................................................ i

**TABLE OF AUTHORITIES** ..................................................................................... ii

**ARGUMENT** ............................................................................................................ 3

    **I.**      **All Of Plaintiff's Claims Are Barred As A Result Of Plaintiff's Guilty Pleas** ........... 3

      **A.** Guilty Plea Extinguishes Any Antecedent Claims Of Misconduct That Allegedly Produced the Plea. ....................................................................................... 4

      **B.** While A Plea Must Be Knowing And Voluntary To Extinguish Antecedent Claims, A Party Cannot Rely On Antecedent Claims Of Misconduct To Establish That It Was Not Knowing And Voluntary ......................................................................... 6

      **C.** Plaintiff Has Not Alleged That His Attorney Gave Him Constitutionally Infirm Advice On His Guilty Plea And, Even If He Had, This Itself Would Cut Off Defendants' Liability ................................................................................. 13

      **D.** Defendants Are Entitled To Qualified Immunity ..................................................... 16

    **II.**     **Count I Is Legally Deficient For Several Independent Reasons** ........................... 17

      **A.** Plaintiff Cannot Establish A Fabrication of Evidence Claim Because He Did Not Proceed To Trial ............................................................................................. 17

      **B.** Plaintiff's *Brady* Claim Is Legally Invalid ................................................................. 19

    **III.**    **The Individual Defendants Are Immune From Claims Based On False Testimony Invalid** ............................................................................................. 24

    **IV.**    **Plaintiff's First Amendment Claim Is Legally Defective For Numerous Reasons** 24

    **V.**     **Counts II and VI are Legally Defective** ................................................................. 27

    **VI.**    **Plaintiff's Claims Relating To His August 28, 2007 Arrest Fail Because His Incarceration And Detention Were Credited To A Lawful Conviction** ................. 29

    **VII.**   **Plaintiff Cannot Establish Any Unlawful Pretrial Detention Claim Arising From His January 2003 Arrest Because He Was Not Detained Prior To Trial** ............... 30

    **VIII.** **Certain Individual Defendants Had No Personal Involvement In Various Alleged Acts Of Misconduct** ..................................................................................... 30

    **IX.**    **Plaintiff's IIED Claims Are Time Barred** ............................................................. 35

    **X.**     **Plaintiff's State And Federal Conspiracy Claims Fail** ........................................... 35

## TABLE OF AUTHORITIES

### Authority from the Supreme Court of the United States

*Albright v. Oliver*,
510 U.S. 266 (1994) ............................................................................................ 28, 29

*Boykin v. Alabama*,
395 U.S. 238 (1969) .................................................................................................5

*Brady v. U.S.*,
397 U.S. 742 (1970) ........................................................................................... *passim*

*Chiaverini v. City of Napoleon, Ohio*,
602 U.S. 556 (2024) ...............................................................................................30

*Class v. U.S.*,
583 U.S. 174 (2018) .................................................................................................8

*Hartman v. Moore*,
547 U.S. 250 (2006) ...............................................................................................25

*Henderson v. Morgan*,
426 U.S. 637 (1976) .................................................................................................1

*Hill v. Lockhart*,
474 U.S. 52 (1985) ...................................................................................................5

*McMann v. Richardson*,
397 U.S. 759 (1970) ..................................................................................5, 9-11, 13

*Menna v. New York*,
423 U.S. 61 (1975) ...................................................................................................8

*North Carolina v. Alford*,
400 U.S. 25 (1970) .................................................................................................13

*Parker v. North Carolina*,
397 U.S. 790 (1970) .............................................................................................5, 8

*Rehberg v. Paulk*,
566 U.S. 356 (2012) ...............................................................................................24

*Thompson v. Clark*,
596 U.S. 36 (2022) ...........................................................................................29, 30

*Tollett v. Henderson,*
    411 U.S. 258 (1973) ................................................................ *passim*

*U.S. v. Ruiz,*
    536 U.S. 622 (2002) ......................................................... 22-23

*U.S. v. Timmreck,*
    441 U.S. 780 (1979) .............................................................. 5

**Authority from the Circuit Courts of the United States**

*Alvarez v. City of Brownsville,*
    904 F.3d 382 (5th Cir. 2018) ................................................. 23

*Amundsen v. Chicago Park Dist.,*
    218 F.3d 712 (7th Cir. 2000) .............................................. 36-37

*Avery v. City of Milwaukee,*
    847 F.3d 433 (7th Cir. 2017) ................................................. 18

*Beaman v. Freesmeyer,*
    776 F.3d 500 (7th Cir. 2015) ................................................. 36

*Bianchi v. McQueen,*
    818 F.3d 309 (7th Cir. 2016) .......................................... 16, 19, 29

*Bontkowski v. U.S.,*
    28 F.3d. 36 (7th Cir. 1994) ............................................... 27-28

*Bridewell v. Eberle,*
    730 F.3d 672 (7th Cir. 2013) ................................................. 35

*Cairel v. Alderden,*
    821 F.3d 823 (7th Cir.2016) ................................................. 27

*Canen v. Chapman,*
    847 F.3d 407 (7th Cir. 2017) ................................................. 24

*Coleman v. City of Peoria, Illinois,*
    925 F.3d 336 (7th Cir. 2019) ................................................. 32

*Cooney v. Casady,*
    735 F.3d 709 (7th Cir. 2012) ................................................. 37

*Draper v. Martin,*
    664 F.3d 1110 (7th Cir. 2011) ............................................... 25

*Carvajal v. Dominguez,*
    542 F.3d 561 (7th Cir. 2008) ............................................................................21

*Cherry v. Washington County,*
    526 F. App'x 683 (7th Cir. 2013) ..................................................................31

*Colbert v. City of Chicago,*
    851 F.3d 649 (7th Cir. 2017) .................................................................. 24, 30

*De Jesus v. Odom,*
    578 Fed.Appx. 598 (7th Cir. 2014) ...............................................................31

*Dye v. Wargo,*
    253 F.3d 296 (7th Cir. 2001) .........................................................................14

*Eades v. Thompson,*
    823 F.2d 1055 (7th Cir.1987) ........................................................................30

*Escamilla v. Jungwirth,*
    426 F.3d 868 (7th Cir. 2005) .........................................................................14

*Ewell v. Toney,*
    853 F.3d 911 (7th Cir. 2017) .........................................................................29

*Fields v. Wharrie,*
    740 F.3d 1107(7th Cir. 2014) ........................................................................17

*FKFJ, Inc. v. Vill. of Worth,*
    11 F.4th 574 (7th Cir. 2021) ..........................................................................25

*Friedman v. Rehal,*
    618 F.3d 142 (2d Cir.2010) ...........................................................................23

*Gauger v. Hendle,*
    349 F.3d 354 (7th Cir. 2003) .........................................................................21

*Gekas v. Vasiliades,*
    814 F.3d 890 (7th Cir. 2016) .........................................................................25

*Gomez v. Berge,*
    434 F.3d 940 (7th Cir.2006) ......................................................................5, 15

*Grieveson v. Anderson,*
    538 F.3d 763 (7th Cir. 2008) .........................................................................30

*Hampton v. Hanrahan,*
    600 F.2d 600 (7th Cir. 1979) .........................................................................37

*Harper v. Albert,*
   400 F.3d 1052 (7th Cir. 2005) ............................................................................31

*Harris v. Kuba,*
   486 F.3d 1010 (7th Cir. 2007) ............................................................................21

*Hernandez v. Joliet Police Dept.,*
   197 F.3d 256 (7th Cir. 1999) ..............................................................................37

*Hessel v. O'Hearn,*
   977 F.2d 299 (7th Cir. 1992) ..............................................................................31

*Hurlow v. U.S.,*
   726 F.3d 958 (7th Cir. 2013) ................................................................................5

*Hugi v. U.S.,*
   164 F.3d 378 (7th Cir. 1999) ..........................................................................6, 14

*Jackson v City of Cleveland,*
   925 F.3d 793 (6th Cir. 2019) ..............................................................................38

*Jenkins v. Vill. of Maywood,*
   506 F.3d 622 (7th Cir. 2007) ..............................................................................25

*Johnson v. Winstead,*
   900 F.3d 428 (7th Cir. 2018) ..............................................................................24

*Miller v. Gettel,*
   2023 WL 2945340 (6th Cir. 2023) ......................................................................22

*Molina ex rel. Molinva v. Cooper,*
   325 F.3d 963 (7th Cir. 2003) ..............................................................................31

*Moran v. Calumet City,*
   54 F.4th 483 (7th Cir. 2022) ........................................................................17, 19

*Morfin v. City of E. Chicago,*
   349 F.3d 989 (7th Cir. 2003) ..............................................................................31

*Newsome v. McCabe,*
   256 F.3d 747 (7th Cir.2001) ...........................................................................28-29

*Patrick v. City of Chicago,*
   974 F.3d 824 (7th Cir. 2020) ........................................................................17, 19

*Ramos v. City of Chicago,*
   716 F.3d 1013 (7th Cir. 2013) ............................................................................29

*Redwood v. Dobson,*
    476 F.3d 462 (7th Cir. 2007) ............................................................................36

*Reed v. City of Chicago,*
    77 F.3d 1049 (7th Cir. 1996) ............................................................................24

*Reichle v. Howards,*
    566 U.S. 658 (2012) ............................................................................17

*Robertson v. Lucas,*
    753 F.3d 606 (6th Cir. 2014) ............................................................................23

*Saunders–El v. Rohde,*
    778 F.3d 556 (7th Cir. 2015) ............................................................................20

*Sornberger v. City of Knoxville,*
    434 F.3d 1006 (7th Cir. 2006) ............................................................................21

*Spiegel v. Cortese,*
    196 F.3d 717 (7th Cir. 1999) ............................................................................16

*Steen v. Myers,*
    486 F.3d 1017 (7th Cir. 2007) ............................................................................31

*Thompson v. Mueller,*
    976 F.Supp. 762 (N.D.Ill.1997) ............................................................................16

*Towne v. Donnelly,*
    44 F.4th 666 (7th Cir. 2022) ............................................................................25

*Turner v. Hirschbach Motor Lines,*
    854 F.3d 926 (7th Cir. 2017) ............................................................................1

*U.S. v. Adkins,*
    743 F.3d 176 (7th Cir. 2014) ............................................................................5

*U.S. v. Bruun,*
    809 F.2d 397 (7th Cir. 1987) ............................................................................27-28

*U.S. v. Conroy,*
    567 F.3d 174 (5th Cir. 2009) ............................................................................23

*U.S. v. Gomez,*
    763 F.3d 845 (7th Cir. 2014) ............................................................................22

*U.S. v. Litos,*
    847 F.3d 906 (7th Cir. 2017) ............................................................................5-6

*U.S. v. Lockett,*
   859 F.3d 425 (7th Cir. 2017) ...............................................................................5

*U.S. v. Mathur,*
   624 F.3d 498 (1st Cir. 2010) ..............................................................................23

*U.S. v. McFarland,*
   839 F.2d 1239 (7th Cir.1988) .............................................................................14

*U.S. v. Spaeth,*
   69 F.4th 1190 (10th Cir. 2023) ............................................................................5

*U.S. v. Stewart,*
   198 F.3d 984 (7th Cir.1999) ...............................................................................14

*U.S. v. Sullivan,*
   902 F.3d 1093 (7th Cir. 1990) ...........................................................................37

*Vance v. Peters,*
   97 F.3d 987 (7th Cir. 1996) ...............................................................................30

*Whitlock v. Brueggemann,*
   682 F.3d 567 (7th Cir. 2012) ....................................................................... 15, 17

*Wilson v. Layne,*
    526 U.S. 603 (1999) ..........................................................................................17

*Wolf-Lillie v. Sonquist,*
   699 F.2d 864 (7th Cir. 1983) .............................................................................30

*Ziglar v. Abbasi,*
   582 U.S. 120 (2017) ...........................................................................................16

**Authority from the District Courts of the United States**

*Alvarado v. Hudak,*
   2015 WL 4978683 (N.D.Ill. 2015) ) .................................................................20

*Bolden v. City of Chicago,*
   2019 WL 3766104 (N.D.Ill. 2019) ...................................................................17

*Billups v. Kinsella,*
   2010 WL 5110121 (N.D. Ill. 2010) ..................................................................31

*Bouto v. Guevara,*
   2024 WL 4346561 (N.D.Ill. 2024) ...................................................................25

*Boyd v. City of Chicago,*
    225 F. Supp. 3d 708 (N.D. Ill. 2016) ...............................................................18

*Brown v. City of Chicago,*
    633 F.Supp.3d 1122 (N.D.Ill. 2022) ...............................................................17

*Carter v. City of Chicago,*
    2018 WL 1726421 (N.D.Ill. 2018) ...................................................................10

*Christensen v. Secretary of the Fla. Department of Corrections and Fla. Attorney General,*
    2024 WL 4025230 (M.D.Fla., 2024) ...............................................................12

*Davis v. Harris,*
    2006 WL 3321630 (C.D.Ill. 2006) ...................................................................26

*Dicks v. Bishop,*
    2019 WL 6878985 (D. Md. 2019) ...................................................................24

*Drager v. Vill. of Bellwood,*
    969 F. Supp. 2d 971 (N.D. Ill. 2013) ...............................................................38

*Ezell v. City of Chicago,*
    2024 WL 278829 (N.D.Ill. 2024) .....................................................................20

*Gray v. Burke,*
    466 F.Supp.2d 991 (N.D.Ill. 2006) ..................................................................28

*Gray v. City of Chicago,*
    2022 WL 910601 (N.D. Ill. 2022) ...................................................................17

*Gribben v. Village of Summit,*
    2011 WL 289420 (N.D.Ill. 2011) .....................................................................28

*Haliw v. City of South Elgin,*
    2020 WL 1304697 (N.D.Ill., 2020) .................................................................38

*Hyung Seok Koh v. Graf,*
    307 F.Supp.3d 827 (N.D.Ill. 2018) ..................................................................17

*In re Watts Coordinated Pretrial Proceedings,*
    2022 WL 9468253 (N.D.Ill. 2022) ...................................................................10

*Jackson v. City of Chicago,*
    2024 WL 1142015 (N.D.Ill. 2024) ...................................................................20

*Kasey v. McCulloh,*
    2011 WL 1706092 (N.D. Ill. 2011) ..................................................................27

*Myrett v. Heerdt,*
  2015 WL 12745087 (N.D.Ill. 2015) ....................................................................21

*Nunez v. Dart,*
  2011 WL 5599505 (N.D. Ill. 2011) ......................................................................30

*Merriweather v. U.S.,*
  2022 WL 1746768 (S.D.Ill. 2022) .......................................................................12

*Peters v. City of Palatine,*
  2019 WL 698105 (N.D.Ill. 2019) .........................................................................26

*Phillips v. City of Chicago,*
  2015 WL 5675529 (N.D. Ill. 2015) ......................................................................21

*Serrano v. Guevara,*
  2020 WL 3000284 (N.D. Ill. 2020) ......................................................................20

*Starks v. City of Waukegan,*
  123 F. Supp. 3d 1036 (N.D. Ill. 2015) ............................................................ 19, 21

*Tabor v. City of Chicago,*
  10 F.Supp.2d 988 (N.D.Ill.1998) .........................................................................38

*Taylor v. City of Chicago,*
  80 F. Supp.3d 817 (N.D. Ill. 2015) ......................................................................35

*Ulmer v. Avila,*
  2016 WL 3671449 (N.D. Ill. 2016) ......................................................................18

*U.S. v. Hackbarth,*
  2006 WL 3488974 (E.D.Wis., 2006) ...................................................................12

*U.S. v. Stanley,*
  616 F.Supp. 1567 (D.C.Ill. 1985) ...................................................................12-13

*U.S. v. Stewart,*
  2017 WL 550560 (E.D.Mich. 2017) ....................................................................24

*Walker v. Johnson,*
  446 F.Supp.3d 88 (W.D.Va., 2020) .....................................................................23

*Walker v. White,*
  2021 WL 1058096 (N.D.Ill. 2021) .......................................................................36

*Washington v. City of Chicago,*
  2022 WL 2905669 (N.D. Ill. July 22, 2022) ........................................................24

*Wiess v. Village of Brooklyn,*
  2008 WL 4200610 (S.D.Ill.,2008) ................................................................26

*Wrice v. Byrne,*
  488 F. Supp. 3d 646 (N.D. Ill. 2020) ...........................................................15

*Wrice v. Burge,*
  187 F.Supp. 3d 939 (N.D.Ill. 2015) .............................................................37

*Zolicoffer v. City of Chicago,*
  2013 WL 1181501 (N.D. Ill. 2013) ..............................................................27

## Authority from the Illinois Supreme Court

*Fritz v. Johnson,*
  209 Ill.2d 302 (2004) ......................................................................................1

## Statutes & Rules

42 U.S.C. §1983 ...................................................................................................1

Fed. R. Evid. 404(b)(1) ...................................................................................... 22

## INTRODUCTION

On July 27, 2018, Plaintiff, Leonard Gipson ("Plaintiff") filed the above-captioned Complaint against numerous Chicago Police Officers (collectively "the Individual Defendants") as well as their employer, the City of Chicago ("Defendant City"). *See* Dckt. No. 61. In summary, Plaintiff claims that he was framed by various groupings of the Individual Defendants on three separate occasions: January 4, 2003, May 8, 2003, and August 28, 2007. *See* Dckt. No. 61 at ¶¶ 3, 32-41, 45-50, 66-73. All of these arrests arose from Plaintiff's involvement in various drug dealing activities. *Id.* Plaintiff plead guilty to charges forming the bases for all of these arrests. *Id.* at ¶¶ 60-61, 74-75. Plaintiff's convictions were later vacated in a consolidated post-conviction petition filed after Defendant Watts and Mohammed were convicted of unrelated criminal offenses involving taking money from drug dealers.[1] *Id.* at ¶¶ 87-89, 118-120. This lawsuit followed shortly thereafter.

With this as a general factual backdrop, Plaintiff brings a variety of claims, all of which implicate alleged misconduct occurring prior to and allegedly leading to these guilty pleas. In a nutshell, Plaintiff claims the Individual Defendants had a pattern of harassing Plaintiff and that, prior to his first 2003 arrest, Defendant Watts had allegedly attempted to extort Plaintiff for money and guns. Dckt. No. 61 at ¶¶ 28-31. Plaintiff claims he refused and that Watts then supposedly "carried through" on threats to arrest him without basis. *Id.* Plaintiff claims he was arrested for drug dealing activities on January 4, 2003 despite not engaging in any such activities on that date. *Id.* at ¶¶ 32-41. Plaintiff claims that the officers "shook [him] down" for money and, when he refused, Watts "pulled a bag of drugs out of his pocket and planted the drugs on him." *Id.* After Plaintiff was arrested and charged, he made bond. *Id.* at ¶¶ 42-44. Plaintiff alleges he later made a claim to the Chicago Police Department's Office of Professional Standards ("OPS") about his arrest. *Id.*

---

[1] Notably, neither Watts nor Mohammed were ever charged (much less convicted of) any offenses involving framing innocent individuals for criminal offenses.

Plaintiff then claims that, several months later, on May 8, 2003, he was arrested again by Defendants Watts, Jones, Mohammed, Summers, Cadman, Edwards, and Gonzalez for drug dealing activities. *Id.* at ¶¶ 45-50. According to Plaintiff, on the day in question, he was not doing anything illegal and was framed in this incident as well. *Id.* Moreover, Plaintiff claims that this arrest was retaliation by Defendant Watts for Plaintiff complaining to OPS about his January 2003 arrest. *Id.*

Nonetheless, Plaintiff decided to plead guilty to offenses arising from both 2003 arrests. Dckt. No. 61 at ¶¶ 59-61. According to Plaintiff, as a result of the Individual Defendants' fabrications relating to the circumstances of these arrests, he "realized he stood no chance of succeeding at trial on either of the cases" and "risked significant time in prison if he went to trial on either case and lost." *Id.* Thus, when he was offered a plea deal for "boot camp" to avoid prison, he took the deal and plead guilty to the charges arising from both 2003 arrests. *Id.*

Plaintiff claims that the Individual Defendants fabricated police reports documenting these arrests (which he claims were the basis for charges being brought against him) and fabricated testimony during a motion to suppress hearing regarding their observations of him engaging in drug dealing activities on his January 2003 arrest. Dckt. No. 61 at ¶¶ 51-53. Plaintiff also claims that the Individual Defendants "never disclosed to the prosecutors that they had fabricated evidence and falsified a police report related to Mr. Gipson's arrest" nor disclosed to the prosecution any of their other alleged misconduct. *Id.* at ¶¶ 62-63.

Finally, Plaintiff claims he was falsely arrested and framed for drug dealing activities on August 28, 2007. Dckt. No. 61 at ¶¶ 66-78. According to Plaintiff, on that date, Defendant Watts again attempted to shake him down for money and, when he refused, Watts planted drugs on him and had him arrested for drug crimes. *Id.* As with the other arrests, Plaintiff claims that he was prosecuted based upon the fabricated reports of the involved Defendants. *Id.* Plaintiff later plead guilty to drug charges arising from this arrest. *Id.* This guilty plea was also the product of Plaintiff making a strategic

2

decision to plead guilty in order to obtain a reduced sentence. *Id.* at ¶¶ 74-75. As with the 2003 arrests, Plaintiff similarly alleges that the involved Individual Defendants fabricated police reports about the arrest and failed to disclose their own alleged misconduct to the prosecution. *Id.* at ¶¶ 77-78.

Based on these allegations, Plaintiff brings a ten count Complaint: (1) Count I alleges a claim for violations of his right to Due Process by depriving Plaintiff of his constitutional right to due process and a fair trial (Dckt. No. 61 at Ct. I), (2) Count II alleges a claim for federal Malicious Prosecution and Unlawful Pretrial Detention (*id.* at Ct. II), (3) Count III alleges a claim for a First Amendment violation based on his allegations that his May 2003 arrest was retaliation for Plaintiff complaining to OPS about his January 2003 arrest (*id.* at Ct. III), (4) Count IV alleges a claim for Failure to Intervene (*id.* at Ct. IV), (5) Count V alleges a claim for federal Conspiracy to Violate Constitutional Rights (*id.* at Ct. V), (6) Count VI alleges a claim for state law Malicious Prosecution (*id.* at Ct. VI), (7) Count VII alleges a claim for Intentional Infliction of Emotional Distress (*id.* at Ct. VII), and (8) Count VIII alleges a claim for state law Civil Conspiracy (*id.* at Ct. VIII).[2]

## ARGUMENT

### I. All Of Plaintiff's Claims Are Barred As A Result Of Plaintiff's Guilty Pleas.

Plaintiff's claims all arise from alleged misconduct occurring prior to his decision to plead guilty (i.e. lying about him being observed in drug dealing activities, creating false reports, false testimony at pretrial court hearings, concealing their misconduct, etc.). The entirety of these claims appear to arise from a theory that the same misconduct which forms the basis for all of his claims were the very reasons he decided to plead guilty in the first instance. Dckt. No. 61 at Cts. I-VIII. SMF at ¶¶ 111-119, 139-143.[3] In other words, he claims that police misconduct left him no other rational choice than to plead guilty in order to obtain a more favorable sentence on the charges. *Id.* And he

---

[2] Plaintiff also brings claims against the City of Chicago for Respondeat Superior and Indemnification, both based on the actions on the Individual Defendants. *See* Dckt. No. 61 at Ct. IX-X.

[3] Defendants' Local Rule 56.1 Statement of Material Facts will be referred to herein as "SMF at ¶___."

obtained significant benefits from that strategic decision: two of his pleas resulted only in "boot camp" while the other resulted in a prison sentence well below what he potentially faced at trial if convicted by a judge or jury. *Id.* at ¶¶ 113-114, 139-41.

The dispositive legal issue on all of Plaintiff's claims is resolved by one simple and straightforward question: can a criminal defendant who makes an intelligent and knowing decision to plead guilty in a criminal case in order to obtain a favorable sentence for his alleged crimes later turn around and pursue claims based on allegations that the police "forced" him into his guilty plea by engaging in misconduct relative to the underlying crime?

The answer to this question is "no" under decades of Supreme Court precedent. The law is clear: "[a] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). While, as set forth below, a criminal defendant may retract a guilty plea, under certain circumstances not relevant here, if he can establish that he received Constitutionally infirm advice from an attorney leading him to plead guilty, the existence of antecedent misconduct by state actors in the underlying arrest is not a basis to avoid the causal bar rule of *Tollett* and its progeny nor a basis on which to premise a claim of Constitutionally infirm advice of counsel. *Id.* Because Plaintiff admits he knowingly and intelligently plead guilty to all offenses which form the basis for this lawsuit (and for other reasons as well), all of his antecedent claims on which this lawsuit is based fail as a matter of law. And even if Plaintiff were to claim he suffered legally infirm advice on his guilty plea, Plaintiff would still lose because any such unconstitutionally infirm advice would itself also represent an intervening cause cutting off liability for any of the Individual Defendants.

A.      **A Guilty Plea Extinguishes Any Antecedent Claims Of Misconduct That Allegedly Produced the Plea.**

An unbroken string of case law from the Supreme Court holds that a guilty plea operates as "a break in the chain of events that preceded it in the criminal process." *Tollett*, 411 U.S. 258, 267 (1973); *Brady v. U.S.*, 397 U.S. 742, 748 (1970); *McMann v. Richardson*, 397 U.S. 759, 766-69 (1970); *Parker v. North Carolina*, 397 U.S. 790, 797 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *U.S. v. Litos*, 847 F.3d 906, 910 (7th Cir. 2017); *Hurlow v. U.S.*, 726 F.3d 958, 966 (7th Cir. 2013); *Gomez v. Berge*, 434 F.3d 940, 943 (7th Cir.2006); *U.S. v. Adkins*, 743 F.3d 176, 193 (7th Cir. 2014); *U.S. v. Lockett*, 859 F.3d 425, 427 (7th Cir. 2017); *see also United States v. Spaeth*, 69 F.4th 1190, 1212 (10th Cir. 2023)("*Tollett* rested on the guilty plea's breaking the causal effect of any unconstitutional conduct on a defendant's conviction. No reason exists, therefore, to hold that a sunken pre-plea constitutional violation somehow resurfaces on the other side of a guilty plea."). As a result, an individual who provides a voluntary and intelligent plea of guilty to criminal charges is thereafter barred from pursuing any and all antecedent misconduct claims that preceded such plea. *Id.*

While the specific reasons for this rule are substantively immaterial for the purposes of this case, they bear mentioning nonetheless as context. Fundamentally, pleading guilty "has long been recognized" as "a grave and solemn act to be accepted only with care and discernment." *Brady v. U.S.*, 397 U.S. 742, 748 (1970). In this regard, the finality and integrity of guilty pleas is of paramount importance to the orderly administration of justice since they are so widely used in our criminal justice system. *See United States v. Timmreck*, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985). As explained in *Timmreck*:

> Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. *Id.*

5

To this end, the Supreme Court held in the so-called *Brady* trilogy (*Brady*, *McMann*, and *Parker*) and later in *Tollett*, that the encouragement and finality of holding criminal defendants to their knowing and intelligent decision to plead guilty requires that denying collateral attacks on the antecedent misconduct claims which might have preceded or lead to such guilty plea was necessary. *Tollett*, 411 U.S. at 262-68. This remains so even if there are competing motives for a criminal defendant deciding whether to plead guilty or seek vindication based on, among other things, predicate antecedent government misconduct.

A criminal defendant's decision to admit to his factual guilt is a difficult judgment "for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time." *Brady*, 397 U.S. at 756-57; *see also*, *Id.* at 750 (reflecting that "[f]or some people, their breach of a state's law is alone sufficient reason for surrendering themselves and accepting punishment. For others, apprehension and charge, both threatening acts by the Government, jar them into admitting their guilt. In still other cases, the post-indictment accumulation of evidence may convince the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family"); *see also*, *McMann*, 397 U.S. at 766-69 (examining the differing states of mind of criminal defendants pondering plea offers). However, the integrity of the criminal justice system requires that criminal defendants who obtain a benefit by pleading guilty are held to the benefit of their bargain. *See, e.g., Hugi v. U.S.*, 164 F.3d 378, 382 (7th Cir. 1999) (holding that "[a] guilty plea is not a road-show tryout before the 'real' contest occurs" and that a criminal defendant must be held to their guilty pleas rather than being allowed to contradict during later proceedings; "He wants to have the benefits of the plea bargain without taking any risks. That sort of game is not one the criminal justice system tolerates.").

**B.** **While A Plea Must Be Knowing And Voluntary To Extinguish Antecedent Claims, A Party Cannot Rely On Antecedent Claims Of Misconduct To Establish That It Was Not Knowing And Voluntary.**

Under *Tollett* and the *Brady* trilogy, a party can escape the consequences of a guilty plea if they can establish their plea was not knowing and voluntary. *Tollett*, 411 U.S. at 267; *U.S. v. Litos,* 847 F.3d 906, 910 (7th Cir. 2017)(collecting cases). However, importantly, the voluntariness/intelligence exception to the general rule is *not* an inquiry that focuses on the existence or strength of antecedent governmental misconduct which might predate the guilty plea and be the driving force behind it; rather, the pertinent inquiry explicitly *only* focuses on the Constitutional sufficiency of the quality of the advice given the criminal defendant. *See Tollett*, 411 U.S. 258; *McMann*, 397 U.S. at 766-69.

*Tollett* explained this in painstaking detail. In *Tollett* (which involved a habeas proceeding), the Court held that, while a petitioner must, of course, always prove an antecedent Constitutional violation in order to collaterally attack any conviction, the antecedent Constitutional violation *itself* is not a basis to establish the right to free oneself from the consequences of his guilty plea. To wit:

> The focus…is the nature of the advice and the voluntariness of the plea, *not the existence as such of an antecedent constitutional infirmity*. A state prisoner must, of course, prove that some constitutional infirmity occurred in the proceedings. But the inquiry does not end at that point, as the Court of Appeals apparently thought. If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases,'…[W]hile claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief….
>
> We thus reaffirm the principle recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea *by showing that the advice he received from counsel was not within the standards set forth in McMann*.

*Tollett*, 411 U.S. at 266–67.

Guilty pleas remain "valid in spite of the State's responsibility for some of the factors motivating the pleas" because "[t]he rule that a plea must be intelligently made to be valid does not

require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant

factor entering into his decision." *Brady*, 397 U.S. at 757. Rather:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty
> of the offense with which he is charged, he may not thereafter raise independent claims
> relating to the deprivation of constitutional rights that occurred prior to the entry of
> the guilty plea. He may only attack the voluntary and intelligent character of the guilty
> plea by showing that the advice he received from counsel was not within the standards
> set forth in *McMann*.

*Tollett*, 411 U.S. at 267 (referring to *Brady*, 397 U.S. at 750, *McMann*, 397 U.S. at 770, and *Parker v. North*

*Carolina*, 397 U.S. 790 (1970)).

This is necessarily based on the assumption that "a counseled plea of guilty is an admission of

factual guilt so reliable that, where voluntary and intelligent, it quite validly removes the issue of factual

guilt from the case." *Menna v. New York*, 423 U.S. 61, 62–63, n. 2 (1975). Accordingly, because "factual

guilt is a sufficient basis for the State's imposition of punishment, [a] guilty plea…simply renders

irrelevant those constitutional violations not logically inconsistent with the valid establishment of

factual guilt and which do not stand in the way of conviction, if factual guilt is validly established." *Id.*

Therefore, Plaintiff's pleas function as superseding causes of any alleged constitutional harms he now

claims; "[a] valid guilty plea [] renders irrelevant … the constitutionality of case-related government

conduct that takes place before the plea is entered" and further "relinquishes any claim that would

contradict the 'admissions necessarily made upon entry of a voluntary plea of guilty.'" *Class v. U.S.*,

583 U.S. 174, 182-83 (2018).

To this end, the Supreme Court has been clear that the theory that "the police put me in an

unwinnable situation by their misconduct so my only choice was to plead guilty" is not at all a valid

basis to attempt to collaterally attack the consequences of an intelligently made guilty plea that took

those considerations into account in the first instance. In fact, in *McMann* itself, the Supreme Court

specifically rejected claims that a guilty plea supposedly "driven by" the existence of antecedent police

8

conduct was a basis to absolve a criminal defendant of the consequences of his decision to avail himself of the benefits of pleading guilty.

*McMann* involved three criminal defendants who had plead guilty to various offenses. Each criminal defendant alleged that his guilty plea was the product of police officers' fabrication of evidence via coerced false confessions procured by the investigating police officers. *McMann*, 397 U.S. at 762-64. One criminal defendant claimed that "he had been beaten, refused counsel, and threatened with false charges prior to his confession" and that "his court-appointed attorney had advised pleading guilty since [he] did not 'stand a chance due to the alleged confession signed' by him." *Id.* Another claimed that "he was beaten into confessing the crime, that his assigned attorney conferred with him only 10 minutes prior to the day the plea of guilty was taken, that he advised his attorney that he did not want to plead guilty to something he did not do, and that his attorney advised him to plead guilty to avoid the electric chair, saying that 'this was not the proper time to bring up the confession' and that [he] 'could later explain by a writ of habeas corpus how my confession had been beaten out of me.'" *Id.* The third alleged that "he had been handcuffed to a desk while being interrogated, that he was threatened with a pistol and physically abused, and that his attorney, in advising him to plead guilty, ignored his alibi defense and represented that his plea would be to a misdemeanor charge rather than to a felony charge." *Id.* As here, each criminal defendant made allegations that this antecedent police misconduct had left him with no real choice but to plead guilty and seek leniency because the police misconduct had, in essence, tampered with his ability to defend himself against false charges by virtue of the creation of falsified evidence. *Id.* Yet, the Court held that such allegations remained subject to being extinguished by a later guilty plea.

Accordingly, it is black letter law that Plaintiff's "I only plead guilty because they rigged my case" theory is in direct contravention of decades of Supreme Court precedent. Along these lines, as this Court may be aware (and as Plaintiff will no doubt argue in response), some other judges in this

District addressed some of these issues at the pleading stage and determined that *Tollett* and its progeny did not bar claims from other so-called Watts victims. *See In re Watts Coordinated Pretrial Proceedings*, 2022 WL 9468253 (N.D.Ill. 2022); *Carter v. City of Chicago*, 2018 WL 1726421 (N.D.Ill. 2018). These rulings do not change the propriety of granting summary judgment in this case. Indeed, none of these can be (or were) squared with the above-described Supreme Court precedent.

The Courts in both of those cases noted the applicability of *Tollett* and its progeny but, in essence, held that the defendants' alleged antecedent unconstitutional conduct was the alleged "driving force" behind the decision to plead guilty and, thus, the claim survived. *In re Watts Coordinated Pretrial Proceedings*, 2022 WL 9468253, at *9 ("Here, Henderson alleges that he pled guilty in four cases because he knew that he could not prove that the individual Officer Defendants had brought false charges against him…It follows that without the fabricated evidence as the driving force, Henderson would not have pled guilty."); *Carter*, 2018 WL 1726421 at *5 ("Plaintiff alleges that the only reason he pled guilty in the two cases was because he knew he could not prove that the individual defendant officers had fabricated the evidence against him…Thus, it reasonably can be said that the fabricated evidence caused plaintiff to be deprived of his liberty."). This analysis simply cannot be squared with Supreme Court precedent. In fact, the reasoning in those cases is fundamentally at odds with the entirety of the legal basis underlying *Tollett* as well as the *Brady* trilogy which, in essence, is that antecedent violations are extinguished by a guilty plea because it is the plea that produces the conviction *not the prior misconduct leading to the plea.*

In fact, the theory advanced in *In re Watts Coordinated Pretrial Proceedings* and *Carter* is essentially the exact same reasoning that the Supreme Court held in *McMann* was erroneous by the lower court. In *McMann*, the Second Circuit followed essentially a proximate cause analysis in which the antecedent governmental misconduct producing the guilty plea was permitted as a collateral attack on the validity of the plea itself. *McMann*, 397 U.S. at 766 ("The core of the Court of Appeals' holding is the

proposition that if in a collateral proceeding a guilty plea is shown to have been triggered by a coerced confession—if there would have been no plea had there been no confession—the plea is vulnerable...”). The Supreme Court explicitly held this was *not* the law. *Id.*

The Court in *McMann* held that a person who believes that the evidence against him has been unconstitutionally obtained or fabricated has the binary choice to *either,* on the one hand, contest his guilt and these underlying issues at the criminal trial (and on appeal if necessary), *or*, on the other hand, accept the benefits that come with a guilty plea and admit culpability for the crimes he was accused of committing. *McMann*, 397 U.S. at 766. But because the person is availing himself of benefits from the judicial system by making an admission of guilt to obtain a benefit, he may not capture these benefits of his admission of guilt while also later seeking to challenge the underlying conduct that he claims “forced” him into this binary choice. *Id.* (“[A] guilty plea…is nothing less than a refusal to present his [antecedent claims of misconduct] to the state court in the first instance—a choice by the defendant to take the benefits, if any, of a plea of guilty and then to pursue his [antecedent claims] in collateral proceedings…The Constitution, however, does not render pleas of guilty so vulnerable.”).

As a result, the law is pellucid that alleged factual innocence/guilt and governmental misconduct driving a plea is essentially immaterial in this analysis. *McMann*, 397 U.S. at 769 (“[T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State’s case… Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court’s judgment might be on given facts.”). Indeed, state-induced antecedent conduct was *specifically contemplated* to fall within the scope of conduct for which claims are extinguished via a guilty plea. As explained in *Tollett* in

11

differentiating between convictions at trial based on antecedent unconstitutional conduct and guilty pleas based on this exact same conduct:

> A conviction after trial in which a coerced confession is introduced rests in part on the coerced confession, a constitutionally unacceptable basis for conviction. It is that conviction and the confession on which it rests that the defendant later attacks in collateral proceedings. The defendant who pleads guilty is in a different posture. He is convicted on his counseled admission in open court that he committed the crime charged against him. The prior confession is not the basis for the judgment, has never been offered in evidence at a trial, and may never be offered in evidence.

*Tollet,* 411 U.S. at 773.

Thus, the cases hold that a party cannot establish the unknowing and involuntary nature of a guilty plea by merely pointing to their alleged factual innocence and claims that governmental misconduct put them in a position where they had no rational choice but to plead guilty. *See Merriweather v. United States,* 2022 WL 1746768, at *6 (S.D.Ill. 2022)(rejecting petitioner's claims that guilty plea was product of involuntary plea because he advised attorney he was innocent of crime and only plead guilty to obtain a more favorable sentence); *U.S. v. Hackbarth*, 2006 WL 3488974, at *1 (E.D.Wis. 2006)("The thrust of Hackbarth's allegations are actual innocence and insufficiency of the evidence. Nowhere does he even hint that his counsel's alleged errors induced his guilty plea."); *U.S. v. Stanley*, 616 F.Supp. 1567, 1568–69 (N.D.Ill. 1985)("[O]f the possible duress arguments is one challenging the guilty plea itself, for an essential condition of its validity is 'that defendant's plea be the voluntary expression of her own choice.' But that kind of duress challenge must go to the taking of the plea itself, *not to the circumstances causing the underlying crime.*"); *Christensen v. Secretary of the Fla. Department of Corrections and Fla. Attorney General*, 2024 WL 4025230, *16–17 (M.D.Fla. 2024)(noting that claim that police fabricated evidence leading to guilty plea was waived under *Tollett's* extinguishment rule). The reason for this, again, is that the relevant involuntariness of a plea only relates to the *circumstances of the plea itself* not the underlying circumstances that precipitated it. *Id.* As explained bluntly in *Stanley* in rejecting a similar argument:

> [A]n essential condition of its validity is "that [defendant's] plea be the voluntary expression of [her] own choice." But that kind of duress challenge must go to the taking of the plea itself, *not to the circumstances causing the underlying crime*. And here Stanley clearly cannot surmount *McMann*, which held a guilty plea could not be attacked on grounds a coerced confession had induced the plea. In terms of the constitutional validity of a plea, duress that has allegedly triggered the plea can stand on no different footing from a coerced confession that has had the same result.

*Stanley*, 616 F.Supp. at 1568–69 (emphasis added).

In fact, factual guilt or innocence plays no part in whether antecedent claims are extinguished by a guilty plea. To this end, the United States Supreme Court has long held that even a factually innocent person can still make a knowing and intelligent guilty plea purely as a matter of strategic balancing between the consequences of contesting one's guilt and taking a case to trial and risking a heavier sentence. *See Henderson v. Morgan*, 426 U.S. 637, 648 (1976)("We have permitted judgment to be entered against a defendant on his intelligent plea of guilty accompanied by a claim of innocence."); *North Carolina v. Alford*, 400 U.S. 25, 37 (1970)("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

**C. Plaintiff Has Not Alleged That His Attorney Gave Him Constitutionally Infirm Advice On His Guilty Plea And, Even If He Had, This Itself Would Cut Off Defendants' Liability.**

In the present case, Plaintiff has not even attempted to argue in this case that his attorney gave him unconstitutionally infirm advice under *McCann*. In fact, he appears to claim the exact opposite, specifically, that he and his attorney made a reasoned strategic decision to plead guilty in order to get a "good deal" on a sentence which on two of his convictions netted only boot camp and the third a sentence well below the possible sentences for the offenses charged. "If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" *Tollett*, 411 U.S. at 266 *quoting McMann*, 397 U.S. at 771. In this regard, as held by *McMann* and numerous other cases, the decision to plead guilty is one that

13

requires an examination of all manner of things regarding the potential outcomes at trial and advising a person to plead guilty in the face of significant evidence against them (even if a person claims they are innocent) is not Constitutionally infirm advice. In fact, if the contrary were true, courts could never accept *Alford* or no contest pleas because these, by definition, would always be the result of Constitutionally deficient advice if a person maintained his or her innocence.

In this regard, in a nutshell, Plaintiff appears to be implying that he had the right to lie to the criminal court by pleading guilty in order to secure a better sentence and then later turn around and profit off contrary claims that he was innocent all along. Separate and apart from the causation issues arising from *Tollett* and the *Brady* trilogy, this tactical gamesmanship is simply not allowed under Seventh Circuit precedent. A plaintiff is not "entitled to lie in state court to ensure that the judge accepted the favorable plea bargain," and thereafter ask a separate court to disregard his earlier admissions of guilt to obtain compensation beyond his deal. *Dye v. Wargo*, 253 F.3d 296, 298 (7th Cir. 2001). Simply put, this "sort of game is not one the criminal justice system tolerates" nor "a position any judicial system can, or does, tolerate." *Id.* (referencing *U.S. v. Stewart*, 198 F.3d 984 (7th Cir.1999)); *Hugi*, 164 F.3d at 381 (adding that "[t]his [plea] agreement represents, in Hugi's own words, that he committed every element of the offense, and within the statute of limitations. The document is not agnostic about these subjects. If as Hugi now says he did not know for sure in 1994 that an interstate wire communication occurred on July 27, 1989, then he should not have signed his name to a representation that it did occur. Courts take the plea process seriously and hold defendants to their representations") *citing Brady*, 397 U.S. 742 at 748); *U.S. v. McFarland,* 839 F.2d 1239, 1242 (7th Cir.1988) (stating that "disingenuous conduct by a defendant should not be allowed to thwart the process of determining guilt or innocence" and concluding that the defendant was "bound by his admissions of guilt and his assertions that his plea was voluntary" during his plea colloquy); *Escamilla v. Jungwirth*, 426 F.3d 868, 870 (7th Cir. 2005), *abrogated on other grounds by McQuiggin v. Perkins*, 569 U.S.

383 (2013) (pondering "[h]ow could any court credit statements made by a litigant such as [Plaintiff] who trumpets a willingness (indeed, asserts an entitlement) to lie under oath whenever deceit serves his interests?"); *Wrice v. Byrne*, 488 F. Supp. 3d 646, 672–73 (N.D. Ill. 2020). [4]

Moreover, even if Plaintiff *had* attempted to mount a claim in this case that his attorney's advice to him to plead guilty plea was constitutionally infirm, this would not be sufficient to advance a claim *against police officers* for the underlying Constitutional violations. As noted above, the crux of *Tollett* and the *Brady* trilogy is one of supervening causation which produces a result, specifically, a guilty plea producing a conviction rather than the underlying facts of the alleged crime producing it. And, of course, all claims under Section 1983 follow general tort principles on causation. *See Whitlock v. Brueggemann*, 682 F.3d 567, 582-85 (7th Cir. 2012) (recognizing that general tort principles governing causation apply equally to § 1983 claims). In this regard, even were it assumed that Plaintiff's criminal defense attorney himself violated Plaintiff's constitutional rights by providing ineffective assistance to Plaintiff by advising him to plead guilty, this independent alleged constitutional violation would cut off any liability for any acts which preceded it because the advice caused the guilty plea. Stated another way, Plaintiff would perhaps have some claim against his attorney for violations of the Sixth Amendment based on him giving bad legal advice but that, of course, has nothing whatsoever to do with police officers who were not involved in any "bad" advice given.

Additionally, there was a specific finding by the criminal court judge(s) that Plaintiff's guilty plea(s) were knowing and voluntary. SMF at ¶¶ 112, 142-143. There is no evidence that this finding

---

[4] Plaintiff has insinuated at times that his plea allocution whereby he plead guilty to the charged offenses was not sworn testimony under oath. Even if this were true, it is of no moment for present purposes. The allegations against Plaintiff were read aloud in court in Plaintiff's presence and Plaintiff represented in open court that he was, in fact, guilty of doing those things. Plaintiff then received a benefit from the court for this admission in the form of substantially reduced criminal penalties. But, even had Plaintiff expressly reserved his claims of factual innocence, the guilty plea would still extinguish all of his antecedent claims of police misconduct. *See Gomez v. Berge*, 434 F.3d 940, 942–43 (7th Cir. 2006)("By pleading no contest, a defendant impliedly admits all allegations in the indictment. In this way, a no contest plea is indistinguishable from a guilty plea, in that it forecloses any opportunity to contest any alleged antecedent constitutional deprivations.").

was subject to any direct appeal by Plaintiff or challenged as part of his post-conviction proceedings either. As a result, even were Plaintiff to decide to attempt to cobble together a claim that his guilty pleas were not knowing and voluntary, the findings that Plaintiff made a knowing and voluntary guilty plea by the criminal court remains binding upon him and cannot now be challenged anyway. *See Wallace v. City of Chicago*, 472 F.Supp.2d 942, 948 (N.D.Ill.,2004) *aff'd on other grounds*, 440 F.3d 421 (7th Cir. 2006) (criminal defendant turned plaintiff is collaterally estopped from contesting pretrial rulings in criminal case even after conviction vacated if appeal did not challenge this pretrial ruling and it was not the basis for vacating of conviction); *Thompson v. Mueller*, 976 F.Supp. 762 (N.D.Ill.1997)(same except acquittal).

### D.    Defendants Are Entitled To Qualified Immunity.

Finally, at minimum, Defendants are clearly entitled to Qualified Immunity. In 2003 and 2007 (the time periods in which Plaintiff's arrests and criminal cases were pending), it was certainly not well-established that antecedent claims survived a guilty plea and could be a basis for a subsequent action for damages in a civil case. The burden of defeating Qualified Immunity rests with a plaintiff. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). Qualified immunity applies not just to unsettled application of laws to facts but also to whether the law itself is settled on the viability of a legal claim on a particular topic. *Bianchi v. McQueen*, 818 F.3d 309, 323 (7th Cir. 2016)(granting qualified immunity because it was unsettled whether a Fourth Amendment malicious prosecution claim was legally cognizable at time of incident). Indeed, the Supreme Court has explicitly held that ambiguities about the viability of legal claims is itself a reason to apply Qualified Immunity to police officers. *Bianchi*, 818 F.3d at 323; *Ziglar v. Abbasi*, 582 U.S. 120, 154 (2017)("[T]he fact that the courts are divided as to whether or not a § 1985(3) conspiracy can arise from official discussions between or among agents of the same entity demonstrates that the law on the point is not well established. When the courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing

16

liability."); *Wilson v. Layne*, 526 U.S. 603, 618 (1999)(noting it would be "unfair" to subject officers to damages liability when even "judges ... disagree"); *Reichle v. Howards*, 566 U.S. 658, 669–670 (2012) (same). Here, it simply was not well-established that antecedent claims of governmental misconduct could survive a guilty plea under *Tollett* and the *Brady* trilogy. Thus, even were this Court to hold that such claims do survive a knowing and voluntary guilty plea, the Individual Defendants would nonetheless be entitled to Qualified Immunity on any such antecedent civil claims.

## II. Count I Is Legally Deficient For Several Independent Reasons.

Beyond the fact that Plaintiff's guilty plea(s) extinguish all of his underlying claims, Count I is independently legally deficient. Count I seeks to pursue a Fourteenth Amendment Due Process claim. *See* Dckt. No. 61 at Ct. I. This Count appears to assert two separate claims: (1) fabrication of evidence; and (2) a *Brady* claim for suppression of material evidence, "specifically information about Watts's and his team's pattern of misconduct." *Id.* at ¶¶ 131-133. Both fail for several reasons.

### A. Plaintiff Cannot Establish A Fabrication of Evidence Claim Because He Did Not Proceed To Trial.

First, there can be no Fourteenth Amendment claim for fabrication of evidence without a trial. To prevail on a Fourteenth Amendment Due Process claim based on fabrication of evidence, Plaintiff must establish: (1) the existence of false/suppressed evidence; (2) that was introduced against Plaintiff at his criminal trial, and (3) was "material" to securing his conviction. *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014); *Whitlock v. Brueggemann*, 682 F.3d 567, 682 (7th Cir. 2012); *Gray v. City of Chicago*, 2022 WL 910601, * 12 (N.D. Ill. 2022); *Brown v. City of Chicago*, 633 F.Supp.3d 1122, 1160 (N.D.Ill. 2022); *Watts*, 2022 WL 9468206, at *12; *Bolden v. City of Chicago*, 2019 WL 3766104, *19 (N.D.Ill. 2019); *Hyung Seok Koh v. Graf*, 307 F.Supp.3d 827, 857–60 (N.D.Ill. 2018). The very "essence of a due process evidence-fabrication claim is that the accused was convicted and imprisoned based on knowingly falsified evidence" and, thus, evidence not introduced at trial cannot, by definition, form the basis for a fabrication of evidence claim *See Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020); *Moran v.*

*Calumet City*, 54 F.4th 483, 499 (7th Cir. 2022)("Because the evidence we assume was fabricated—the police report and the detectives' pretrial testimony—was not introduced at the trial, it could not have influenced the jury's verdict."); *Avery v. City of Milwaukee*, 847 F.3d 433, 442 (7th Cir. 2017)("A §1983 claim requires a constitutional violation, and the due-process violation wasn't complete until the [fabricated evidence] was introduced at Avery's trial, resulting in his conviction and imprisonment for a murder he did not commit. After all, it was the admission of the [fabricated evidence] that made Avery's trial unfair." (internal citations omitted); *Brown*, 633 F.Supp.3d at 1160 (noting "deprived of liberty in some way" standard was improper; "The Seventh Circuit rejected this standard, clarifying that fabricated evidence must be 'used against [plaintiff] in his criminal trial.'…No reasonable jury could find that [fabricated material not admitted into evidence at trial] were "used" against him at trial, so Defendants are entitled to summary judgment on this claim.").

Introduction at trial is necessary because "if the evidence hadn't been used against the defendant, he would not have been harmed by it, and without a harm there is… no tort." *Fields*, 740 F.3d at 1114; *Whitlock*, 682 F.3d at 682 ("[I]f an officer fabricates evidence and puts the fabricated evidence in a drawer, making no further use of it, then the officer has no violated due process[.]"). Even testimonial references to a police report or non-substantive use of same does not transform out of court evidence into an actionable item for a fabrication claim. *Brown*, 633 F.Supp.3d at 1159–60 ("The fact that [defendants] testified to a version of events consistent with the reports makes no difference. … This is so even when the false testimony is consistent with fabricated but unadmitted police reports."). Thus, fabrication of evidence claims premised on guilty pleas are routinely dismissed under this legal analysis. *Id.; see also Boyd v. City of Chicago*, 225 F. Supp. 3d 708, 725 (N.D. Ill. 2016)("[E]ven assuming the defendant officers did fabricate their reports regarding the lineup, an evidence fabrication claim cannot be sustained because the allegedly fabricated evidence was not used at plaintiff's trial"); *Ulmer v. Avila*, 2016 WL 3671449, at *8 (N.D. Ill. 2016)("*Whitlock*…is

18

distinguishable from the present case," as the *Whitlock* court "found that the fabrication of evidence caused harm because it was introduced against the defendants at trial and 'was instrumental in their convictions'"); *Starks v. City of Waukegan*, 123 F. Supp. 3d 1036, 1048 (N.D. Ill. 2015)("nowhere did *Fields* question the requirement that the fabricated evidence must be introduced at trial; to the contrary, it reaffirmed that requirement").

Here, Plaintiff plead guilty and did not proceed to trial. Therefore, there can be no fabrication of evidence-based Due Process claim. Indeed, while the Seventh Circuit itself made this crystal clear in *Patrick* and later in *Moran*, as explained above, the entire crux of the rationale behind the intervening causation impact of a guilty plea is that a guilty plea-based conviction is premised entirely on the plea and admissions in court rather than any evidence that might exist supporting the conviction. *See Tollet,* 411 U.S. at 773 ("A conviction after trial in which a coerced confession is introduced rests in part on the coerced confession, a constitutionally unacceptable basis for conviction. It is that conviction and the confession on which it rests that the defendant later attacks in collateral proceedings. The defendant who pleads guilty is in a different posture. He is convicted on his counseled admission in open court that he committed the crime charged against him. The prior confession is not the basis for the judgment, has never been offered in evidence at a trial, and may never be offered in evidence."). Thus, under well-established law, Count I is legally deficient to the extent it alleges a fabrication of evidence claim.

Moreover, again, even were this Court to find any daylight in the *Patrick* and *Moran* decisions on this issue, the fact that there continues to be debate about the contours of the law on this topic and whether this can support a claim in the first instance means that Qualified Immunity would bar any such claim regardless. *Bianchi*, 818 F.3d at 323; *Ziglar*, 582 U.S. at 154; *Wilson*, 526 U.S. at 618.

**B. Plaintiff's *Brady* Claim Is Legally Invalid.**

To the extent Plaintiff seeks to raise a Due Process Claim in Count I based on a *Brady* suppression theory, this claim fares no better.

First, to the extent that Plaintiff seeks to pursue a *Brady* suppression claim premised on the Individual Defendants supposedly "suppressing" the revelation of their own misconduct in relation to the circumstances of his own arrests, this is not a viable claim on its face. Circuit precedent plainly holds that *Brady* does not require police officers to disclose their alleged fabrication of evidence, whether the fabrication occurred in Plaintiff's cases or in other unrelated cases. *Saunders–El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015); *Watts*, 2022 WL 9468206, at *12 ("The Court agrees with the Defendants that under binding Seventh Circuit case law, *Brady* does not require the creation of exculpatory evidence, nor does it require police officers to accurately disclose the circumstances of their investigations to the prosecution."); *Serrano v. Guevara*, 2020 WL 3000284, at *19 (N.D. Ill. 2020)("Failing to disclose falsified evidence, or "keeping quiet" about that evidence, is the same as a fabrication of evidence claim and cannot be recast as a *Brady* allegation"); *Jackson v. City of Chicago*, 2024 WL 1142015, *12 (N.D.Ill. 2024)("Jackson 'seeks to charge the officers with a *Brady* violation for keeping quiet about their wrongdoing,' or lying about what they observed, and 'not for failing to disclose any particular piece of evidence to the prosecution.' And '*Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution.'"); *Ezell v. City of Chicago*, 2024 WL 278829, *23 (N.D.Ill. 2024)("Plaintiffs claim that Defendants had an obligation to disclose the precise means they used to interrogate them, despite each of the Plaintiffs having experienced the interrogations themselves and testifying as to Defendants' coercive methods. Given that the law does not require the police 'to accurately disclose the circumstances of their investigations,' and Plaintiffs do not allege that Defendants failed to hand over documents or other physical evidence, it is unclear what additional

evidence Plaintiffs could have sought under *Brady*."); *Alvarado v. Hudak*, 2015 WL 4978683, * 3 (N.D.Ill. 2015)(dismissing plaintiff's *Brady* claim that the officers failed to admit their misdeeds to the prosecution because a police officer's silence following his alleged fabrication of evidence does not result in a *Brady* violation); *Myvett v. Heerdt*, 2015 WL 12745087, * 6 (N.D.Ill. 2015)(summary judgment on *Brady* claim where plaintiff failed to identify any evidence that was withheld from him, but instead claimed that defendants withheld that they fabricated witnesses' statement); *Phillips v. City of Chicago*, 2015 WL 5675529, *5-6 (N.D. Ill. 2015)(non-disclosure of alleged treatment of the plaintiffs' codefendants' and witness does not amount to a *Brady* violation).

Second, to the extent Plaintiff relies upon the alleged suppression of facts that he was supposedly framed on the dates in question, this claim fails because this evidence was obviously not suppressed at all; if Plaintiff is believed about what occurred, Plaintiff knew he did nothing wrong and was framed by officers who falsely claimed to have seen him committing drug crimes. To establish a *Brady* due process claim, Plaintiff must show three elements: "(1) the evidence at issue is favorable to the accused because it is either exculpatory or impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) the evidence must have been material, meaning that there is reasonable probability that the result of the proceeding would have been different." *Carvajal v. Dominguez*, 542 F.3d 561, 566-567 (7th Cir. 2008). Evidence already known to a criminal defendant is not suppressed for purposes of *Brady. See Sornberger v. City of Knoxville*, 434 F.3d 1006, 1028-29 (7th Cir. 2006); *Harris v. Kuba*, 486 F.3d 1010, 1016-17 (7th Cir. 2007); *Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003); *Starks v. City of Waukegan*, 123 F. Supp. 3d 1036, 1045 (N.D.Ill. 2015). Here, the only exculpatory evidence that Plaintiff claims was suppressed was, in essence, that he was framed for various criminal drug offenses and that such allegedly false versions of the events were memorialized in reporting, etc. However, again, Plaintiff admits he was not only fully aware of this but, indeed, that he testified to same in court. Dckt. No. 61 at ¶¶ 51-65.

Third, insofar as Plaintiff seeks to proceed on claims that the Individual Defendants failed to disclose a "pattern of misconduct" committed in other cases,[5] this theory also fails for numerous reasons. This is not exculpatory evidence but, rather, at most, impeachment evidence. "Exculpatory evidence, by definition, is evidence that exculpates a defendant, i.e., it tends to establish a defendant's innocence." *Snowden v. United States*, 2024 WL 3395990, *5 (S.D. Ill. 2024). Evidence that officers may have committed *other* bad acts at some *other* time to some *other* person obviously does not "exculpate" Plaintiff from charges that he committed certain acts on a certain day. In fact, such an inference from pattern and practice evidence from other cases is explicitly forbidden. Fed. R. Evid. 404(b)(1)("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."); *U.S. v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014). However, the Supreme Court has made clear that the "Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002).

Fourth, even were this Court to decide that the United States Supreme Court's holding in *Ruiz* does not extend to *Brady* obligations relating to exculpatory evidence (and that the evidence at issue in this case was exculpatory not impeachment evidence), this would not change the outcome of this case. Any latent ambiguity on this topic at the time of the events at issue itself would require that judgment be entered in favor of the Individual Defendants on the basis of Qualified Immunity. Indeed, even years after the incidents at issue here, courts have found over and over again that Qualified Immunity on this very topic is appropriate for exactly these reasons, specifically, the conflicting and unsettled law on the matter. *See Miller v. Gettel*, 2023 WL 2945340, *7 (6th Cir.

---

[5] For what it is worth, Plaintiff does not appear to have explicitly pursued such claims against these Individual Defendants but, rather, appears to only be alleging such claims against various supervisory defendants. *See* Dckt. No. 61 at Ct. I, ¶¶ 131-32. However, in abundance of caution, the Individual Defendants address this theory herein.

2023)("*Ruiz* did not address whether the same is also true for exculpatory evidence, and the circuits are divided or undecided on that question…Because…a right to pre-plea disclosure of exculpatory evidence was not clearly established when [the plaintiff] pleaded guilty, the district court erred in denying qualified immunity to [defendants] as to [the plaintiff's] *Brady* claim."); *Alvarez v. City of Brownsville*, 904 F.3d 382, 393 (5th Cir. 2018)(same); *Robertson v. Lucas*, 753 F.3d 606, 621–22 (6th Cir. 2014)(declining to "decide whether [defendants] have a constitutional right to receive exculpatory *Brady* material from law enforcement prior to entering into a plea agreement" but concluding state and federal officials were "under no clearly established obligation to disclose exculpatory *Brady* material to the prosecutors in time to be put to effective use in plea bargaining"); *Friedman v. Rehal*, 618 F.3d 142, 154 (2d Cir. 2010)("[T]he Supreme Court has consistently treated exculpatory and impeachment evidence in the same way for the purpose of defining the obligation of a prosecutor to provide *Brady* material prior to trial, and the reasoning underlying *Ruiz* could support a similar ruling for a prosecutor's obligations prior to a guilty plea."); *United States v. Mathur*, 624 F.3d 498, 507 (1st Cir. 2010)(explaining that "[i]n urging us to extend *Brady's* prejudice component to pretrial plea negotiations, the defendant exhorts us to break new ground" and the fact that "plea negotiations are important" 'provides no support for an unprecedented expansion of *Brady*'"); *United States v. Conroy*, 567 F.3d 174, 179 (5th Cir. 2009)(reasoning that "*Ruiz* never ma[de] … a distinction" "between exculpatory evidence and impeachment evidence;" "nor can this proposition be implied from its discussion," thus "Conroy's guilty plea precludes her from claiming that the government's failure to disclose the FBI report was a *Brady* violation"); *Walker v. Johnson*, 446 F.Supp.3d 88, 100–01 (W.D.Va. 2020)("Walker argued that the evidence at issue in this case was not solely impeachment evidence, but also exculpatory evidence, and therefore not covered by the rule set forth in *Ruiz*. The problem with this argument, at least for purposes of qualified immunity, is that it remains 'unsettled … whether there exists a *Brady* right to pre-plea disclosure of exculpatory evidence.'… For these reasons, the court

concludes that Walker's *Brady*-based due process claim is barred by the doctrine of qualified immunity. Accordingly, the motion for summary judgment will be granted with respect to this claim."); *Dicks v. Bishop*, 2019 WL 6878985, *3 (D. Md. 2019)(holding that law remains "unsettled ... whether there exists a *Brady* right to pre-plea disclosure of exculpatory evidence."); *United States v. Stewart*, 2017 WL 550560, *3 (E.D.Mich. 2017)("Whatever rights appellants had to receive exculpatory evidence prior to entering their pleas was not clearly established.").

### III. The Individual Defendants Are Immune From Claims Based On False Testimony.

Plaintiff also makes reference to supposed false testimony of certain Individual Defendants as the bases for his claims. Dckt. No. 61 at ¶ 53. Plaintiff cannot pursue any claim premised upon the alleged false testimony of any of the Individual Defendants *See, e.g., Rehberg v. Paulk*, 566 U.S. 356, 369 (2012)(grand jury witnesses are absolutely immune "from any § 1983 claim based on the witness' testimony" and neither initiate prosecutions nor decide whether to pursue prosecution); *Johnson v. Winstead*, 900 F.3d 428, 440 (7th Cir. 2018); *Washington v. City of Chicago*, 2022 WL 2905669, *12 (N.D. Ill. July 22, 2022), aff'd, (7th Cir. 2024); *Colbert v. City of Chicago*, 851 F.3d 649, 655 (7th Cir. 2017); *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996). This immunity also includes preparation of testimony. *See Canen v. Chapman*, 847 F.3d 407, 415 (7th Cir. 2017)("It is long-established that witnesses enjoy absolute immunity, and we have acknowledged that this protection covers the preparation of testimony as well as its actual delivery in court."). Accordingly, to the extent Plaintiff seeks to pursue any claims premised on false testimony during pretrial proceedings (i.e. grand jury, suppression hearing, etc.) or the preparation of any testimony with the prosecution, these claims are legally deficient and judgment must be entered on them.

### IV. Plaintiff's First Amendment Claim Is Legally Defective For Numerous Reasons.

Count III brings a claim for First Amendment retaliation. *See* Dckt. No. 61 at Ct. III. This claim also fails for several reasons.

24

First, this claim is clearly time-barred. In a nutshell, Plaintiff claims that his arrest in May 2003 was retaliation for a complaint he made about his January 2003 arrest. *See* Dckt. No. 61 at ¶¶ 45-50, Ct. III, ¶¶ 178-84. However, Plaintiff did not file the present claim until July 27, 2018. *Id.* The applicable statute of limitations is two years. *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011) (citing 735 ILCS 5/13–202 and *Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007)). The statute of limitations clock begins to run on First Amendment retaliation claims "immediately after the retaliatory act occurred." *Gekas v. Vasiliades*, 814 F.3d 890, 894 (7th Cir. 2016). The Seventh Circuit has specifically held that a First Amendment retaliation claim does not require a favorable termination of an underlying criminal proceeding which is alleged to have been retaliatory. *See Towne v. Donnelly*, 44 F.4th 666, 673–74 (7th Cir. 2022) (First Amendment retaliatory prosecution claim accrued when charges that the plaintiff believed to be retaliatory were filed); *Bouto v. Guevara*, 2024 WL 4346561, at *13 (N.D.Ill. 2024)(dismissing with prejudice First Amendment retaliation claims premised upon retaliatory criminal charges brought after defendant had charges vacated; "Plaintiff contends that the Court should extend Heck's delayed accrual rule to First Amendment retaliation claims. The Court declines this invitation, particularly since the Seventh Circuit has squarely rejected this invitation, holding a First Amendment retaliation claim does not require a favorable termination of the underlying action."). In other words, this claim accrued immediately and was not *Heck*-barred by Plaintiff's criminal conviction.

As explained by Judge Kness recently in dismissing essentially an identical claim, a First Amendment retaliation claim only requires that "a plaintiff need only plead and prove an absence of probable cause for the underlying charge" so allegations of a retaliatory arrest "do not necessarily impugn or implicate the entire prosecution." *Bouto*, 2024 WL 4346561 at *13 *citing Hartman v. Moore*, 547 U.S. 250, 265–66 (2006), *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 585 (7th Cir. 2021). Moreover, "a plaintiff need not assert or establish that he was confined or deprived of liberty as a result of the

charges" in order to proceed on such a claim. *Id.* In fact, in *Gekas*, the Seventh Circuit stated that "First Amendment retaliation claims and malicious prosecution claims are fundamentally different causes of action." *Gekas*, 814 F.3d at 894. Accordingly, this claim is time barred.

Second, Plaintiff only alleges that Defendant Watts sought to retaliate against him. *See* Dckt. No. 61 at ¶ 45 ("In retaliation for Mr. Gipson's OPS complaint, on May 8, 2003, Watts sought Gipson out and fabricated a drug case against him a second time."). Beyond that, there is simply no evidence in the record to support that the Individual Defendants' actions in arresting Plaintiff were motivated by efforts to retaliate against Plaintiff for filing an OPS complaint based on his January arrest or even that the Individual Defendants were aware of this Complaint in the first place at the time of the May 2003 arrest. SMF at ¶¶ 63-64, 82, 88, 152. Moreover, Plaintiff alleges that, even prior to his May 2003 arrest, that Defendant Watts was targeting Plaintiff because Plaintiff had refused Watts' attempts to "extort" him. Dckt. No. 61 at ¶¶ 28-31. Thus, the suggestion that the Individual Defendants decided to arrest Plaintiff because of an OPS Complaint against Defendant Watts is completely untethered to any evidentiary basis. *Id.*

There is simply no evidence that any of the Individual Defendants took actions that were motivated by Plaintiff's OPS complaint and, thus, summary judgment is appropriate as a matter of proof. *See Peters v. City of Palatine,* 2019 WL 698105, at *3 (N.D.Ill. 2019)(granting summary judgment on First Amendment retaliation claim based on arrest; "Because Peters presents no evidence beyond her suspicions, the Court finds that no reasonable jury could find that Peters was arrested in retaliation for expressing her desire to press charges."); *Davis v. Harris,* 2006 WL 3321630, at *23 (C.D.Ill. 2006)("Davis also does not have evidence for a § 1983 retaliation claim for violation of his First Amendment rights. Davis must show a causal connection between speaking out as a citizen on a matter of public concern and the retaliatory act. Davis has presented no evidence of a causal connection."); *Wiess v. Village of Brooklyn,* 2008 WL 4200610, at *8 (S.D.Ill. 2008)(granting summary

judgment because plaintiff "has presented no evidence from which a trier of fact could reasonably conclude that any action was taken against him in retaliation for his complaints").

### V.    Counts II and VI are Legally Defective

Count II alleges a claim for federal Malicious Prosecution and Unlawful Pretrial Detention. *See* Dckt. No. 61 at Ct. II. Count VI alleges a claim for state law Malicious Prosecution. *Id.* at Ct. VI. Both are legally deficient.

First, consistent with the analysis in Part I *supra*, Plaintiff has a causation and probable cause problem with his Malicious Prosecution claims. Once again, via his guilty plea, Plaintiff admitted his involvement in the underlying criminal activity. The law is clear that an admission of criminal activity is more than sufficient to establish probable cause for a prosecution. *See Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016)(noting that allegedly coerced confession would provide probable cause barring malicious prosecution claim); *Zolicoffer v. City of Chicago*, 2013 WL 1181501, at *4 (N.D.Ill. 2013)(admissions of criminal activity provide probable cause barring malicious prosecution claim); *Kasey v. McCulloh*, 2011 WL 1706092, a*4 (N.D.Ill. 2011). Thus, by pleading guilty, Plaintiff supplied the necessary probable cause for his conviction which bars any malicious prosecution claim.

The Seventh Circuit faced a similar claim in *Bontkowski v. U.S.*, 28 F.3d 36 (7th Cir. 1994). In that case, the plaintiff appealed the dismissal of his malicious prosecution claim despite his guilty plea to bank fraud. As part of the plea deal, the plaintiff testified that "it was never [his] intention to defraud [the] bank." *See Bontkowski v. U.S.*, 850 F.2d 306, 310 (7th Cir. 1988). At the time of the guilty plea, the law did not require the Government to prove that the plaintiff shared the primary offenders' criminal intent to defraud. *Id.* at 314. Subsequently, the Seventh Circuit in *U.S. v. Bruun*, for the first time, set out the elements for aiding and abetting bank fraud and held that if there was no evidence that the aider knew that the funds were stolen, then the aider lacked the shared criminal intent to convict him of aiding and abetting. *Bontkowski*, 850 F.2d at 310 *citing Bruun*, 809 F.2d 397, 411-12 (7th Cir. 1987).

Because the *Bruun* case changed the elements of the offense and Bonkowski's plea agreement did not state that he knew the funds were stolen, the court granted his unopposed petition to vacate his conviction. *Bontkowski*, 28 F.3d at 37. After the court vacated his sentence, he filed a claim for malicious prosecution. *Id.* The Seventh Circuit affirmed dismissal of his claim and in so doing, the court noted that "as a matter of common sense, by pleading guilty Bontkowski forfeited his chance to dispute the existence of probable cause for his prosecution" because he "may not on one day admit that he did the things he is charged with, and then on a later date claim that it was malicious to charge him with doing the things he admitted he did." *Id.* at 37-38.

Other cases are in accord. *See Gray v. Burke*, 466 F.Supp.2d 991, 997 (N.D.Ill. 2006)(granting summary judgment on false arrest and malicious prosecution claims; "When plaintiff pled guilty…she admitted that there was probable cause for that charge, and for the underlying charges."); *Gribben v. Village of Summit*, 2011 WL 289420, at *2 (N.D.Ill. 2011)("If the defendants had probable cause to arrest him on the damage to property claim—a fact established by his guilty plea—they had probable cause to arrest him, even if the other charges had ultimately turned out to be unfounded.").

Relatedly, Plaintiff's prosecution cannot satisfy the causation element of his Malicious Prosecution claims. Indeed, the fact that a conviction triggered by a guilty plea cuts off the causal chain of any antecedent conduct was precisely one of the rationales for the holding in *Tollett* itself. *See Tollet,* 411 U.S. at 773 ("The defendant who pleads guilty is in a different posture [than someone convicted after a trial]. He is convicted on his counseled admission in open court that he committed the crime charged against him. The prior confession is not the basis for the judgment, has never been offered in evidence at a trial, and may never be offered in evidence.").

Second, as for Count II, at the time of the events at issue in this case, there was no federally recognized claim for Malicious Prosecution under either the Fourth Amendment or as a Due Process violation. *Newsome v. McCabe*, 256 F.3d 747, 750–52 (7th Cir.2001); *Albright v. Oliver*, 510 U.S. 266, 270–

71 (1994). In 2022, however, the Supreme Court for the first time recognized such a claim under the Fourth Amendment. *Thompson v. Clark*, 596 U.S. 36, 49 (2022). While that may govern liability for cases which have occurred subsequent to *Thompson*, the Seventh Circuit has held that the unsettled nature of whether this was a claim means that such claims during the *Newsome* era are barred by Qualified Immunity. Indeed, even in the years leading up to *Thompson*, the Seventh Circuit held that the developing law and challenges to whether *Newsome* and its progeny should be overturned was a perfect application of Qualified Immunity given the unsettled nature of the law. *Bianchi*, 818 F.3d at 323. To wit:

> [T]he Court in *Wallace* [*v. Kato*, 549 U.S. 384, 386–87 (2007)] specifically declined to address whether a malicious-prosecution claim is *ever* cognizable as a Fourth Amendment violation remediable under § 1983. The plaintiff in *Wallace* had expressly abandoned that issue, which was left unresolved in the Court's split decision in *Albright v. Oliver*, [510 U.S. 266, 270–71 (1994)]. Although some circuits have recognized such a claim, this circuit has not. With the law this unsettled, qualified immunity applies.

*Id.*(emphasis in original and citations omitted). Accordingly, at minimum, the Individual Defendants are entitled to Qualified Immunity on Count II.

## VI. Plaintiff's Claims Relating To His August 28, 2007 Arrest Fail Because His Incarceration And Detention Were Credited To A Lawful Conviction.

Plaintiff's claim for damages arising from his August 28, 2007 arrest cannot proceed because Plaintiff served the time for this offense concurrently with a valid and lawful sentence which is not challenged in this case. SMF at ¶¶ 117-119, 139-145; *Ewell v. Toney*, 853 F.3d 911, 917 (7th Cir. 2017)("[A] section 1983 plaintiff may not receive damages for time spent in custody, if that time was credited to a valid and lawful sentence."); *Ramos v. City of Chicago*, 716 F.3d 1013, 1019 (7th Cir. 2013)(same). Accordingly, Plaintiff has no injury and therefore no standing to bring any damages claim based on this prosecution. *Id.* ("[W]e conclude that [plaintiff] is not entitled to seek damages related to her detention and therefore to this extent has no injury that a favorable decision by a federal court may redress. Without a redressable injury, [plaintiff] lacks Article III standing to press this claim.").

**VII.    Plaintiff Cannot Establish Any Unlawful Pretrial Detention Claim Arising From His January 2003 Arrest Because He Was Not Detained Prior To Trial.**

Count II purports to proceed on a claim of, among other things, Unlawful Pretrial Detention. *See* Dckt. No. 61 at Ct. II. However, with respect to Plaintiff's January 2003, he suffered no pretrial detention. SMF at ¶ 90. Accordingly, there can be no Fourth Amendment claim based on this arrest. *See Thompson v. Clark*, 596 U.S. at 43 (2022); *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 559 (2024). Accordingly, the Individual Defendants are entitled to judgment in their favor on Count II arising from his January 2003 arrest.

**VIII.    Certain Individual Defendants Had No Personal Involvement In Various Alleged Acts Of Misconduct.**

There is also a demonstrable lack of evidence supporting the personal involvement of certain Individual Defendants with respect to the alleged misconduct relating to the three arrests at issue. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996); *see also Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008)("A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions."). Plaintiff must demonstrate "a causal connection between (1) the sued officials and (2) the alleged misconduct." *Colbert v. City of Chicago*, 851 F.3d 649 (7th Cir. 2017). In order to avoid summary judgment, Plaintiff must establish that each and every defendant sued actually participated in committing the alleged misconduct. *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987)("Each individual defendant can be liable only for what he or she did personally, not for any recklessness on the part of any other defendants, singly or as a group."). In this regard, "Plaintiffs cannot proceed to trial and ask the jury to merely speculate in the absence of evidence as to whether one of the Defendant Officers was the individual that allegedly injured" him or her. *See Nunez v. Dart*,

2011 WL 5599505, *3 (N.D. Ill. 2011); *see also De Jesus v. Odom,* 578 Fed.Appx. 598 (7th Cir. 2014)(affirming summary judgment in favor of defendant where there was no evidence that the defendant had any role in placing the inmate plaintiff into segregation)*; Cherry v. Washington County*, 526 F. App'x 683, 688 (7th Cir. 2013)(plaintiff's failure to identify who shoved him during the arrest doomed claim for excessive force); *Harper v. Albert*, 400 F.3d 1052, 1062 (7th Cir. 2005)(affirming dismissal of two inmates' section 1983 excessive force claims against thirteen defendant prison guards because the plaintiffs "failed to even establish that each and every one of the defendants ever touched [them]..."); *Molina ex rel. Molinva v. Cooper,* 325 F.3d 963, 973 (7th Cir. 2003)(finding that evidence that defendant was in a truck was not sufficient to link defendant, one of seventeen officers who could have damaged the truck, to the damage)*; Morfin v. City of E. Chicago*, 349 F.3d 989, 1002 (7th Cir. 2003)("[s]peculation is insufficient to withstand summary judgment."). This is because summary judgment is "not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007).

Indeed, the Seventh Circuit has been very clear that mere presence in the vicinity of an alleged Constitutional violation is not sufficient to establish the personal involvement of an individual defendant in the absence of actual evidence establishing the participation of the defendant officer who has been sued. *See Hessel v. O'Hearn*, 977 F.2d 299, 305 (7th Cir. 1992)(holding that plaintiff could not rely on a "principle of collective punishment as the sole possible basis of liability" and that "[p]roximity to a wrongdoer does not authorize punishment"); *Nunez,* 2011 WL 5599505 at *3 (finding that plaintiff could not hold defendant officers collectively liable simply because they were present at the home during the search); *Billups v. Kinsella,* 2010 WL 5110121, *5 (N.D. Ill. 2010)("Officer Kinsella did not slam Billups on the floor, handcuff her, or lift her off the floor and push her onto the couch. Thus,

he cannot be held personally responsible for any allegedly excessive force to which Billups was subjected.").

In addition, to establish liability on the part of any Individual Defendant, Plaintiff must also "prove not only that the evidence was false but that [each officer] 'manufactured' it." *Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 344 (7th Cir. 2019). To clear this "high bar," Plaintiff must prove that the officers "knew with certainty" that Defendant Watts's or other officers' accounts of the circumstances of the respective arrests were false. *Id.* Mere evidence that "suggests [the officers] had reason to doubt [fellow officers'] veracity in insufficient." *Id.* at 345.

Here, Plaintiff's wide-ranging "guilt by association"/group pleading claims fail to establish the personal involvement of numerous Individual Defendants in the alleged misconduct at issue. To wit:

**<u>Defendant Ridgell</u>:**

For Plaintiff's May 2003 arrest, Defendant Ridgell is listed as an assisting officer on paperwork completed by other officers. SMF at ¶¶ 93-98, 146-156. There is no evidence that Defendant Ridgell witnessed (much less personally engaged in) any misconduct directed toward Plaintiff, including fabricating evidence, suppressing evidence, failing to intervene in conduct that he witnessed others committing, or taking any steps to commence or continue any criminal proceedings against Plaintiff. *Id.* Indeed, Plaintiff expressly admitted he does not even know who Defendant Ridgell is. *Id.* at ¶ 151. Accordingly, in addition to the legal deficiencies on these claims, Defendant Ridgell is entitled to summary judgment on all claims arising from Plaintiff's May 2003 arrest.

For Plaintiff's August 2007 arrest, Defendant Ridgell was not even working on the team that made that arrest at that time. Indeed, Defendant Ridgell had moved to another unit years earlier. SMF at ¶¶ 123-28. Defendant Ridgell's name does not appear on any paperwork for this arrest and there is no evidence he participated in any way in the arrest or prosecution of Plaintiff or was even present

during this incident. *Id.* Accordingly, in addition to the legal deficiencies on these claims, Defendant Ridgell is entitled to summary judgment on all claims arising from Plaintiff's May 2003 arrest.

### Defendants Bolton, Cadman, Edwards, Gonzalez, Spaargaren, Leano, Lewis, Nichols, Smith, Summers and Young

### January 4, 2003 Arrest

In 2003, the Wells complex was patrolled by a tactical team identified as unit 715. SMF at ¶ 21. Its members were Defendants Bolton, Cadman, Edwards, Jones, Mohammed, Gonzalez, Ridgell, Spaargaren, Summers and Young. *Id.* On January 4, 2003, Plaintiff was arrested by certain members of unit 715. According to Plaintiff, he was arrested by Watts and Jones and no other officer was present or participated in his arrest. *Id.* at ¶¶ 23-25. According to Defendant Summers, he was the officer who arrested Plaintiff. *Id.* at ¶ 22. There is no evidence that any other of the above officers arrested or participated in Plaintiff's arrest.

Furthermore, Defendants Ridgell and Summers were the only officers who testified that they witnessed Bobby Coleman give a bag of drugs to Plaintiff on that day. *Id.* at ¶¶ 20-42. Although Edwards and Mohammed also testified, they testified that they did not witness Plaintiff engage in any criminal activity nor did they arrest him. *Id.* Likewise, there is no evidence that Bolton, Cadman, Gonzalez, Spaargaren or Young arrested Plaintiff or participated in his arrest or authored any report documenting his arrest. *Id.*; *see also id.* at ¶¶ 156-165

In short, Plaintiff has failed to adduce any evidence that Bolton, Cadman, Edwards, Mohammed, Gonzalez, Spaargaren, Summers and Young were involved in the decisions to arrest and charge him. Because these defendants were not present and did not participate in any of the conduct Plaintiff complains of in connection with his January arrest, they are entitled to judgment in their favor on all claims arising from that arrest.

Defendant Gonzalez is further entitled to judgment in his favor on all claims arising from the January arrest because he was off duty on January 4, 2003. SMF at ¶¶ 23. Gonzalez therefore could

not have participated, and did not participate, in any aspect of Plaintiff's January arrest or the criminal proceedings resulting from that arrest and Plaintiff has failed to adduce any evidence he did.

Like Gonzalez, Defendants Leano, Lewis, Nichols and Smith were also not present at Plaintiff's January arrest because they were not assigned to unit 715. SMF at ¶ 24. As such, they could not have participated, and did not participate, in any aspect of Plaintiff's January arrest or the criminal proceedings arising from that arrest and they too are entitled to judgment in their favor on all claims arising from that arrest.

**May 8, 2003 Arrest**

Plaintiff was also arrested by unit 715 on May 8, 2003. *Id.* at ¶ 93. Plaintiff saw Defendant Cadman in connection with his arrest, however he testified Defendant Cadman neither put hands on him nor did anything wrong. SMF at ¶ 163. Further, although Defendant Cadman may have been present at or about the time of the Plaintiff's arrest, he did not arrest Plaintiff, complete any reports, file any complaints or testify in any proceeding involving this arrest. SMF at ¶¶ 159-164. Thus, Defendant Cadman is entitled to summary judgment on all claims arising from Plaintiff's May 8, 2003 arrest and subsequent prosecution.

Plaintiff has failed to adduce any evidence that Defendant Bolton was on duty on May 8, 2003. Thus, there is no evidence that Bolton was present at or participated in Plaintiff's arrest, authored or signed any reports, signed the criminal complaint, recovered or handled any drugs, or testified in any related judicial proceeding.

And again, Defendants Leano, Lewis, Nichols and Smith were not present at Plaintiff's May arrest because they were not assigned to unit 715. SMF at ¶ 95. As such, they could not have participated, and did not participate, in any aspect of Plaintiff's May arrest or the criminal proceedings arising from that arrest and they too are entitled to judgment in their favor on all claims arising from that arrest.

34

Plaintiff's counsel acknowledges Defendant Spaargaren was not involved in the arrest and confirmed to his counsel that Plaintiff does not assert any claims against him related to this arrest. Thus, Defendant Spaargaren is entitled to summary judgment on all claims arising from Plaintiff's May 8, 2003 arrest and subsequent prosecution. SMF at ¶ 170.

**August 28, 2007 Arrest**

When Plaintiff was arrested on August 28, 2007, Defendants Lewis, Gonzalez, and Young, were not on duty. (*Id.* at ¶¶ 120-128.) Lewis, Gonzalez, and Young therefore could not have participated, and did not participate, in any aspect of Plaintiff's August arrest or the criminal proceedings resulting from that arrest and Plaintiff has failed to adduce any evidence they did. Accordingly, Lewis, Gonzalez, and Young are entitled to judgment in their favor on all claims arising from Plaintiff's August arrest.

Defendants Cadman, Spaargaren, Summers and Edwards were not members of the unit that arrested Plaintiff on August 28, 2007. (*Id.* at ¶¶ 120-128.) As such, they were not present at the 527 ext. or anywhere else in the Well complex and thus they could not have participated, and did not participate, in Plaintiff's August Arrest nor has Plaintiff adduced any evidence they did.

**IX.    Plaintiff's IIED Claims Are Time Barred.**

As with Plaintiff's First Amendment retaliation claim, his Intentional Infliction of Emotional Distress claim is similarly time-barred. "[A] claim of [IIED] in the course of arrest and prosecution accrues on the date of the arrest." *Bridewell v. Eberle*, 730 F.3d 672, 678 (7th Cir. 2013); *see also Stubbs v. City of Chicago,* 616 F.Supp.3d 793, 807 (N.D.Ill. 2022)(same); *Taylor v. City of Chicago*, 80 F. Supp.3d 817, 828 (N.D. Ill. 2015)(dismissing IIED claim in reversed conviction case because statute of limitations began to run on date of arrest).

**X.    Plaintiff's State And Federal Conspiracy Claims Fail.**

Plaintiff's state and federal conspiracy claims also fail on numerous grounds. First, these claims fail because there is simply no evidence that the Individual Defendants reached any agreement to deprive Plaintiff of his rights under federal or state law on any of the claims alleged.

To prove a § 1983 conspiracy, a plaintiff must show that multiple people reached an agreement to deprive the plaintiff of a constitutional right, an overt act in furtherance of the conspiracy, and that the acts actually deprived the plaintiff of the constitutional right. *Beaman v. Freesmeyer,* 776 F.3d 500, 506 (7th Cir. 2015). Circumstantial evidence can prove an agreement since conspiracies often do not depend on explicit agreements, but evidence must be more than merely speculation. *Id.* at 511. Similarly, under Illinois law, a civil conspiracy requires, "(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means: (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused the injury to the Plaintiff." *Walker v. White*, 2021 WL 1058096, * 16 (N.D.Ill. 2021) (*citing Fritz v. Johnson*, 209 Ill.2d 302, 317 (2004)). An agreement is a "necessary and important" element of this cause of action, and "[a] defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017).

To sustain a claim at summary judgment that defendants conspired to deny a plaintiff's constitutional rights, a plaintiff must come forward with facts tending to show that defendants "directed themselves toward an unconstitutional action by virtue of a mutual understanding[,]" and support such allegations with facts suggesting a "meeting of the minds." *Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000); *see also Redwood v. Dobson*, 476 F.3d 462, 466 (7th Cir. 2007)("The minimum ingredient of a conspiracy [ ] is an agreement to commit some future unlawful act in pursuit of a joint objective"). When considering whether a plaintiff can establish the existence of a conspiratorial agreement, "[t]he conspirators must act with a single plan, the general nature and scope

of which is known to each would-be conspirator." *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir. 1999) (*citing Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979)). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* A conspiracy claim cannot survive summary judgment based on vague conclusory allegations that include no overt acts reasonably related to promoting the conspiracy. *Amundsen*, 218 F.3d at 718.

Here, there is no evidence, circumstantial or otherwise, of a conspiracy in this case. There is no evidence that the Individual Defendants made any agreement to violate Plaintiff's rights. Indeed, the entirety of Plaintiff's conspiracy claims amount to nothing more than a theory of "guilt by association" which seeks to insinuate some wide-ranging agreement to violate rights based entirely on the fact that the Individual Defendants worked on the same team and on some of the same investigations as Defendants Watts and Mohammed involving Plaintiff. After all of the discovery in this case, the evidence of an alleged conspiracy amounts to nothing more than speculation and conjecture which is not enough to survive summary judgment. *See Cooney v. Casady*, 735 F.3d 709, 718 (7th Cir. 2012)("vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden at summary judgment."); *U.S. v. Sullivan*, 902 F.3d 1093, 1099 (7th Cir. 1990)(hypothesizing that activities were part of a conspiracy based on "piling inference upon inference [is] a practice disapproved of by the Supreme Court."); *Wrice v. Burge,* 187 F.Supp. 3d 939, 955 (N.D.Ill. 2015)("Nothing in the compliant plausibly suggests that Wrice's coerced confession was part of a grand conspiracy among nine state actions, seven of whom were unaware of the underlying coercion and three of whom did not assume office until years after Wrice's trial.").

Second, even were there evidence of a conspiracy, such claim would be barred by the intracorporate conspiracy doctrine because all of the Individual Defendants were working for the same

governmental employer and in the scope of their employment during the alleged actions committed in furtherance of this alleged conspiracy. *See Tabor v. City of Chicago*, 10 F.Supp.2d 988, 994 (N.D.Ill.1998).

Third, even were such claims not barred by the intracorporate conspiracy doctrine, the Individual Defendants would be entitled to Qualified Immunity on such claims. Indeed, as recently as 2017, the United States Supreme Court held that it was not well-established whether agents employed by and working for the same governmental agency could engage in a conspiracy amongst themselves to violate constitutional rights. *See Ziglar*, 582 U.S. at 154 (2017)("[T]he fact that the courts are divided as to whether or not a § 1985(3) conspiracy can arise from official discussions between or among agents of the same entity demonstrates that the law on the point is not well established. When the courts are divided on an issue so central to the cause of action alleged, a reasonable official lacks the notice required before imposing liability."). In this regard, at minimum, the Individual Defendants would be entitled to Qualified Immunity for actions taken in 2003 and 2007 respectively. *See e.g. Haliw v. City of South Elgin*, 2020 WL 1304697, *4 (N.D.Ill. 2020)(dismissing conspiracy claim on Qualified Immunity grounds because under *Ziglar* such claim involving agents of same governmental entity being liable for conspiracy was not well-established as of 2020; "Liability is not clearly established for conspiracies amongst police officers of a single municipality because the law is unsettled on whether the intracorporate conspiracy doctrine applies to § 1983 claims."); *Jackson v City of Cleveland*, 925 F.3d 793, 819-20 (6th Cir. 2019)(the intracorporate conspiracy doctrine applies to § 1983 just as it does to § 1985 claims because both create "cause[s] of action against any 'person' who deprives a plaintiff of his rights[.]"); *Drager v. Vill. of Bellwood*, 969 F. Supp. 2d 971, 985 (N.D. Ill. 2013) ("The Seventh Circuit has yet to decide whether the doctrine applies to § 1983 conspiracy claims, and district courts in this Circuit are split on whether it does.").

## CONCLUSION

WHEREFORE for the reasons stated above, Defendants are entitled to summary judgment in their favor and for whatever other relief this Court deems fit.

Respectfully submitted,

/s/ Timothy P. Scahill
One of the Attorneys for Defendant Calvin Ridgell, Jr.

Timothy P. Scahill
Steven B. Borkan
Drew Wycoff
 Borkan & Scahill, Ltd.
Special Assistant Corporation Counsel
20 S. Clark St., Suite 1700
Chicago, IL 60302
 (312) 580-1030
Fax: (312) 263-0128

/s/ William E. Bazarek
Special Assistant Corporation Counsel
One of the Attorneys for Defendants Alvin Jones, Robert Gonzalez, Miguel Cabrales, Douglas Nichols, Jr., Manuel S. Leano, Brian Bolton, Kenneth Young, Jr., David Soltis, Elsworth J. Smith, Jr., Gerome Summers, Jr., John Rodriguez, Lamonica Lewis, Frankie Lane, Katherine Moses-Hughes, Darryl Edwards, and Nobel Williams

Andrew M. Hale
William E. Bazarek
Amy Hijawi
Anthony E. Zecchin
Jason Marx
Kelly Olivier
HALE & MONICO LLC
Special Assistant Corporation Counsel
53 W. Jackson Blvd., Suite 330
Chicago, IL 60604
(312) 341-9646

/s/ James V. Daffada
James V. Daffada
Special Assistant Corporation Counsel
One of the Attorneys for Defendants Matthew Cadman and Michael Spaargaren
James V. Daffada
Thomas M. Leinenweber
Michael J. Schalka

Leinenweber Baroni & Daffada, LLC
120 N. LaSalle St., Ste. 2000
Chicago, Illinois 60602
(866) 786-3705