# EXHIBIT M
## FILED UNDER SEAL

**BAKER/GLENN V. CITY OF CHICAGO**
**EXHIBIT 1 TO JEFF NOBLE REPORT: SUMMARY AND REVIEW OF THE LOEVY/SHANE**
**SPREADSHEET OF 127 CR FILES AUDITED BY DR. SHANE**

---

CR #252704 (CITY-WATTS CR-000743-CITY-WATTS CR-000774)

Complaint Received: April 9, 1999

Date of Incident: April 5, 1999

Address of Incident: 3600 N. Halsted (23rd District Lockup, Cell 3)

Accused: Ptlmn. Anthony Letteri #16964, Civ. Ricardo Herrera

Complainant: Sgt. Mary O'Toole #2074

Witnesses: Marvin Donley, Frank Traynor

Allegations: The complainant alleges that an arrestee named Michael Pierce was not thoroughly searched which enabled him to cut both of his wrists with a piece of metal.

Investigation: A review of the relevant reports reveals an arrestee who was received in the 023rd District lockup cut his wrists with a piece of metal during the third watch, causing minor lacerations. At the time the incident was originally investigated, the arrestee stated that he found the piece of metal with which he injured himself within his cell, on the floor.

A review of the to/from reports requested in the course of this complaint register investigation reveals Marvin Donley, a third watch lockup keeper, stated that he discovered the arrestee after the incident and the arrestee then stated to him that he found the piece of metal with which he injured himself on the floor of his cell. Frank Traynor, the officer who investigated this incident originally and who prepared the hospitalization report, stated that the arrestee told him at Thorek Hospital that he had found the piece of metal with which he injured himself on the floor of his cell. Accused PO Herrera acknowledges that he searched the arrestee at the time he was received in the 023rd District lockup but maintains the search was thorough. Herrera states that all parts of the arrestee's body were searched and that he was required to turn his pockets inside out to ensure that they were empty. The arrestee's shoes and stocks were also inspected, and he was permitted to retain only his clothing and shoes upon being placed into a cell. Accused PO Letteri states that he was working in the lockup with Herrera and agrees with the conclusion that the search which Herrera performed was thorough. The r/sgt inspected the piece of metal with which the arrestee injured himself and found it to be less than ½" square; the lighting in the arrestee's cell was at best poor.

Outcome: Unfounded – the investigation reveals no evidence to support the allegation that the accused members failed to properly search the arrestee. To the contrary, the evidence strongly suggests that the arrestee found the object with which he injured himself on the floor of his cell. Moreover, there is no evidence the accused members were in any way culpable for failing to discover or remove the object.

Review of Loevy/Shane Spreadsheet: The complainant/Sgt. O'Toole alleged that two officers failed to thoroughly search an arrestee which enabled the arrestee to superficially cut both of his wrists with a metal object while in a holding cell. The spreadsheet reflects that the complainant (Sgt. O'Toole) was not contacted. However, following the initial call to OPS, the reporting sergeant provided a To/From report to OPS. The spreadsheet also reflects that no witnesses were contacted. This is incorrect. The investigator contacted and interviewed the lockup keeper who discovered the injured arrestee and the officer who initially investigated the incident. Both witnesses provided To/From memos regarding the incident, including statements made to them by the arrestee during which the arrestee denied bringing the metal object into the jail cell. The spreadsheet also erroneously states "no" as to whether any accused officer was identified by any witness and whether any statement was taken by the accused officers. Two officers (lockup keepers) were identified as

1

EXHIBIT 1

accused and both interviewed by the investigator. Both provided statements related to the search of the arrestee. (The spreadsheet refers to these as "administrative reports.") There were efforts to contact the arrestee, but the address he provided was for a homeless shelter and the shelter had no record that the arrestee ever lived there.

This investigation was reasonable .

CR #254164 (CITY-WATTS CR-001394-CITY-WATTS CR-001414)

Complaint Received: June 9, 1999

Date of Incident: June 4, 1999

Address of Incident: 4639 N. Winthrop

Accused: PO Kenneth Hudson #17089

Complainant: Danny Mitchell

Witnesses: PO Constance Bryant

Allegations: The complainant alleges that a male black uniformed officer who arrested him stated "motherfucker, I'm going to lock you up" and "shut the hell up."

Investigation: The r/sgt obtained a copy of the complainant's arrest report which contained information concerning the allegation for the date and time in question. The arrest report was prepared by the accused and stated that the complainant was arrested after he refused several requests by the officers to stop yelling and creating a disturbance. The r/sgt was able to contact and interview the complainant at his residence on 7/5/99. During this interview, the complainant stated that he and his neighbor were arrested after the accused officers responded to the call of a disturbance. The complainant stated that PO Hudson called him some profane names during the incident, but he could not remember exactly what the names were. The complainant also stated that PO Hudson was the only person to act in an exceptional way during the incident and that in fact the complainant did not want to continue the complaint against the officer. At this time, the r/sgt asked the complainant if he would sign a letter of declination to end the investigation and the complainant stated that he would. PO Hudson stated in his report that he arrived on the scene of the incident and arrested the complainant after several requests to stop creating a disturbance. PO Hudson further stated that at no time did he call the complainant any profane names nor did he make any insulting comments to the complainant. The r/sgt also requested PO Bryant submit a report concerning the incident. PO Bryant's report stated that at no time did she hear PO Hudson verbally abuse the complainant or use any language that was unprofessional.

Outcome: Unfounded – the r/sgt's investigation revealed that the complainant could not remember exactly what was said by PO Hudson in an unprofessional manner and that he wanted to withdraw his complaint. When the r/sgt requested both accused officers provide reports, they both stated PO Hudson never verbally abused the complainant and that PO Hudson acted in a professional manner.

Review of Loevy/Shane Spreadsheet: Victim/complainant Danny Mitchell was arrested by Officer Kenneth Hudson (accused) and Officer Constance Bryant. Complainant alleged Hudson stated, "Motherfucker, I'm going to lock you up and shut the hell up." Investigated by Unit sergeant, who contacted and interviewed the complainant in person. Complainant did not want to continue the complaint and signed a letter of declination. The investigating sergeant nevertheless requested and obtained To/From memos from Officers Hudson and Bryant, in which they denied any verbal abuse by Hudson. The incident was classified as Unfounded.

The Loevy/Shane spreadsheet is misleading in that it indicates no statement was taken from the complainant/victim. The investigator did obtain a statement from the complainant/victim, which is reflected in a detailed To/From memo in the CR file. The spreadsheet also reflects no "witness" statement was applicable; however, the other officer (Bryant) is listed as a witness in the file and her To/From memo is included in the

file. For the same reason, the spreadsheet is inaccurate in that it reflects no statement was obtained from a non-accused officer (in fact, Bryant provided the To/From memo). In addition, the spreadsheet indicates no statement was taken from the accused officer. Hudson also provided a To/From memo to the investigator. Note: the spreadsheet reflects officers submitted administrative reports.

This investigation was reasonable.

---

CR #254321 (CITY-WATTS CR-001438-CITY-WATTS CR-001488)

Complaint Received: June 16, 1999

Date of Incident: June 14, 1999

Address of Incident: 351 W. Oak

Accused: Sgt. John Creggett #1941

Complainant: Lt. Randall Zawis #204

Witnesses: PO Eugene Jennings #11158, PO Timothy Westbrooks #16446, PO Nicole Rowden #19827, PO Kenneth Thomas #17659, PO William Felke #16902, PO Adam Andrews #7381, PO Kathy Russell #7743, Sgt. Wayon Collins #2065

Allegations: It is alleged by the complainant that the accused (1) failed to take action on the scene of a damage to property/assault in progress, (2) engaged in a verbal altercation with the victim, (3) engaged in a verbal altercation with the complainant, and (4) refused to identify himself to the complainant on the scene.

Investigation: The initiation report of the complainant, Lt. Zawis reveals that he responded to an assault in progress call. Lt. Zawis stated that upon arrival, he observed Beat 1824 on the scene talking to a highly agitated male black. Another male black emerged from the crowd and was approaching in a hurried manner. Lt. Zawis stated that he stepped in front of the male black and placed his hand on his chest to stop his approach while requesting he moved back. The unknown male black stated "get your hands off me" and refused to move back. Lt. Zawis stated to the male black that if he continued, he would be placed under arrest. The male black then responded "I ain't going nowhere, all these people know who I am." Lt. Zawis related that at this point one of the Public Housing North officers on the scene stated the unknown male black was a sergeant. Lt. Zawis stated the male black was in civilian dress and never identified himself during this incident. Lt. Zawis instructed the male black, now known as Sgt. Creggett, to report to the watch commander's office. Zawis related he informed Watch Commander Sgt. Wayon Collins of the incident and told him he was going to the 018th District to obtain a CR number. Lt. Zawis interviewed the officers working Beat 1824, Jennings and Westbrooks, who stated that the victim told them the accused, Creggett, stood by while several people damaged his vehicle. The victim refused to have a report completed and left the scene during the argument between Zawis and Creggett.

Sgt. Creggett stated in a to/from report that he was assigned to Beat 4559, civilian dress. He stated that a female black came into the Public Housing North office stating a male black was being chased by a group of men into a store at 351 W. Oak. Creggett stated he instructed the desk officer, Rowden #19827, to notify the zone of a battery in progress. He then accompanied the female black to the store. Upon arrival to the store, the male black was exiting carrying a knife and vise grips in his hands. Creggett disarmed the male black who then shouted at the alleged offenders standing in the rear of 923 N. Sedgwick. Cregg related that Beats 1824, 4559B and 1890 arrived on scene and that he sent 4559B to locate the offenders. Also on scene were Beats 4551 and 4507. Creggett stated that at no time were any windows broken out of any vehicle while he was present. He denied engaging in an unjustified verbal altercation with the victim and denied that he had to be separated from the victim by responding officers. Creggett stated he was grabbed by the complainant, and he told the complainant to remove his hands and not do it again. Creggett stated he did identify himself to the complainant on the scene.

3

Outcome: Sustained, violation of Rules 7 and 9 – 3-day suspension – the accused member has resigned from the department effective 1/11/04. As final administrative action has been precluded by the absence of the accused, it is recommended that the case be held in the records section pending the return of the accused. If that event should occur, the file will be re-opened, and the final administrative action completed.

The investigation revealed that the accused was on the scene of a disturbance where several male blacks had chased another male black into a store. The unknown male black (victim) told several officers on the scene that he had been beat up and his vehicle was damaged by several male blacks that had fled the scene. The victim cannot be identified because he did not want a report completed and did not give responding officers any further information. Therefore, without the possibility of interviewing the victim, it is unknown whether the accused failed to perform his duty or take action while the victim's vehicle was being damaged as reported by the complainant. It is also impossible to determine if a verbal altercation had taken place between the victim and Sgt. Creggett without the victim's cooperation. Lt. Zawis stated the accused refused to identify himself. Zawis did not know the accused is a police officer, so he did not ask the accused to identify himself.

The complainant alleged that the accused was disrespectful to him on the scene, refused to identify himself, and refused numerous requests to step back from the scene. The complainant stated he had to physically place his hand on the chest of the accused to stop him from engaging in another confrontation with the victim. At this point, the accused told the complainant that he should take his hands off him and he was not going anywhere because all these people (Public Housing North Officers) knew him. At this point, the complainant was still unaware that the accused was a Chicago Police Sergeant because he was in civilian dress and never identified himself throughout this entire incident. The complainant stated he then heard another officer state that the accused was a Sergeant. The complainant stated that the accused refused to identify himself, but the complainant did not request the name and star of the accused once he learned he was a Sergeant. Two witness officers, Westbrooks and Jennings, stated that the accused was engaged in a verbal altercation with the complainant, and the accused had to be physically stopped from getting too close to the victim who was agitated by the accused. The officers stated that at no time during the incident did the accused identify himself until after another officer from the Public Housing North Unit on the scene stated the accused was a sergeant. One witness, PO Westbrooks, stated that during the incident the accused was very angry and disrespectful in his tone when arguing with the complainant. The fact that the accused did not identify himself at the onset of the incident led to the complainant having to physically stop the accused from approaching the scene. The complainant did not know he was dealing with a Chicago Police Sergeant at the time and used necessary means to stop a confrontation between the victim and the accused. One other officer on the scene, Russell, witnessed a verbal confrontation between the accused and the complainant, but was not present for the initial contact between the two. Therefore, the allegations of disrespect toward a supervisor and engaging in an unjustified verbal confrontation with the complainant must be Sustained.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for CR#254321 that Dr. Shane relied upon is misleading. There were four allegations made against the accused officer. Dr. Shane asserts that a statement was not taken from non-accused officers, which is incorrect. To/From memo was completed by several of the non-accused officers regarding the allegations. (CITY-WATTS-CR-001463- 1468; 1473- 1477). Further, it was recommended that the accused officer receive a 3-day suspension for one of the allegations, as noted on Dr. Shane's chart. Moreover, the victim on scene advised he did not want to make a report.

This investigation was conducted reasonably, the allegations were sustained and the accused officer resigned.

CR #256743 (CITY-WATTS CR-004365-CITY-WATTS CR-004384)

Complaint Received: September 21, 1999

Date of Incident: Ongoing

Address of Incident: 1111 W. Roosevelt Rd.

Accused: PO Dennis Liss #10113, Unknown

Complainant: Debbie Catchings, Cynthia Annison

Witnesses:

Allegations: It is alleged by the complainants that while in the vicinity of 111 W. Roosevelt at various times, the accused (1) continuously drives in a reckless manner when pursuing suspects without activating equipment, (2) strip searching children from the waist down, (3) chasing suspects with weapons drawn while the children are present, and (4) using racial slurs and profanities.

Investigation: Initially, the r/sgt interviewed Debbie Catchings who stated that her complaint is a community complaint based on the concerns of residents of the ABLA Homes projects. She states four plain clothes officers (AK, Chuck, Lizz and Trey) are pursuing suspected drug dealers with their guns drawn. She related a simple solution would be for the officers to announce their office and tell innocent bystanders to get out of the way. Catchings stated the same plain clothed officers chase suspects in their squad car without activating their emergency equipment which creates a dangerous situation for children at play in and around the community. Once the suspects are in custody, Catchings related the aforementioned officers handcuff, throw to the ground and search the alleged suspects. It should be noted that Catchings stated she got the names of the officers from a community rally in which their names were circulated. She is not able to give a specific incident when the alleged allegations have taken place, but the entire community is well aware of what is going on and she wanted the CPD to know. Cynthia Annison reiterated the same information as Catchings. Annison related she did not witness the allegations and therefore refused to view photographs via the Sun Digital photo system.

PO Liss was interviewed and denied driving in a reckless manner without activating his emergency equipment, denied strip searching anyone, chasing suspects with his weapon drawn, and using racial slurs or profanities. He also stated he has not observed any other officers do any of the alleged allegations. The r/sgt acquisitioned the assignment schedule of POs assigned to the 12th District. PO Liss is spelled similar to the name Lizz. The r/sgt did not observe any male, white police officers with the initials AK or with the first name Chuck. The r/sgt also observed the fact that there were no male/black officers with a name exact or similar to Trey.

Outcome: Unfounded as to PO Dennis Liss; Not Sustained as to Unknown

Review of Loevy/Shane Spreadsheet: Complainants Debbie Catchings and Cynthia Annison allege several unknown plainclothes officers, when apprehending suspected drug dealers, harass/disrespect law abiding citizens by using profanity and racial slurs, strip search the arrestees in front of children, chase suspects with weapons drawn while children are present, and chase suspects without activating emergency equipment, endangering the safety of children. The complainants could not identify the officers, but based on nicknames, one possible officer, Dennis Liss, was listed as the accused in the file. The investigator interviewed both complainants. Catchings was unable to give a specific incident when the alleged misconduct occurred, but provided information given to her by unidentified persons during a community rally. Annison related the same information, but acknowledged she did not witness the alleged misconduct. Officer Liss was interviewed by the investigator because his name was similar to one of the nicknames (Lizz) provided by the complainants. He denied the allegations and stated he did not observe any other officers do any of the alleged misconduct. The investigator was unable to identify any of the other officers by comparing the nicknames to the A&A sheets. Due to the fact the complainants did not witness the allegations and could not identify or specify the dates/times/locations of the incidents, the allegations were Unfounded as to Liss and not sustained against the unknown department members.

The Shane spreadsheet correctly indicates the complainants were contacted and interviewed in person, but misleadingly suggests no statements were taken. The file includes To/From memos that detail the investigator's interviews of both complainants. The spreadsheet also suggests no accused officer statement was obtained; however, Liss provided a To/From memo denying the allegations. (The spreadsheet does reflect an administrative report was submitted by an officer.) The spreadsheet also suggests no victim was contacted, but this is also somewhat misleading as the complainants were unable to identify any "victims." An accurate characterization would have been "Not applicable."

It should be noted CR# 256743 comprises 16 separate entries on the spreadsheet. The spreadsheet breaks out the four separate types of alleged misconduct against Liss and each of the unknown officers (listed as Unknown Officers 1, 2, and 3). The entries in the data are the same on all 16 lines. Thus, the errors/inconsistencies regarding the Loevy/Shane assessment of this CR file is multiplied by 16. This problem is reflected in the vast majority of the Loevy/Shane spreadsheet entries.

This investigation was conducted reasonably.

---

CR #259067 (CITY-WATTS CR-005062-CITY-WATTS CR-005189)

Complaint Received: January 5, 2000

Date of Incident: January 4, 2000

Address of Incident: 6531 W. 63rd Street

Accused: PO Betty Budz #19315

Complainant: Kenneth Maier

Witnesses: Art Fink, Amy Baranov, Cindy Casper (Culley)

Allegations: It is alleged that the accused (1) engaged in an unjustified verbal altercation with the complainant by directing profanities, derogatory remarks, and threatening remarks and gestures towards him, and (2) had knowledge that her mother has an outstanding warrant and failed to take any police action, and (3) verbally abused and threatened Mr. Maier at his home.

Investigation: Sgt. Christopher Paluch, on behalf of the complainant, contacted OPS and provided an initiation report which states he was assigned to a "request for a police supervisor at 6616 W. 64th Place" on 1/4/00. Once he arrived, he spoke with Kenneth Maier who identified himself as a Vernon Hills Police Officer. He told Sgt. Paluch that earlier that evening, he had a chance meeting at a bar with PO Betty Budz, who is his former girlfriend. Maier told Sgt. Paluch that he and PO Budz exchanged "New Years Greetings" and once he started to leave the bar, he heard an unknown male call him an "asshole." Maier told Sgt. Paluch that he left the bar with his friend, Arthur Fink, without further incident. Maier went to a Mexican Restaurant at 6531 W. 63rd Street with Mr. Fink and saw PO Budz a second time. Sgt. Paluch's report indicates that Maier and Fink told him that PO Budz began shouting profanities at Maier and had to be "carried away from the scene by her male companion." Sgt. Paulch reported that Maier told him once he arrived home, PO Budz telephoned him and continued to verbally abuse him, shout profanities at him, and threatened to call his employer in order to jeopardize his position with the Vernon Hills PD. Sgt. Paluch's report indicates that Maier told him that PO Budz has knowledge that her mother has an outstanding warrant, but has failed to take any action as a peace officer.

A LEADS computer printout indicates that the accused's mother does have an outstanding warrant relating to a vehicle accident where there was damage to another vehicle and the warrant state it can be executed in Cook, DuPage, McHenry and Will Counties only.

PO Budz provided a written statement stating that Mr. Maier is her ex-fiancé, and they broke up 3 years ago, but she has known him for 7 years. She denies being aware of her mother's warrant and went on to say the only contact she has with her mother is, "when she calls to see if any family members are at my house." She also stated "I'm not aware of any warrant. She's never been arrested and does not even get traffic tickets. PO Budz did admit to engaging in a verbal altercation with Mr. Maier, but denied all other allegations lodged against her.

Outcome: Sustained – 2-day suspension. Per the settlement agreement regarding grievance 006-01-009/432, the grievant will be compensated with 2 days of pay for the actual suspension served on 11/8-11/9/01 and it shall be expunged. A complaint review panel convened and deliberated on 1/5/01 and provided the recommendation that the allegations be not sustained – there is insufficient evidence to prove or disprove the

allegations, and no unbiased witness testimony can be provided that supports the allegations against the accused.

Review of Loevy/Shane Spreadsheet: This CR resulted in a sustained finding and recommended 2 day suspension was expunged after a grievance was filed. The officer allegedly engaged in an unjustified verbal altercation with the complainant on a public street and in the presence of off-duty Vernon Hills Police Officers. The Loevy/Shane spreadsheet is generally accurate though a few of the variables could be marked Not Applicable instead of no.

This investigation was reasonable.

CR #259084 (CITY-WATTS CR-005190-CITY-WATTS CR-005213)

Complaint Received: January 14, 2000

Date of Incident: December 16, 1999

Address of Incident: 2943 S. Wallace

Accused: PO Maura O'Neill #15570, PO David Scarriot #16459

Complainant: Karen Scumaci

Allegations: The complainant alleges she was involved in a traffic accident with a person that was under the influence of alcohol, at which time the accused responded to the scene. The complainant alleges the officers filed a police report but failed to take any further action. The complainant alleges no citations were issued nor was there an arrest.

Investigation: The r/sgt spoke to the complainant, Karen Scumaci, who related that she wanted to withdraw her complaint against the officers. After being given all the proper forms, the officers related that 5 citations were issued to the at fault driver and that this individual was not intoxicated. The r/sgt cannot find any evidence to support the allegations against the officers.

Outcome: Allegation 1 not sustained; allegation 2 unfounded

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when the complainant and victim are the same person, Karen Scumaci who gave a statement after being interviewed. (CITY-WATTS 005195). In fact, Ms. Scumaci signed a letter of declination stating she did not want to pursue the complaint, which the Loevy/Shane spreadsheet does not reflect. (CITY-WATTS 005197). More specifically, Ms. Scumaci's complaint was that the officers who responded to her traffic accident failed to cite or arrest the driver at fault for being under the influence of alcohol. The investigator presented Ms. Scumaci with the citations issued to the at-fault driver and further related the at fault driver was not intoxicated. This investigation was unfounded when the complainant/alleged victim signed a letter of declination and did not sign the affidavit required by Illinois law. The complainant withdrew her complaint but the officers submitted to/from reports after the complaint was withdrawn. The spreadsheet indicates the complainant and victim were not interviewed, but the complainant's statement was recorded and there was no victim.

This investigation was reasonable.

CR #259248 (CITY-WATTS CR-005381-CITY-WATTS CR-005500)

Complaint Received: January 12, 2000

Date of Incident: January 24, 1999 and January 7 and 9, 2000

Address of Incident: 5101 S. Wentworth

CITY-BG-062996

Accused: PO James Cross #14018

Complainant: Sgt. McBride

Witnesses: Sgt. Mozee-Russell, Sgt. Williams, Sgt. Burke

Allegations: The complainant alleged the accused does not have a valid state validation sticker affixed to his vehicle. The inspector has reported him three times in the last year.

Investigation: The r/sgt obtained the inspector's report showing the accused had been written up three times in one year for failing to display his state validation sticker. The r/sgt served the accused with notification of charges, administrative rights and waiver of counsel forms.

The first inspector's report 002-99-02 was handled by a SPAR resulting in a one-day suspension. The same vehicle was written up by inspector's report on 1/7/00. At that time, the witnessing sergeant verbally informed the accused of the noted violation by the inspector. On 1/9/00, the inspector wrote the same vehicle once again for an expired state sticker. The violation was then witnessed by another second district street sergeant. After the accused responded to the allegation of the expired state plate, he provided a copy of the registration showing that the renewal sticker had been purchased. The r/sgt inspected the accused officer's vehicle and observed the renewal sticker displayed, but no front plate. The r/sgt re-served the accused in regard to no front plate. The accused responded and reported it. On 1/26/00, the accused surrendered his plate to the Secretary of State and ordered a new set of plates. The r/sgt inspected the accused's auto on 2/1/00 and found the temporary sticker displayed, therefore in compliance with the law.

The CR was forwarded but subsequently returned by department advocate. The R/sgt re-served the accused with the allegation that the accused has not kept the department and the Secretary of State updated with his change of address. The accused responded by submitting copies of proof of address changes with the department and Secretary of State and his written response explaining the delay. The accused changed his address with the department and Secretary of State after the allegation came to light. On 7/20, the r/sgt requested from personnel the employee profile that has the current address on it and shows the accused is in compliance.

Outcome: Sustained – violation of Rule 26. Original discipline recommendation was 5 days suspension; Disciplinary Screening Committee agreed to reduce the recommended penalty to 4 days suspension.

Review of Loevy/Shane Spreadsheet: This CR resulted in sustained finding and recommended 4 day suspension reduced to 1 day after a grievance was filed. This CR was initiated when the accused officer was written up three times in one year for failure to display his state validation sticker affixed to his vehicle. The Loevy/Shane spreadsheet has a few minor errors, including stating that no affidavit was obtained when that column should have been marked not applicable because no affidavit was required for this CR, and stating that the complainant was not contacted when the complainant provided a written statement. The spreadsheet indicates there were no statements from the accused or non-accused officers, but the accused officer did submit a to/from memo and there were statements from the reporting supervisor.

This investigation was reasonable.

CR #260055 (CITY-WATTS CR-006062-CITY-WATTS CR-006073)

Complaint Received: February 17, 1999

Date of Incident: February 15, 2000

Address of Incident: 4039 N. Kedvale

Accused: Unknown

Complainant: Linda Ferrell

CITY-BG-062997

Allegations: The complainant alleges two male/white uniformed officers were hitting on her door, which was not closed all the way, at which time she stated to the officers "you scared me, what's wrong?" and one of the officers replied "fucking bitch." No arrests were made.

Investigation: The r/sgt began the investigation by running I-Cam to determine what type of incident occurred at the complainant's address on that date and time. R/sgt found no police cars given assignments at this location in the last 30 days. R/sgt then interviewed the complainant, Linda Ferrell, who stated that she no longer wished to pursue this matter. The complainant signed a letter of declination terminating her involvement in any further police investigation related to this matter. The investigation is terminated at this point and time.

Outcome: Not Sustained

Review of Loevy/Shane Spreadsheet: Complainant/victim Linda Ferrell alleged that officers called her a "fucking bitch." During the investigation, Ferrell was interviewed and signed a letter of declination. Based on the letter of declination, the CR allegations were "not sustained."

The data created by the Loevy firm for CR #260055 correctly notes the complainant/victim was contacted and an in-person interview was conducted.  However, the Loevy/Shane spreadsheet indicated no statement was taken from the complainant/victim. This is misleading as the file contains a To/From memo from the investigator reflecting the details of the in-person interview of the complainant/witness. The Loevy/Shane spreadsheet also indicates that no accused officer gave a statement or submitted a report, but this is misleading as the complainant signed a letter of declination before the officers were identified. Nowhere is the letter of declination mentioned by the Loevy firm and Shane.

This investigation was reasonable.

CR #262784 (CITY-WATTS CR-002836-CITY-WATTS CR-002903)

Complaint Received: June 3, 2000

Date of Incident: May 31, 2000

Address of Incident: 1001 W. 115th St., Brownlee Transportation

Accused: Non-Department Member

Victim: Torian Turner

Complainant: Pamela Martin

Witnesses: Edison Reynolds

Allegations: The complainant alleged that the accused (1) struck Mr. Torian Turner, the victim, with their police vehicle, and (2) beat him during his arrest.

Investigation: Pamela Martin, the mother of Torian Turner, did not witness the incident and provided the names of Ms. Kelly, Louis Woods and Michael Kerr as witnesses to Mr. Turner's arrest when he was allegedly struck with a police vehicle. Torian Turner in a formal statement related that he was in the alley of 115th Street when he saw the police. Mr. Turner began running north on Morgan. At this time, a marked police car was traveling on 115th Street and Morgan, in reverse, struck him in the legs. Mr. Turner fell to the ground and blacked out. He awoke after he was placed in the rear of an ambulance. Mr. Turner stated that while the CFD treated his ankles, they recovered suspect marijuana. He was then placed under arrest for possession of marijuana. He further stated that he did not receive a receipt for his money which was taken from him – he had $1630 USC on his person after his arrest. Mr. Turner denied jumping from a building just prior to his arrest. Mr. Turner was told by his mother, Ms. Pamela Martin, after he came out of surgery that he was struck by a police car.

9

A canvass was conducted in the vicinity of the arrest and personal visits were made to the residences of Kelly Jackson, Michael Kerr and Louis Woods. No witnesses were located that were present during the arrest of Torian Turner other than Edison Reynolds to verify how Mr. Turner suffered injuries to his ankles. Edison Reynolds related he observed Mr. Turner and a second offender attempting to burglarize a bus at the Brownlee Transportation Company. Mr. Reynolds related that when the police arrived to the scene, Mr. Turner jumped from the roof of the building onto the ground and was unable to get up from the ground. The police called an ambulance to the scene and the second offender was able to get away. Mr. Reynolds further related that the police did not strike Mr. Turner with the police car while attempting to arrest him.

The arresting officers in their case report relate that Edison Reynolds and Bobbie Gamble observed two offenders tampering with a bus in their secured bus yard. After the police were called to the scene, they observed both offenders in the bus yard. The offenders were observed on top of parked buses and ran onto the roof of the building. The two offenders then jumped from the roof to the ground – 15 to 20 feet. At the time, the offender identified as Torian Turner, was taken into custody with two possible broken ankles. The second offender fled the scene. Mr. Turner was charged with burglary and possession of a controlled substance after suspect marijuana was recovered from his person. The arresting officers inventoried the suspect marijuana and the $1630 USC he had with him. Mr. Turner was treated on the scene by the CFD, transported to Roseland Hospital and then transferred to Mt. Sinai for treatment of two fractured ankles where he underwent surgery. Dr. Dmitry Pashikov informed the r/sgt that Mr. Turner had successful surgery on both of his ankles. He suffered "compressed fractures" which is consistent with jumping from a building and not being struck with a police vehicle. He had no other apparent injuries.

Outcome: Unfounded – the eyewitness account, the police reports, fire paramedic report and medical reports all document that Mr. Turner suffered injuries to his ankles and no other injuries as a result of jumping from the roof of a building, not from being struck by police vehicle or being beaten. There is no evidence that any department member used excessive force during the arrest of Mr. Torian Turner.

Review of Loevy/Shane Spreadsheet: The allegation in this CR that the police officers struck the alleged victim Torian Turner with their squad car and then beat him were proven by OPS's investigation to be demonstrably incorrect, yet the data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misrepresents the nature and extent of the investigation. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant and the complainant was not interviewed, when in fact the complainant Pamela Martin was interviewed twice (once at intake and again on June 3, 2000), her statement was taken, and she admitted she was not a witness to the event. (CITY-WATTS CR-002848 and 2852). The Loevy/Shane spreadsheet also incorrectly asserts that no witness was interviewed, when in fact witness Edison Reynolds was interviewed and gave a statement that the alleged victim, Torian Turner, was not hit by a police car or beaten by police, but jumped from a building in the process of committing a burglary and hurt his ankles when he landed, prompting the responding police officer to call for an ambulance. (CITY-WATTS CR-002865). Moreover, OPS obtained and reviewed medical records and conducted an interview of another witness, Dr. Dmitry Pasikhov, who stated that the alleged victim's injuries were consistent with jumping off a building and not getting hit by a car, and that he had no other apparent injuries from any alleged beating by the police. The Loevy/Shane spreadsheet also misleadingly indicates that an Inventory Vehicle Report Search should have been done, when there was no reason to conduct such a needless step. The coded data create by the Loevy firm and audited by Shane fails to acknowledge what actually happened in this investigation and Shane's reliance upon it misrepresents the facts.

This investigation was reasonable.

CR #263183 (CITY-WATTS CR-003183-CITY-WATTS CR-003222)

Complaint Received: June 24, 2000

Date of Incident: June 17, 2000

CITY-BG-062999

Address of Incident: 5101 S. Wentworth – 002nd District

Accused: None Identified

Complainant: Joanne Coburn

Allegations: The complainant alleges that when she went to the police station to obtain a copy of a case report involving an "assault," the unknown male black uniformed officer at the front desk stated to her "because of where you live" and "because you're probably a crack hoe, the report was probably never filed." Per the complainant, she filed a report regarding an assault at her residence with an Officer Pritchard who wrote the report. No arrest; no injuries.

Investigation: The complainant was interviewed at which time she confirmed the substance thereof. The complainant was not cooperative in this investigation due to her having made two broken commitments to review photographs of sworn members in an effort to identify an accused. The complainant moved from the Ashland Motel where she resided without leaving any forwarding address or contact information. The move occurred after another broken commitment to cooperate in the investigation.

Outcome: Not Sustained – as a result of the complainant's failure to fully cooperate in the investigation, the r/sgt was unable to identify an accused officer. The circumstance was further exacerbated by the fact that there is no record of (1) any case or supplementary report involving the complainant, and (2) no CPD Officer named "Pritchard" as stipulated by the complainant. In essence, not having an identified eyewitness or complainant identification of an accused, coupled with there being no record of any report filed by the complainant and numerous officers assigned to Area 1, the investigation was not sustained.

Review of Loevy/Shane Spreadsheet: The victim/complainant initially alleged over the phone that when she came to the police station to obtain a copy of an assault report, she was told that no report was probably created because she is "a crack whore." She was later interviewed by the OPS investigator via telephone and confirmed her initial allegation. However, the spreadsheet indicates no statement was taken from the victim/complainant. However, the victim/complainant missed repeated appointments to be interviewed in-person and to view photos to try to identify the accused. The spreadsheet also reflects "not applicable" related to whether any witness was contacted despite the fact that three additional individuals were interviewed during the OPS investigation. This CR is an example of a repeated problem with the Loevy/Shane spreadsheet in that it does not include a column for victim/complainant refusal to cooperate (or in other instances statements of declination).

This investigation was reasonable.

CR #263552 (CITY-WATTS CR-0003451-CITY-WATTS CR-003476)

Complaint Received: July 10, 2000

Date of Incident: June 30, 2000

Address of Incident: 12500 S. Western, Blue Island

Accused: PO Ronald Rufo #8344

Complainant: Javier Gonzalas

Allegations: It is alleged that on the above date and time an unknown male white individual wearing a uniform, driving a gold Saturn vehicle cut the complainant off in traffic. It is also alleged that the accused individual called the complainant an "asshole" and stated "I'll kick your ass" while following the complainant in his vehicle for several miles.

Investigation: The r/sgt made several unsuccessful attempts to contact the complainant by telephone. Following these unsuccessful attempts, the r/sgt sent the complainant a certified letter, which was delivered and signed for on 7/22/00. Included in the letter was a request that the complainant contact the r/sgt and that

CITY-BG-063000

his cooperation was needed to further the investigation. As of the completion of the investigation, the complainant has made no attempt to contact the r/sgt and has not cooperated in any manner. The r/sgt completed a Hot Desk query of the license plate information supplied by the complainant. The query results show that the license is registered to a 1998 Saturn which is owned by Ronald Rufo. After serving PO Rufo with the notification of charges/allegations, he submitted a report denying any knowledge or recollection of the incident or of the complainant or his vehicle. Without the cooperation of the complainant in the investigation, there is no further evidence or information to be uncovered.

Outcome: Not Sustained – without the cooperation of the complainant, this investigation cannot move forward and the allegations made cannot be substantiated. The evidence disclosed or uncovered in this investigation is insufficient to either prove or disprove the allegations made by the complainant.

Review of Loevy/Shane Spreadsheet: Complainant Javier Gonzalez alleged an unknown individual wearing a uniform, driving a gold Saturn, cut him off in traffic, called him an asshole, and stated "I'm going to kick your ass," then followed the complainant for several miles. The complainant provided a license plate number of the vehicle. The investigator made several unsuccessful attempts to contact the complainant by telephone, then sent a certified letter. The letter was signed for and the return receipt was included in the file. The complainant made no attempt to contact the investigator. The investigator nevertheless tracked down the license plate number and vehicle, which belonged to Officer Ronald Rufo. Rufo was served with notice of the allegations and provided a To/From memo denying knowledge or recollection of the alleged event. Without the cooperation of the complainant, there was no further evidence or information to be uncovered, and the allegations could not be substantiated. The investigator recommended the allegations be Not Sustained.

The spreadsheet indicates the complainant was not contacted. However, the complainant was contacted by certified letter but declined to cooperate with the investigation. The Loevy/Shane spreadsheet omits this fact. The spreadsheet correctly reflects the column for "statement taken from complainant" was "Not applicable." Although the spreadsheet suggests no statement was taken from the accused officer, he did submit a To/From memo denying knowledge or recollection of the alleged incident. The spreadsheet does reflect the accused officer submitted an "administrative report."

This investigation was reasonable.

CR #264118 (CITY-WATTS CR-006583-CITY-WATTS CR-006613)

Complaint Received: August 8, 2000

Date of Incident: July 20, 2000

Address of Incident: 5100 S. Pulaski

Accused: PO Rafael Borja #12800

Victim: Redacted (Juvenile)

Complainant: Arlene Tankson

Witnesses: PO Michael Vins #19727

Allegations: The complainant alleges the accused called her son (the victim) a "mother fucker."

Investigation: R/sgt contacted the complainant on 8/9/00 regarding the CR number, at which time she related that she no longer wished to pursue the complaint and allegation against the department member. The complainant affixed her signature to a typewritten statement indicating she no longer wished to pursue the complaint and allegation. Due to the complainant's request not to pursue the complaint/allegation and the fact that the complainant did not want to give a statement, the r/sgt was unable to substantiate the allegation against the accused.

Outcome: Not Sustained

CITY-BG-063001

Review of Loevy/Shane Spreadsheet: Complainant, who is the mother of 15-year-old victim, made an in-person complaint alleging an officer called her son a "mother fucker." Complainant, who did not witness the incident, later provided a signed, typed statement to OPS indicating she no longer wished to pursue the CR. The spreadsheet reflects no statement or in-person interview of complainant and no statement or in-person interview of the accused. There is nothing in the spreadsheet that would indicate complainant refused to cooperate/wished to terminate her complaint. Further, the spreadsheet erroneously indicates that the accused officer was not identified by any victim or witness and that no accused officer nor non-accused officer's statement was taken. However, To/From memos by the accused officer and a witness officer were included in the CR file. Both officers admit investigating the teen and others who were wrestling in the street but deny the accused called the boy a "mother-fucker." The spreadsheet also erroneously reflects this was an external complaint – the complainant/mother was a Chicago police officer.

This investigation was reasonable.

---

CR #264484 (CITY-WATTS CR-006836-CITY-WATTS CR-006869)

Complaint Received: August 9, 2000

Date of Incident: August 3, 2000

Address of Incident: 3645 S. State

Accused: PO Lawrence Gade #3480, PO Glenn Oskvarek #18653

Victim: Cheryl LaShae

Complainant: Cheryl LaShae

Allegations: The complainant alleges that a male white police officer stated over the PA system of his squad car, "you are all animals, go back in the hole." The complainant stated the accused were in squad car number 8113.

Investigation: This incident arises from a citizen's complaint of verbal abuse via the PA system of a marked squad car. The complainant informed the r/sgt that there were other marked police cars in the same vicinity on State Street, moving in either direction, when the incident occurred and that while they were moving the comment was made. The complainant could only remember the one car number and nothing else due to the location on the street and the movement of the other cars. The investigator stated that the fact that the complainant would not or could not supply any witnesses to the alleged incident or any other concrete evidence leads credence to the accused officers response to the allegation of improper use of the PA system.

Outcome: Not Sustained

Review of Loevy/Shane Spreadsheet: Complainant/victim Cheryl LaShae alleged a white male police officer in squad car #8113 stated over the car's PA system, "You are all animals, go back in the hole." The investigating sergeant spoke with La Shae, who could only provide the number of the vehicle. The investigator determined the vehicle was assigned to Officers Lawrence Gade and Glenn Oskvarek. LaShae alleged one of the officers made the comment, but she did not know which one. She also stated the car was moving from the location along with other marked police vehicles when the comment was made. LaShae told the investigator there were other witnesses but she would not or could not supply their names or addresses. Officers Gade and Oskvarek both submitted To/From memos denying the use of the PA system at the time, when they were conducting a narcotics arrest of a juvenile. The investigator concluded that the fact the complainant could not or would not supply any witnesses or other concrete evidence lent credence to the accused officers' responses. The investigator recommended the allegations be Not Sustained.

The spreadsheet correctly notes the complainant/victim was contacted and an in-person interview was conducted. However, the spreadsheet indicated no statement was taken from the complainant/victim. This is misleading as the file contains a To/From memo from the investigator reflecting the details of the in-person

13

interview of the complainant/witness. Similarly, the spreadsheet suggests no statement was taken from an accused officers, but both Officers Gade and Oskvarek provided To/From statements responding to the administrative charges. The spreadsheet reflects officers submitted "administrative reports."

This investigation was reasonable.

| CR #264490 (CITY-WATTS CR-006870-CITY-WATTS CR-006895) |
| --- |

Complaint Received: August 7, 2000

Date of Incident: August 1, 2000

Address of Incident: 800 N. Avers

Accused: Unknown

Victim: Dwayne Beach

Complainant: Dwayne Beach

Allegations: The complainant stated while at the above location washing his vehicle, a male white uniformed officer asked him for his ID card, which he complied. The complainant alleges the officer failed to return same.

Investigation: The r/sgt called the number listed by the complainant and spoke to Maria Farr, who stated the complainant was her ex-boyfriend and he hasn't lived at that address for about 2 months. She also stated that 843 N. Hamlin wasn't the same as hers. The r/sgt sent a certified letter to 843 N. Hamlin on 8/9/00, and as of 8/25/00, the r/sgt hasn't heard back from the complainant or received the green certified mail card back yet. The r/sgt checked the PCAD for a record of the event, but found no events for 800 N. Avers.

Outcome: Not Sustained – the r/sgt couldn't contact the complainant and the r/sgt was unable to identify the accused. The r/sgt can't prove or disprove the allegations.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for CR#264490 that Dr. Shane relied upon is misleading. For instance, they assert that complainant was not contacted, however the CR indicates an investigator called the number provided by the complainant and spoke with Maria Farr, the ex-girlfriend of the complainant. Farr indicated that the complainant had not lived at her address for about 2 months. Farr confirmed the address listed by complainant was not her address. An investigator then sent a certified letter to the address the complainant provided but did not hear back from him. None of these actions are reflected on the Loevy/Shane spreadsheet. Because the complainant did not respond, the CR was determined to be "not sustained."

This investigation was reasonable.

| CR #266095 (CITY-WATTS CR-008014-CITY-WATTS CR-008042) |
| --- |

Complaint Received:

Date of Incident: September 29, 2000

Address of Incident: 8903 S. Buffalo, Apt. 3

Accused: "Frank"

Complainant: Maribel Lopez

Allegations: Complainant alleged that she received four phone calls where the caller identifies him or herself as a CPD officer, soliciting for the CPD. The caller was asked for cash contributions for a t-shirt and ID card.

Investigation: The r/sgt attempted to contact complainant Lopez on 10/3/00, 10/4/00, 10/5/00, 10/10/00 and 10/13/00. On 10/6/00, the r/sgt called and spoke to an unknown person who only spoke Spanish. The r/sgt had

PA McLaughlin call and ask for complainant Lopez in Spanish. PA McLaughlin stated that an unknown female Hispanic who refused to identify herself stated that the complainant does not live at this address. PA McLaughlin stated the unknown female also stated she did not even know a person named Maribel Lopez and hung up on PA McLaughlin. According to an A/2 Det. Supplement, Det. James was able to contact the complainant on 10/9/00. Complainant stated to Det. James that the caller identified themselves as CPD, but had nothing further to add than originally stated in the police report. Complainant stated that she has not received any more phone calls since making the report. Det. James recommended that this be a suspended case. On 10/4/00, the r/sgt sent a registered letter to the complainant and never received a response back. As of 10/20/00, the r/sgt has not been able to contact the complainant.

Outcome: Not Sustained

Review of Loevy/Shane Spreadsheet: Complainant/victim Maribel Lopez alleged she received four phone calls in which a caller identified him or herself as a CPD officer and solicited a cash contribution of $350 for a T-shirt and ID card. An initiation report indicates the victim called OPS and was initially interviewed at that time. The victim provided information that two calls came from a male and one came from a female from a phone number that registered "unavailable" on caller ID. The callers spoke to her in Spanish. A general offense case report was generated in addition to a CR number. An Internal Affairs investigator unsuccessfully attempted to contact Lopez multiple times. Investigators finally contacted an unknown female who spoke only Spanish and who denied the complainant lived at that address. However, Detective Susan James was able to contact the complainant, but she was unable to provide anything further than what she previously reported, except to clarify the callers did not say they were police officers, but were soliciting on behalf of CPD. The complainant also told Detective James she had not received any further calls after making the police report. James then suggested the criminal investigation be suspended. The IAD investigator then attempted to follow up with Lopez by registered letter but received no response. The investigator was unable to contact the complainant further. He recommended the complaint be closed as Not Sustained.

According to the spreadsheet, no statement was taken from the complainant. This is incorrect. The initiation report reflects a detailed initial interview from the complainant/victim, which led to the opening of a CR investigation and a criminal investigation. In addition, a detective investigating the incident interviewed the complainant/victim and reported the interview in a Case Supplementary Report, which was included in the CR file materials. Although the spreadsheet indicates no accused or non-accused officer statements were taken or administrative reports submitted, that is misleading as no officer was ever identified in the alleged incident.

This investigation was reasonable.

---

CR #268091 (CITY-WATTS CR-009046-CITY-WATTS CR-009453)

Complaint Received: December 27, 2000

Date of Incident: December 27, 2000

Address of Incident: 727 E. 111th Street

Accused: PO Daniel Heinzel #11782

Complainant: Sgt. Phyllis Gill #1564

Witnesses: Redacted (Juvenile)

Allegations: The complainant alleges that while in court at Branch 38, the accused advised the defendant in a criminal case against Gill to retaliate against her and obtain a CR number against her.

Investigation: The complainant attended a court matter against the witness (defendant). While in court, she observed the witness having a conversation with PO Heinzel, assigned to Court Services. The complainant overheard PO Heinzel providing the witness with the telephone number to OPS and the process for obtaining a CR number. The complainant related that the witness has made numerous false allegations against her in the

past. It appeared to the complainant that the accused and the witness were long-standing friends. The complainant related that shortly after she telephoned OPS, she had a conversation with an unknown, unidentified, female present in the foyer of the court, who informed the complainant that she misconstrued the conversation between the accused and the witness. The complainant related that she was unsure of the woman's position regarding the court appearance and stated that she would be unable to identify her if she saw her again.

The r/sgt interviewed the witness who related that she appeared in court as a defendant in a case with the complainant. The witness stated she was visibly upset when her attorney did not appear on time. PO Heinzel approached her and asked her if she was alright. PO Heinzel then offered her the use of a telephone to call her lawyer. The witness related that although she had a conversation with PO Heinzel, she did not know him prior to this incident and never discussed her case or any other matter with him. PO Heinzel was served with the allegations and reported that although he did have a conversation with the witness, at no time did he advise her to retaliate against the complainant by obtaining a CR number against her.

Outcome: Unfounded – based on the evidence gathered in the investigation, including the statement of the complainant, witness and the accused, the r/sgt finds that although PO Heinzel did have a conversation with the witness, he did not advise her to retaliate against Gill. Evidence proves the complainant misconstrued the nature of the conversation which led to the complaint. The r/sgt finds the allegation is not factual.

Review of Loevy/Shane Spreadsheet:    The allegation in this CR that the accused officer suggested that the defendant in a criminal case file an OPS complaint against the complainant was proven by IAD's investigation to be incorrect, yet the data created by the Loevy firm for this CR that Dr. Shane relied upon and audited misrepresents the nature and extent of the investigation. For instance, the Loevy/Shane spreadsheet incorrectly asserts that a statement was not taken from any witness, when the witness who the accused officer allegedly instructed to retaliate against the complainant was, in fact, interviewed. Moreover, the witness's statement exonerated the accused officer, as she informed IAD that the accused officer did not suggest she file a retaliatory OPS complaint against the complainant, but he approached her as a Good Samaritan when she was crying in the courthouse because her attorney had not appeared, and he allowed her to use his phone to call her attorney.  The spreadsheet is also inaccurate because it states that no victim was photographed, when that column should have been marked Not Applicable because where was no reason to photograph the victim/complainant. Likewise, the columns for photographs or video of the scene should have been marked Not Applicable instead of no. The Loevy/Shane spreadsheet is also inaccurate because it states that the no accused was identified by any witness, but the witness was interviewed and explained her interaction with the accused officer as stated above. Moreover, even though the complainant provided a letter of declination stating she did not wish to pursue charges, the spreadsheet omits that fact.     The accused officer did provide a to/from memo.  The spreadsheet indicates there were no statements from non-accused officers, but there were no non-accused officers involved.

This investigation was reasonable.

---

CR #268984 (CITY-WATTS CR-009724-CITY-WATTS CR-009757)

Complaint Received: February 7, 2001

Date of Incident: February 5, 2001

Address of Incident: 26th and California – Parking Lot

Accused: PO Joseph Nemcovic #15670

Complainant: Deidra Hines

Allegations: The complainant alleges that she got into a verbal confrontation with a male white uniformed officer, who was driving his personal vehicle, and he verbally abused her by stating "bitch get out of the way or I will lock you up," then stated "you'll get a ticket in the mail."

Investigation: The license plate number provided by the complainant is registered to the accused member. Upon interviewing the complainant, she provided information similar to her original allegations which are contained in the complainant against the department member form. However, the complainant was unable to provide any witnesses or information which would corroborate her allegations. PO Nemcovic acknowledged that he was in the parking lot at 26th and California on the stated date and time. However, he denies the complainant's allegations. PO Nemcovic further related in his report that he was approached by a female subject who shouted profanities at him and stated that she had been waiting for the parking space he had parked in. PO Nemcovic related that he did not see the female's vehicle.

Outcome: Not Sustained – the r/sgt's investigation revealed no corroborating evidence which would substantiate complainant's allegations.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainant and victim are the same person, Dedidra Hines, and she was interviewed during the intake process and for a second time via telephone on February 12, 2001, and two statements were taken from her. (CITY-WATTS CR-009740). The coded data also is misleading because the Loevy firm and Shane claim no photos were taken of the scene and no cameras were obtained, but there was no reason to take any photos and no indication any cameras existed at the parking lot at 26th and California (the criminal court's building in Chicago) at the time. There was also no reason to preserve any radio or district communications tapes, as nothing indicated there were any relevant communications on same.

This investigation was reasonable.

CR #270602 (CITY-WATTS CR-010928-CITY-WATTS CR-011016)

Complaint Received: April 17, 2001

Date of Incident: April 12, 2001

Address of Incident: 10722 S. Kedzie

Accused: PO Kenneth McMaster #13242, PO Timothy Greve #7811

Complainant: Steven Bedore, Gabrielle Bedore

Witnesses: Brian Johnson, Catherine Shanahan

Allegations: Complainants allege the son of a CPD lieutenant struck several parked vehicles and then struck their van causing extensive damage. The complainants allege the individual was intoxicated and the responding officers failed to arrest him.

Investigation: The r/sgt's investigation revealed the driver was medically secured by CFD personnel upon the arrival of the investigating officer. Complainants and the investigating officer related the officer spoke with the driver while in the paramedic's care. Both complainants further related that they did not inform the investigating officer of any impairments of the driver. CFD Paramedic Johnson could not offer further information concerning the condition of the driver. In addition, traffic citations were issued to the driver for driving while revoked and negligent driving.

Outcome: Exonerated – based on the officer's observations, witness statements and observations made by medical personnel, there is no basis to believe the driver was intoxicated at the time. Also, the driver was in

17

fact issued traffic citations and received an i-bond as his conditional release. The r/sgt concludes the investigating officer accurately followed police procedure.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainants and victims are the same people, Steven Bedore and Gabrielle Bedore, and both gave statements during interviews. (CITY-WATTS CR-0109946-49). In fact, both Mr. Bedore and Mrs. Bedore signed letters of declination stating they did not want to pursue the CR, which the Loevy/Shane spreadsheet omits. Id. The Loevy/Shane spreadsheet also incorrectly states that no witness was interviewed or provided a statement, but responding paramedic Johnson was interviewed and responding paramedic Shanahan was interviewed, and both were unable to provide any information that the driver of the car that the victims initially complained about may have been intoxicated. (CITY-WATTS CR-0109950-51). The spreadsheet also omits that the Bedores both indicated they did not have evidence the driver was intoxicated and the evidence reflects that they did not tell the accused officer, Officer McMaster, that the driver was impaired at the scene. Also, the Loevy/Shane spreadsheet fails to acknowledge or mention that Officer Greve, one of the officers accused of not conducting a proper investigation, was not even present at the scene but was in training at that time and therefore had nothing to do with the investigation. (CITY-WATTS CR-010944 and 10959). This CR was determined to be exonerated after the complainants/victims signed letters of declination reflecting they did not wish to pursue it, had no evidence to support the initial assertion the driver was intoxicated, and Officer McMaster indicated there was no reasonable suspicion to investigate the driver for intoxication based on his observations at the scene.

This investigation was reasonable.

CR #271871 (CITY-WATTS CR-011673-CITY-WATTS CR-011707)

Complaint Received: June 7, 2001

Date of Incident: June 3, 2001

Address of Incident: 6900 S. Dorchester

Accused: PO Caroll Vaughn #12759

Victim: Redacted (Juvenile)

Complainant: Nancy Alexander

Allegations: The complainant alleged that the accused officer called the victim a "motherfucker" and kept using the word "fuck" while talking to the complainant.

Investigation: The r/sgt interviewed the complainant in her home at 1422 E. 69th Street. At that time, the complainant related that the accused officer was investigating the unlawful use of fireworks when she called out to the victim to come over to her squad car. When the victim objected to the manner in which the accused was talking to her, the victim was then called a mother fucker. At that very moment, the complainant approached the officer, who was still seated in the squad. The two of them engaged one another in a heated verbal exchange. The accused officer allegedly used the word "fuck" several times. The r/sgt interviewed the complainant's daughter (the victim) and she related the same allegations as her mother. The accused denied the allegations both orally and by report.

Outcome: Not Sustained – there are no independent witnesses that can either support or refute the allegations against the accused.

Review of Loevy/Shane Spreadsheet: Complainant/witness, who is the mother of the 12-year-old victim, alleged that the Accused Officer called her daughter a "mother-fucker" when the officer was investigating a group of children/teens for setting off fireworks. Complainant/witness alleges she also approached the accused

officer who was seated in her squad and the accused officer said "fuck" several times. The spreadsheet erroneously indicates no statement by the accused officer (but categorizes the To/From memo as an administrative report). The spreadsheet reflects that no scene canvass was conducted, no photos of scene obtained, and no radio communication tapes were preserved. These items would be more accurately recorded as "not applicable."

This investigation was reasonable.

**CR #273478 (CITY-WATTS CR-012708-CITY-WATTS CR-012785)**

Complaint Received: September 18, 2001

Date of Incident: July 29, 2001

Address of Incident: 5006 S. Spaulding Ave.

Accused: PO Michael Scapardine #8527, PO Sonia Almazan #15157

Complainant: John Ceja

Allegations: The complainant alleges that at approximately 2300 hours he called for police service. As of 2345 hours, there was no police response.

Investigation: Investigation revealed that the complainant initially called for police service at 2309 on 7/29/01. After two additional requests at 2325 and 2338 hours, the complainant alleged there was no police service provided as of 2347 hours. Following this allegation, Ceja contacted the OEMC two additional times at 0005 and 0023. The investigation was initially assigned to the OEMC where it was determined the assignment was dispatched within their guidelines. The matter was subsequently reassigned to the 008th District. A review of the written and audio records of the OEC revealed that Ceja's request for service and an additional assignment of shots fired at 54th Street and Homan Avenue were not dispatched to beat 821 until 2352 hours. In response to the allegation, the accused stated that after receiving the assignment, they responded to 5006 S. Spaulding Avenue. At that location, no individual could be located. OEMC records indicate the assignment was coded as 19B at 0044 hours. The records of the OEC revealed that the accused did not receive the assignment until after the complainant alleged there was no police response to his request for service. In addition, during an interview on 9/29/01, the complainant related that following his last call to OEC, he became involved in other matters and could provide no information as to the actions of the accused.

Outcome: Exonerated

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainant and victim are the same person, John Ceja, and he was interviewed and provided a statement on September 29, 2001. The coded data also is misleading because the Loevys and Shane claim no photos of the victim were taken and no accused officers were identified by any victim, but there was no reason to take any photos of the victim and no indication the victim would be able to identify any officer as he stated he did not see any officer. This CR was determined to be exonerated when the evidence from OEMC proved that the accused officers were not dispatched to the scene they allegedly didn't respond to until after the victim claimed that nobody responded.

This investigation was reasonable.

**CR #274122 (CITY-WATTS CR-013198-CITY-WATTS CR-013230)**

Complaint Received: August 24, 2001

Date of Incident: August 21, 2001

19

Address of Incident: 958 W. Oakdale

Accused: PO Ronald Haislet #7040

Complainant: Mark Capin

Allegations: The complainant alleges that after the issuance of traffic citations, a male white uniformed officer with badge number 7040 made an "anti-semitic" statement in that he stated, "let's see you Jew your way out of this."

Investigation: PO Haislet issued a parking ticket to an auto that was parked illegally and left unattended. PO Haislet was in the process of completing the ticket and the owner of the vehicle, Mark Caplin, returned to the car. A conversation ensued between the two and the complainant was issued two personal service citations (1) cracked windshield, and (2) failure to notify SOS of change of address. PO Haislet presented them to the complainant and related court information. After receiving the citations, the complainant contacted OPS and stated that the accused made the anti-semitic statement.

The r/sgt interviewed the complainant and the complainant stated he is the manager of real estate and that he was at the dry cleaners located on the corner of Oakdale & Sheffield conducting business. He admitted he parked his car illegally and when he saw he was getting a ticket, he returned to his car. He stated the officer just started to write the ticket and asked PO Haislet to hold off while he moved his car. He was then given the two additional personal service citations or the windshield and change of address. When asked about his real address, he stated he has two – one in Glenview at his parents' house and 2137 N. Leavitt in Chicago (he stayed at that address for about 2 ½ years). The r/sgt asked the complainant about the anti-semitic remark and the complainant stated that there really wasn't any and that the remark was made after he was handed the tickets and told about the court information.

The accused provided a to/from report denying the allegation that he made an anti-semitic remark. He states he remained courteous and professional at all times. PO Haislet stated the complainant wanted him to tear up the original parking ticket and got upset when he refused to do so. When asked about the crack in the windshield, PO Haislet stated the crack was about 2 feet in length, not 2 inches according to the complainant. The complainant also told PO Haislet that he lived at the Leavitt address for about 3 months.

Outcome: Not Sustained – the allegation cannot be proved or disproved. There was not a third party to the incident who witnessed the conversation between the accused and the complainant.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainant and victim are the same person, Mark Caplin, and he was interviewed and provided a statement on August 28, 2001. (CITY-WATTS CR-013211). The coded data also is misleading because the Loevy firm and Shane claim no photos of the victim were taken, no photos of the scene were taken, no camera was located at the scene, and no canvass was done, but there was no reason to take any photos because no allegation of physical abuse was made (the claim was an antisemitic comment), no camera could have captured the alleged antisemitic comment as the parties were outside, and both Mr. Caplin and the accused officer said there were no witnesses, so there was no reason to conduct a canvass. This CR was determined to be not sustained because the complainant/victim claimed the officer made an antisemitic statement, the officer denied it, and there were no witnesses to prove the allegation one way or the other. Additionally, the spreadsheet indicates there was no statement from the officer, but the officer submitted a to/from report.

This investigation was reasonable.

CR #275296 (CITY-WATTS CR-013835-CITY-WATTS CR-013903)

Complaint Received: October 5, 2001

CITY-BG-063009

Date of Incident: October 4, 2001

Address of Incident: 93rd at Bishop Ford Expressway

Accused: PO Roy Visor #11359

Complainant: Dana Willis

Allegations: The complainant alleges that the accused (1) referred to her as an "old street walking prostitute," (2) pushed/threw her against a concrete support column, and (3) slapped her.

Investigation: On 10/4/01, the complainant advised she had been arrested on 10/4/01 for battering a 70-year-old male. The accused arrested her for battery, and she verbally abused PO Visor by referring to him as a "poor excuse for a man." A verbal altercation ensued between the complainant and PO Visor. PO Visor referred to the complainant as a "crack head whore." The complainant told PO Visor that she hoped he got his "fucking head blown off while" on duty. PO Visor stopped the squad car on the Bishop Ford Expressway, removed the complainant from his squad car, pushed her against a wall and slapped her across the left side of her face, loosening a tooth. The complainant stated she re-entered the squad car and PO Visor transported her to the 005th District. The complainant had no visible injuries as a result of the incident. In her interview, the complainant referred to PO Visor as a "faggot," a "black bastard" and "sloppy Joe."

The complainant's arrest report indicates she was arrested for simple battery on 10/4/01 by PO Visor, who is assigned to the 006th District Station. According to the narrative portion of her arrest report, she was asked to leave a motel and a verbal altercation ensued. The complainant allegedly spit and tossed beer on a victim at the motel. The complainant's lockup screening record indicates she had obvious pain and injury (bruise on back) and that she appeared to be under the influence of alcohol/drugs. The r/sgt telephoned the complainant and sent her a letter requesting that she sign a medical release form, but the r/sgt never received her signed disclosure form.

PO Visor submitted a to/from report and stated the complainant was arrested for refusing to leave the New Halsted Motel. According to PO Visor, once the complainant was arrested, she identified herself as a principal at a grammar school. Once they arrived at A2 Women's Lockup, the complainant slipped her hands out of the handcuffs and tried to escape. PO Visor denied taking the complainant out of his squad car and physically mistreating her.

Outcome: Not Sustained – although the lockup screening record indicates the complainant had a bruise to her back, it is not known whether she received medical treatment. The complainant did not sign and return a medical release form.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainant and victim are the same person, Dana Willis, and she was interviewed twice and provided statements on October 4, 2001 and October 9, 2001. The coded data also is misleading because the Loevy firm and Shane claim no canvass was done, no cameras were located at the scene, and no scene photos were taken, but there was no reason to conduct a canvass as the incident allegedly took place under an overpass on the Bishop Ford Expressway, there would not be any cameras at that location, and there was nothing relevant to photograph of the alleged scene. This CR was determined to be not sustained when the complainant/victim failed to sign the medical record release form that could have corroborated whether or not she had an injury on her back as the intake record reflects she complained about, and where there was no corroborating evidence that Officer Visor stopped under an overpass in the middle of the night to pull the victim out of his squad car to push her against a column and slap her.

This investigation was reasonable.

21

CR #275538 (CITY-WATTS CR-013936-CITY-WATTS CR-013957)

Complaint Received:

Date of Incident: October 14, 2001

Address of Incident: 330 S. Maplewood, CHA Development

Accused: "Robert Kelly"

Complainant: Sgt. Mark Andersen #1548

Allegations: Police Impersonation

Investigation: While conducting a narcotics operation inside Rockwell Gardens housing complex, the arresting officers encounter Kelly inside a CHA housing building along with two other subjects. During a field interview, Mr. Kelly stated to Officer Gonzalez that he was a Police Officer with the City of Chicago. During further conversations Kelly then stated he worked for the Department of Aviation Police. Kelly along with the two other subjects were brought into the 011th District and are the subject of a General Offense Case Report under RD No. G618261. Subsequent investigation involving Area 4 detectives determined the offender Kelly not to be a police officer. Also, at no time during this event did Kelly produce any identification or have in his possession identification to further his claim of being a police officer. No felony charges were sought in this case.

Outcome: Administratively Unfounded

Review of Loevy/Shane Spreadsheet: The arresting officer reported that Kelly claimed to be a CPD officer and made a complaint because he had arrested Kelly for a narcotics violation. The spreadsheet indicates the complainant, Officer Gonzales, was not contacted. Contrary to the claim, Officer Gonzales wrote an arrest report documenting the allegation. The spreadsheet indicated there was no photo array, no witnesses were contacted (there were none), no accused officer statement (Kelly is not an officer), no scene canvass, cameras, photos, or radio transmissions, and they did not check his personnel file (not an employee) – all of which are wholly unnecessary. A reviewer would believe based on the spreadsheet that this was a poorly conducted investigation based on all of the "no" marks in the spreadsheet, but the case was administratively unfounded because it was determined Kelly was not an officer.

This investigation was reasonable.

CR #275642 (CITY-WATTS CR-014120-CITY-WATTS CR-014137)

Complaint Received: October 30, 2001

Date of Incident: October 18, 2001

Address of Incident: 2150 N. California

Accused: Unknown

Complainant: Stewart Meyer

Allegations: The complainant alleges he was the victim of a battery and went to the 14th District to make a police report. The complainant alleges a female white uniformed officer, and a female white sergeant were rude and unprofessional in the tone and demeanor when they spoke to him. The complainant alleges he wanted the offender arrested and was given the address of the warrant office located at the 25th District, but the officer and the sergeant gave him misleading information.

Investigation: R/lt attempted to contact complainant by phone and certified letter and was not contacted by the complainant. Therefore, r/lt was unable to name the accused officer or sergeant. The r/lt was unable to

22

substantiate the allegations that the unknown accused were rude and unprofessional, and the complainant was given misleading information due to the lack of cooperation of the complainant.

Outcome: Not Sustained – there is insufficient evidence to either prove or disprove the allegation.

Review of Loevy/Shane Spreadsheet: The spreadsheet indicates the complainant, accused officer, victim, and non-accused officer were not contacted. The investigator tried to call and sent a certified letter and the investigation was closed due to a lack of cooperation. The Loevy/Shane spreadsheet asserts that neither the complainant nor the victim were contacted, when in fact the complainant/victim is the same person, Stewart Meyer, and the investigator attempted to contact Mr. Meyer on multiple occasions, including on multiple telephone numbers and by certified letter. Mr. Meyer failed to respond to any of these contacts and therefore failed to sign the affidavit required by Illinois law and the CBA. The Loevy/Shane spreadsheet omits any reference to the fact that OPS attempted to contact Mr. Meyer but he never cooperated.

This investigation was reasonable.

CR #276186 (CITY-WATTS CR-014431-CITY-WATTS CR-014459)

Complaint Received: December 11, 2001

Date of Incident: November 10, 2001

Address of Incident: 3701 W. Fullerton

Accused: Unknown

Victim: Robert Ramey

Complainant: Sheila Lee

Allegations: It is alleged by the complainant that she called 911 because her son was the victim of a battery. The complainant alleges that several male white uniformed officers responded and failed to file a report or arrest the offenders who were still on the scene.

Investigation: The complainant was contacted at her home by phone on 12/27/01. When asked about her allegations against the unknown officers, she stated she did not make any complaint against any police officers. She stated that her complaint was against the tavern where her son was battered and the people who were in the tavern. She repeated that she had no complaints against any police officers. She was asked if she would sign a form letter terminating the complaint and she stated she would do so. The r/sgt went to her home and had her sign the letter withdrawing her complaint.

Outcome: Unfounded – the complainant stated that she did not make any allegations against any officers.

Review of Loevy/Shane Spreadsheet: OPS received a complaint that unknown officers responded to a battery complaint involving Complainant's son but failed to make a report or an arrest. When Complainant was contacted by OPS, she denied any complaint against any CPD officers (said complaint was against the Tavern where the incident occurred) and signed a typed form seeking to terminate her complaint. Complaint was unfounded. Instead of stating "not applicable" for the evidence variables, the spreadsheet reflects that various evidence variables were not conducted.

This investigation was reasonable.

CR #276672 (CITY-WATTS CR-014807-CITY-WATTS CR-014854)

Complaint Received: December 26, 2001

Date of Incident: November 30, 2001

Address of Incident: 4559 N. Kenmore/3600 N. Halsted

23

Accused: PO Fiona Trehy #5435

Complainant: Barbara Davis

Allegations: The complainant alleges that the accused (1) verbally abused her by directing various profanities at her and (2) struck her on the forehead with her hand.

Investigation: In a telephone interview with the complainant, she stated that she was traveling West on Sunnyside Street along with two other individuals – James and Linda Salami. Ms. Davis made a right turn onto Kenmore and stopped at the stop sign. James exited the vehicle, and Ms. Davis attempted to exit the vehicle to close the passenger door. At this point, a female police officer now known as PO Trehy, and a male officer now known as PO Gaynor, exited the marked squad car. PO Trehy directed various profanities at Ms. Davis. PO Trehy asked Ms. Davis for her driver's license and Ms. Davis related she did not have one. At this point, Ms. Davis was arrested and transported to the 023rd District Station. Ms. Davis stated that while she was in the interview room, PO Trehy struck her on her forehead with her hand. Ms. Davis stated she was shackled and transported to the 019th District Station by two male uniformed officers. After being released, Ms. Davis received treatment at Weiss Memorial Hospital. Ms. Davis related that she is being represented by an attorney for criminal charges made against her, but refused to give the name or telephone number of her attorney.

Department records indicate that Barbara Davis was arrested and charged with battery of a police officer, failure to carry/display a driver's license, and operating a motor vehicle without insurance. The watch commander's summary report indicates that Barbara Davis struck PO Trehy with a closed fist. In addition, Ms. Davis used both of her feet to push the table into the officers, causing PO Trehy to be struck on the pelvic area and PO Gaynor on his legs by the table. In a to-from report, PO Gaynor stated that Ms. Davis was verbally abusive and physically violent on the date in question. PO Gaynor stated that at no time did he observe any visible signs of injury to Ms. Davis. In addition, PO Gaynor indicated that PO Trehy did not direct any profanities at Ms. Davis nor did she strike her about the head. In a to-from report, PO Trehy stated that during the arrest of Ms. Davis, she became verbally abusive. PO Trehy stated that Ms. Davis was transported to the 023rd District Police Station where she became physically abusive towards her and PO Gaynor. PO Trehy indicated that Ms. Davis swung at her with her left arm, and pushed the table over causing the table to strike her and PO Gaynor.

Outcome: Not Sustained – The complainant refused to cooperate with the investigation by refusing to give her attorney's name and telephone number. She also refused to sign a medical release form.

Review of Loevy/Shane Spreadsheet: The spreadsheet created by the Loevy form for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim, when in fact the complainant and victim are the same person, Barbara Davis, who gave statements during two telephone interviews on November 30, 2001, and December 4, 2001. (CITY-WATTS CR- 014830-32). The coded data is also misleading because the Loevy firm and Shane claim no photos were taken of the scene, but there was no reason to take any photos at the time, as Barbara Davis was being taken in for blocking traffic and failing to produce a driver's license and insurance. (CITY-WATTS CR-014842). The Loevy/Shane spreadsheet also asserts that no statement(s) of any non-accused officer(s) were taken when in fact witness Officer Thomas Gaynor, gave a statement in a "to-from report" and stated that at no time did he observe any visible signs of injury to Barbara Davis nor did he witness Officer Trehy direct any profanities at or strike Ms. Davis. (CITY-WATTS CR-014851). The Loevy/Shane spreadsheet also fails to acknowledge that complainant Barbara Davis was not cooperative with the investigation as she refused to provide her attorney's name and phone number and refused to sign a medical release form. The spreadsheet indicates the complainant and victim were not contacted and there were no statements from the witness and accused officer. The witness officer and the accused officer did submit to/from statements. The complainant, who had been arrested, refused to cooperate.

This investigation was reasonable.

24

CR #277553 (CITY-WATTS CR-015261-CITY-WATTS CR-015558)

Complaint Received: January 14, 2002

Date of Incident: January 8, 2002

Address of Incident: 2853 W. Flournoy - Outside

Accused: PO Duane Blackman #13615, PO Aaron Long #19500, PO Larry Stubbs #13918, PO Steven Williams #18803, PO Jerome Booker #12670, PO Louis Mahaffey #10403

Victim: Stephen Dean

Complainant: Lisa Dean

Witnesses: Ida Patton

Allegations: The complainant alleges that the accused (1) failed to identify themselves as Chicago Police officers, (2) "slammed" Mr. Dean to the ground; repeatedly kicked Mr. Dean about his legs; and (3) falsely charged Mr. Dean with possession of a controlled substance.

Investigation: The complainant stated in her telephone interview that on 1/8/22, she went to pick up her fiancé Stephen Dean from 2853 W. Flournoy. Dean had not yet arrived at the location, so she waited for him. She heard someone yelling from the hallway that the police were kicking Dean. Lisa Dean walked outside and observed Stephen Dean laying on the ground and two male/black officers were kicking Stephen Dean about the legs. Stephen was yelling "my leg is broken." The officers searched Stephen Dean's coat and found nothing. The officers then summoned an ambulance and Stephen Dean was transported to Bethany Hospital. After some treatment at Bethany Hospital, Lisa Dean was told she had to leave because Stephen Dean was going to be transported to another hospital.

Stephen Dean stated in his in-person interview the same account of the incident as his fiancé. He added that he was on his way to his ex-mother-in-law's house, Ida Patton, from court for a PCS charge. As he neared Patton's house, he observed 4 male/black individuals exit an unmarked squad car. Dean stated that he did not know they were CPD officers because they did not identify themselves and they did not have badges or vests displayed. Dean immediately fled. One of the officers caught Dean and "slammed" him to the ground. Two of the officers began to repeatedly kick Dean about his legs. Dean stated that he sustained a broken right leg. Dean denied having drugs on him during this incident.

Ida Patton stated in her in-person interview essentially the same account of the incident as Lisa and Stephen Dean. Patton added that she observed two male/black officers talking with Dean and when he turned to run, one of the officers placed his foot out and simultaneously struck Stephen Dean with an unknown object causing him to fall. Patton mentioned that only one officer kicked Stephen Dean about the legs and once on his arm. A canvass produced no witnesses to the entire incident but one person, Emma Davis, stated on the day of the incident, she observed a young black male (Stephen Dean) on the ground and several officers around him. Davis did not observe any of the officers use any force against Dean.

The arrest report of Stephen Dean indicates that he was charged with PCS with intent to deliver. In summary, Dean was arrested after he was observed making one hand-to-hand transaction with an unknown male/black. This was indicative of a narcotics transaction. POs Blackmon, Long, Booker and Mahaffey approached Dean and announced office. Dean fled on foot Westbound on Flournoy. The officers attempted to grab Dean, but he tripped and fell to the ground, injuring his right leg. Dean was subsequently arrested. Two plastic bags containing suspect crack cocaine were recovered from Dean's left hand. An ambulance was summoned, and Dean was transported to Bethany Hospital. The arrest report also indicates that Dean resisted arrest. The case report contains essentially the same information as the arrest report.

In the to-from reports submitted by PO Williams and PO Stubbs, they essentially stated they had no involvement in the incident under investigation and denied the allegations against them. In the to-from reports

submitted by PO Long and PO Blackman, they reiterated the same information as contained in the arrest report. They added that their police star was clearly visible and they stated to Dean, "police, stop." They denied the allegations made against them. In the statements taken from PO Booker and PO Mahaffey, they stated that they did not witness Dean involved in a narcotic transaction because of their surveillance position. When Dean was apprehended, he was lying on the ground. Dean told them he tripped and fell. He never alleged that he was kicked by the police. POs Booker and Mahaffey denied witnessing misconduct on the part of any department member and denied the allegations made against them.

Outcome: Unfounded – the excessive force allegations made by Dean contain absolutely no evidence. Therefore, Dean has no credibility about the allegations made. Patton stated that she observed two male/black officers talking to Dean when she looked outside. Patton had no problem recognizing the male/blacks to be police officers. The arrest report indicates that the accused officers identified themselves. The officers consistently attested to wearing their star on a chain around their neck, clearly visible. The medical evidence and interview with the attending physician revealed that Dean complained of tripping and falling to the ground and that his injury was consistent with that action and not being kicked. In fact, the attending physician stated that there is not enough force from a kick to cause a broken femur. Furthermore, there is no indication on the medical records that Dean sustained bruises of any kind which would be indicative of being kicked repeatedly about the legs. Dean denied having narcotics on his person yet the fact that he was coming from court for a drug charge and admitted to hospital personnel that he takes narcotics on a daily basis, reveals a history of narcotics possession and use.

Review of Loevy/Shane Spreadsheet: The Loevy/Shane spreadsheet is misleading because it asserts that a statement was not taken from the complainant, when in fact the complainant, Lisa Dean, was interviewed via telephone on January 10, 2002, and gave a statement. (CITY-WATTS CR- 015275). The Loevy/Shane spreadsheet asserts the victim sustained injuries and received medical treatment, when in fact these injuries and subsequent treatment were caused by the victim himself as stated above. Witness Erma Davis stated on January 10, 2002 she did not observe any of the officers use force against the victim, Stephen Dean. (CITY-WATTS CR- 015322). Attending ER physician Dr. Vernon Wheeler stated on February 26, 2002 that Stephen Dean's injuries were consistent with falling and that there is not enough force in a kick to cause a broken femur. (CITY-WATTS CR- 015384). The Bethany Hospital medical records reported the fractured femur was sustained when Stephen Dean tripped and fell while running away from police. (CITY-WATTS CR- 015270, 88). The Mount Sinai Hospital medical records reported that the victim, Stephen Dean, stated he "fell down while running from police." (CITY-WATTS CR- 015305). The allegations set forth further allege the victim was falsely charged with possession of a controlled substance, but the spreadsheet fails to acknowledge the fact that victim Stephen Dean told Mount Sinai Hospital personnel he takes 4-5 grams of heroin a day and uses cocaine daily and the fact that Stephen Dean was on his way from court for a drug charge at the time of this incident. (CITY-WATTS CR- 015269, 305). The spreadsheet indicates there were no statements from the complainant or the accused officers, but there is a statement of the complainant in the report and the officers submitted to/from statements.

This investigation was reasonable.

CR #277612 (CITY-WATTS CR-015559-CITY-WATTS CR-015613)

Complaint Received: January 17, 2002

Date of Incident: January 12, 2002

Address of Incident: 7040 S. Cottage Grove (003rd District Station)

Accused: Ptlmn. Tracey Anderson #18786

Complainant: George Hodges

Allegations: The complainant alleged the accused officer failed to take an auto theft case report.

Investigation: The complainant was interviewed on 1/17/02 in the 003rd District Station and related that he observed his vehicle missing. Hodges went on to relate that he called 911 and was given a telephone number to call in order to report his vehicle stolen. Hodges related that he attempted to call the number but thought it would be faster to show in person at the police station and hung up the phone before making the report. Hodges related that he did not have his license plate number, nor could he recall it from memory. He related that the desk officer (the accused) instructed him to re-contact the police when he had obtained the vehicle license plate number to complete a report and have his vehicle listed as stolen. Hodges then stated that he proceeded home and dialed the telephone number given to him via 911 and reported it stolen. Hodges stated he did not want to pursue his complaint with the CPD stating he reported his vehicle stolen and was now satisfied with the police. He stated he would freely sign a declination not to pursue the complaint and voluntarily did so. The r/sgt obtained a copy of the A&A sheet, vehicle theft case report RD HH122360, case supplementary report and the 911 call inquiry.

Outcome: Exonerated

Review of Loevy/Shane Spreadsheet: Victim/Complainant initially complained that the Accused Officer refused to make a stolen vehicle report on his behalf. However, when the victim spoke to the accused officer to make the report, he could not provide any identifiers for his vehicle and was told to call back. Complainant went home, obtained vehicle identifiers, called CPD, and was able to make a report regarding his stolen vehicle. He later signed a letter of declination that he did not wish to pursue the complaint, which the spreadsheet omits. The spreadsheet also inaccurately states that no statement was taken from the complainant, when the above discussion shows that he did provide a statement and indicated he was satisfied with the police, which is also omitted from the Shane/Loevy spreadsheet.

CR #278633 (CITY-WATTS CR-016712-CITY-WATTS CR-016812)

Complaint Received: March 6, 2002

Date of Incident: February 25, 2002

Address of Incident: 11935 S. Wallace

Accused: PO Rafael Martinez #10845, PO Pamela McClinton #19585, PO Michael Connolly #16869, PO Robert Blackman #12757, PO Junis Broadnax #6587, PO Robert McHale #15902, PO Eric Moreno #7940, PO Oscar Arteaga #12486

Complainant: Theresa White

Witnesses: Lawrence Barner

Allegations: The complainant alleges that two unknown officers entered and searched her apartment without justification and one of the officers damaged her front door. Randall White was arrested for possession of cannabis.

Investigation: The r/sgt made five attempts to contact the complainant, which consisted of three personal visits, a phone call to the complainant's mother's house, and sending a certified letter. The r/sgt has not received a response from the complainant, Theresa White, or her alleged witness. Sgt. Glenn Evans was originally assigned to the CR number, and he was able to identify the accused officers and their witnesses from the event history records. Sgt. Evans stated in his report that he interviewed the complainant, who stated to him it was PO Martinez, an accused officer, who kicked open her front door, after her husband ran inside and she slammed it shut. She stated she did not see the accused officer kick the door, but only assumed he did. She went on to say that the accused officer, PO McClinton, entered her home with PO Martinez and arrested her husband, Randall White, who is currently serving time in prison. Both officers denied the allegations in their reports. They summarized neither of them kicked in the complainant's front door causing damage to it as alleged, nor did they search the house when they arrested Randall White. Six additional named witnesses support the accused officers. They stated in their reports they responded to a 10-1 at 11935 S. Wallace, called

27

by the accused officers and upon their arrival the arrestee was handcuffed and under control. At no time did they observe the accused officers kick open or cause damage to the front door, nor did they see damage to the door or observed them search her home without justification. During the r/sgt's visits to the complainant's house to interview her, which was to no avail, there was no visible damage to her door as alleged.

Outcome: Not Sustained – unable to interview the complainant or her witness. The complainant failed to respond to the certified letter. The accused officers denied the allegations. A review of the reports submitted by a preponderance of witnesses for the accused officers did not support the allegations. There is no compelling evidence that there was damage to the door as alleged.

Review of Loevy/Shane Spreadsheet: The spreadsheet created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainant and the victim are the same person, Theresa White, and she was interviewed by and gave a statement to Sergeant Evans who was originally assigned to this complaint number. (CITY-WATTS CR-016777). Ms. White's complaint alleges the accused damaged her door by kicking it to enter the apartment, but in her interview with the investigating Sergeant, Theresa White stated she did not see the accused kick down the apartment door but only assumed the officer kicked it down. Id. The coded data also omits the fact that six witness officers (Arteaga, Moreno, Blackman, Brodnax, Connolly, and McHale) provided to/from statements refuting all allegations brought against the accused officers. Ultimately, after this CR was reassigned to Sgt. Jackson, this investigation was "not sustained" because despite five attempts from Sgt. Jackson to contact complainant (three personal visits, a phone call, and sending of a Certified Letter) after Sgt. Evans' initial investigation, there was no response from complainant or her alleged witness, which is not reflected in the Loevy/Shane spreadsheet. (CITY WATTS- CR- 016751).The spreadsheet indicates there are no statements from the complainant, victim, of accused officer, but reasonable efforts were made to contact the complainant and the officers submitted to/from reports.

This investigation was reasonable.

CR #279033 (CITY-WATTS CR-016979-CITY-WATTS CR-017005)

Complaint Received: March 18, 2002

Date of Incident: March 15, 2002

Address of Incident: 2200 S. Michigan

Accused: Unknown

Victim: Shonice Reynolds

Complainant: Shonice Reynolds

Allegations: The complainant alleges (1) that the unknown accused threatened her with a metal pole, putting her in fear of bodily harm, (2) threatened her by driving her Isuzu Carryall backward toward the complainant, threatening to run her down with the vehicle, and (3) threatened her by saying "I am a Chicago Police Officer" and "be careful because I have a license to kill."

Investigation: On 5/7/02, the r/sgt contacted the complainant/victim, Shonice Reynolds, to learn the basis for her allegations. She stated she was at the E2 Club on 3/15/02. During that time, she stated that the customers were all seated at the tables enjoying the concert, then all got up and moved closer to the stage. At this time, she stated she must have been blocking the view of a f/b who told her to "move." Words were spoken between the two women. Later, when Ms. Reynolds was leaving the club after the concert, she observed the accused in her personal vehicle. The accused told Ms. Reynolds that she didn't know who she was messing with and that she had a license to kill. The accused never stated that she was a CPD officer. More heated words were spoken, the f/b exited her vehicle and retrieved a big metal pole from the rear of the SUV and threatened Ms.

Reynolds by walking toward her with the pole in hand, stating "I have a license to kill." An unknown male grabbed the offender, then he and the accused got into her vehicle. The offender was driving her vehicle and drove backwards in the direction of Ms. Reynolds as if to run her down. Earlier, when the offender had walked towards the victim, Ms. Reynolds observed a necklace that the offender was wearing, a little star with a circle around the star. Ms. Reynolds stated she had seen other Cook County Sheriff's Police wearing jewelry that looked the same. The license plate observed on the Isuzu was B229323 which registers to a 1996 Isuzu Trooper owned by two women. The names of the registered owners are Beatrice Bolder and Tanya Townsell, residing at 8541 S. Jeffrey. A check of the department employee lists could not find either of these names and/or similar names or addresses as being employed by the CPD.

Outcome: Allegations 1-2 not sustained; allegation 3 unfounded. It could not be proved if this incident occurred as no offender was found and the two female registered owners of the vehicle could not be found on any department records as employees of the CPD.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for CR#254321 that Dr. Shane created is misleading. In this Complaint Register, the complainant alleged a black female off-duty officer threatened her at a night club between 1:00 a.m. and 2:00 a.m. The complainant alleges she got into an altercation with the accused and the accused exited her vehicle and retrieved a big metal pole from the SUV and threatened the victim by walking toward and stating she "had a license to kill." The investigator ran the license plates from the accused's vehicles. The investigation revealed that the accused was, in fact, not a member of the Chicago Police Department. As such, the allegations were not sustained. Dr. Shane's analysis states that the victim was contacted, but a statement was not obtained. This is inaccurate, as the complainant was interviewed and provided detailed information. However, the CR was not sustained because the accused was not a member of the CPD.

CR #279678 (CITY-WATTS CR-017511-CITY-WATTS CR-017665)

Complaint Received: April 11, 2002

Date of Incident: April 10, 2002

Address of Incident: 1204 S. Sawyer

Accused: PO Alvin Griffin III #19118, Unknown Accused

Victim: Derrick Bowdery

Complainant: Shawanda Hatley, Jose Roman

Witnesses: Shamita Smith

Allegations: The complainant alleges that PO Griffin (1) verbally abused her by stating "mind your motherfuckin business, we're doing our fuckin job, take your ass back in the house," and then laughed at her. The complainant alleges that unknown casual dressed officers (1) slammed the victim to the ground, (2) placed a foot on the victim's neck and held it there, (3) punched the victim on the face two times, (4) verbally abused him by stating, "get down on the ground you fuckin nigger," and (5) verbally abused the complainant by stating "this is none of your fuckin business, get back in the damn apartment."

Investigation: The arrest report of Derrick Bowdery states he was charged with domestic battery against Shamika Smith, who signed a complaint against him.

The complainant, in a telephone interview, stated that while she was babysitting, she heard a male and female arguing outside. Then she heard a different voice state "get down on the fuckin ground nigger." She stated that an unknown male/white casual dressed officer threw Derrick Bowdery to the ground, put his foot on his head and rocked back and forth. Mr. Bowdery did not resist or fight with the officers. Ms. Hatley told the officer to take his foot off Mr. Bowdery's face and the officer told her, "this is none of your fuckin business, get back in the damn apartment" and removed his foot from Mr. Bowdery's head. While the office pressed his foot on Mr.

29

Bowdery's head, she was reporting the incident to OPS. In an interview, Derrick Bowdery stated he and his girlfriend, Shamika Smith, were walking down the street and began to argue about his ex-girlfriend. He grabbed Shamika by her collar to calm her down and the next thing that happened was an unmarked car drove up. An unknown officer grabbed Mr. Bowdery and body slammed him to the ground and then placed his foot on his head while another unknown officer punched him in the face. Mr. Bowdery was handcuffed and helped to his feet. In an interview, witness, Shamika Smith, basically stated the same account of the incident as did Derrick Bowdery. She further states while Derrick Bowdery was being held on the ground by officers, she was being questioned by an unknown female/white casual dressed officer. In an interview with the complainant, Josie Roman, stated she was home cleaning up when she looked out her second-floor apartment and observed Derrick Bowdery holding a young female/black, now known as Shamika Smith. Two unmarked police cars arrived and exited their vehicles. Ms. Roman stated that one of the officers told Mr. Bowdery, "get your motherfuckin ass on the ground." At that point, Ms. Roman walked downstairs and opened the front door and observed several officers lifting him to the ground. Ms. Roman states there was another female/black from next door who questioned the officers regarding whether Mr. Bowdery was going to be arrested. PO Griffin stated "mind your motherfuckin business, we're doing our fuckin job, take your ass back in the house." All the other officers laughed.

In a formal statement, PO Griffin stated that he was present at the scene during the arrest of Derrick Bowdery. He stated that he was not the initial officer to make the arrest. There were two other units, possibly from Special Operations (unit 153) who initiated the arrest. PO Griffin further stated there was a commotion and he proceeded through the alley when he approached the scene. He saw the boy, Derrick Bowdery, grab the girl by the collar, at which time other units grabbed Mr. Bowdery. PO Griffin stated that at no time did he observe any officer step on Mr. Bowdery's face, he did not verbally abuse anyone during the arrest of Mr. Bowdery, and he did not hear any other officer verbally abuse anyone at the scene. PO Griffin stated POs Campos and Hernandez were not at the scene but assisted him at the district in the processing of Mr. Bowdery.

Outcome: Allegation 1 unfounded against PO Griffin; allegations 1-5 not sustained against unknown accused officers. PO Griffin related in his statement that he did not know the identities of the initial responding units, therefore he could not provide the names of the unknown male/white casual dressed accused officers. When all three of the individuals – Shawanda Hartley, Derrick Bowdery and Shamika Smith – viewed the computer-generated photos of police personnel, they were unable to positively identify the accused officers. In the future, if there is additional evidence provided to identify the accused officers, the investigation will be re-opened.

Review of Loevy/Shane Spreadsheet: In this CR, the complainant alleges the accused officer, and several unidentified officers, were involved in a dispute with young male. The complainant alleges she was watching television when she heard a young female and young male yelling at each other outside her apartment. She alleges officers appeared on scene and forced the young male to the ground, and an officer placed his foot on the boy's face. The officers yelled at the complainant to mind her business and go back inside the apartment. The complainant called OPS to report the incident and was interviewed on the telephone. The information created by the Loevy firm for CR#279678 that Dr. Shane relied upon is misleading. For example, Dr. Shane's appendix states "no" for any in-person interview with any witness. Within the CR, it is documented that the investigator escorted the complainant to the Internal Affairs Division to view generated photos in order to make an identification of the accused officer. (CITY-WATTS-CR-017566). After viewing the photographs, in person, the complainant, victim and witness were unable to make a positive identification. (CITY-WATTS-CR-017525). Moreover, the accused officer provided a statement explaining that the young male had the female by the throat when they appeared on scene. The young male resisted arrest and had to be physically subdued by the other units who were present. However, at no point did an officer step on the young male's neck. Accordingly, the CR was not sustained.

This investigation was reasonable.

CITY-BG-063019

CR #279927 (CITY-WATTS CR-018313-CITY-WATTS CR-018373)

Complaint Received: April 22, 2002

Date of Incident: April 18, 2002

Address of Incident: 3433 S. Halsted

Accused: PO Harold Matuszak #12666

Complainant: Gary Merritt

Allegations: The complainant alleges that the accused pushed his head into a brick wall.

Investigation: The r/inv attempted to contact the complainant several times via mail and in person and there were no responses to her attempts. The arrest report stated Mr. Merritt, who is frequently arrested for public drinking and solicitation, was observed on 4/18/02 drinking from a clear plastic bottle marked as "Dimitri vodka" on a city sidewalk. Mr. Merritt became combative and necessary force was used to effect the arrest. The lockup screening report indicated Mr. Merritt had no visible injuries. In the accused officer's to/from report, PO Matuszak stated he observed Mr. Merritt, a known public drinker and solicitor, drinking from a vodka bottle while standing in front of a business at 3401 S. Halsted. PO Matuszak informed the complainant he was under arrest and instructed him to turn around and place his hands on the wall. The complainant told PO Matuszak that he could not do this and then physically resisted being handcuffed, causing PO Matusak to use necessary force to restrain him. During the struggle, both the accused and the complainant made contact with the wall.

Outcome: Not Sustained – there is insufficient evidence to prove or disprove this allegation at this time.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for CR#279927 that Dr. Shane relied upon is misleading. For instance, they assert that the complainant was not contacted, however the CR indicates an investigator attempted "several times" to contact the complainant, an individual "frequently arrested for public drinking and solicitation," via mail and in person. These efforts are not reflected on the Loevy/Shane spreadsheet. The data from the Loevy firm also indicates that the accused officer Harold Matuszak did not give a statement, but the CR includes his To/From statement (the Loevy firm's data indicates an administrative report was submitted).

This investigation was reasonable.

CR #279951 (CITY-WATTS CR-018374-CITY-WATTS CR-018403)

Complaint Received: April 24, 2002

Date of Incident: April 19, 2002

Address of Incident: 4947 S. Federal

Accused: PO Dora Rodgers #14631, PO Gustavo Velazquez #19969

Complainant: Velma Taylor

Allegations: The complainant alleges (1) that a male Hispanic officer detained and searched her without justification, (3) when she quested the male officer he responded, "shut up, you don't run this, the officers run this" and (3) a female officer searched her without justification.

Investigation: The r/sgt met with the complainant, Velma Taylor, at 3542 S. State #301 on 4/24/02. Taylor related that on 4/19/02, she was entering the lobby of the building when she was approached by a male Hispanic officer. R/sgt's investigation revealed that the male Hispanic officer was PO Gustavo Velazquez. She further related that the m/2, PO Velazquez, asked her for identification, which she was unable to produce. The officer then asked her the reason for her presence. Taylor went on to say that she was with her children and was insulted by the fact that she was being questioned in her own building with her children present. This fact

CITY-BG-063020

made her very angry, and she related that she refused to comply with the male officer's request. Taylor stated that "she could not remember exactly what the officer said to her, but she felt that she was being disrespected." At this time, PO Velazquez asked PO Dora Rogers to pat down Taylor for officer safety. This further angered Taylor. Taylor stated that the female officer Rogers "was very nice." Ms. Taylor then complied with her request and related that "the officers were only looking for her and her children's best interest and she understands that they have a difficult job in the projects." Taylor stated she no longer wished to pursue this complaint against these officers. The r/sgt secured a signed letter of declination from the complainant at which time the interview was terminated.

Outcome: Allegation 1 exonerated; allegation 2 not sustained; allegation 3 exonerated.

Review of Loevy/Shane Spreadsheet: In this CR, It is alleged that the accused detained and searched the complainant/victim without justification. The investigator met with the Complainant who advised she was entering into the lobby of her building at 3524 S. State Street, when an officer approached her and asked her for identification, which she was unable to produce. The officer then asked why she was in the building. The complainant stated she living in the building and questioned why she was being approached by officers with children present. She was unable to recall what the accused officer said to her, but she felt disrespected and was pat down by a female officer. However, at this time, a female officer was "very nice" and explained that "the officers were only looking out for her and her children's best interest and she understands they have a difficult job in the projects." Taylor stated she no longer wished to pursue the complaint and the investigator secured a signed letter for declination from the complainant. As such, Dr. Shane's spreadsheet fails to accurately reflect the investigation into this claim. For example, Dr. Shane notes cameras were not located. Even if cameras existed, there was no reason to search for them given the Complainant withdrew her complaint and, in fact, was complimentary of the officers, which was also omitted from the spreadsheet.

This investigation was conducted reasonably.

CR #280380 (CITY-WATTS CR-018465-CITY-WATTS CR-018531)

Complaint Received: May 24, 2002

Date of Incident: May 6, 2002

Address of Incident: 2111 W. Lexington, Unit 376

Accused: PO Houston Weatherly III #10926

Complainant: Rhoda Ann Miller

Allegations: It is alleged by the complainant that the accused failed to complete a police report after the complainant related on the telephone that she was a victim of a fraud/confidence game while the accused was assigned to beat 9161A position 234.

Investigation: The r/sgt contacted the complainant on 5/29/02 and she agreed to a telephone interview. The complainant related that she telephoned 311 to make a police report after discovering she was the victim of fraud. Miller related that she gave $60 USC to an unknown male after he told her he needed money because he was the victim of a crime. The male informed Miller he was not from Chicago and was apparently bleeding from the head. Miller then related that she observed the same individual, at the same location, attempting to solicit money from people on the street several days later. Miller related that the individual again appeared to be injured from the head. She believed she was the victim of a confidence game. Miller related that the accused answered the call and refused to prepare a report relating there was no crime involved. The complainant filed a complaint with OPS and related she was not sure if anyone had eventually prepared a report.

A recorded tape research was completed, and it revealed the conversation occurred at position 234 on 5/6/02. A copy of that conversation was prepared on audio cassette tape. Research revealed that the unknown accused

is PO Weatherly. A&As and daily work sheets confirmed that PO Weatherly was assigned to position 234. PO Weatherly related, via written report, that he believed he gave Miller the proper information based on the information given and that he was not trying to avoid his duties. After a review of the tape, it was determined that Weatherly did not prepare a report as alleged.

Outcome: Sustained – violation of rule 5 – reprimand. There is sufficient evidence to support the allegation that PO Weatherly did not prepare a report when it is evident that a report should have been completed based upon in the information provided by the complainant.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for CR#280380 that Dr. Shane relied upon is misleading. For instance, they assert that that the accused officer Houston Weatherly III did not give a statement or submit an administrative report, but the CR includes his statement in the form of a To/From memo. The CR was ultimately sustained, finding that the accused officer failed to take a police report for a reported crime. A police report was then generated and provided to the complainant.

This investigation was reasonable.

---

CR #280539 (CITY-WATTS CR-018532-CITY-WATTS CR-018601)

Complaint Received: May 13, 2002

Date of Incident: May 11, 2002

Address of Incident: 1263 W. Pratt

Accused: PO William Tang #19699

Complainant: Edwin Phillips

Witnesses: Frances Tarrant

Allegations: The complainant alleges that the accused slapped him three times on his forehead.

Investigation: In a telephone interview with the r/inv, the complainant reported he was having an argument with his girlfriend, Frances Tarrant. Ms. Tarrant began yelling in the street for someone to call 911 and stated that the complainant was trying to kill her. The complainant said a squad car with two officers; a male/Asian (NKA Officer Tang) and a male/white (NKA Officer Evans) arrived on the scene. The officers placed Mr. Phillips, unhandcuffed, into the back of the squad car while they talked to Ms. Tarrant. The officers then searched Mr. Phillips' duffle bag and found a checkbook they did not believe belonged to him. At that time, PO Tang smacked Mr. Phillips on his forehead three times and stated, "you got to go." Mr. Phillips was then handcuffed, placed back into the squad car and transported to the 024th District station. The complainant told the r/inv that he had no injuries and would not seek medical attention. In a telephone interview with the r/inv, Frances Tarrant related that the complainant was not abused by the arresting officer and that he gave OPS "false information."

The arrest and case reports indicate the complainant was arrested for battery. Mr. Phillips and Ms. Tarrant were drinking vodka together, when Mr. Phillips started a verbal altercation. Mr. Phillips then choked Ms. Tarrant and punched her on the face. When POs Tang and Evans attempted to arrest Mr. Phillips, he became combative, causing the officers to use minimal force to handcuff him.

In a to/from report, PO Evans reported that he and PO Tang responded to a call of a woman screaming for help. Upon arriving, the officers were informed by Ms. Tarrant that the complainant choked her and punched her on the mouth. Upon advising the complainant that he was under arrest for battery, he became verbally and physically combative. POs Evans and Tang handcuffed Mr. Phillips who was seated in the back of the squad car, using a minimal amount of force to get his hands behind his back. PO Evans denied observing PO Tang physically abuse the complainant at any time. In a to/from report, PO Tang essentially related the same information as his partner, PO Evans. PO Tang denied physically abusing the complainant at any time.

Outcome: Not Sustained – there is insufficient evidence to prove or disprove the allegation set forth in this complaint.

Review of Loevy/Shane Spreadsheet: The spreadsheet created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts no statement was taken from the complainant or victim, when in fact the complainant and victim are the same person, Edwin Phillips, who gave a statement in a telephone interview with Investigator Fraction on May 12, 2002. (CITY-WATTS CR-018543). The Loevy/Shane spreadsheet asserts the victim, Edwin Phillips, was injured, but in this telephone interview Mr. Phillips told the investigator he had no injuries and would not seek medical attention. Id. The Loevy/Shane spreadsheet also asserts that no witness statement was taken, when in fact witness Francis Tarrant phoned the R/I on June 13, 2002 and gave a statement that the alleged victim, Edwin Phillips, was not abused by police and the alleged victim, Edwin Phillips, was giving them false information. (CITY-WATTS CR-018598).

The investigation was conducted reasonably.

CR # 280635 (CITY-WATTS CR-018637-CITY-WATTS CR-018678)

Complaint Received: May 21, 2002

Date of Incident: May 15, 2002

Address of Incident: 3510 S. Michigan #5077 NE

Accused: Sgt. Matthew Brady #890

Complainant: Sgt. Thomas Argenbright #2450

Witnesses: Lt. Tina Skahill #190, Admin Asst II Prette Moore

Allegations: The complainant alleges that the accused, while in the xerox room, copied Department personnel alpha listing and left approximately 50 pages of the listing in the above location, which was inventoried under property inventory report 2131349.

Investigation: The r/sgt interviewed witness Moore, assigned to the Office of Legal Affairs (OLA). She was interviewed at IAD and provided a formal statement. She supported the allegation in her statement. She was working in OLA and Lt. Skahill asked her if she left sheets of the alpha listing in the output tray of the xerox machine. She replied that she did not leave the sheets in the machine and that earlier in the day, Sgt. Brady asked her where he could find the department personnel alpha listing. Ms. Moore further stated she was told by Lt. Skahill that Supt. Hillard found copies of the personnel alpha listing in the xerox machine. Ms. Moore related she had no knowledge of who was responsible for leaving copies of the personnel alpha listing in the output tray of the xerox machine.

The accused, Sgt. Brady, was interviewed by the r/sgt and provided a formal statement. Sgt. Brady stated he attempted to copy the department personnel alpha report on the xerox machine. Sgt. Brady denied leaving any pages of the alpha listing in the output tray of the xerox machine. Sgt. Brady further stated he placed the entire file in the document handler and the machine stopped after making 50 copies. He canceled the job because he didn't have enough time to copy the entire file in increments of 50 copies. Sgt. Brady indicated he canceled the copy job and checked the output tray of the xerox machine, and it was empty. He canceled the copy request and cleared the machine.

Outcome: Sustained – violation of Rule 10 – violation noted; no disciplinary action. The investigation revealed that Supt. Hillard observed approximately 50 pages of Department Personnel Report #8004 left unattended in the output tray of the xerox machine. Lt. Skahill identified the accused as Sgt. Brady. Sgt. Brady admitted that he attempted to make a copy of the report on the xerox machine and canceled the job prior to completion. He admitted he did not receive any copies from the machine prior to leaving. He denied leaving any copies

34

unattended in the xerox machine. Based on the results of the investigation, the r/sgt has determined sufficient evidence to sustain the allegation.

Review of Loevy/Shane Spreadsheet: The Loevy/Shane spreadsheet for this CR is generally accurate but fails to provide insight into this investigation. In this CR, it is alleged that the accused copied the Department personnel alpha listing and left approximately fifty pages of the listing unattended in the xerox room. The accused was interviewed and stated that he was copying the personnel alpha listing, when the machine stalled, and he thought he had canceled the job. The accused admitted he did not receive any copies from the machine prior to leaving. The allegation, Rule 10 "inattention to duty," against the accused was sustained. It was recommended the accused receive "violation noted, no disciplinary action."

This investigation was reasonable.

---

CR 282783 (CITY-WATTS CR-020044-CITY-WATTS CR-020078)

Complaint Received: July 30, 2002

Date of Incident: July 22, 2002

Address of Incident: 6410 N. Northwest Highway

Accused: Non-Department Member

Complainant: Mohamed Zadnas

Allegations: The complainant alleges that Rickey Robinson, a non-department member (1) struck him about the head and neck with his hands.

Investigation: General offense case report and supplementary report RD HH52841 relate that the complainant was working at Ace Limo when Mr. Robinson came in and engaged in a conversation with Mr. Zadnas about damage to a vehicle he used. Mr. Robinson began punching Mr. Zadnas about the head, neck and abdomen with his fists and hands. Mr. Zadnas went to Swedish Covenant where he was diagnosed with a broken rib. Mr. Zadnas related that Mr. Robinson told him he was a CPD officer, but Mr. Zadnas has never seen Mr. Robinson carry any type of weapon or wear a uniform. Det. Wronkoski conducted an inquiry via alpha/star and learned there was one department member named Rickey Robinson.

On 7/30/02, Mr. Zadnas viewed photographs of department personnel, including PO Rickey Robinson. Mr. Zadnas could not identify PO Robinson as the individual who struck him. Det. Wronkowski conducted interviews with witnesses provided by Mr. Zadnas and during an interview at the location of 7011 W. Higgins, he observed a xerox copy of a certificate from the CPD training division named "Rickie L. Robinson." Det. Wronkowski contacted the personnel division and learned that Mr. Robinson was a CPD officer from 12/5/94 to 9/15/95 when he was subsequently discharged.

Outcome: Unfounded – the individual Mr. Zadnas alleges physically maltreated him is not a CPD officer.

Review of Loevy/Shane Spreadsheet: The spreadsheet created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim, when in fact the complainant and the victim are the same person, Mohamed Zadnas, who gave a statement on July 28, 2002. (CITY-WATTS CR- 020056-57). The Loevy/Shane spreadsheet also asserts that no witness statements were taken, when in fact witnesses Jerry Newstadter, Apturrahim Dogan, and Jonny Mostafa all gave statements. Id. The coded data is also misleading because the "accused officer," Rick Robinson, is not a Chicago Police Officer, which is why this complaint was deemed "unfounded." (CITY-WATTS CR- 020050). The spreadsheet indicates there were no statements from the complainant, victim, witnesses, accused and non-accused officers. The investigator did obtain a statement from the complainant/victim, and from witnesses. There were no statements from the accused officer because there was no officer involved and there was no non-accused officer involved. It also states

CITY-BG-063024

there were no efforts at in regard to cameras, photographs, or radio transmissions – none of which were necessary.

This investigation was reasonable.

CR #285405 (CITY-WATTS CR-021647-CITY-WATTS CR-021706)

Complaint Received: November 8, 2002

Date of Incident: October 29, 2002

Address of Incident: 100 S. Racine

Accused: PO Todd Stemplewski #19473, PO Jason Nielsen #16021

Complainant: Brian Wilson

Allegations: The complainant alleges that he was arrested without justification. It is further alleged that while his vehicle was in police custody his back windows were broken.

Investigation: The r/sgt attempted numerous times via telephone to contact the complainant to no avail. The r/sgt sent a letter by certified mail, was delivered, and signed for by Bernice Wilson. The complainant has not attempted to contact the r/sgt nor has the r/sgt been able to reach the complainant via telephone. The accused officers stated that the complainant was originally brought into the 12th District for a traffic violation the complainant committed. While being issued traffic citations, it was learned the complainant had a suspended driver's license and no insurance on the vehicle. The officers ordered a tow on the vehicle. While receiving a bond for his traffic violation, the complainant was informed by PO Stremplewski that his vehicle was being towed for no insurance and a suspended driver's license. PO Stremplewski stated to the complainant that he was not allowed to take his vehicle because of the tow and that if he tried to take his vehicle, he would be arrested. When the complainant left the 12th District, he immediately entered the towed vehicle and left the 12th District.

The tow truck driver, Rodney Roberts, was interviewed and stated he doesn't recall the vehicle, but did state that if the tow report was marked windows not broken and when he examined the vehicle the windows were broken, he would have an officer change the report after showing the officer the problem. The r/sgt interviewed the auto pound supervisor Ben Lopez who stated that when the complainant's vehicle arrived at the pound, the driver's side window was broken, and the passenger's side window was broken. The r/sgt uncovered 3 different reports containing the complainant's vehicle. Each report had different times listed. The copy of the tow report that the r/sgt obtained has the tow driver's signature on the report. No windows were listed as being broken on the complainant's vehicle while at the 12th District.

Outcome: Unfounded – it was explained to the complainant that he would be arrested if the complainant attempted to take his car after it was being towed. The r/sgt is unable to determine exactly where and when the complainant's windows were broken.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for CR#285405 that Dr. Shane relied upon is misleading. For instance, they assert that complainant/victim Brian Wilson was not contacted, however, the CR indicates an investigator (Sgt. Doyle) attempted to contact the complainant "numerous times" via telephone. The investigator also sent a certified letter which was signed for by "Bernice Wilson" but the complainant did not contact the investigator. These efforts are not reflected in the Loevy/Shane spreadsheet. In this CR, the complainant alleged that his car windows were broken at the police station prior to being towed and that he was arrested without justification. The data is also misleading because it indicates that no witnesses were contacted or statements were taken from them. However, the CR reveals that the investigator/sgt contacted and interviewed the tow truck driver, the tow truck driver's supervisor, and the supervisor of the auto pound, and a supervisor of the streets and sanitation department. The data from the Loevy firm also indicates that the accused officers Todd Stremplewski and Jason Nielsen did not give statements, but the CR

indicates the investigator/Sgt contacted and spoke with both officers, and the CR contains statements in the form of To/From reports from both (the Loevy firm's data indicates an administrative report was submitted). Also, the Loevy/Shane spreadsheet does not reflect that the investigator obtained three separate reports regarding the complainant's vehicle, in order to ascertain the time in which the windows were broken.

The CR was unfounded as to the claim the complainant was arrested without justification as investigation revealed he was arrested for criminal trespass after he was warned he could not enter his vehicle while it was being towed. Complainant's car was towed because complainant had a suspended license and did not possess insurance. The CR was also unfounded as to the allegation that the car's windows were broken while in police custody because it could not be determined where and when the windows were broken.

This investigation was reasonable.

---

CR #285660 (CITY-WATTS CR-021731-CITY-WATTS CR-021784)

Complaint Received: November 12, 2002

Date of Incident: October 3, 2002

Address of Incident: 102 E. 71st Street – inside Rodney's Cocktail Lounge

Accused: PO Kevin Drumgoole #19047

Complainant: Antonio Adway

Witnesses: Gregory Evans, Tiffany Johnson, Sgt. David Cherry #2294

Allegations: The complainant alleges that the accused, off-duty PO Kevin Drumgoole, hid the complainant's coat which contained over $2,000 US currency. When the coat was returned, the money was missing.

Investigation: The general offense case report, HH749341, revealed that Drumgoole was listed as a witness to the incident. The interview of the complainant, Adway, revealed that he arrived at the location of the incident and placed his jacket inside the DJ booth. He related he had over $2,000 inside his coat pocket. When he went to retrieve his coat, it was missing. Adway related that the bartender informed him that an off-duty police officer named Drumgoole placed his coat behind the bar. Adway related he did not see the accused remove his coat from the DJ booth, nor could he provide any witnesses who did. Adway identified the photograph of the officer he believes is responsible for his missing money. The photograph query listed the employee to be PO Drumgoole.

The interview with the witness, Evans, revealed that he was working as the manager when he was informed by Adway that his coat, which contained over $2,000 was missing. Evans related that the bartender informed him that Drumgoole gave her three coats to secure behind the bar. Evans informed the r/sgt that she did not see Drumgoole remove the coats from the DJ Booth. Evans identified the photograph he believes to have placed Adway's coat behind the bar, which was PO Drumgoole. The interview of the witness, Johnson, revealed that she was working as the bartender when Drumgoole approached her and asked her to secure three coats he found on the floor. Johnson related she had no knowledge of any missing money, nor did she observe where he found the coats.

The report of the witness, Sgt. Cherry, revealed he responded to a disturbance call at the location and interviewed Adway. Cherry reported that Adway was highly intoxicated and uncooperative. Cherry reported that two unknown male blacks informed him that they observed Drumgoole pick up the coats from the floor and immediately turn them over to the bartender. Cherry reported that Drumgoole was listed as a witness on the case report. The report of the accused revealed he was off duty at the location of the incident when he observed some coats on the floor of the bar. Drumgoole reported he picked up the coats and turned them over to the bartender for safe keeping. Drumgoole reported he never went into the pockets of the complainant's coat, nor remove any items from the coat.

37

Outcome: Unfounded – there is no evidence or witness to support the allegation against the accused.

Review of Loevy/Shane Spreadsheet: While the Loevy/Shane spreadsheet for this CR is generally accurate, the information in the spreadsheet does not provide adequate insight into the investigation. In this CR, it is alleged that the accused officer was off-duty at a bar when he found a coat on the floor that belonged to the complainant. The complainant alleges the jacket contained $2,000 and the money was missing when he later retrieved the jacket. The investigation revealed that the complainant never saw the accused officer with the jacket. The accused officer gave a statement that he never went through the pockets, but merely gave the jacket to the bartender for the owner to be able to find it later. The complainant was irate and using profanity and threatening the off-duty officers. When uniformed officers arrived on scene, he was unwilling to cooperate with the sergeant and the officers.

This investigation was reasonable.

CR #286064 (CITY-WATTS CR-002172-CITY-WATTS CR-022252)

Complaint Received: November 29, 2002

Date of Incident: November 28, 2002

Address of Incident: 2951 W. Walton

Accused: Unidentified

Complainant: Nicole Barnette

Witnesses: Redacted Witness and Niva Ortiz; PO Bruce Kischner #9397, PO Christopher Bielfeldt #5442, PO R. Lohman #17442, PO B. Medinica #13522, PO M. Bonstetter #4874, PO J. Jurek #7051, PO S. Wolff #19681, PO Scott Shewchuk #5935

Allegations: The complainant alleges that the accused (1) verbally abused her by saying "get the fuck out of here, we have it under control," (2) pushed her out of the door, and (3) slammed the door in her face.

Investigation: In a telephone interview conducted by the r/inv, the complainant stated she received a phone call from her neighbor requesting she go next door to get her two grandchildren (ages 2 and 4) because Niva Ortiz was being arrested. Ms. Barnette went next door and knocked on the door, but there was no answer. The door was open slightly, and as Ms. Barnette attempted to enter the house, she observed 3 male/white plainclothes officers standing at the door and several others inside the apartment. One of the officers approached Ms. Barnette and told her several times to "get the fuck out of here, we got it under control." The same officer then pushed her out of the door and slammed it in her face. Despite numerous attempts to contact the juvenile witness and Niva Ortiz, no contact was able to be made.

The arrest and case reports of Niva Ortiz indicate she was arrested for possession of cannabis and possession of ammunition without a license. Witness officer to/from reports deny observing any officer push any person, slam a door on any person or yell at any person during the arrest of Ms. Ortiz. Witness POs Medenica and S. Wolff submitted to/from reports and stated they were at the front entrance of the residence when an unknown female/black entered and when asked if she lived at the residence, she stated she lived next door. The female/black was then asked to leave as they were conducting a search warrant and she left without incident. They denied observing any officer push anyone, slam a door on anyone, or yell at anyone.

Outcome: Not Sustained – there is insufficient evidence to either prove or disprove the allegations at this time as the witnesses were unable to be located and interviewed.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for CR#286064 that Dr. Shane created is misleading. In this CR, the complainant/victim was interviewed by an OPS investigator regarding allegation that an unidentified officer yelled profanities and pushed the complainant out of the door during a search warrant at her neighbor's home. Complainant stated she was not injured or arrested. When the investigators asked to interview her daughter, the complainant refused and said they were late to dinner.

CITY-BG-063027

Thereafter, an investigator contacted the complainant numerous times, but she never responded. The investigator also contacted a witness, who was the neighbor to the complainant, and she never responded to the request for an interview. The spreadsheet states that a statement was not taken from complainant; a statement was not taken from victim; and no witness was contacted, yet it fails to reflect the investigator's attempt to speak further to the complainant and to interview the witness.

This investigation was reasonable.

CR #287996 (CITY-WATTS CR-023322-CITY-WATTS CR-023388)

Complaint Received: March 12, 2003

Date of Incident: March 3, 2003

Address of Incident: 6120 S. Racine – Radio Room Police Station 007

Accused: PO Dean Coltri #5784

Complainant: PO Pamela Purdiman #17884

Witnesses: PO Nelly Sanchez #14636

Allegations: It is alleged that the accused walked directly behind the complainant and held his CPD radio in front of her face while demanding that PO Sanchez take his radio attempting to intimidate the complainant.

Investigation: The r/sgt contacted the complainant in person and had her review her original allegations. The accused is identified as PO Dean Coltri and the witness is identified as PO Nelly Sanchez. The accused denies the allegation in his report. R/sgt reviewed the report of Witness PO Sanchez, which indicates in summary, she observed the accused reach over the complainant to turn his radio in. Witness Sanchez states "it is common that any PO hand a radio over the shoulder of another PO's shoulder while awaiting the first PO to sign out on the daily log." However, did not have knowledge of PO Coltri's intentions. PO Sanchez did observe the complainant turn and bump into the accused. At this time, the accused did state "you could have said excuse me."

Outcome: Not Sustained – there is insufficient evidence to prove or disprove the allegation. Witness PO Sanchez's report does not support the complainant's allegation that PO Coltri held his radio in complainant's face while attempting to intimidate the complaint. PO Coltri denies the allegation in his report.

Review of Loevy/Shane Spreadsheet: The spreadsheet created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim, when in fact the complainant and the victim are the same person, Pamela Purdiman, who gave a written statement on April 10, 2003. (CITY-WATTS CR- 023359). The Loevy/Shane spreadsheet also asserts that no witness statements were taken, when in fact witness Officer Nelly Sanchez gave a written statement in the form of a to/from report with details of the incident on April 1, 2003. (CITY-WATTS CR- 023362). This incident happened in a police station radio room and P.O. Sanchez was the radio personnel and only other witness at the time. The coded data is also misleading because the Loevy firm and Shane claim the scene was not canvassed, no photos were taken of the scene, and there were no radio communications, but there was no reason to canvass the scene or take any photos at the time as the allegation simply asserted the accused held his radio in victim's face in an attempt to intimidate victim. The two officers were also turning in their radios at the time so there couldn't be any radio communications. Those columns should have been marked Not Appliable. The spreadsheet indicates there were no statements from the complainant, witnesses, accused and non-accused officers, but statements were obtained and the officers submitted to/from memos.

CR #288002 (CITY-WATTS CR-023389-CITY-WATTS CR-023438)

Complaint Received: March 10, 2003

39

Date of Incident: March 4, 2003

Address of Incident: 2650 S. California

Accused: Det. Frank Esposito #21172

Complainant: Lt. Robert Kohnen #511

Witnesses: Sgt. Lenore Flaherty #1107

Allegations: The complainant alleges that the accused (1) failed to comply with a written order (GO 02-04A) in that he failed to immediately sign out of court when his presence was no longer required, and (2) did not promptly meet with ASA Kerbis once she was available regarding said court case, and then sign out when done.

Investigation: The accused went to court as a result of a criminal subpoena ordering him to room 404 regarding a criminal murder trial. The accused signed out of court and submitted an overtime report stating his completion time was 1630 hours. A total of 10 other officers signed in for this case, and all of them except the accused had signed out of court by 1230 hours. A selected criminal case status check was conducted by Sgt. Flaherty of the Court Section on the case of Francisco Sanchez, and it was determined that the case had been disposed of and court was no longer in session as of 1430 hours. It was also learned that the accused had no other cases pending on 3/4/03.

On 3/4/03, the complainant called ASA Kerbis who had subpoenaed the accused to court. The complainant learned from ASA Kerbis that the case had been continued earlier, and she had no knowledge of any officers still being in court, nor did she see any reason for them to be in court. It was determined that the accused had signed out of court on the sign out sheet at 1630 hours and submitted an overtime earned/court appearance report with the same time noted as the sign out time.

On 4/3/03, the r/sgt went to 2650 S. California and interviewed ASA Kerbis in person. She related she subpoenaed 24 officers on the Sanchez case and had expected to go to trial that day. When she found out in court that the case was to be continued, she told the officers that the case would not be going to trial, but she wished to still talk to some of them. Kerbis went to court on another case, and when she returned, she learned from one of the officers that he had been told to sign out by an inspector. Kerbis stated she later received a call from someone from the CPD regarding the disposition of the case and she told the caller it was continued and that the officers had left. A short time later, she was approached by Det. Esposito who explained he had been waiting to talk about the case. Kerbis told Esposito the case had been continued and signed his slip. Kerbis stated she did not know that Esposito had been waiting for her and assumed that everyone left earlier in the day when told to do so by the inspector.

In a to-from report of the accused, he stated he was in court regarding the case, and ASA Kerbis stated she wanted to talk to the subpoenaed officers about the case, either in court or by her office on the 13th floor in the gang unit. Det. Esposito states he went to the gang unit and reviewed the reports, and by 1600 hours, when he had not heard from ASA Kerbis, he went to her office and learned the case had been continued. The accused then left court and signed out.

Outcome: Sustained – Violation of Rules 6 and 10 – Reprimand and pay for court attendance reduced to three credited hours.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for CR#288002 that Dr. Shane relied upon is misleading. For instance, they assert that no statement from the complainant (Lt. Kohnen) was taken, however this is misleading. Lt. Kohnen initiated the CR against Det. Esposito based on an allegation that Esposito failed to sign out promptly from court and failed to promptly meet with an Assistant State's Attorney, and submitted a To/From report regarding the allegations. Lt. Kohnen was also interviewed by the investigator (Sgt. McMurray) as reflected in a To/From report. The data is also misleading because it states that no witness was contacted and, as to whether witness statements were taken, the data reflects "not applicable." However,

the CR reveals that the investigator (Sgt. McMurray) contacted and interviewed the Assistant State's Attorney, contacted and spoke with a representative from the Clerk of the Circuit Court of Cook County, and contacted and interviewed Sgt. Flaherty, assigned to the Court Section Unit 142 at 26th and California, all of whom provided statements contrary to the spreadsheet. The data from the Loevy firm also indicates that the accused officer Det. Esposito did not give a statement, but the CR contains a statement in the form of To/From report from Esposito (the Loevy firm's data indicates an administrative report was submitted).

After investigation, the allegation regarding Esposito's failure to promptly meet with ASA Kerbis and sign out of court when done was sustained. The allegation regarding failure to immediately sign out of court when presence was no longer required was "not sustained."

This investigation was reasonable.

CR #288313 (CITY-WATTS CR-023667-CITY-WATTS CR-023741)

Complaint Received:

Date of Incident: March 20, 20023

Address of Incident: 7040 S. Cottage Grove – 3rd District

Accused: PO Earl Jones #13256

Complainant: Lt. Alberta Raymond

Witnesses: PO Charles Hight, PO Stanley Depass, Sgt. Darcel Webb. PO Keisha Waller, Sgt. Lisa Mueller, PO Devonna Young, PO Curtistee Gilbert

Allegations: It is alleged that the accused (1) entered the 003rd District Station's restricted area in civilian dress without identifying himself, and (2) was disrespectful and insubordinate to the complainant.

Investigation: The r/sgt interviewed the complainant on 4/9/03 and she reiterated the allegations. She also related when requested by the r/sgt that the accused never used any profanity at any time, and she couldn't remember exactly what he said. She also identified possibly 7 witnesses. The complainant's initiation report stated that PO Jones entered the rear door of the 003rd District and said "yes, are you?" when she asked him if he was the police. He then proceeded to the front desk. The complainant told him it was unwise to get smart when challenged as to his identity and that he was entering into her house. She got loud, argumentative, and challenging. She stated that PO Jones told her she should have identified herself. When she identified herself, he handed her his ID card. PO Jones' report related that he used the same door for 21 years while working or visiting. He used that door for the purpose of reporting his star lost (lost and found case report HJ250038). The complainant was standing by the back door and was asked if she was a City Employee. He responded yes, showed her his ID card, and he continued to walk to the front desk. PO Jones also relates that while standing at the front desk, the unidentified female approached him shouting "who do you think you are coming to my house getting smart with me." He states she told him he had a "smart-ass mouth." He said the complainant continued yelling and shouting at him. He asked the complainant who she was numerous times, and she said, "this is my house, I don't have to tell you who I am, you have to identify who you are." He relates she snatched his ID card from his right hand and took it into her office. He was talking in his normal tone of voice, unlike the complainant.

The witness statements indicate that they did not hear the accused to be disrespectful. The complainant's initiation statement indicated the accused was loud, challenging, and argumentative. But by her own account, she shows that she challenged the accused at the front desk and told him not to get smart with her and that the 003rd District Police Station was her house. One witness statement indicated that she heard shouting but could not discern who was doing it. She did hear the accused explain, that he did not know who the complainant was. During the alleged incident, Lt. Raymond, PO Jones and PO Gilbert indicate that the accused turned over

41

his ID card to the complainant when requested. During the r/sgt's interview with the complainant, the complainant related that at no time did the accused use profanity.

Outcome: Not Sustained – there is insufficient evidence to support the allegations. Officers are trained to talk loud and authoritative. Talking loud does not by itself constitute disrespect. Loud to some is normal to others. After reviewing all the witness reports, the complainant's initiation report, the accused's report, and interviewing the complainant, the r/sgt does not find enough evidence to support insubordination, disrespect, or any rule violation.

Review of Loevy/Shane Spreadsheet: The spreadsheet indicates there were no statements from the complainant, accused and non-accused officers – all of which were contained in to/from reports. The spreadsheet also indicates there was no area canvas, scene photographs, radio transmissions, or search for cameras – all of which were not applicable.

CR #289511 (CITY-WATTS CR-024237-CITY-WATTS CR-024295)

Complaint Received: May 21, 2003

Date of Incident: May 17, 2003

Address of Incident: 6133 S. Cottage Grove

Accused: Unknown

Complainant: Loweten Harmon

Witnesses: Elliott Clark

Allegations: The complainant alleged that an unknown male black officer in plainclothes instructed him to move his vehicle because he was double parked, and he complied. The complainant further alleges the officer then asked him for his keys and told him that he will hold the keys for several hours. The complainant at that time asked for his keys back and the officer stated, "fuck you" and left the scene with the complainant's car keys.

Investigation: The r/sgt reviewed the initiation report which identified a witness, Mr. Clark. The complainant also identified the accused officers as two male black civilian dressed officers driving a tan or gray Crown Victoria. The r/sgt attempted to contact the complainant and witness via telephone and certified letters with negative results. As of 6/9/04, the complainant and witness have made no attempts to contact the r/sgt. The r/sgt attempted to identify the accused officers with negative results. The evidence that was obtained during this investigation shows that no Third District civilian dressed officers were involved in the alleged incident based on the information supplied in the complaint and initiation report. In conclusion, the r/sgt finds this complaint to be unfounded. The complainant did not cooperate with this investigation and r/sgt finds no facts or evidence that would support the complainant's allegation nor was there any evidence of any department members being in the area of the alleged incident.

Outcome: Unfounded – based on all available information at this time, the complaint was not based on facts as shown by the investigation.

Review of Loevy/Shane Spreadsheet: Victim/Complainant reported that he was asked to move his vehicle by two unknown plain-clothed officers in an unmarked Crown Victoria with M plates. He reported that officers then asked for his car key, which the victim provided. Victim alleged that when he asked for the key back, the accused stated, "fuck you." Victim provided the name of a witness who was in his car at the time of the incident. The spreadsheet erroneously indicates the Victim/Complainant and Witness were "not contacted" despite Victim/Complainant's initial interview by the sergeant taking the report and multiple later attempts by the OPS investigator to reach both men, including certified letters that were accepted by the Victim/Complaint and the Witness but to which they did not respond.

42

This investigation was reasonable.

CR #295072 (CITY-WATTS CR-026685-CITY-WATTS CR-026713)

Complaint Received: January 26, 2004

Date of Incident: January 12, 2004

Address of Incident: 8246 S. Burley

Accused: PO John DalPonte #18823, PO Wendy Pacino #19698

Victim: James Williams

Complainant: Alvin Parker

Allegations: The complainant alleges that the accused stopped and searched him and the victim without justification.

Investigation: The r/sgt attempted to contact the complainant and the alleged victim, who have the same address and phone number, on three consecutive days with negative results. On 2/12/04, the r/sgt sent the complainant and victim a certified letter requesting they contact the r/sgt as soon as possible in regards to his investigation. On 3/1/04, the r/sgt received the receipt portion of the certified mail slip bearing the name of the complainant and showing the letter as delivered on 2/25/04. Neither the complainant nor the victim has made any attempt to contact the r/sgt in regards to this matter. The r/sgt served the accused officers with their allegations and ordered to/from statements. The accused officers presented their to/from statements which relate that neither officer recalls a search or contact with the complainant or the victim on the date and time alleged. The r/sgt conducted a search of the CLEAR contact card query with negative results for either the complainant or the victim.

Outcome: Unfounded –further investigation into this CR is not possible due to the uncooperative nature of the complainant and the victim. The r/sgt's investigation finds the evidence does not support the allegation as brought forth by the complainant.

Review of Loevy/Shane Spreadsheet:  The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. This CR was initiated by complainant who alleged that Officer Dal Ponte  and his partner stopped and searched him and the victim without justification. The Loevy/Shane spreadsheet incorrectly asserts that the complainant and victim were not contacted. The OPS investigator attempted to contact the complainant Mr. Parker and Mr. Williams on multiple occasions, including by attempting to contact Mr. Alvin Parker and victim Mr. James Williams by telephone multiple times and by sending Mr. Parker and Mr. Williams a certified letter requesting contact with the investigator. Mr. Parker and Mr. Williams failed to respond to any of these contacts and therefore failed to sign the affidavit required by Illinois law and the CBA. The Loevy/Shane spreadsheet also incorrectly asserts that the two accused officers did not provide a statement, when in fact the two officers provided a to/from statement in response to the investigator's request for a statement. Thus, OPS closed this investigation unfounded when the complainant and victim failed to cooperate. The Loevy/Shane spreadsheet fails to acknowledge these facts. The spreadsheet indicates the complainant was not contacted, but ignored the reasonable efforts made to contact the complainant.  The spreadsheet indicates the officers did not provide statements, but they did provide to/from reports.

This investigation was reasonable.

CR #291884 (CITY-WATTS CR-027447-CITY-WATTS CR-027535)

Complaint Received: August 27, 2003

Date of Incident: August 26, 2003

43

Address of Incident: 5327 W. Chicago Ave./Inside 015th District Station

Accused: PO Edgar Hernandez #17465

Complainant: Edward Boatman

Witnesses: Kennan Love, Travis Davis

Allegations: The complainant alleged that the accused (1) told Boatman to "shut the fuck up," (2) threatened to kill him, (3) punched him on the jaw while he was handcuffed, and (4) attempted to provoke him into a fight by pushing him against a wall and punching him in the chest (after removing the handcuffs).

Investigation: The complainant provided a telephone interview. He stated on 8/26/03, he and his friends were on his porch when a marked police vehicle approached. A male Hispanic officer exited the police vehicle and asked everyone for identification. Boatman questioned the officer's actions and asked the officer why he was harassing them. Subsequently, everyone was placed under arrest and another police vehicle responded and assisted in transporting him and his friends to the 015th District. Once in the station, the complainant continued to complain, and the male Hispanic told him to "shut the fuck up." The officer then punched the complainant on the jaw. While in the interview room, the male Hispanic officer removed the handcuffs from the complainant and began taunting him in an effort to instigate a fight. The Hispanic officer struck the complainant in the chest, pushed him, and told the complainant he would kill him. The complainant stated that his friends and several officers were present. The complainant stated he sustained soreness to his jaw and a bruise on the chest, but he did not seek any medical attention.

Witness Keenon Love stated he was seated in his vehicle when a police vehicle with beat 1512 arrived. A male Hispanic officer, who was driving, approached him and his friend and asked them what they were doing. The complainant was standing near his car with an open bottle of liquor in his hand. The officer requested everyone's IDs and ran their names on the computer. The complainant then began questioning the legality of the officer's actions and subsequently the complainant and the officer exchanged profanities. The officer called for assistance, and everyone was arrested and taken into the station. Once in the station, witness Love heard a slap. Upon turning around, he observed the officer directing profanities at the complainant. The Hispanic officer then told the complainant they could go "mono y mono, I will kill you." The officer then struck Boatman in the stomach. Witness Demond Morris basically related what was stated by Boatman and Love. He reported he was handcuffed to England Vaughn. Once in the station, a male Hispanic officer told the complainant to "shut the fuck up," and then punched and slapped him on the face. Morris denied observing any injury to the complainant. Witness England Vaughn reiterated what was stated by Morris. However, Vaughn reported he observed the male Hispanic officer punch the complainant in the face and chest. He also stated he observed blood running down the complainant's lip. Attempts to contact arrestee and witness Travis Davis via letters, phone calls and a personal visit proved unsuccessful.

The arrest reports for Boatman, Love, Morris, Vaughn and Davis indicate that POs Hernandez and Salvage effected their arrests for drinking on a public way. PO Edgar Hernandez and PO Frank Salvage submitted reports indicating that the complainant and his friends were arrested for drinking on a public way. They both denied the allegations made. Witness officers Orven Colon and Joseph Salamon denied having contact or knowledge of the incident.

Outcome: Not Sustained – there is insufficient evidence by way of medical or physical evidence to discern whether the allegations occurred as alleged.

Review of Loevy/Shane Spreadsheet: The spreadsheet created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim, when in fact the complainant and the victim are the same person, Edward Boatman, who provided a statement during a telephone interview on August 27, 2003. (CITY-WATTS CR- 027465-66). The coded data is also misleading because the Loevy firm and Shane claim no photos were taken of the scene, but there was no reason to take any photos of the scene as the allegations were

of profanities and physical abuse towards the victim, and photos were taken of the victim, Edward Boatman. The spreadsheet indicates there was no statement from the complainant, accused officer or non-accused officer. The complainant was interview by phone and the officers submitted to/from reports. There was no need to search for cameras or obtain radio communications.

This investigation was reasonable.

---

CR #297198 (CITY-WATTS CR-028883-CITY-WATTS CR-028958)

Complaint Received: April 19, 2004

Date of Incident: March 28, 2002

Address of Incident: 3131 W. Harrison (11th District)

Accused: PO Karen Johnson #17327, PO Marvin Lofton #7868, Sgt. John Baranowski #2188

Complainant: Sabian Green

Allegations: The complainant alleges that during the complainant's processing for arrest on 3/28/02, two officers and a police sergeant intimidated him after the arrest. The unknown police sergeant stated, "you will regret saying that" after he remarked, "these people were making an attempt to set me up; I didn't run any stop sign." The unknown officers tore up their original tickets and wrote up new documentation.

Investigation: The r/inv left telephone messages for the complainant to call him. On 4/20/04, the r/inv mailed the complainant certified letters to both known addresses of the complainant in an attempt to interview the complainant. On 4/21/04, the complainant contacted the r/inv and identified the accused members by name and star number but declined to answer any further questions regarding his allegations until he can confer with his attorney. On 4/23/04, the r/inv received a voicemail message from the complainant. In the message, the complainant reiterated that he has nothing further to add to the investigation. On this same date, the r/inv contacted the complainant regarding his allegations. During the telephone call, the r/inv asked the complainant to set a time and place where the r/inv may interview the complainant re his allegations. The complainant agreed to call back to the r/inv within the week with his reply. On 4/29/04 the r/inv attempted to call the complainant with negative results.

The r/inv then served the three accused members requesting they initiate and submit individual to/from reports addressing the allegations placed by the complainant. The reports submitted by the accused members reflect that at no time did any department member intimidate the complainant during his processing and booking in the 011th District. On 5/13/04, the r/inv attended the current criminal court case involving the complainant. Upon conclusion of the court proceedings, the r/inv attempted to question the complainant regarding the allegations. The complainant refused to speak with him. In that the complainant declined to cooperate with the investigation and lacking further evidence, the r/inv requests that the investigation be closed with a finding of unfounded.

PO Karen Johnson, in a to/from written report dated 4/27/04, indicated that on 3/28/02, she and PO Lofton were on routine patrol traveling westbound on Fulton. They observed a vehicle traveling northbound on Homan go through the stop sign without even slowing down. They activated their lights and attempted to curb the vehicle. On 3 separate occasions, the driver of the vehicle pulled over and then took off again. They were finally able to curb the vehicle on Franklin Blvd. after the vehicle made a left-hand turn and an assist unit arrived on scene. PO Johnson approached the vehicle and asked the driver to turn off his vehicle and produce a DL and proof of insurance. She could smell cannabis coming from inside the vehicle and when the driver did look at her, his eyes were bloodshot, his speech was slow and slurred and there was a smell of alcohol on his breath. An open bottle of Corona beer, lime and salt was observed on the console. A rolled cigarette in the ashtray was discovered (suspect cannabis) and two bags of a crushed leafy green substance (suspect cannabis). The driver failed field sobriety tests and was taken back to the station. PO Johnson states the complainant was even given the courtesy of being allowed to make a phone call before being taken to lockup. She states she has

copies of all her original ticket books which are in sequential order. It would be very easy to demonstrate that all of her tickets can be accounted for and that none of them were destroyed or rewritten.

Outcome: Unfounded

Review of Loevy/Shane Spreadsheet: Victim/Complainant made allegations against two officers and a sergeant two years after his DUI arrest. The "Evidence Variables" identified in the spreadsheet are inconsistently reported among the accused stating that certain evidence was offered/searched against some of the three officers but "not necessary" against others (although there was one investigation as to all three). Despite three contacts with the Complainant during which he stated he had nothing more to add than his original complaint, the spreadsheet indicates "no" statement taken from Complainant/Victim. The spreadsheet also incorrectly states that "no" accused officer was identified by the Victim. This is only true for the initial complaint. The victim/complainant later provided the names of the accused. Additionally, all three accused provided To/From reports. These are identified in the spreadsheet as "Administrative Reports" but not Officer statements.

This investigation was reasonable.

CR #298390 (CITY-WATTS CR-029520-CITY-WATTS CR-029553)

Complaint Received: July 15, 2004

Date of Incident: June 2, 2004

Address of Incident: 4300 S. Dan Ryan (northbound exit ramp)

Accused: Unknown

Complainant: Diesha Shields, Kenneth Mayo

Allegations: The complainant alleges that unknown CPD officers (1) verbally abused Diesha Shields by calling her a "black bitch," telling her to "shut the fuck up," and calling both complainants "niggers." The complainant states the accused (2) threw Shields and Mayo to the ground without justification, (3) choked Shields, and (4) threatened to put "drugs" and a "gun charge" on Mayo.

Investigation: The incident involves allegations against an unknown CPD officer who stopped a taxi the complainants were passengers in. Neither complainant was injured as a result of the incident. The initiation report related the complainant informed Sgt. Willis that as the taxi they were passengers in exited the Dan Ryan Expressway, they were pulled over by an unmarked squad car. Four unknown officers pulled the complainant out of the cab, at which point one of the officers choked Shields and threw both complainants to the ground. The officers called Shields and Mayo "niggers" and called Shields a "bitch." The officers threatened to "put rocks" and "a gun" on Mayo. After the complainants were searched, the officers left the scene.

The r/inv obtained a telephone interview of the complainant, Diesha Shields, who related that she and Mayo were passengers in a cab when it was pulled over by two unknown police officers in an unmarked car. She and Mayo were searched, at which point one of the officers told her to "shut the fuck up" and called her a "black bitch." Shields stated that one of the officers put both hands around her neck. After they were searched and the officers left the scene, neither Shields nor Mayo were arrested. All attempts to contact the complainant, Kenneth Mayo, were met with negative results. A check on PCAD determined no police activity in the vicinity of 4300 S. Dan Ryan pertaining to the alleged incident. This does not support the allegations.

Outcome: Unfounded – there is no evidence to support the allegations. Due to the lack of physical evidence to support the allegations of excessive force and to determine the identity of the accused; the complainant, Kenneth Mayo's failure to cooperate with the investigation of his own allegations; and the inconsistent accounts provided to Sgt. Margit Willis and the OPS, it is recommended that the allegations be classified as unfounded.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainants and the victims are the same people, Diesha Shields and Kenneth Mayo, Diesha Shields was interviewed twice and provided two statements (which were inconsistent in some respects, including she first said 4 officers were present then changed her story to 2 officers), and OPS attempted to contact Kenneth Mayo on seven separate occasions (including a personal visit to his residence) but he failed to cooperate with OPS (though he gave an initial interview to Sgt. Willis on June 2, 2004). (CITY-WATTS CR-029529-30, 029533-34, and 029538-39). The coded data also is misleading because the Loevy firm and Shane claim no personal/employment records were searched and no incident reports searched and no inventory vehicle report searched, when OPS obtained the PCAD from that date and time and it did not reflect any police service at the stated location (northbound ramp of the Dan Ryan Expressway at 43rd Street). The data also indicates no photo array was conducted, but it is unclear who was supposed to be included in a photo array as there was no record of police service at the date and time. The Loevys/Shane spreadsheet also states that no witness was contacted, but the complaints/alleged victims did not provide any information about their taxi driver that would allow him to be contacted. Likewise, it is unclear why photos of the scene would be taken as there would be nothing there, and there is no evidence a camera existed on the Dan Ryan Expressway that could have contributed to the investigation.

This investigation was reasonable.

CR #298951 (CITY-WATTS CR-029669-CITY-WATTS CR-029699)

Complaint Received: October 29, 2004

Date of Incident: June 26, 2004

Address of Incident: 900 N. Trumbull

Accused: Unknown

Victim: Dorothy Osby

Complainant: Antoine Osby

Allegations: The complainant alleges that unknown officers (1) struck him with an unmarked squad car, (2) searched and handcuffed him, (3) punched him several times in the ribs, and (4) verbally abused the victim, his mother.

Investigation: A telephone interview was obtained of the complainant, Antoine Osby, who provided physical descriptions for the accused, two male whites and a possible Hispanic officer. The complainant stated that he would provide the names of witnesses and the license plate number for the squad car, but failed to do so. He said his mother, Dorothy Osby, has the license plate number. The complainant failed to keep several scheduled appointments to view photographs in an attempt to identify the accused. Dorothy Osby failed to respond to the letter sent to her and failed to cooperate with the investigation. The investigation failed to disclose any contact card on file for the complainant.

Outcome: Unfounded – the complainant initially cooperated by giving a telephone interview but failed to further cooperate by viewing photographs in an attempt to identify the accused. There are no witnesses or physical evidence at hand to corroborate the complainant's allegations. The complainant stated he did not seek any medical attention following the incident but did continue treatment for a previous injury to his other leg.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for CR#298951 that Dr. Shane relied upon is misleading. For instance, they assert that no statement from the complainant/victim (Antoine Osby) was taken, however this is misleading. The CR reflects that Osby gave a telephone interview wherein he provided physical descriptions for the accused officers, and promised to provide license plate numbers of the

involved police vehicles and officer names (he failed to do so). Additionally, the complainant failed to keep several scheduled appointments to view photographs in an attempt to identify the accused. Complainant's mother, who is also an alleged victim/witness, failed to respond to letters seeking cooperation in the investigation. Also, the data is misleading because it indicates no accused officers gave statements/submitted administrative reports, but that is because complainant failed to cooperate in order to identify any accused officers. The CR was ultimately unfounded.

This investigation was reasonable.

---

CR #300076 (CITY-WATTS CR-029953-CITY-WATTS CR-030009)

Complaint Received: August 18, 2004

Date of Incident: August 18, 2004

Address of Incident: 6200 S. Western

Accused: Unidentified

Victim: Dwight Johnson Jr., Shonna Dobine

Complainant: Dwight Johnson Sr., Annette Johnson

Allegations: The complainant alleges that an unidentified officer (1) kicked Dwight Johnson Jr. about the body, (2) dragged Dwight Johnson Jr. on the ground, (3) punched Dwight Johnson Jr. about the head, (4) handcuffed Dwight Johnson Jr. too tightly, and (5) verbally abused Shonna Dobine in that he called her a "bitch."

Investigation: An in-person interview was conducted with Dwight Johnson Jr. The identity of the accused was not established. Dwight Johnson Jr. stated that while he and his sister, Shonna Dobine, were driving in the Jewel parking lot, two officers in civilian dress ordered him out of the car. Dwight Johnson Jr. complied with the officer's requests but pulled away when one of the officers "rushed" him. One of the officers then pulled his shirt over Dwight Johnson Jr.'s head and he fell to the ground. While he was on the ground, one of the officers kicked him about the right side of his body, dragged him on the ground by his arms and then handcuffed him too tightly. Dwight Johnson Jr. related that he was then placed in the rear of a squad car where he was punched about the left side of the head. Dwight Johnson Jr. related that he sustained pain to the back of his head, scrapes to his elbows, stomach, wrists, legs and pain to the right of his rib cage, but he did not seek any medical treatment.

Telephone interviews were conducted with the complainants and they stated they were not present during the incident. A telephone interview was conducted with the witness, Shonna Dobine. She related that as she and her brother were driving into the Jewel parking lot and they were stopped by the police. At this time, Dwight Johnson Jr. exited the car and began running. He ran less than a half block, when he tripped over a chain connected to a stop sign and fell to the ground. Once Dwight Johnson Jr. was on the ground, three civilian officers approached him and started kicking him about the face and the right side of the body. Dwight Johnson Jr. was then handcuffed and placed in an unmarked squad car. Dobine further related that a male/black officer verbally abused her in that he called her a bitch. Dobine related that Dwight Johnson Jr. sustained bruises to his face and arms, a bruise to his stomach and scrapes to his right arm and elbow.

PO Gerald O'Malley gave a witness to/from report and stated that on 8/18/04, Dwight Johnson was the subject of an arrest warrant issued as part of NAGIS' Operation Corner Pocket. Upon attempting to place Johnson into custody, he attempted to flee on foot and while doing so ran into a parking barricade knocking himself to the ground. At this time, PO O'Malley placed him into custody and at no time did he see any department member kick Johnson, drag him to the ground or punch him. He did not observe any injury to Johnson. Dwight Johnson was placed in the rear of a police vehicle and transported to Homan Square.

48

PO Julius Beacham gave a witness to/from report and stated that he was inside of a video surveillance van conducting surveillance of the 6200 block of S. Artesian. During this time, he observed Dwight Johnson enter a vehicle and attempt to leave the area. He notified the enforcement officers of this. Once notified the vehicle was stopped, the vehicle was completely out of his sight. While processing in Unit 189, Dwight Johnson never complained to PO Beacham about his handcuffs being too tight or any physical abuse nor did he witness Dwight Johnson be physically abused at any point in time.

PAGE 2 OF THE NARRATIVE TO THE SUMMARY REPORT DIGEST IS MISSING.

Outcome: Unfounded

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. This CR was initiated by complainant who did not witness the arrest of his son by unknown CPD officers. The Loevy/Shane spreadsheet is misleading because it asserts that the victim did not provide an affidavit when the victim provided a written and signed statement. Moreover, the Loevy/Shane spreadsheet is misleading because it suggests that there was no attempt to identify the arresting officers when the OPS investigator contacted the two arresting officers who provided a to/from statement in response. The Loevy/Shane spreadsheet is incorrectly asserts that statements from the accused officers were not taken. Contrary to the spreadsheet, but the accused and non-accused officers gave statements in their to/from reports. The spreadsheet indicates no canvas, but there is a report that a canvas was conducted.

This investigation was reasonable.

CR #301558 (CITY-WATTS CR-030656-CITY-WATTS CR-030684)

Complaint Received: November 2, 2004

Date of Incident: October 26, 2004

Address of Incident: 300 E. 29th

Accused: PO Davidson Kibble #18735, PO Virginia Parker #17041

Complainant: Sgt. William Riga #1480

Witnesses: PO Mack Cleggs #11554

Allegations: It is alleged that the accused failed to report damage to department pool vehicle 7539, specifically, the rear center seat belt.

Investigation: Statements of the complainant and witness are sufficiently contained in the department vehicle damage report and CR initiation report. No sworn affidavit or further interview is necessary. The r/sgt requested the pool vehicle log and any applicable maintenance logs from the Electronic and Motor Maintenance Division. The only reference to seatbelts made in the records is that on 9/26, the rear seatbelts were replaced. Officers from three other units, 001, 002 and 126 used this vehicle between that date and 10/26, when the vehicle was signed out by PO Parker. In the absence of any positive record of the seatbelt's condition while the vehicle was being used by the other units, it must remain unknown how or by whom the seat belt was cut.

The accused states that the attendant at Area One Motor Maintenance gave them keys to two potential replacement pool vehicles. The first was found to be undesirable because of an obvious engine problem. They then inspected the vehicle in question and found it to have extensive minor damage including the rear center seat belt. Both officers maintain that they told the attendant about these problems, and specifically mentioned the seatbelt to him, and he assured them that all damage had been reported. The officers accepted the vehicle because both front and two rear seat belts were complete and functional.

49

Outcome: Unfounded – the accused cannot reasonably be accused of having cut the seatbelt because they found and reported such to the attendant at motor maintenance. They also fulfilled their obligation of inspecting the vehicle and should be able to rely on his word that minor damage had previously been reported.

Review of Loevy/Shane Spreadsheet: It is alleged that the accused failed to report damage to a department pool vehicle, specifically, the center rear seat belt. The accused gave statements stating they requested a vehicle, inspected the vehicle and advised the attendant at Area One Motor Maintenance that the center rear seat belt was damage. The attendant advised the damage had been reported and confirmed the other rear seat belts were functional. No victims were involved in this CR. The CR was investigated regarding the damaged seat belt and no discipline was recommended. The spreadsheet indicates the complainant was not contacted but there was a statement from Sgt Riga. A scene visit, camera search and photographs were all unnecessary.

This investigation was reasonable.

---

CR #301882 (CITY-WATTS CR-030835-CITY-WATTS CR-030845)

Complaint Received: November 10, 2004

Date of Incident: October 18, 2004

Address of Incident: Daley Center, 55 W. Randolph

Accused: PO Sharnell Berry #10895

Victim: Redacted (Juvenile)

Complainant: Chief Admin. Tisa Morris

Allegations: It is reported that the accused has been named as the respondent in an order of protection.

Outcome: Administratively Unfounded – the allegations contained in this CR will be incorporated in CR 301873 which is currently being handled by the OPS.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. This CR was initiated by complainant who obtained an emergency order of protection against the accused Officer. The Loevy/Shane spreadsheet incorrectly asserts no investigation was conducted when this CR was incorporated in related OPS investigation under CR#301873. This fact is omitted from the spreadsheet, rendering it incomplete and misleading since it criticizes the failure to investigate this CR.

There was no investigation into this file as it was incorporated into another CR number.

---

CR #303412 (CITY-WATTS CR-031688-CITY-WATTS CR-031697)

Complaint Received: February 8, 2005

Date of Incident: January 30, 2005

Address of Incident: 1230 N. Burling St.

Victim: Tamika Booker

Complainant: Jessica Moore

Allegations: The complainant alleged that approximately 9 male/white officers had entered and ransacked her apartment without a search warrant. Complainant further alleged that one of the accused threatened to knock her teeth out and called her a "fucking bitch." She also alleged that one of the accused called the victim a "stupid black bitch."

Investigation: The r/sgt met with the complainant in order to interview her regarding her allegations as depicted, and also for her to sign CPD formset 44-126. Ms. Moore was presented with the sworn affidavit with

50

the written allegations that she had reported to OPS. Ms. Moore subsequently refused to sign the sworn affidavit, writing the word refused in the complainant's signature section on the form. The r/sgt is unable to proceed any further with this CR.

Outcome: Unfounded – due to the complainant's refusal to sign the CPD sworn affidavit.

Review of Loevy/Shane Spreadsheet: Victim/Complainant alleged nine officers ransacked her apartment without a search warrant and called her a "stupid bitch" and "stupid black bitch." Per the CR file, the investigator met with and "interviewed" the Victim/Complainant who did not provide any additional information and wrote "refused" on the required affidavit form, but the spreadsheet omits that fact.

This investigation was reasonable.

CR #303803 (CITY-WATTS CR-031978-CITY-WATTS CR-032009)

Complaint Received: March 1, 2005

Date of Incident: February 20, 2005

Address of Incident: 2873 E. 91st Street

Accused: PO Michael Marozas #11364

Complainant: Theodore Brown

Witnesses: PO Robert Espinosa

Allegations: The complaint alleges that following a traffic stop, an unknown male white causally dressed officer, driving a squad car with license plates M03517, verbally abused him by repeatedly calling him a "mother fucker." The complainant further alleged that the accused searched his car without a warrant or permission.

Investigation: The r/sgt attempted to contact the complainant, Theodore Brown, by telephone on 3/5/5, 3/6/05, 3/7/05 and 3/17/05 with negative results. On 3/7/05, the r/sgt mailed a certified letter to the complainant and has received no contact.

Outcome: Unfounded – due to the lack of cooperation from the complainant.

Review of Loevy/Shane Spreadsheet: Spreadsheet indicates Complainant was not contacted. This notation does not reflect that the investigator called the Complainant four times by phone and once by certified mail with negative response.

CR #305537 (CITY-WATTS CR-032641-CITY-WATTS CR-032674)

Complaint Received: May 18, 2005

Date of Incident: March 10, 2005 and May 12, 2005

Address of Incident: 3151 W. Harrison

Accused: Det. Joseph Gentile #20266, PO "Rodriguez"

Complainant: Kimberly Booker

Witnesses: Redacted (Juvenile)

Allegations: The complainant alleges that her son was arrested on 3/10/05 and an unknown officer released him to the custody of an unknown person. As a result, he went missing for several days. The complainant further alleges that an unknown officer refused to file a police report for her on 5/12/05 after he went missing for almost two weeks.

51

Investigation: The r/sgt had one occasion to speak with the complainant. At the time, she was unable to speak at length, however, she stated she would contact the r/sgt at a later date. To date, the complainant has not responded to phone messages left for her. She also failed to claim a certified letter sent to the address she gave.

Pertinent documents relative to the incident on 3/10/05 were obtained. An arrest report filed on the date in question shows the witness was arrested at Wells High School and charged with battery. The arrest report further reflects the fact that the complainant was notified. The matter was resolved by an Informal Station Adjustment made by Youth Investigator Joseph Gentile Jr. The station adjustment also shows the signature of the minor arrestee and a person who signed on the parent/guardian line. The signature appears to read "Doris Manning," however, the signature is not legible enough to be sure. It should be noted that in the case report relative to the incident, a Doris Manning was notified regarding the incident. A message was left on Ms. Manning's phone number; however, no return call has been received. It is unclear what role Ms. Manning played in the incident.

Outcome: Unfounded – the r/sgt is unable to ascertain the identity of any PO Rodriguez. An inquiry of the CPD personnel database shows two persons with the last name Rodriguez assigned to the Area 4 Detective Division.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. The complainant made a missing person's report after her 16 year old had been missing for almost two week after he was arrested for fighting at school and released to an unknown person before she arrived at the station. Two days after she filed the missing person's report, her son returned home after two weeks. Her son indicated he had been living with a 26 year old man. Complainant attempted to file a police report with an unknown Youth Division Officer who refused and instead offered counseling. The OPS investigator contacted the complainant to conduct an interview but she was unavailable so she offered to contact the investigator the next day. The OPS investigator then sent the complainant a certified letter for the purposes of conducting an interview and obtaining a signed Sworn Affidavit form. There is no indication that the complainant ever contacted OPS to cooperate with the investigation. The complainant failed to sign the affidavit required by Illinois law and the CBA to proceed with the investigation, rendering the items the Loevy/Shane spreadsheet state were not done to be inapplicable. Thus, OPS closed this investigation unfounded when the complainant failed to cooperate and provide her story before the investigation could move forward, preliminary or otherwise. The spreadsheet shows the complainant was not contacted but the investigator made reasonable efforts. There was no need to conduct an area canvas, scene photos, radio transmissions or seek cameras as the complaint was that an officer refused to take a report over the telephone.

This investigation was reasonable.

CR #305586 (CITY-WATTS CR-032771-CITY-WATTS CR-032785)

Complaint Received: May 27, 2005

Date of Incident: May 14, 2005

Address of Incident: 1718 S. State

Accused: Sgt. Deborah Molly #1754, Unknown

Complainant: Kourtland Perry

Allegations: The complainant alleges that (1) a department member apparently assigned to Central Detention called the complainant a "faggot" while he was being released from custody, and (2) Sgt. Molloy threatened to arrest him, failed to take any action, and mocked him when he complained to her about the way he was treated in Central Detention.

CITY-BG-063041

Investigation: On 5/28/05, the r/lt left a message on the complainant's answering machine. On 5/29/05, a certified letter was prepared and mailed by the r/lt requesting the complainant's assistance in investigation the allegations. No reply has been received.

Outcome: Unfounded – lacking the cooperation of the complainant (and a signed affidavit), the r/lt is unable to proceed with the investigation.

Review of Loevy/Shane Spreadsheet: Spreadsheet alleges "no" contact of Victim/Complainant. However, investigator left a message on the Victim/Complainant's answering machine and sent a certified letter with no response.

This investigation was reasonable.

CR #306022 (CITY-WATTS CR-032967-CITY-WATTS CR-032983)

Complaint Received: June 2, 2005

Date of Incident: May 31, 2005

Address of Incident: 7055 S. Yale

Accused: Unknown Female, Several Unknown Males

Complainant: Shandria Valenzuela

Witnesses: Laura Sanford, Tommy Brown

Allegations: The complainant alleges that a female and several male casually dressed officers entered and searched her apartment without justification.

Investigation: On 7/6/05, the r/sgt placed a call to the complainant and asked her if he could relocate to her residence for an interview. The complainant agreed to be interviewed and the r/sgt relocated to her residence. During the course of the interview, the complainant indicated she no longer wished to pursue the complaint. The r/sgt then informed her that if she wished to terminate the complaint, she would have to sign a CR voluntary termination letter which she agreed to sign. She signed the termination letter but refused to sign the sworn affidavit.

Outcome: Unfounded – due to the voluntary termination of the complaint.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainant and victim is the same person, Shandria Valenzuela, and she gave a statement after being interviewed. (CITY-WATTS CR-032974). In fact, Ms. Valenzuela signed a letter of declination stating she did not want to pursue the complaint, which the Loevy/Shane spreadsheet does not reflect. Id. Moreover, the Loevy/Shane spreadsheet asserts that no photos of the victim were taken by CPD when it is not applicable because the complainant is the victim and she did not allege physical injuries.

This investigation was reasonable.

CR #306762 (CITY-WATTS CR-033178-CITY-WATTS CR-033215)

Complaint Received: July 8, 2005

Date of Incident: June 9, 2005

Address of Incident: 2541 E. 83rd Street, Apt. 3 ½ A

Accused: Unidentified

Victim: Richard Herdle

53

Complainant: Horace Herdle

Allegations: The complainant alleges that unidentified officers (1) struck him and the victim, his brother, Richard Herdle about the head and face several times while they were handcuffed, and (2) falsely arrested them.

Investigation: After attempts were made to have the complainant and victim sign the sworn affidavit as required by the Illinois Uniform Peace Officers Disciplinary Act and advising them that failure to do so may result in the termination of the investigation, the complainant and victim have failed to contact the r/inv and have not signed the sworn affidavit. Should the complainant and victim sign the sworn affidavits or additional information or evidence becomes available, the investigation can be re-opened.

The complainant was arrested for UUW, PCS (crack), POC over 30G and no FOID; and the victim was arrested for PCS (crack).

Outcome: Unfounded – no affidavit

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainant and victim is the same person, Richard Herdle. The investigator attempted to contact Mr. Herdle on multiple occasions, including by attempting to contact Mr. Herdle by telephone at multiple numbers and by sending Mr. Herdle a certified letter. Mr. Herdle failed to respond to any of these contacts and therefore failed to sign the affidavit required by Illinois law and the CBA. Thus, OPS closed this investigation unfounded when the complainant failed to cooperate. The Loevy/Shane spreadsheet fails to acknowledge these facts.

CR #307408 (CITY-WATTS CR-033465-CITY-WATTS CR-033485)

Complaint Received: August 10, 2005

Date of Incident: July 30, 2005

Address of Incident: 1900 W. Monterey

Accused: Unknown

Complainant: Ramona Donelson

Allegations: The complainant alleges she is having a continuing problem of illegal drug activity in the vicinity of her home, along with multiple episodes of her property being vandalized, for which the police are taking no action, after she has made numerous complaints. The complainant further alleges that on 7/30/05, she went to the 022nd District station to make a report related to the above. After her report was taken, she attempted to ask further questions of the district desk personnel, who ignored her. The complainant further alleged that while she was attempting to get the attention of desk personnel, an unidentified male/white citizen entered the station, approached the district desk, and received immediate assistance. The complainant feels that she was being ignored because she is black, and the white citizens are receiving preferential treatment at the 002nd District Station.

Investigation: On 8/12/05, the r/sgt attempted to contact the complainant, but the r/sgt received a message stating the call could not be completed as dialed. Each attempt to dial this phone number resulted in the same recording. On 8/12/05, a certified letter was mailed to the complainant and as of 9/21/05, no response has been received. A check with the CPD mailroom revealed the letter was mailed out on 8/15/05 and they confirmed that the article was not returned.

Outcome: Unfounded – the complainant could not be contacted at the telephone number she provided, and she did not respond to a certified letter mailed to her.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. The complainant/victim alleged the accused officer racially discriminated her and gave preferential treatment to white citizens at the station. The Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainant and victim is the same person, Ramona Donelson. The investigator attempted to contact Ms. Donelson on multiple occasions, including by attempting to contact Ms. Donelson by telephone at multiple numbers and by sending Ms. Donelson a certified letter. Ms. Donelson failed to respond to any of these contacts and therefore failed to sign the affidavit required by Illinois law and the CBA. Thus, OPS closed this investigation unfounded when the complainant failed to cooperate. The Loevy/Shane spreadsheet fails to acknowledge these facts. The spreadsheet indicates the complainant was not contacted but ignores the efforts to make contact.

This investigation was reasonable.

CR #307768 (CITY-WATTS CR-033727-CITY-WATTS CR-033781)

Complaint Received: August 16, 2005

Date of Incident: August 15, 2005

Address of Incident: 1357 N. Kostner

Accused: Unidentified

Victim: Complainant's Son (Juvenile)

Complainant: Danette McKinley

Witnesses: Charles Cammon

Allegations: The complainant alleges that unidentified officers (1) broke down her door striking her son with a piece of wood, and (2) pointed a gun at her son without justification.

Investigation: After several attempts to have the complainant, Danette McKinley, sign the sworn complaint affidavit as required by the Illinois Uniform Peace Officers Disciplinary Act and advising her that failure to do so may result in the termination of the investigation, the complainant has not signed a sworn affidavit.

The r/inv spoke with the complainant on 8/16/05 and scheduled her to come to the office for the purpose of allowing her son to be interviewed relative to the incident. The complainant relates that she was not home at the time of the incident, but a close friend, Charles Cammon, was at her residence and was the only adult present at such time. She did not know what portion of such Charles Cammon witnessed and made allegations on his behalf. She stated that her children 9 and 3, were also home at the time of the incident. The complainant stated her son told her that the police broke down the door of the residence and entered same; a piece of the door broke down and subsequently struck her on the head. She indicated she would be taking her son for a medical examination at Norwegian Hospital. The complainant stated her son had a minor "bump" on the left side of his head, but it was "hardly" noticeable. The complainant indicated the injury was not much of a concern, but she wanted her son to be examined for other reasons related to the incident. Her son has been unable to sleep and has urinated on himself. The complainant also stated she had a copy of the search warrant that was left at her residence and agreed to bring it in when she brought her son to be interviewed on 8/16/05. She also stated she would have Charles Cammon accompany her to be interviewed if he was available to do so.

On 8/16/05, the complainant was contacted by telephone, and she told the r/inv that she wished to cancel her appointment for her son to come in for an interview. She stated her reason for doing so was that her attorney wished to review the matter before anyone gave a statement. The complainant stated that she would schedule an appointment for an interview with the r/inv at a later date. As of 10/20/05, the complainant and the victim have not contacted the r/inv.

CITY-BG-063044

Charles Cammon was arrested for PCS 2.5-10 grms of cannabis on 8/15/05 at 1357 N. Kostner.

Outcome: Unfounded – no affidavit

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane created is misleading. It is alleged that when executing a search warrant, the accused broke down the complainant/victim's door. It is further alleged that when the accused broke down the complainant/victim's door, a piece of wood struck the victim's head and a gun was pointed at the victim. Dr. Shane's spreadsheet states that no victim statement was obtained and that no witness was contacted. An OPS investigator spoke with the complainant and took her statement. The investigator set up an in-person meeting with the complainant and the victim (the complainant's son), as well as an additional witness to the incident. However, the complainant called the OPS investigator back and canceled the meeting, advising that she was speaking to an attorney and did not want to give a statement. The investigator followed up and the complainant and victim did not provide a response. As such, the CR was determined to be unfounded.

This investigation was reasonable.

CR #309181 (CITY-WATTS CR-036918-CITY-WATTS CR-036931)

Complaint Received: November 2, 2005

Date of Incident: October 14 and 17, 2005

Address of Incident: 4316 S. King

Accused: Unknown

Victim: Two Victims Redacted (Juveniles)

Complainant: Portia Granger

Witnesses: Two Witness Redacted (Juveniles)

Allegations: The complainant, who did not witness the incident, alleges on two separate occasions unknown officers entered and searched her apartment without justification.

Investigation: The r/sgt made an appointment to meet with the complainant in person on 11/6/05 at her residence. The r/sgt met with her and went over the allegations outlined in the initiation report. After speaking to the complainant regarding her allegation, she stated she no longer wished to pursue the complaint. The r/sgt then produced the letter of declination form (CPD 44.304) and explained the form to her. The complainant signed the form. R/sgt was unable to interview the witnesses who are both minor children of the complainant. Attempts to identify the involved officers via the PCAD system were met with negative results.

Outcome: Not Sustained – the r/sgt is unable to pursue this matter any further.

Review of Loevy/Shane Spreadsheet: The spreadsheet created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim, when in fact the complainant and the victim are the same person, Portia Granger, who gave an in person statement and signed a declination on November 6, 2005. (CITY-WATTS CR- 036926). In that statement, Portia Granger communicated that she no longer wished to pursue the complaint, which the spreadsheet omits. Id. Portia Granger did not witness this incident. The coded data also is misleading because the Loevy firm and Shane claim no personal/employment records were searched and no incident reports searched and no inventory vehicle report searched, when in fact OPS obtained the PCAD from that date and time in an attempt to identify the officers involved, but was met with negative results. (CITY-WATTS CR- 036926). The spreadsheet indicated that there were no statements from the complainant, witnesses, and the accused officer. The spreadsheet also states that the complainant and the victim did not provide a statement but did provide an in-person statement. The complainant terminated her complaint.

This investigation was reasonable.

CR #309601 (CITY-WATTS CR-037350-CITY-WATTS CR-037385)

Complaint Received: December 6, 2005

Date of Incident: October 22, 2005

Address of Incident: 1220-26 S. St. Louis

Accused: PO Joseph Almanza #10650, PO Carlos Vieyra #4735

Complainant: Tony Caridi

Witnesses: Kenneth Murphy

Allegations: The complainant alleges that the accused officers, while responding to a call of theft from a building, failed to provide proper police service by allowing the offenders to leave the scene while the complainant was present.

Investigation: The r/sgt made contact with the complainant on 11/25/05 and arranged for a meeting on 12/7/05. On 12/7/05, the complainant failed to show up. The r/sgt then sent a certified letter on 12/27/05. The complainant has not contacted the r/sgt. The r/sgt has exhausted all means of communication in contacting the complainant and cannot proceed without his cooperation.

The general offense case report for RD HL729026 indicates that the complainant stated he is the owner and is rehabbing the building. On the date/time, the complainant came to board up the building and heard noses in the basement of the building. He called the police and as he was waiting for the police to arrive, the offenders were coming out of the building carrying several bundles of electrical wiring. Offenders fled eastbound down the alley. No arrests were made.

Outcome: Unfounded

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for CR#309601 that Dr. Shane relied upon is misleading. For instance, they assert that no statement from the complainant (Tony Caridi, who alleged officers failed to prevent thieves from leaving a building) was taken, however this is misleading. The investigator (Sgt. Moreno) contacted the complainant and arranged for a meeting. The complainant failed to show up and failed to respond to the certified letter that was sent to him. The data also states that no administrative report was submitted, and while no to/from was obtained from the accused, the CR contains the General Offense Case Report regarding the theft from building. The CR was determined to be unfounded due to lack of cooperation from the complainant.

This investigation was reasonable.

CR #311603 (CITY-WATTS CR-033823-CITY-WATTS CR-033884)

Complaint Received: March 15, 2006

Date of Incident: November 5, 2004

Address of Incident: 8226 S. Halsted

Accused: PO Dachae Blanton #17512

Victim: Otha Stewart

Complainant: Attorney Edward Fox

Allegations: The complainant alleges that the accused (1) falsely arrested the victim for solicitation of a sex act.

Investigation: On 3/16/06, the r/inv unsuccessfully attempted to contact the complainant regarding the investigation. A detailed message was left on his voicemail requesting that he contact the r/inv as soon as possible. On 3/21/06, the r/inv spoke with Fox and explained the investigative procedures and mandates of section 1-109 of the Illinois Code of Civil Procedure. Fox related that he understands the Department's procedures but requested that the r/inv not contact his client because of a pending civil suit against the CPD and the City of Chicago. Fox further related he did not wish to discuss this matter and that he would mail a letter to the r/inv expressing this desire. The letter was received on 3/23/06 from Fox on behalf of his client relating that Otha Stewart would not be available to speak with the r/inv until the completion of the civil suit. The complainant, Fox, has failed to cooperate in the conduct of the investigation and he failed to sign an affidavit attesting to the truthfulness of his allegations. He also refused to provide the r/inv with a statement or make his client available for an interview.

Outcome: Unfounded – the investigator concluded that based on all evidence received at this time and the complainant's failure to cooperate in the conduct of the investigation, the allegation that the complainant was falsely arrested for the solicitation of a sexual act has been proven to be false or not factual.

Review of Loevy/Shane Spreadsheet: The spreadsheet accurately reflects that the Complainant and Victim were contacted and refused to be interviewed and/or provide an interview/statement. Note: complainant was a civil attorney.

This investigation was reasonable.

CR #312705 (CITY-WATTS CR-034735-CITY-WATTS CR-034790)

Complaint Received: May 16, 2006

Date of Incident: May 2, 2006

Address of Incident: 4900 W. Adams

Accused: PO Abraham Mora #10636, PO Lawrence Willems #7394

Complainant: Alvin Delk

Allegations: The complainant alleges that the accused officers removed $290 USC which was not inventoried or returned.

Investigation: The r/sgt was unable to contact the complainant via telephone due to no telephone number listed on the CR initiation. The r/sgt sent a request for interview letter on 5/23/06 via certified mail. The return receipt was signed for by the complainant. The complainant failed to contact the r/sgt as of 6/6/06.

The r/sgt interviewed PO Lawrence Willems who stated that after curbing the complainant's vehicle for a traffic violation and discovering that the complainant was driving on a suspended license and no insurance, the complainant was placed in custody. During the arrest process, PO Willems asked the complainant to count his money and inform him of the amount. PO Mora witnessed the complainant counting his money, but at no time did PO Mora handle the complainant's money. The complainant stated he had $200 USC, which was entered on the arrest report. PO Mora was interviewed and stated that during the arrest process, PO Mora never touched the money, only watched the complainant count it in his presence so he could list it in the narrative of the arrest report.

Outcome: Unfounded – the complainant is uncooperative in that he failed to contact the r/sgt. The complainant never complained to the officers when he counted his money that there was any money missing.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane created is misleading. The complainant was arrested for driving on a suspended license and no insurance and was placed in custody. During the arrest process, the accused officer asked the complainant to count his money and inform him of the amount. The accused officer witnesses the complainant count his money, but did not ever handle the money himself. The complainant stated he had $200, which was entered into the arrest report.

Complainant then alleged the accused officers removed $290 which was not inventories and returned. The CR in this case was unfounded because the complainant was uncooperative with investigation. The complainant did not sign a sworn affidavit, despite numerous attempts by the investigator to reach the complainant. The investigator sent a request for interview letter via certified mail. The return receipt was signed by the complainant, but the complainant failed to contact the investigator. The spreadsheet indicated the complainant was not contacted but ignored the efforts to make contact, and stated there was no canvas, search for cameras, or scene photos yet the allegations occurred inside the booking facility.

This investigation was reasonable.

CR #313133 (CITY-WATTS CR-035097-CITY-WATTS CR-035135)

Complaint Received: May 31, 2006

Date of Incident: May 12, 2006

Address of Incident: 5745 S. Normal

Accused: Unknown

Complainant: Pearl Griffin

Witnesses: John Hall

Allegations: The complainant alleges that a male white plainclothes officer entered her home without a warrant or permission.

Investigation: The r/sgt met with the complainant on 6/22/06 and the complainant signed the sworn affidavit then notified the r/sgt that she was not present at the time of the incident. The complainant stated her son was the witness and advised the r/sgt to contact her son.

The r/sgt spoke with the witness, John Hall, on 6/25/06 who related the accused officer was not a CPD officer but may have been accompanied by CPD members. Hall related that he was sitting in the living room of his house when a m/w plainclothes officer entered the open front door. Hall related that it was not a CPD officer that entered his house because the officer had a different type of badge. The officer questioned Hall about a possible credit card fraud and then left. Hall related that there were other officers outside that may have been CPD officers, but he was only sure that the officer that entered his home was not a CPD officer.

The witness and complainant both then stated they did not wish to pursue the complaint. A contact card search was negative. A PCAD search involved a mistaken call. The call was made from the complainant's home to 911 which resulted in "no police service." Upon questioning, the complainant related that this call was mistakenly made by a small child in her home. The r/sgt is unable to identify any possible accused.

Outcome: Unfounded

Review of Loevy/Shane Spreadsheet: The complaint alleged an unknown officer entered her home without a warrant. However, the complainant was not home at the time. The investigator interviewed the complainant's son who indicated the officer involved was not CPD. Both complainant and victim chose not to pursue the complaint. It is unclear why Dr. Shane left this CR in the spreadsheet when it was undisputed that the accused officer was not CPD. The spreadsheet indicates there was no statement from the complainant or a witness but it also states there were in-person interviews. The spreadsheet also indicates there was canvas, search for cameras, or scene photographs – all of which were unnecessary.

This investigation was reasonable.

CR #310745 (CITY-WATTS CR-038023-CITY-WATTS CR-038161)

Complaint Received: January 24, 2006

CITY-BG-063048

Date of Incident: January 19, 2006

Address of Incident: 1029 E. 130ᵗʰ Street

Accused: Sgt. Tommy Walker #2328

Complainant: Dep. Director Beth Ford, Unit 135

Witnesses: PO Margie Reid-Pittman, Raymond Booker, Margaret Pritchett, Rosie Lee Walker, Bernice Jackson, Doris Martin, Annie Deale, Mary Ann Booker, PPO Lawrence Williams #18542, PO Robert Walker #17330, Walter Johnson, Joyce Johnson, Claudia Jones, Herman Larry, PO Phillip Armstrong #5058

Allegations: It is alleged by the complainant that the accused made public statements which were contrary to the department's policy in respect to community policing.

Investigation: The investigation has determined that on 1/19/06, the accused attended a beat meeting for beat 533 where is alleged to have made public statements which were contrary to the department's policy in respect to community policing. The meeting was attended by Community Organizer Reid-Pittman who related she witnessed the accused make several statements which supports the allegation. Multiple community members were interviewed who were present at the beat meeting and they also acknowledged that the accused made negative comments pertaining to his being present at the meetings and about the CAPS program. Specifically, the accused did not want to be there at the meeting, that CAPS didn't work, and that he's tired of people complaining about the same old problems that are not going to go away. Even though the accused stated that the citizens did not have any complaints about anything during the meeting, multiple witness interviews prove that to be untrue. PO Armstrong also admitted to hearing the accused inform the community members that he did not want to be at the CAPS meeting. As such, the conduct displayed by the accused at the community beat meeting was conduct which was contrary to the sprit of departmental policy in regards to its community policing program.

Outcome: Sustained – 2-day suspension

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for CR#310745 that Dr. Shane relied upon is misleading. For instance, they assert that no statement from the complainant (Dep. Dir. Beth Ford) was taken, however the CR contains Ford's initiation report and an interview of Ford contained in the report of the investigator (Daria Ringo). Moreover, they allege no witness statement was taken, but the CR reflects 15 witnesses were interviewed as reflected in the various reports/statements. Additionally, the CR shows that the investigator attempted to speak to two other witnesses. Ultimately, the allegation against the accused, Sgt. Tommy Walker—who stated during a CAPS meeting that he did not want to be there, that CAPS did not work, and that he was tired of people complaining of the same old problems—was sustained.

This investigation was reasonable.

CR #310962 (CITY-WATTS CR-038190-CITY-WATTS CR-038205)

Complaint Received: February 8, 2006

Date of Incident: February 1, 2006

Address of Incident: 128 N. State

Accused: PO Joel Ruiz #13120

Complainant: Jonquinae Harris

Allegations: The complainant, a CTA customer service agent, alleges the accused failed to intervene on her behalf during an argument she had with an upset CTA train passenger.

Investigation: The r/sgt contacted the complainant at the numbers provided by OPS. The numbers turned out to be the CTA control desk and the CTA 95ᵗʰ Street terminal. It should be noted that the complainant's address

supplied to the r/sgt by the OPS call taker is the address for the 95th Street CTA platform. The r/sgt eventually was able to determine that the complainant was still employed by the CTA and finally located her working for the CTA at the Brown Line and Irving Park. The r/sgt was able to schedule a meeting with the complainant. She related that she was assigned to work at the Red Line station at Washington on 2/1/06. She was approached by an unknown female black walking with a cane who was upset that the CTA elevator at this location was out of service and that this CTA patron was rude and loud in her conversation with the complainant. The complainant stated that the accused observed this dispute, and he did not intervene on her behalf. She felt he was not doing his job while at the location. The r/sgt asked the complainant if the CTA patron had, in her opinion, violated the law in any way. The complainant stated "no, she was just upset about the elevator." The accused's statement is very similar to the complainant, however, he added that he did in fact walk over to the complainant, but the upset patron had already proceeded down the stairs to the platform level.

Outcome: Unfounded – the officer responded in an appropriate manner. The complainant made no factual allegation of misconduct which can be leveled against the accused. She felt that the accused should have intervened on her behalf, in essence, perform her job as a customer service assistant and deal with a paying customer of the CTA who had a valid complaint with the CTA's services.

Review of Loevy/Shane Spreadsheet: Dr. Shane's spreadsheet states that no scene cameras or photos were located. However, when the investigator interviewed the complainant, she admitted that the upset patron was not violating the law, but was just upset about an out of order elevator. The CTA agent, the complainant, wanted the accused officer to intervene during a conversation with an upset customer. It was determined that the complainant had already directed the upset customer down the stairs, due to the elevator being out of order, and no police service was needed when called upon. The customer did not commit any violation on CTA property. As such, based on the complainant's own statements, camera or photo evidence (even if available), was not necessary in this investigation.

This investigation was reasonable.

---

CR #311881 (CITY-WATTS CR-055474-CITY-WATTS CR-056401)

Complaint Received: March 24, 2006

Date of Incident: March 24, 2006

Address of Incident: 5509 N. Harlem Ave.

Accused: PO Brian Murphy #19036, PO Jason Orsa #5350, PO Daniel McNamara #7766, PO Paul White #15067, PO George Bukowski #11982, PO Marek Olszewski #17929, PO Robert Babich #178771, PO Kimberly Kruser #1947, Sgt. Louis Danielson #1406

Victim: Obed Deleon, Shawn Nelson, Joseph Mularczyk

Complainant: Jenny Gomez

Witnesses: Len Villareal, Matthew Walsh, Julio Gomez, Federico Ordas, Juan Robles, Elizabeth Lamas

Allegations: The complainant alleges that PO Brian Murphy (1) pointed his weapon without justification at Obed Deleon, (2) threatened to kill Deleon, (3) punched Deleon about the head and body, (4) kicked Deleon about the head and body and (5) directed profanities at Deleon. It is alleged by Inv. Galindo that PO Brian Murphy (6) failed to take proper police action, (7) failed to report the incident to the supervisor and/or the department, (8) failed to complete and submit at TRR, and (9) provided a false report. Inv. Galindo alleges that PO Jason Orsa (1) punched Deleon about the head and body, (2) kicked Deleon about the head and body, (3) directed profanities at Deleon, (4) failed to take proper police action, (5) failed to report the incident to a supervisor and/or the department, (6) failed to complete and submit a TRR, and (7) provided a false statement. It is alleged by Inv. Galindo that PO Daniel McNamara (1) was in violation of the medical roll policy, (2) punched Deleon about the head and body, (3) kicked Deleon about the head and body, (4) directed profanities

at Deleon, (5) failed to take proper police action, (6) failed to report the incident to a supervisor or the department, (7) failed to submit a to/from report to a supervisor containing all the facts observed by him, (8) failed to complete and submit a TRR, and (9) provided a false statement. It is alleged by Inv. Galindo that POs Kimberly Kruser, George Bukowski and Robert Babich (1) had knowledge of misconduct on the part of a department member and failed to report it. It is alleged by Inv. Galindo that PO George Bukowski (2) impeded the investigation by going to 5509 N. Harlem and questioning potential witnesses. It is alleged by Inv. Galindo that POs Paul White and Marek Olszewski (1) placed Deleon, Nelson and Mularczyk in custody without justification, and (2) had knowledge of misconduct on the part of a department member and failed to report it. It is alleged by Inv. Galindo that Sgt. Louis Danielson (1) failed to conduct a thorough preliminary investigation, (2) failed to initiate a CR number, and (3) had knowledge of misconduct on the part of a department member and failed to report it.

Investigation: Video obtained via the owner of Taco Burrito King restaurant depicts POs Murphy, Orsa, and McNamara along with Walsh sitting down to eat as Deleon enters the restaurant. Deleon appears to make comments to people in the restaurant and can be seen standing in line to order food. POs Murphy, Orsa and McNamara are already seated at a table directly in front of the line for food and adjacent to the cash register. As soon as Walsh sits down, PO Murphy stands up, draws his weapon, and points it at Deleon's face. Deleon tries to slap PO Murphy's hand away with his hand and walks backwards as PO Murphy advances on him. Walsh stands up and Walsh and PO Murphy begin striking Deleon, pushing him against a row of gumball machines. POs Orsa and McNamara stand up and push customers and the restaurant's security guard who is trying to intervene, away from the altercation. POs Orsa and McNamara then join Walsh and PO Murphy in striking Deleon. PO Orsa grabs Deleon and drags him to the ground, at which time PO Murphy can be seen re-holstering his weapon. PO Orsa repeatedly kicks Deleon when Deleon is on the ground. Deleon briefly stands up, swinging his arms at Walsh, who continues to strike him. PO McNamara grabs Deleon around the neck and throws him back down to the ground. Walsh and all three officers make kicking and punching motions at Deleon while he is on the ground, still trying to get up. Nelson and Mularczyk walk towards the front entrance of the restaurant and are not seen in the remainder of the video. The officers then hold Deleon down until the first responding police officer arrives. POs Murphy, Orsa, and McNamara and Walsh exit the restaurant through the back entrance. Deleon is escorted out of the restaurant in handcuffs and is no longer wearing a shirt.

Department reports (case and arrest reports) indicate that Matthew Walsh informed officers that after a verbal altercation with Deleon, Nelson and Mularczyk, Deleon struck Walsh on the mount and Nelson and Mularczyk attempted to strike him. Walsh further related that he and Deleon fell to the floor and unknown citizens broke up the fight. Walsh was bleeding from the mouth but refused medical attention. The case report further indicates that Deleon related to the officers that he was irate over an unknown person parking and blocking the back entrance of the restaurant and when Walsh stated it was his vehicle, Deleon stated something that was out of line and stepped toward Walsh. Walsh then "accosted" Deleon. Deleon was arrested and charged with battery against Matthew Walsh. Shawn Nelson and Joseph Mularczyk were both arrested and charged with simple assault against Matthew Walsh. The arrest reports for Deleon, Nelson and Mularczyk further indicate that all three of them were self-admitted Spanish Cobras. Neither the case report or the arrest reports including the names of the involved officers nor mentioned their involvement in the fight. ET Photos of Deleon taken on 3/24/06 depict red marks on the left side of his face and both ears, bruises on his back, red marks on both wrists, and bruising on both calves.

OEMC records indicate there were two 911 calls made. One of the callers identified himself as Juan. Juan Robles reported there was a male/white with a gun, wearing a black shirt, fighting with another male inside the restaurant. Another 911 caller, identified as Jennifer Kamieniak, stated there were males fighting in the restaurant. The OEMC cassette summary indicates the dispatcher requested units to 5509 N. Harlem for a man with a gun. Sgt. Danielson replied that he was responding. Sgt. Danielson later requested the squadrol respond to the Taco Burrito King restaurant and stated individuals were being taken in to the 16th District.

CITY-BG-063051

Outcome:  PO Brian Murphy – allegations 1, 3, 4, 6, 7, 8, 9 and additional violation sustained; allegations 2 and 5 not sustained. PO Jason Orsa – allegations 1, 2, 4, 5, 6, 7, and additional violation sustained; allegation 3 not sustained. PO Daniel McNamara – allegation 1 unfounded; allegations 2, 3, 5, 6, 7, 8, 9 and additional violation sustained; allegation 4 not sustained. PO Kimberly Kruser – allegation 1 not sustained. PO George Bukowski – allegation 1 not sustained; allegation 2 unfounded. PO Robert Babich – allegation 1 not sustained. PO Paul White – allegations 1 and 3 not sustained. PO Marek Olszewski – allegations 1 and 2 not sustained. Sgt. Louis Danielson – allegation 1 sustained; allegations 2 and 3 not sustained.

Based on review of the accused's complementary and disciplinary histories, Sgt. Louis Danielson to be suspended for a period of 60 days. There is no preliminary recommendation for POs Murphy, Orsa and McNamara because that is being submitted directly to the Office of the Superintendent.

Police Board findings and decisions: discharge of PO Brian Murphy; discharge of PO Jason Orsa; PO Daniel McNamara suspended from his position and the services of the City of Chicago for one year, from 7/7/10-7/6/10. Recommend 180 days suspension for Sgt. Louis Danielson. On 3/1/12, Judge Kathleen Pantle reversed the decision of the Board as to Orsa, Murphy and Danielson.  On appeal, Judge Pantle's decision was reversed, and the original findings of the Police Board sustaining the allegations were reinstated. *Orsa v. Police Board of the City of Chicago*, 2016 Il. App (1st) 121709 (Ill. App. Ct. 2016).

Review of Loevy/Shane Spreadsheet: This CR resulted in sustained findings and recommended suspensions for 4 of the 9 accused officers. The disciplined officers were found to be in violation of several CPD rules. The Loevy/Shane spreadsheet has a few minor errors, including stating that the complainants were not contacted, when that should have been marked not applicable because one complainant, Jenny Gomez, did not witness the event and filed the complaint on behalf of the victim, Obed Deleon, who was interviewed and gave a statement, and the other complainant, Margarita Galindo, is an IPRA investigator who conducted the investigations in this CR.

This investigation was reasonable. Dr. Shane discusses this CR at page 57 of his report. He asserts that the investigation took too long and adds the following:

"Ultimately, the Chancery Court of Cook County reversed the City's termination and suspension of some of the officers because **"The Superintendent essentially conceded … that the lengthy delay [of 51 months] could not be explained"** (CITY-WATTS CR-056159). The court reversed the disciplinary findings (CITY-WATTS CR-056172). Thus, the City's delays not only signaled to officers that their misconduct would not be timely disciplined, but the delay was actually the reason why no discipline was imposed against the appealing officers. These lengthy delays also send a message to the community that CPD will not take their complaints seriously." (Dr. Shane Report at 57)(Emphasis in original).

Dr. Shane is incorrect. This ruling of the Circuit Court relied on by Dr. Shane was reversed by the Appellate Court of Illinois and the sustained finding of the Police Board was affirmed.

CR #315378 (CITY-WATTS CR-039616-CITY-WATTS CR-039641)

Complaint Received: September 13, 2006

Date of Incident: September 8, 2006

Address of Incident: 7028 S. Rhodes

Accused: Unknown

Complainant: Jesse Conner

Witnesses: Jesse Lee

Allegations: The complaint alleges that several unknown male white uniformed officers entered and searched his residence without justification. The complainant further alleges that one of the officers damaged his front door.

Investigation: The r/sgt attempted to contact the complainant via telephone with negative results. The r/sgt attempted to personally contact the complainant at his residence with negative results. The r/sgt then sent a certified letter to the complainant on 9/14/06. The letter was delivered to the complainant on 9/16/06. The complainant has made no attempts to contact the r/sgt. The r/sgt attempted to identify the accused officers with negative results. There is no record of any police activity in the area of the alleged incident.

Outcome: Unfounded – no sworn affidavit

Review of Loevy/Shane Spreadsheet: The spreadsheet erroneously says the complaint was not investigated. The investigator made attempts to contact the complainant via telephone, in-person, and via certified mail with negative results. (The certified mail was accepted). Further, per the CR, the reporting sergeant attempted to identify the officers with negative results and found no record of police activity.

This investigation was reasonable.

---

CR #1000094 (CITY-WATTS CR-56402-CITY-WATTS CR-56630)

Complaint Received: April 3, 2007

Date of Incident: September 29, 2006

Address of Incident: 11200 S. Indiana Ave.

Accused: PO Steven Ridgner #9520

Complainant: Aralanda Long

Witnesses: Tracey Swann, Rev. Timothy Johnson, Beatrice Sockwell, Juvenile

Allegations: The complainant alleges that the accused (1) struck him on the head without justification.

Investigation: The arrest report indicates that Aralanda Long was arrested for domestic battery and resisting arrest as a result of an altercation. Tracey Swann pulled her car over at 11200 S. Indiana. Long and Swann began to struggle and Long pushed Swann to the ground and struck her on the face/lip area. PO Ridgner observed the altercation between the two and rushed to Swann's side. Long turned toward the PO in a striking motion. PO Ridgner then struck Long in the head with his weapon to prevent himself from being struck. Medical records from Roseland Hospital indicate that Aralanda Long was in police custody and was diagnosed with a laceration to the back of the head. Long stated he was hit on the head with a gun. ET photos of Aralanda Long depict a red mark on the top of his head toward the rear.

In a statement with OPS on 9/29/06, the complainant stated that he was with his girlfriend at the time of the incident. Swann dropped him off at 11200 S. Indiana. Swann and Long exited the vehicle and began arguing. Swann tripped over a bag. When Swann got up, an unknown male/black identified himself as a PO and asked them "what's going on?" Long replied "nothing" and was told to get down by the PO. Long stated that when he was down on the ground on both knees, the officer struck him once on the top of the head with a gun. He denied physical contact with Swann or disobeying PO Ridgner's verbal commands. Tracy Swann was contacted, but refused to give a statement.

PO Ridgner gave a statement to OPS on 12/19/06 relating that he was off duty and on medical leave on the date of the alleged incident. During a Bible class in the park, he saw an unknown male/black (Long) exit a car and drag the female driver from the car. The man punched the female who began screaming for help. PO Ridgner and the minister ran over to help the woman. When the minister grabbed Long, he pushed the minister to the side. PO Ridgner stepped in and grabbed Long and told him to calm down. Long tried to pull away from

64

PO Ridgner and made a motion as if he was going to punch him. PO Ridgner struck Long once on the head with his gun. PO Ridgner stated that Long became compliant after he was struck.

Outcome: Sustained – three witnesses gave slightly conflicting accounts of the incident. PO Ridgner's mother stated that PO Ridgner and Reverend Johnson struggled with Long. PO Ridgner ordered Long to calm down. Long was throwing punches so PO Ridgner hit Long on the head with a gun. Sockwell said that Long was on the ground struggling when PO Ridgner hit him with the gun. Reverend Johnson said that Long was flailing his arms when PO Ridgner hit him with the gun. The witnesses consistently described Long as struggling to the point that his actions were that of an active resister and arguably a low-level assailant. Based on Long's actions, PO Ridgner's response to use direct mechanical blow to the body structure could be deemed appropriate. A deliberate strike to Long's head with a handgun, however, is unjustified.

PO Ridgner rejected discipline of 5-day suspension on 4/9/10. Upon command channel review, ultimately leading to a review by Peter Brust, Deputy Supt., Bureau of Prof. Standards, the CR was found to be exonerated since the use of force was justified. Chief Admin Rosenzweig of IPRA changed the finding to exonerated and the matter is to be closed. "The decision to sustain pre-dates the creation of IPRA and the matter is exonerated."

Review of Loevy/Shane Spreadsheet: The Loevy/Shane spreadsheet for this CR is generally accurate but fails to provide insight into this investigation. This CR was thoroughly investigated by OPS. According to the file, the victim/complainant Aralanda Long punched his girlfriend Tracey Swann in the face. The accused, Officer Steve Ridgner, was off duty at the time attending a bible study in a park with Rev. Timothy Jonson and his mother and others. Officer Ridgner along with Rev. Johnson ran to the defense of Mr. Long's female victim, but when they arrived, a struggle ensued, Mr. Long pushed Rev. Johnson, Mr. Long raised his hand in a fist and disobeyed Officer Ridgner's lawful order to stop, so Officer Ridgner used physical force to defend himself, Rev. Johnson and Tracy Swann, consisting of hitting the victim on the head with his firearm. OPS initially recommended sustaining this CR and administering a five day suspension, but the sustained finding was reversed and changed to exonerated during the review process because the CPD found Officer Ridgner's efforts to protect the domestic battery victim and Rev. Johnson from further attacks by Mr. Long justified.

This investigation was reasonable.

---

CR #1001488 (CITY-WATTS CR-040430-CITY-WATTS CR-040436)

Complaint Received: November 21, 2006

Date of Incident: November 21, 2006

Address of Incident: 1600 S. Racine

Accused: Unknown

Complainant: Richard Chambers

Allegations: The complainant alleges that a male white officer driving a marked vehicle with license plate M109426 racially profiled him because of his race (black) and he is driving a 2005 Hummer. No citations issued.

Investigation: After an administrative review of CL 1001488, it was determined there is no basis for an IAD investigation of the allegation.

Outcome: Administratively Unfounded

Review of Loevy/Shane Spreadsheet: This log number was administratively closed. As a result, the spreadsheet is generally accurate.

The investigator should have interviewed the complainant even though a citation was not issued as there may have been a different concern. No indication if the license plate was related to a city vehicle.

CITY-BG-063054

CR #1002523 (CITY-WATTS CR-040725-CITY-WATTS CR-040762)

Complaint Received: January 11, 2007

Date of Incident: January 6, 2007

Address of Incident: 8200 S. Kedzie

Accused: Unknown

Victim: Redacted (Juvenile)

Complainant: Alesia Boyd

Allegations: The complainant, who did not witness the incident, alleged that several unidentified officers stopped her son, handcuffed him, slapped him on the face, and pushed him against a police car.

Investigation: After attempts to have the complainant sign the sworn complaint affidavit as required by the Illinois Uniform Peace Officers Disciplinary Act and advising the complaint that failure to do so may result in the termination of this investigation, the complainant has not signed a sworn affidavit.

On 1/8/07, the r/inv spoke with the complainant via telephone. The purpose of the call was to schedule her to come in with her son so that he could provide a statement relative to the allegations. The complainant indicated that she would be unable to bring her son in on 1/8 or 1/9/07. She attributed this inability to her work schedule and the fact that her son just returned to school from winter break. She did not want him to miss class. The complainant stated she would schedule an appointment for her son to be interviewed at a later date. A certified letter was also sent to the complainant on 1/11/07 which the complainant received and signed for on 1/19/07.

Outcome: Unfounded

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. The complainant in her intake interview stated that unidentified police officers slapped her 14-year-old son on the face and pushed him against a car, but she stated she did not witness the incident. Nonetheless, she was interviewed contrary to the spreadsheet. Moreover, the complainant failed to sign the affidavit required by Illinois law and the CBA to proceed with the investigation, rendering the items the Loevy/Shane spreadsheet state were not done to be inapplicable. The complainant was contacted by telephone to schedule a time for her to make her son available for an interview to the OPS investigator, but she said she and her son were not available and said she would call to arrange an appointment later. The OPS investigator then sent the complainant a certified letter asking her to have her son sign the affidavit required by Illinois law to proceed with the investigation, yet she and her son never provided the affidavit. The OPS investigator contacted the complainant once again at the conclusion of the investigation, but there is no indication that the complainant or her son ever contacted OPS to cooperate with the investigation. Thus, OPS closed this investigation unfounded when the complainant and her son failed to cooperate, and when it was necessary for her son to cooperate and provide his story before the investigation could move forward, preliminary or otherwise.

This investigation was reasonable.

CR #1003345 (CITY-WATTS CR-040901-CITY-WATTS CR-040940)

Complaint Received: February 20, 2007

Date of Incident: February 9, 2007

Address of Incident: 2000 N. Pulaski

Accused: Unknown

CITY-BG-063055

Victim: Shirley McNutt

Complainant: Shirley McNutt

Allegations: The complainant alleges that the accused stopped and searched her and her vehicle without justification. The complainant alleges that one of the officers stated, "I hope you get killed in a car accident you fucking asshole."

Investigation: On 2/20/07, 2/24/07 and 2/26/07, the r/sgt attempted to contact the complainant via telephone with negative results. On 3/8/07, the r/sgt placed a call to the complainant and was finally successful in contacting her. She related to the r/sgt that he did not want to be bothered with going through with this complaint, she would not sign an affidavit, and she wished to sign a letter of declination. On 3/9/07, the r/sgt met with the complainant at 2948 N. Clyborne at which time she reiterated her wish to freely and voluntarily not pursue her complaint and expressed her wish to terminate this complaint and sign a letter of declination. The r/sgt explained the consequences of initiating a letter of declination. The complainant signed the letter of declination and her boyfriend, Rich Ferdinande, witnessed her signature and also signed the letter. The r/sgt attempted to identify the accused officers to no avail. The r/sgt was unable to find any documentation on the stop. There was no car, beat, or star numbers given by the complainant.

Outcome: Unfounded – the complainant signed a letter of declination and refused to sign a sworn affidavit.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane created is misleading. It is alleged the accused stopped and searched complainant's vehicle without justification and the accused officer stated, "I hope you get killed in a car accident you fucking asshole." In the investigation, the investigator made numerous attempts to speak to the victim/complainant via telephone and also sent a letter by certified mail. The investigator was finally successful in contact victim/complainant via telephone and victim/complainant stated she did not want to be bothered with going through with this complaint, she would not sign an affidavit and she wished to sign a letter of declination. Thereafter. the investigator met with the complainant/victim in person, at which time she reiterated her wish freely and voluntarily not to pursue her complaint and signed a letter of declination. The victim/complainant's boyfriend witnesses her signed and also signed the letter. The investigator attempted to identify the accused officers to no avail. The investigator also unable to find any documentation on the alleged stop. There was no car, beat or star number given by the complainant/victim. The spreadsheet indicates no statement from complainant, but the complainant terminated the investigation and no statement from the officer that should have been not applicable. As such, the allegations were unfounded.

This investigation was reasonable.

CR #1003568 (CITY-WATTS CR-040941-CITY-WATTS CR-040967)

Complaint Received: February 21, 2007

Date of Incident: February 3, 2007

Address of Incident: Ritchies Restaurant and Bar

Accused: Unknown

Complainant: Donald Smith

Witnesses:

Allegations: The complainant alleges that an "Officer Tony Susnis" was drinking at the location of the incident and after leaving the location, caused a traffic accident and left the scene.

Investigation: A letter was sent to Phil Cline, OPS and Cmdr. Patrick Garrity by the complainant regarding Officer Tony Susnis. The complainant was at the bar Ritchies and saw PO Tony Susnis in the bar drinking and that he was drunk when he left the bar. He heard a car crash into parked cars on 111th and heard from a friend

CITY-BG-063056

that they know the person who saw the crash happen. He alleges that PO Tony Susnis left the scene of an accident and was not going to pay the price for it. He says PO Susnis left the scene because "he was drunk and probably didn't want to get busted for a DUI." He indicates in his letter that he hopes the CPD "top brass" will do something about it.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane created is misleading. It is alleged that the accused while driving drunk, struck parked vehicles and fled the scene. Dr. Shane's spreadsheet stated the findings of this CR was "unfounded". However, the CR clearly states CR #1003568 was administratively closed because it was a duplicate of CR #1003616, which was already being investigated. (CITY-WATTS-CR-010948). As such, Dr. Shane's spreadsheet is misleading because no findings were actually made in this CR, but rather this CR was a duplicate of another pending investigation under a different CR number.

This investigation was reasonable.

---

CR #1004051 (CITY-WATTS CR-057630-CITY-WATTS CR-057631)

Complaint Received: March 13, 2007

Date of Incident: March 13, 2006 and March 13, 2007

Address of Incident: 300 E. 29th Street and 5300 S. Harper Ave.

Accused: Unknown

Complainant: Garry King

Allegations: The complainant alleges that the accused failed to cite vehicles parked at expired meters. The complainant also alleges the accused failed to cite drivers that failed to come to complete stops at the stop sign. The complainant alleges he has telephoned the 021st District Station for at least a year pertaining to the vehicles failing to stop at the stop sign, failing to come to a complete stop and failing to pay parking meters and no police action has been taken.

Outcome: Administratively Closed

Review of Loevy/Shane Spreadsheet: The Complainant alleged that unknown officer(s) failed to cite vehicles parked at expired meters and failed to cite drivers that fail to stop at stop signs. The log number was administratively closed. It is unclear why this log was included in the Loevy/Shane spreadsheet. The spreadsheet indicates there was no interview of accused officers, no scene photos, canvass, search for cameras – none of which were necessary. This is not a complaint about a specific officer, but a general complaint about department services.

This investigation was reasonable.

---

CR #1004981 (CITY-WATTS CR-041342-CITY-WATTS CR-041457)

Complaint Received: April 18, 2007

Date of Incident: April 17, 2007

Address of Incident: 2306 W. Maypole

Accused: Sgt. Eddie Winters #1546, PO Ramon Calixto #13959

Complainant: Cmdr Christine Kolman #53, Sgt. Timothy Moore #2299

Witnesses: James Jenkins

Allegations: (1) It is alleged by complainant #1 that Sgt. Winters, while off duty, used his authority as a CPD Sergeant to direct a squad car to reposition poll workers for Aldermanic Candidate Haithcock to move further away from Aldermanic Candidate Fioretti's poll workers and the polling place. (2) It is alleged by complainant

68

#2 that PO Calixto repositioned poll workers for Aldermanic Candidate Haithcock to move further away from Aldermanic Candidate Fioretti's poll workers and the polling place.

Investigation: A witness to the disturbance, James Jenkins, stated in his initial witness statement that Haithcock campaign workers had been moved from in front of 2306 W. Maypole to an area closer to Washington and Oakley. The Fioretti campaign workers had been left at 2306 W. Maypole thus receiving an unfair advantage. Mr. Jenkins further stated he observed beat 1331 talking to off duty Sgt. Winters. Mr. Jenkins asked beat 1331 why he had told the Haithcock campaign workers to move and not the Fioretti campaign workers. Beat 1331 told Mr. Jenkins that he told everyone to move. On 4/19/07, the r/inv interviewed Mr. Jenkins via telephone and he related that he is a worker for Alderman Haithcock; that the police officer assigned to beat 1331 instructed the workers for Alderman Haithcock to move, not Sgt. Winters who he has known for many years. Mr. Jenkins added that now that the election is over, he is no longer concerned about the incident.

On 10/23/07, the r/inv interviewed Sgt. Winters at IAD. Sgt. Winters related that he was at the polling place on 4/17/07 as a volunteer coordinator for the Bob Fioretti campaign. Sgt. Winters stated he did speak with the officer assigned to beat 1331. The officer explained to him that he had both parties for two candidates cease their election activities due to the disturbance they were creating. Sgt. Winters denied directing beat 1331 to reposition poll workers for Aldermanic Candidate Haithcock to move further away from Aldermanic Candidate Fioretti and the polling place. Sgt. Winters added that the poll workers had already been relocated prior to his arrival at the polling place.

On 10/30/07, PO Calixto was interviewed, and he related that Sgt. Winters did not direct him to reposition any of the poll workers. PO Calixto related that upon his arrival, poll workers for both parties were creating a disturbance in front of the polling place, so he ordered both parties to move away from the entrance for the safety of the poll goers. PO Calixto added that he did not side with any one party as both parties were equally creating the disturbance.

The r/inv requested and received a copy of the OEMC audio transmission for the incident. Upon review of the transmission, the r/inv learned that beat 1331 called for an assist stating that poll workers for both parties were creating a disturbance and he ordered them to relocate away from the polling place. Beat 1331 also informed the dispatcher that these poll workers were possibly gangbangers.

Outcome: Allegation 1 unfounded; allegation 2 exonerated.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for CR#1004981 that Dr. Shane relied upon is misleading. For instance, they assert that the complainant (Cmdr. Kolman) was not contacted and no statements were obtained, however the CR contains Sgt. Saenz's initiation report (which mentions discussion with Cmdr. Kolman) and an interview of Kolman contained in the report of the investigator (Sgt. Moore). Moreover, they allege no witness statement was taken, but the CR shows witness James Jenkins was interviewed as reflected in the initiation report and interviewed later by Sgt. Moore in Moore's To/From report. The data from the Loevy firm also indicates that the accused officers did not give statements, but the CR contains a question/answer interview of accused officers Winters and Calixto. Ultimately, the allegation that off-duty officer Winters instructed officer Calixto to remove campaign workers was unfounded, and the allegation that Calixto only told campaign workers from the Haithcock campaign to move, but not the Fioretti campaign workers to move, was exonerated (Calixto told both to move because they were creating a disturbance).

This investigation was reasonable.

CR #1006506 (CITY-WATTS CR-058049-CITY-WATTS CR-058050)

Complaint Received: June 12, 2007

Date of Incident: May 14, 2007

69

Address of Incident: 2315 W. 82nd Street

Accused: Unknown

Complainant: Charles Henderson

Allegations: The complainant alleges that unknown subjects tried to rob him, and he called 911, but no police responded.

Outcome: Administratively closed – no PCAD activity for location given. Will forward to OEMC.

Review of Loevy/Shane Spreadsheet: Complainant alleges that unknown subjects tried to rob him and he called 911 police and no one responded. Dr. Shane's sheet indicates "no investigation" was done. However, it was determined by IAD that this allegation was not appropriate for a CR incident investigation. It was administratively closed and forwarded to OEMC apparently because there was no indication that any CPD officer was notified of the incident and failed to respond but that it was a matter for OEMC to review.

This investigation was reasonable. The investigation was closed because the issue was whether OEMC dispatched an officer and there is no such record. The case was forwarded to OEMC for investigation.

CR #1008247 (CITY-WATTS CR-042185-CITY-WATTS CR-042257)

Complaint Received: August 10, 2007

Date of Incident: August 8, 2007

Address of Incident: 4841 W. Lawrence Ave.

Accused: Unknown

Complainant: Joseph Ettner

Allegations: The complainant alleges that two m/w's wearing dark colored versts and belts with holsters in a silver unmarked police car with a flashing blue light and sirens pulled him over, searched him and his vehicle, and took his wallet that contained $75 USC and credit cards.

Investigation: According to the initiation and general case reports, the complainant did not observe the accused wearing any police identification and was unsure whether their holsters contained guns. He was unable to provide the make, model, or license plate number of the accused's vehicle. A supplementary case reports states that on 8/8/07, Joseph Ettner called Sgt. Matijevich and stated that his wallet with all its contents was returned by a man who observed his wallet fall off or out of a moving vehicle that matched his. A letter of declination was signed on 8/9/07 by Joseph Ettner and Sgt. Matijevich. The r/inv accessed the PCAD system and it does not show any CPD vehicles responding to 4841 W. Lawrence.

Outcome: Unfounded – based on the letter of declination that was signed by the complainant and the r/inv's inability to identify the accused.

Review of Loevy/Shane Spreadsheet: The complainant walked into the PD and reported that two men with holsters and no apparent police ID pulled him over in an unmarked car that had a flashing blue light and siren and searched his car. The subjects also asked for complainant's wallet, social security number, and phone number. After they pulled away, Complainant realized his wallet was missing. He was unable to provide any identifying information about the vehicle that pulled him over. The spreadsheet indicates no investigation was conducted and no statement or in-person interview with complainant was conducted. However, a general offense case report was created related to the initial theft based on Complainant's walk-in report and a day later a supplementary report was created when the victim called and then came back into the station and reported that someone returned his wallet to him. The Complainant advised that the witness saw the Complainant's wallet fall out of or off of Complainant's car as it was moving down the street. (The witness's business card was copied and made a part of the file). All items, including money and credit cards were in the

70

wallet. Complainant then signed a statement indicating he no longer wished to pursue his complaint, but the Shane/Loevy Spreadsheet omits this fact.

This investigation was reasonable.

CR #1009395 (CITY-WATTS CR-058207-CITY-WATTS CR-058211)

Complaint Received: September 18, 2007

Date of Incident: September 17, 2007

Address of Incident: 1723 N. Kedzie Ave., Bmst. Apt.

Accused: PO Ivan Ramos #2338, PO Jason Slater #103801

Complainant: Maria Alking

Allegations: It is reported that the complainant called the police to report that she had been assaulted and threatened by her tenant. It is reported that the complainant alleges the police failed to respond.

Outcome: Administratively Closed

Review of Loevy/Shane Spreadsheet: The Loevy/Shane spreadsheet is accurate for the most part as it reflects that most of the columns are Not Applicable, except it incorrectly states no instead of Not Appliable for a few tasks, such as whether photos should have been taken or a camera looked for when those actions were likewise inapplicable. This CR was administratively closed as it was an alleged failure to provide service when it turned out that the complainant later agreed to go to the police station to make the police report. (CITY-WATTS CR-058208). The spreadsheet indicates no statement from the accused officer, but there is no allegation that any officer engaged in any misconduct. The spreadsheet also indicates there was no canvas, photos, search for cameras which were all unnecessary.

This investigation was not related to officer misconduct but to whether OEMC dispatched an officer.

CR #1009752 (CITY-WATTS CR-042511-CITY-WATTS CR-042527)

Complaint Received: October 4, 2007

Date of Incident: September 30, 2007

Address of Incident: 5734 N. Milwaukee

Accused: Sgt. Jeffrey Peraino #2154, PO Paul Peraino #15396

Victim: Tom Kolodziejski

Complainant: Tom Kolodziejski

Witnesses: Patricia Kolodziejski

Allegations: The complainant alleges that the accused officers (1) were using a department vehicle for their personal gain, (2) parked the department vehicle at a stop sign for over 5 hours, (3) were drinking heavily while watching a football game at the Gladstone Lounge, and (4) used the ladies' room constantly instead of the men's room.

Investigation: The r/inv made several attempts to meet with the complainant in order to have him sign a sworn affidavit and provide the r/inv with an interview. After several failed attempts, the r/inv interviewed the complainant and obtained a signed affidavit on 10/29/07. He stood by his original allegations and requested that his wife, Patricia Kolodziejski, is interviewed. The witness, Patricia Kolodziejski was interviewed on 4/29/08 at her place of employment, Taft High School. She stood by the complainant's allegations with the exception of not having seen the unmarked department vehicle which was said to have been parked at a stop sign for approximately 5 hours. She did not recall seeing the vehicle illegally parked. The bartender, Sue

71

Crossman, was also interviewed. She related she knew nothing of the incident and that the complainant, along with his wife (the witness), were not welcome at the lounge anymore due to several altercations which had taken place in the bar between them and other patrons of the bar.

The r/inv took statements of the accused who clearly stated they were at the Gladstone Lounge on the date and time in question. They related that they were there for the buffet lunch provided by the establishment and were not drinking alcoholic beverages while watching the Bears game. The accused also denied using the ladies' room and said that at no time did they speak with the complainant or his wife. Sgt. Jeffrey Peraino related that the vehicle in question is his assigned take-home and was used on that particular day to go to Area 5 to pick up some supplies needed for a Heavy Weapons Training Class which he was to teach the following day. Sgt. Peraino is a Heavy Weapons Instructor for the CPD, and that is why the department provides him with a take-home vehicle as well as teaching materials.

Outcome: Not Sustained – there is insufficient evidence to prove or disprove the allegations.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. This CR was initiated after the complainant, Tom Kolodziejski, accused Officers Jeffrey Peraino and Paul Peraino of using their department issued vehicle for personal gain including illegally parking at a stop sign for over five hours while drinking heavily at a local bar and using the women's bathroom instead of the men's bathroom. The Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainant and victim is the same person, Tom Kolodziejski, and he gave a statement after being interviewed. (CITY-WATTS CR-042515-16). Moreover, the Loevy/Shane spreadsheet incorrectly asserts that no statements were obtained from the two accused officers or any witnesses. Two witnesses, Patricia Kolodziejski and Sue Crossman were interviewed and provided statements. Id. Mrs. Kolodziejski supported some of her husband's allegations but stated she had not seen the accused vehicle illegally parked. Ms. Crossman only stated that Mr. and Mrs. Kolodziejski are not welcomed at the lounge anymore due to several altercations which had taken place in the bar between them and other patrons of the bar. Id. The accused officer admitted to watching a football game at the local bar but denied drinking alcohol and denied any interaction with Mr. and Mrs. Kolodziejski. Furthermore, Jeffrey Peraino explained that he had an assigned take-home vehicle as a Heavy Weapons Instructor for the Department which he used on the day in question to pick up supplies needed for a Heavy Weapons Training Class from police department. The spreadsheet indicates no statements from the complainant, witnesses or the accused, but there were statements from all.

This investigation was reasonable.

---

CR #1009827 (CITY-WATTS CR-042656-CITY-WATTS CR-042706)

Complaint Received: January 10, 2008

Date of Incident: October 3, 2007

Address of Incident: 3340 W. Filmore St.

Accused: Det. Paul Carbone #20665

Complainant: Lt. John Escalante #429

Allegations: The complainant alleges that the accused failed to conduct an adequate follow-up investigation regarding the following cases: (1) failed to conduct a proper interview of Ed Pauss, a witness to the incident, and (2) failed to conduct a proper interview with the victim in the case.

Investigation: The complainant informed the r/sgt that he was made aware of a case Det. Carbone was investigating. An eyewitness to the incident in the case made several calls to the bomb/arson officers in an effort to provide Det. Carbone with information relating to the case. The witness informed the complainant that the calls were never returned by any investigator from bomb/arson. In a to/from report, Det. Carbone

recognized that he was in fact "remiss" in not making more attempts to contact the witness. He stated that he attempted to contact the witness, in person, at his residence. The attempt was met with negative results as there was no answer at the door. He left contact information at the witness's home. Det. Carbone stated he had other cases that required his attention and he involved himself in those investigations. Det. Carbone indicated he did have an opportunity to speak to the witness when the listed offender was arrested by the 008th District Officers and Det. Carbone was assigned to assist with processing the arrestee. Det. Carbone related he knows he should have more vigorously attempted to contact the witness earlier in the investigation and that he was never made aware of the witness's attempts to contact him at bomb/arson offices.

After reviewing a supplementary report submitted by the accused, the complainant contacted the listed victim. During the course of the conversation, the complainant learned that the woman he was speaking with was a victim only because she owned the building where the fire occurred, but she does not live at the address of the fire. She informed the complainant that the fire occurred at her rental property in the basement apartment and the tenant is male. The accused's report indicated that the only person he spoke with was the listed victim. As a result of the conversation with the listed victim, the complainant determined the accused was less than thorough in his interview of the victim. The accused responded to the allegation and stated that the person he contacted via telephone was the only victim listed on the general offense case report. He indicated that the victim knew the details of the incident, but she never suggested that she did not reside at the listed address. According to the accused, the woman he spoke with never indicated that any other person could be considered a victim in this incident. The accused realizes that he would have been better served had he conducted an in-person interview. He stated that a visit would have cleared up any confusion concerning the victims.

Outcome: Sustained – Reprimand. Det. Carbone should have exercised a more tenacious approach toward these cases. He should have been more assertive and attentive while investigating the case in question. Det. Carbone acknowledges his oversights. Per arbitration award: grievant's 5-day suspension, which gave rise to the listed grievance, shall be reduced to a written reprimand and the grievant shall be made whole for the lost 5 days. The grievant will be compensated with 5 days of pay at his rate of pay on 7/10/08 and the record of the grievant will be amended to reflect the changes.

Review of Loevy/Shane Spreadsheet: This CR resulted in a sustained finding that accused Officer Carbone violated rule 10 in that he failed to adequately investigate two cases. On June 7, 2011, Officer Carbone's five day suspension was reduced to a written reprimand via arbitration decision. (CITY-WATTS CR- 042658). The spreadsheet created by the Loevy firm for this CR that Dr. Shane relied upon and audited is partially inaccurate. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant, when in fact the complainant, John Escalante, gave a statement during an in-person interview on January 11, 2008. (CITY-WATTS CR- 042691). The spreadsheet indicates there was no statement from the accused, but the accused did provide a to/from and the allegations against him were sustained.

This investigation was reasonable.

CR #1011434 (CITY-WATTS CR-043101-CITY-WATTS CR-043126)

Complaint Received: December 11, 2007

Date of Incident: December 5, 2007

Address of Incident: 1718 S. State St. (Central Detention)

Accused: D/A Harace Minniefield

Complainant: Mark Lee

Allegations: The complainant alleges that the accused failed to inventory or return $95 USC.

Investigation: Sgt. Ciolli met with the complainant on 12/6/07 and he alleged that $95 was missing from his property bag. Sgt. Ciolli does not relate the particulars as to why the complainant believes that the accused is

73

the person who failed to inventory or return his money. On 12/13/07, following two telephone attempts at contacting the complainant, the r/sgt sent a certified letter to him requesting his cooperation. On 1/22/08, the r/sgt spoke with the complainant who agreed to come to IAD on 1/24/08 to provide a statement, look at a photo array and sign a sworn affidavit in furtherance of the investigation. On 1/24/08, the complainant failed to appear at IAD as scheduled and did not contact the r/sgt to reschedule or offer a reason for his failure to appear. The r/sgt then sent a certified letter to the complainant which was stamped by USPS "return to sender, not deliverable as addressed, unable to forward." On 6/13/08, the r/sgt attempted to contact the complainant and he received a recorded message that stated that this US Cellular "telephone number is no longer in service." On 6/13/08, the r/sgt attempted to contact the complainant by going to 8004 S. Justine, his residential address. Upon arrival, the r/sgt met with Jameil Simms who stated he and his family has lived in the building for four years and occupied all floors. Simms related that the complainant did not live in the building but that he recognized his photograph. Simms stated he would pass on the r/sgt's contact information if he saw the complainant. On 6/13/08, the complainant left a voice message on the r/sgt's telephone stating he had received the provided contact information and left a phone number for further communication.

On 6/16/08, the r/sgt spoke with the complainant and scheduled a statement for 6/19/09 at IAD. Lee stated he did not know Jameil Simms, but that he resided at 8004 S. Justine and received mail at that location. Lee asked if he would be reimbursed his $95 at the scheduled meeting. R/sgt stated he was unable to reimburse the funds but was conducting an investigation into the employee's misconduct and the complainant's cooperation was essential in the process. The complainant replied "oh, well I thought you were going to give me my money back" and that he would "try" to come to IAD to provide a statement on 6/19/09. On 6/19/09, the complainant failed to come to IAD to provide the statement as scheduled and did not contact the r/sgt to advise of his inability to attend the meeting or attempt to reschedule.

The arrest report indicates that the complainant was stopped for a narcotics investigation on 12/4/07 and was placed into custody after a computer name check revealed an outstanding warrant. The arresting officers have no knowledge of charges related to the warrant and will not appear in court. Personal Property Receipt 1511668 reflects an ID and laces only which was signed by the complainant.

Outcome: Not Sustained – due to the failure of the complainant to provide a detailed statement, view a photo array or sign a sworn affidavit. The r/sgt cannot prove or disprove the allegations.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. This CR was initiated after the complainant alleged that $95 was missing from his property bag after he was released from jail. The Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainant and victim is the same person, Mark Lee, and the investigator attempted to contact Mr. Lee on multiple occasions, including going to his listed residence in person, attempting to contact Mr. Lee by telephone, and sending Mr. Lee a certified letter. The complainant contacted the investigator to schedule a time for an in person interview with the OPS investigator but inquired whether he would be reimbursed his $85.00 at the interview. The OPS investigator explained that he could only investigate the employee for misconduct and could not provide reimbursement. Mr. Lee did not appear for his interview nor attempt to reschedule. Moreover, the complainant failed to provide a detailed statement, view a photo, or sign the affidavit required by Illinois law and the CBA to proceed with the investigation, rendering the items the Loevy/Shane spreadsheet state were not done to be inapplicable. The spreadsheet criticizes the investigation for not taking photos of the complainant/victim, but there was no reason to due to the allegation of failure to inventory or return the complainant's money. Thus, OPS closed this investigation as unfounded when the complainant failed to cooperate to move the investigation forward, preliminary or otherwise. The spreadsheet indicates there were no statements from the complainant or the accused. The complainant did provide an initial statement but the investigator could not locate him as he moved and disconnected his cell phone. The spreadsheet indicates the photo array to identify the officer was "not applicable," but the investigator specifically asked the complainant to look at a photo array of officers but he did not respond. There was no

CITY-BG-063063

statement from the accused officer because an officer was not identified. There was no need for an area canvas as the incident occurred inside the PD.

This investigation was reasonable.

---

CR #1012519 (CITY-WATTS CR-043135-CITY-WATTS CR-043214)

Complaint Received: December 24, 2007

Date of Incident: December 9, 2007

Address of Incident: 1011 S. Homan Ave.

Accused: Property Custodian John Corso

Victim: Civ. Account Tech II Vilma Ortiz

Complainant: Sgt. Randy Pikowski #2100

Allegations: The complainant alleges that the accused sent a text message to the victim and conveyed in the body of the message that he would persuade another employee to job action against the victim if she worked overtime on 12/9/07.

Investigation: On 12/9/07, Sgt. Pikowski was informed by the victim that she was not reporting for work. When Sgt. Pikowski inquired about the reason for her absence, she stated it was because of a text message she received from the accused, claiming he would persuade another employee to take action against her if she worked overtime. After receiving the investigation, the r/sgt requested the victim to summarize the text message in a to/from subject report and it conveyed the same information as Sgt. Pikowski's initiation report. On 1/2/08, PC Corso responded in a to/from subject report relating the text message to Ms. Ortiz was just information and that he never intended to intimidate or interfere with the goals of ERPS. Corso was served notification of a pre-disciplinary hearing on 1/12/08.

Outcome: Sustained – violation of Rule 8 – written reprimand. The text message sent by PC Corso made such an impact on the victim that she missed work, thus delaying the conclusion of a project. Even though the accused related it was not intended to intimidate or make the victim feel uncomfortable, this form of treatment will not be tolerated and it can create a hostile work environment and goes against the department goals. On 1/18/08, a pre-disciplinary hearing was scheduled, and PC Corso did not respond. Corso informed the r/sgt that it was his wish not to proceed with the meeting but to accept the recommendation.

Review of Loevy/Shane Spreadsheet: In this CR, the accused, Property Custodian Corso, allegedly sent a text message to Acct. Tech Ortiz informing her that he (Corso) would persuade another employee to take action against Ortiz if she showed up to work overtime.

The data created by the Loevy firm for CR#1012519 that Dr. Shane relied upon is misleading. For instance, they assert that the complainant (Sgt. Pikowski) was not contacted and no statements were obtained, however the CR contains Sgt. Pikowski's initiation report (which references his discussion with the victim Acct. Tech Ortiz). The Shane/Loevy data is also misleading because it states that no victim statement was taken, but the CR contains the To/From report from the victim, Acct. Tech Ortiz. The Shane/Loevy data is further misleading because it indicates that no witness was contacted and no witness statement was taken, but Sgt. Pikowski's initiation report reflects that witness Acct. Tech Washington was contacted. The data from the Loevy firm also indicates that the accused, Property Custodian Corso did not give a statement, but the CR contains a statement in the form of a To/From report from Corso (the Loevy firm's data indicates an administrative report was submitted). Ultimately, the CR was sustained and a reprimand was given.

This investigation was reasonable.

---

CR #1012781 (CITY-WATTS CR-043334-CITY-WATTS CR-043369)

75

Complaint Received: December 20, 2007

Date of Incident: December 17, 2007

Address of Incident: 10330 S. Elizabeth (Julian HS)

Accused: PO Donald Richardson #17536, PO John Long #19224

Victim: Redacted (Juvenile)

Complainant: Loretta Young

Allegations: The complainant, who did not witness the incident, alleges the victim was battered by a security guard at Julian HS. Complainant alleges that she called 911 and two male white uniformed officers arrived on scene and refused to file a report of the incident. The complainant further alleges the officers refused to give their names and badge numbers upon request.

Investigation: The r/sgt contacted the complainant telephonically and she agreed to be interviewed in the 022nd District. On 12/28/07, the complainant signed the sworn affidavit and was interviewed. She related that the accused arrested her granddaughter at Julian HS. She went to Julian HS to file a report that a Board of Education security guard battered her granddaughter. The security guard is known now as Lorenzo Shockley. The complainant stated she did not witness the incident and that the police officers refused to make a report for her or give her their names and badge numbers.

The victim was interviewed on 12/31/07 inside the 022nd District Station. She stated that she was in the hallway after class had started when Lorenzo Shockley approached her and demanded her student ID. She refused his request at which time Lorenzo Shockley attempted to grab the ID card from around her neck. The victim stated to the r/sgt that Shockley's actions caused her neck to be scratched. She then fled out of school, notified her grandmother, and returned to the school with her grandmother at which time she was arrested.

The accused provided to/from reports summarizing the incident. The officers were called to the school on 12/17/07 and informed by security guard Shockley that as the victim was fleeing the school, she bumped and shoved Shockley and he wished to file a report. A report was prepared and the victim returned to the school with her grandmother, at which time Lorenzo Shockley wished to sign complaints and have her arrested. The investigation revealed that security guard Shockley was acting in compliance with the state law and school policy. The victim was placed under arrest for battery and it is documented in the arrest report. The accused officers deny that they refused to give their names or badge numbers to the complainant. In fact, both officers were in uniform with their names and star numbers on their outside garment.

Outcome: Allegation 1 unfounded – the officers did file a general offense case report in regard to the incident; allegation 2 not sustained – unable to prove or disprove based on the facts that are known.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainant and victim (complainant Loretta Young who did not witness the incident and her alleged victim granddaughter who got into an altercation with her school security guard), were interviewed and provided statements. The coded data also is misleading because the Loevy firm and Shane claim no witness was contacted, but a witness, school security guard Lorenzo Shockley, was interviewed and his interview was recorded in the general offense case report, and the records also reflect that he signed criminal complaints against the alleged victim contending that she committed a battery against him by bumping into him and pushing him. The spreadsheet is further misleading because it says that no canvass was done, no cameras were located at the scene, and no photos of the scene were taken, but there was no reason to conduct a canvass as the incident allegedly took place in a school hallway when the rest of the students were in their classrooms and the alleged victim was truant by not attending class, there would not be any cameras in the hallway of the school at that time, and there was nothing relevant to photograph of the alleged scene based on the

granddaughter and Lorenzo Shockley's statements. This CR was determined to be not sustained when the allegation against the officers that they failed to complete a report is inaccurate as they completed a general offense case report, and the allegation they refused to give their names and star numbers could not be proved or disproved because they denied it, because they were in uniform with their nametags on their uniforms, and because their names are stated on the general offense case report as well.

This investigation was reasonable.

---

**CR #1013040 (CITY-WATTS CR-058932-CITY-WATTS CR-058947)**

Complaint Received: January 2, 2008

Date of Incident: September 21, 2007

Address of Incident: 2600 S. Halsted

Accused: PO Alvin Staggers #17056

Victim: Michael Gonzalez

Complainant: Rosemarie Gonzalez

Allegations: The complainant, who is not a witness, alleged that the accused and his partner used their squad car to stop the victim who was fleeing from the police.

Outcome: Administratively Closed – investigation by the traffic review board found the traffic crash to be non-preventable.

Review of Loevy/Shane Spreadsheet: In this CR, the complainant alleged unknown officers used their squad car to stop the victim who was fleeing from police. The CR was administratively closed because the investigation by the Traffic Review Board found the traffic crash to be non-preventable.

The data created by the Loevy firm for CR#1013040 that Dr. Shane relied upon is misleading. The CR was administratively closed because the investigation by the Traffic Review Board found the traffic crash to be non-preventable. The Loevy/Shane data does not account for this fact yet nonetheless addresses the variables.

The investigation was reasonable.

---

**CR #1013114 (CITY-WATTS CR-043370-CITY-WATTS CR-043392)**

Complaint Received: January 14, 2008

Date of Incident: January 4, 2008

Address of Incident: 7718 S. East End

Accused: PO David Grubisic #2858

Victim: Nicole Harris

Complainant: Carlos Lewis

Allegations: It is alleged that the accused responded to the complainant's call concerning an assault to the victim, by the complainant's landlord, and that the officer refused to complete a case report.

Investigation: The r/sgt made multiple attempts to contact the complainant, including sending a certified letter. All attempts were met with negative results. The accused was identified through the event histories and the District Daily Assignment Log.

Outcome: Unfounded – due to lack of cooperation from the complainant and a sworn affidavit not being obtained.

CITY-BG-063066

Review of Loevy/Shane Spreadsheet: It is alleged that when the complainant and victim went to the District Station, the accused refused to complete a case report concerning the assault to the victim. The investigator made multiple attempts to contact the complainant, including sending a certified letter, with negative results. The accused officer was identified through the event histories and District Daily Assignment Log. Due to the lack of cooperation from the complainant, a sworn affidavit could not be obtained, and in accordance with the Department policy, the allegations were deemed unfounded. (CITY-WATTS- CR-043372). The Loevy/Shane spreadsheet states that IAD failed to contact the complainant, when the CR shows that multiple attempts were made to interview the complainant, without success. The spreadsheet is also inaccurate because it states that the scene, and the victim, were not photographed, when both of those columns should have been marked Not Applicable because there was no reason to photograph the scene or the victim. Likewise, the columns for scene canvass and cameras located should have been marked Not Applicable instead of no. Moreover, the Loevy/Shane spreadsheet is also inaccurate because it states "no" under the column of any accused officer identified by any witness. Despite the complainant's lack of cooperation, the accused officer was identified through the event histories and District Daily Assignment Log

---

CR #1013791 (CITY-WATTS CR-059175-CITY-WATTS CR-059176)

Complaint Received: January 30, 2008

Date of Incident: January 27, 2008

Address of Incident: 3600 N. Lake Shore NB

Accused: Unknown

Complainant: Walter Bruessard

Allegations: The complainant alleges that during a traffic stop, the accused was rude and unprofessional with his tone of voice and demeanor.

Outcome: Administratively Closed

Review of Loevy/Shane Spreadsheet: The spreadsheet created by the Loevy firm for this CR that Dr. Shane relied upon and audited is potentially misleading. The complaint involved an allegation by Walter Bruessard, who alleged that an unidentified officer "was rude and unprofessional with this tone of voice and demeanor" during a traffic stop. The spreadsheet asserted that the complaint was not investigated, no affidavit was obtained, and nobody was interviewed, which the two page face sheet (the only two pages in the available file) reflects. However, the Loevy firm and Shane fail to mention that the CR was administratively closed "with letter to Dist. Cmdr." Based on this allegation, it appears this allegation was referred to the District Commander to investigate the allegation at the district level, possibly as a SPAR.

---

CR #1014071 (CITY-WATTS CR-043819-CITY-WATTS CR-043848)

Complaint Received: February 27, 2008

Date of Incident: February 9, 2008

Address of Incident: 6709 S. Carpenter

Accused: PO Angelina Palmero #13482

Complainant: Dennis Thompson

Allegations: The complainant alleges that the accused pulled him over because of racial prejudice. The complainant further alleged that the accused was unprofessional in that she threw the citations into his vehicle instead of handing them to him.

Investigation: On 2/27/08 and 2/28/08, the r/sgt attempted to contact the complainant and received a recorded message stating that the number was no longer in service. On 2/29/08, the r/sgt sent a certified letter to the

CITY-BG-063067

complainant and verified that it was delivered on 3/5/08. On 3/5/08, the r/sgt attempted to contact the complainant via telephone and received a recorded message stating that the number was no longer in service. On 3/14/08, the r/sgt attempted to contact the complainant at his residence and was unable to make contact with the complainant or anyone else.

Outcome: Unfounded – based on the lack of evidence available and the complainant's refusal to cooperate.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane created is misleading. It is alleged that the accused pulled complainant/victim over because of racial prejudice. Dr. Shane alleges that the complainant was not contacted, nor did the victim provided a statement. However, the investigator made multiple attempts to contact the complainant, including multiple phone calls, a certified letter to the residence, and a home visit to the residence, with no success. The investigator was unable to make contact with the complainant, nor anyone else. (CITY-WATTS-CR-043821). Because the investigator was unable to obtain a signed sworn affidavit due to the lack of response from the complainant, as required by Illinois law and CBA, the investigator made a finding of 'unfounded.'

The investigation was reasonable.

CR #1017741 (CITY-WATTS CR-059372-CITY-WATTS CR-059272)

Complaint Received: June 27, 2008

Date of Incident: June 27, 2008

Address of Incident: 6000 S. Western

Accused: Unknown

Complainant: Cherie Brusky

Allegations: The complainant alleges that an unknown officer assigned to car #9177 cut her off in traffic. The complainant states that she followed the car from 6000 S. Western to Western and Ogden watching the officer running red lights going around cars.

Outcome: Administratively Closed

FACE SHEET ONLY

Review of Loevy/Shane Spreadsheet: This log comes from a complaint made by Cherie Brusky who alleged the unknown accused officer cut her off in traffic and ran red lights while going around cars. This matter was referred to the District Commander for review, and this file does not reflect what was done with the matter from there, which is not reflected in the Loevy/Shane spreadsheet.

CR #1018118 (CITY-WATTS CR-045185-CITY-WATTS CR-045233)

Complaint Received: August 3, 2008

Date of Incident: July 11, 2008

Address of Incident: 1530 W. 112th Place

Accused: PO Reginald Dukes #11176

Complainant: Sgt. Godfrey Cronin #1656

Allegations: It is reported that the accused was operating a duty department vehicle while off duty at which time, the accused was involved in a traffic accident.

Investigation: On 7/11/08, the accused was involved in a traffic accident. He is assigned to unit 189 and was off duty while driving the department vehicle. Sgt. Dougherty from the 22nd District responded to the scene

79

and notified narcotics 24-hour desk personnel of the accident. Lt. Piazza instructed Sgt. Cronin to initiate an investigation against PO Dukes.

PO Dukes states he was scheduled to work 1st watch CTA special employment on 7/11/08. PO Dukes states he was running late, and his equipment was in the department vehicle. PO Dukes made the decision to use the department vehicle to go to work. Subsequently when his tour of duty was over, he was involved in a traffic accident. PO Dukes states that he used poor judgment in driving the vehicle while off-duty.

Earlier in the year, PO Dukes signed an Organized Crime Division directive which stated that the department vehicle was only to be driven while on-duty, unless an emergency situation arose, and then the usage of the vehicle would have to be approved by the member's lieutenant or sergeant. PO Dukes did not have permission to drive the department vehicle while off duty.

Outcome: Sustained – violation of Rule 6 – 3-day suspension.

Review of Loevy/Shane Spreadsheet: This sustained complaint alleges the Accused improperly used a department vehicle while off-duty. The complaint was made by a sergeant after the Accused was in a car accident in the vehicle. The spreadsheet indicates the Complainant was not contacted and Not Applicable for whether the complainant gave a statement, but that is partially inaccurate because the Complainant (Sgt. Cronin) made a statement in the form of a To/From report regarding the incident, and there was no need to contact Sgt. Cronin any further as the CR was investigated and the accused admitted he should not have used the department vehicle off duty. Also, the Loevy/Spreadsheet is misleading as it states that the accused did not provide a statement when he did provide a statement in the form of a To/From memo admitting to the misconduct. The spreadsheet calls this memo an Administrative report, not a statement. The spreadsheet indicates that the accused did not give a statement, but he submitted a memo acknowledging his misconduct.

This investigation was reasonable.

---

CR #1021838 (CITY-WATTS CR-060002-CITY-WATTS CR-060003)

Complaint Received: November 19, 2008

Date of Incident: Unknown

Address of Incident: 1360 W. Touhy, Apt. 204

Accused: Unknown

Complainant: Kathleen Gillispie

Allegations: The complainant filed this complaint in person because the correspondence which she mailed to IPRA had not been located. The complainant alleges that she sent correspondence to IPRA in response to several unknown officers harassing her on various unknown dates. The complainant alleges that the unknown officers have "tapped" her home with cameras and listening devices and have been following her. The complainant alleges that she is currently homeless because she had to move from her because of the devices, and she possesses evidence of the devices. The complainant left the IPRA office abruptly and did not provide any specific information as to the alleged misconduct by CPD officers. Note: upon inquiry, the complainant was unable to provide a copy of the correspondence she had sent to IPRA.

Outcome: Administratively Closed

Review of Loevy/Shane Spreadsheet: It is alleged that the accused are harassing the complainant/victim by "tapping" her home with cameras/listening devices and have been following her, which has caused her to be homeless due to needing to move. Dr. Shane's sheet indicates "no investigation" was done. However, IAD closed the investigation because the complainant left the IPRA office abruptly and did not provide any specific information as to the alleged misconduct by CPD officers, nor did the complainant provide a copy of the correspondence she supposedly had sent to IPRA. As a result, the accused officers were not identified. The Loevy/Shane spreadsheet is misleading in that it purports to show IAD failed to investigate the alleged

CITY-BG-063069

misconduct, when in fact the complainant/victim provided no information to IAD for them to investigate the claim, implausible as it appears on its face. Moreover, the Loevy/Shane spreadsheet is also inaccurate because it states "no" under the column of any officer submit administrative report. There would have no reason for an officer to submit an administrative report, and therefore, the column should have been marked "not applicable." The spreadsheet also lists "No" under the column of any officer referred to Cook County Prosecutor's Office. This should be listed as "not applicable" because no accused officers were identified, and the victim/complainant refused to provide information sufficient for IAD to investigate what officers may have been involved in the alleged misconduct. The spreadsheet indicates there was no statement from the accused officer and no canvas, search for cameras, or photos of scene, all of which were unnecessary.

This administrative closure was reasonable.

CR #1021971 (CITY-WATTS CR-046212-CITY-WATTS CR-046271)

Complaint Received: November 25, 2008

Date of Incident: November 4, 2008

Address of Incident: 5600 W. West End Ave.

Accused: Unknown

Victim: Tamika Fikes, Viola Wright

Complainant: Judy Smith

Allegations: The complainant alleges that unknown officers (1) displayed the middle finger to victims Viola Wright and Tamika Fikes and (2) attempted to discharge OC spray at Wright and Fikes.

Investigation: The complainant did not witness the incident. In an in-person interview, the victim, Viola Wright, stated that she and her cousin, Tamika Fikes, stood on their front porch after learning that Barrack Obama won the presidential election. Wright and her cousin then walked to the intersection of East End and Central Ave. Wright saw three marked squad cars drive past them. One of the officers in the car stuck his hand out of the car window. Wright saw the officer holding a small can in his hand and he used that can to discharge spray at Wright and Fikes. The spray missed them. Wright and Fikes then ran back home and told their aunt, Judy Smith, what occurred. Numerous attempts to contact the victim, Tamika Fikes, via telephone calls, letters and personal visits were unsuccessful. A canvass of the location of the incident did not produce additional witnesses. Fliers were posted in the vestibule mailbox area of each building in the complex as well for 10 days in an attempt to obtain additional information.

Outcome: Unfounded – though Viola Wright stated she saw an officer discharge OC spray from inside the squad car, she makes no allegation about that officer or any other officer pointing the middle finger at them. Neither victim was sprayed with the OC spray. Tamika Fikes failed to cooperate with the investigation. There is insufficient evidence to prove or refute the allegations.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. This CR was initiated after the complainant alleged unknown officers gave their middle finger to victims, Viola Wright and Tamika Fikes; and attempted to discharge OC spray at the victims. The Loevy/Shane spreadsheet omits the fact that Tamika Fikes did not cooperate after the investigator made many attempts to contact her. The spreadsheet criticizes the investigation for not taking photos of the complainant/victim, but there was no reason to due to the allegation of vulgar gestures. The spreadsheet indicates that there was no statement from the accused officer but an officer was not identified.

This investigation was conducted reasonably.

CR #1022370 (CITY-WATTS CR-060006-CITY-WATTS CR-060007)

Complaint Received: December 11, 2008

CITY-BG-063070

Date of Incident: December 8, 2008

Address of Incident: 3510 S. Michigan Ave.

Accused: Unknown

Complainant: Mark Ball

Allegations: The complainant alleges that Supt. Weis refuses to take action against police officers who have implanted a device inside his body and are stalking the complainant.

Outcome: Administratively Closed – allegation is not factual.

FACE SHEET ONLY

Review of Loevy/Shane Spreadsheet: In this Case Log, the complainant Mark Ball alleged that "Superintendent Weiss refuses to take action against police officers who have implanted a device inside his body and are stalking [Ball]." The Case Log was administratively closed as the allegation was not factual, which the spreadsheet does not acknowledge.

This case was appropriately closed.

CR #1022602 (CITY-WATTS CR-047098-CITY-WATTS CR-047178)

Complaint Received: January 8, 2009

Date of Incident: December 22, 2008

Address of Incident: 4701 N. Clark

Accused: Unknown

Complainant: Charles Hall

Allegations: The complainant alleges that he attempted to flag down the accused to report a noise disturbance, at which time the male/black officer waved back and continued to drive northbound on Clark Street. The squad car was marked with #4875 on the outside.

Investigation: The r/sgt sent a certified letter on 1/8/09 to the complainant, checked with USPS and "there was no record of this item." The r/sgt sent another certified letter which was delivered on 1/27/09. The r/sgt called the complainant on 1/28 and 1/29/09. On 1/30/09, the complainant contacted the r/sgt and the complainant related that he does not wish to pursue this complaint because he did not clearly see the officers in question and that is the "fatal flaw." When questioned, the complainant agreed to sign a letter of declination. R/sgt met with the complainant at 4717 N. Clark and signed the letter of declination. A check with Area 3 Motor Maintenance Civilian Lopez revealed that no CPD vehicle has #4875 and that is an inaccurate number.

Outcome: Unfounded – the investigator concluded that the investigation revealed that the complainant by his own admission did not "clearly see the officers in question" and wishes to terminate the investigation and signed a letter of declination. Also, 4875 is not a valid outside number for any CPD vehicle.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim and the complainant and victim were not interviewed, when in fact the complainant and victim is the same person, Charles Hall, and he gave a statement after being interviewed. (CITY-WATTS CR-047139-40). In fact, Mr. Hall signed a letter of declination stating he did not want to pursue the complaint, which the Loevy/Shane spreadsheet does not reflect. *Id*. More specifically, Mr. Hall's complaint was that he tried to wave down a police officer to report a noise disturbance (a snow plow at a bank was allegedly too loud), but the officers didn't stop and waved as they drove by. In his statement, he said he didn't clearly see the officers and that is the fatal flaw to his complaint per Mr. Hall. *Id*. The Loevy/Shane spreadsheet also incorrectly asserts no investigation was conducted, when a preliminary investigation was

CITY-BG-063071

conducted by interviewing the complainant/alleged victim, he did not wish to pursue the allegation, and also establishing that there was no squad car with the number asserted by Mr. Hall. The spreadsheet also is misleading because it claims no photos of the victim were taken, no photos of the scene were taken, and no camera was located at the scene, but there was no reason to take any photos because they would not have showed anything relevant, and no camera would have likely captured whether the snow plowing was too loud. This investigation was unfounded when the complainant/alleged victim signed a letter of declination and didn't sign the affidavit required by Illinois law, and when the complainant stated he did not clearly see the officers and there was no squad car with the number he provided.

This investigation was reasonable.

CR #1023657 (CITY-WATTS CR-047374-CITY-WATTS CR-047412)

Complaint Received: February 9, 2009

Date of Incident: September 5, 2008

Address of Incident: 1245 W. 72nd Pl.

Accused: PO Miguel Rodriguez#15399, PO Jose Pedraza Jr. #11765

Victim: Ronnie Hill

Complainant: Ronnie Hill

Allegations: The complainant alleges that the accused (1) falsely arrested the complainant, and (2) gave false testimony in court.

Investigation: The r/inv attempted to contact the complaint regarding the investigation. Because the complainant is an inmate at the CCDOC, the r/inv is unable to make telephonic contact. However, the r/inv sent a certified letter, which included a request that Hill submit a detailed statement regarding the reason for his initiating the complaint and a sworn affidavit attesting to the truthfulness of his allegations. It also included a blank sworn affidavit. The certified letter was delivered to the CCDOC on 2/19/09 where Hill is incarcerated.

Outcome: Closed no conversion – no affidavit – the complainant has refused to cooperate in the conduct of the investigation in that he failed to contact the r/inv regarding his investigation. The complainant failed to sign a sworn affidavit as required by 50 ILC 725/3.8.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. The Loevys/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim, when in fact the complainant/victim is the same person, Ronnie Hill, and he submitted a statement by way of his civil lawsuit and correspondence. (CITY-WATTS CR-047384-86 and 47396-98). A certified letter was sent to and received by the Cook County Department of Corrections for Mr. Hill to sign an affidavit swearing to the facts of his allegation, but he failed to respond or sign the affidavit required by Illinois law and the CBA. The Loevy/Shane spreadsheet fails to acknowledge this fact, but simply asserts that IAD did not obtain an affidavit from the complainant/victim, which is misleading because while he did not sign the affidavit he was contacted by certified letter to sign the affidavit, but failed to do so. Moreover, the Loevy/Shane spreadsheet suggest that multiple activities should have been done even though the complainant/victim did not cooperate by signing the required affidavit. Specifically, Mr. Hill alleged he was falsely arrested for aggravated battery of a police officer (the arrest report in the file reflects that he dragged Officer Pedraza for about 100 feet in an effort to flee the police and resist arrest), yet a review of his civil case in the federal court Pacer computer system for Mr. Hill's civil lawsuit reflects he pled guilty to aggravated battery of a police officer, was sentenced to six years in the penitentiary, and that his case was dismissed when he failed to pursue that case either. (*Hill v. Officers Rodriguez and Pedraza*, 09 C 2943, Dkts. 32 and 38). Mr. Hill's subsequent guilty plea suggests that his CR allegation was without merit, and may

83

explain why he failed to sign the sworn affidavit. The Loevy/Shane spreadsheet does not account for these facts.

This investigation was reasonable and I disagree with Dr. Shane's criticism of this investigation at pages 33-34 of his report.

---

CR #1023717 (CITY-WATTS CR-047413-CITY-WATTS CR-047522)

Complaint Received: February 11, 2009

Date of Incident: February 6, 2009

Address of Incident: 3620 S. Rhodes

Accused: PO Renee Williams #6710, PO Katina Watkins #15071, PO Reginald Weatherly #13239, PO James St. Andrew #6303, PO Miguel Romero #13339, PO George Hernandez #16231

Victim: Reginald Hall, Todd Campbell, Lietka Williams

Complainant: Lietka Williams

Allegations: The complainant alleges that the accused (1) pointed a weapon at the complainants without lawful justification and (2) ransacked Williams' apartment. It is further alleged that PO Romero (3) pushed Campbell on the floor. It is alleged that PO Weatherly (3) handcuffed Hall too tightly. It is alleged that PO King (3) threatened to report Williams to DCFS and building management, and (4) pushed Williams on the floor.

Investigation: According to department reports, while on patrol, officers received information regarding the sale of narcotics at Williams' residence. While in an undercover capacity, an officer knocked on Williams' door, at which time, Williams responded, "what do you need?" Arresting officer replied, "let me get two for five." Williams opened the door and revealed two Ziploc bags containing suspect cannabis. POs entered and searched Williams' residence based on her signed consent. Williams and co-offender Campbell were arrested and charged with PCS after suspect cannabis was found in their possession. The arrestee processing report indicated that neither Williams nor Campbell had any obvious pain or injury.

In an interview with IPRA, Lietka Williams related that she was inside her apartment with her two children and Campbell and Hall. Williams heard a knock at the door and as she was opening the door, several officers pushed the door and entered her apartment. With their guns drawn and pointed at Williams and her friends, the officers ordered them to lie on the ground. The officers asked where the location of the drugs were, and she told them she had a small amount of marijuana in her possession. Williams signed the consent form and allowed the officers to search her apartment. Williams stated PO King threatened to have her children taken away and have her evicted from her government assisted apartment if she did not provide the names of drug and gun dealers. While the officer searched her home, she and Campbell were arrested for the marijuana. PO King threatened to return to her home in 12 days for information. She stated that neither she nor her friends sustained any injuries during the incident.

Reginald Hill stated the officers entered Williams' apartment with their weapons drawn and pointed at him. Williams exited the kitchen with a knife in her hand that she was using to peel her apple. PO King took the knife from Williams and pushed her to the floor. Hall and Campbell immediately laid on the ground. Hall was then handcuffed and seated on the couch. Hall asked one of the officers if he could loosen the cuffs, but he refused. Hall did not seek medical attention, but he related he sustained soreness to his left shoulder and a mark on his left wrist. He remained in the living room throughout the entire incident and had no knowledge of the officers' contact with Williams and/or Campbell. Hall was not arrested.

Todd Hall heard a heavy knock at the door and flicked the latch to open the door. As he did that, approximately 4-5 officers entered the house with their guns out and pointed in Hall and Campbell's direction. The officers handcuffed Campbell, Hall and Williams. They ransacked Williams' apartment. Both Campbell and Williams were arrested for possession of marijuana. Campbell stated he sustained soreness to his shoulder

as a result of being pushed to the floor, but did not seek medical treatment. Campbell related that PO King pushed Williams to the ground and placed her foot on Williams' back. Campbell stated that he did not hear any officer threaten Williams.

The accused officers provided to/from subject reports and denied the allegations against them and also denied observing any department members engage in police misconduct. PO Watkins handcuffed Williams, performed a custodial search of her and recovered narcotics inside Williams' residence. POs Hernandez and Romero were tasked with searching the residence for narcotics. POs Weatherly and St. Andrews handcuffed Hall, but he did not tell them that the handcuffs were too tight. PO King searched Williams' residence upon learning that Campbell was in possession of suspect narcotics, she effected his arrest.

Outcome: Not Sustained – the investigator stated that although the complainants alleged the accused officers pointed their weapons at them and ransacked the home, the accused officers denied the allegations. The complainants additionally alleged that the accused officers physically and verbally maltreated them. In addition to the officers' denial, the complainants' accounts do not support each other's. Based on their accounts, each complainant was focused on his/her direct contact with the accused officers and did not observe the officers' interactions with the other complainants. Hall and Campbell alleged they sustained injuries during the incident, yet they failed to obtain medical or take photographs.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. This CR was initiated after the complainant alleged six CPD officers entered her apartment with their guns drawn at her and her friends, ransacked her apartment, and physically and verbally maltreated them. The Loevy/Shane spreadsheet incorrectly states that no accused officers provided a statement when each accused officer provided a to/from written statement. Moreover, the Loevy/Shane spreadsheet is misleading because it omits any reference that the complainant and victims failed to obtain medical care or take photos of their alleged injuries; the complainant signed a consent to search form prior to the accused officers searching her residence; and the complainants failed to corroborate each other's account of events, which the Loevy/Shane spreadsheet omits. The spreadsheet indicates there were no statements from the officers but they submitted to/from reports. The spreadsheet stated there was no canvas, area photos, radio transmission, or search for cameras, but this incident occurred inside an apartment.

This investigation was reasonable.

---

CR #1024603 (CITY-WATTS CR-047706-CITY-WATTS CR-047709)

Complaint Received: March 11, 2009

Date of Incident: March 6, 2009

Address of Incident: 5500 S. Michigan Ave.

Accused: Unknown

Complainant: Miska Terplan

Witnesses: Sarah Temkin

Allegations: The complainant alleges that the accused failed to appropriately investigate an auto accident.

Outcome: THIS CR ONLY CONTAINS THE FACE SHEET AND APPEARS TO BE INCOMPLETE. It shows that the investigation is pending assignment.

Review of Loevy/Shane Spreadsheet: This allegation comes from a complaint made by Miska Terplan who alleged two unknown accused officers failed to appropriately investigate an auto accident. There is insufficient information in this four-page file what happened with this matter, such as whether it was referred to the district or did not rise to the level of a violation of a department directive.

---

CR #1024751 (CITY-WATTS CR-047879-CITY-WATTS CR-047919)

CITY-BG-063074

Complaint Received: March 16, 2009

Date of Incident: March 16, 2009

Address of Incident: 6464 N. Clark St.

Accused: Unknown

Complainant: Sgt. Hans Keller #1380

Witnesses: PO Lisa Achilly #5782, PO Joseph Zaccagnino #11001

Allegations: The complainant alleges that an unknown officer was inattentive to duty in that, a clear plastic bag containing a large white rock-like substance (suspect crack-cocaine) was found lying on the floor in the interview room behind a propped open door and the wall.

Investigation: The two witness officers found the suspect narcotics and immediately reported it to the 1st watch Sergeant Hans Keller. The incident was documented in a CR investigation initiation report completed by Sgt. Keller and found a case report (RD HR219561) which was completed by POs Zaccagnino and Achilly. The suspect narcotics were inventoried under 11615355.

The 24th District is not equipped with video cameras in the interview rooms or in the hallways leading to the interview rooms. As a result of this, it is impossible to identify who attempted to secrete the suspect narcotics behind the door, or how long those suspect narcotics were in the room before being found by the witness officers Achilly and Zaccagnino.

Outcome: Not Sustained – there is no evidence that would lead to finding the identity of the accused officer(s).

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading in part. This CR was initiated when two police officers found an unaccounted for bag of suspect crack cocaine that had been left in an interview room, which officers submitted a lost and found report and then a to/from report reflecting the allegations made in the CR. The Loevy/Shane spreadsheet reflects Not Applicable to whether any witness was contacted or interviewed or provided a statement, when all three of those columns should have said yes. The Loevy/Shane spreadsheet also states that no video was obtained, but the investigation showed that "the 24th District is not equipped with video cameras in interview rooms or in the hallways leading to the interview rooms." This fact is omitted from the spreadsheet, rendering it incomplete and misleading when it criticizes the CR investigation for not locating any video. The spreadsheet is also incomplete and therefore misleading when it seems to assert that additional steps could have been taken to identify how the bag of suspect crack cocaine was left in the interview room, when no such steps were identified and the investigation concluded it was "impossible to identify who attempted to secrete the suspect narcotics behind the door, or how long those suspect narcotic were in the room before being found." The indication that no cameras were found at scene implies the officers did not look for a camera, rather it is documented that there was no camera in the interview room.

This investigation was reasonable.

CR #1024942 (CITY-WATTS CR-060077-CITY-WATTS CR-060135)

Complaint Received: March 24, 2009

Date of Incident: January 13, 2007

Address of Incident: 3100 N. Pulaski

Accused: PO Rogelio Martinez #17099, PO Elizabeth Collazo #476

Victim: David Rivera

Complainant: Attorney Jeffrey Granich

86

Allegations: The victim alleges he was searched by the accused officers without probable cause and was falsely arrested and charged with possession of heroin under RD HN122517.

Investigation: According to department reports, the victim was riding a bicycle southbound on Pulaski from Belmont against northbound traffic weaving in and out of traffic in a reckless manner. The a/o's were able to curb the bicycle when the victim was observed hopping off his bicycle and dropped a small object to the ground. Further investigation revealed a clear plastic knotted baggie containing a white powdery substance, suspect heroin. He was placed into custody, mirandized, and transported to the 017th for processing. The victim stated he found the suspect heroin in the hallway of his home. The contraband was sent to the ISP Crime Lab for analysis which confirmed the substance as heroin. The criminal charge against Rivera was ultimately dismissed in front of Judge Havis in January 2007.

The r/sgt made attempts to contact the complainant on 4/1/09 with negative results. A certified letter was sent to the office of the complainant and to the home address of the victim. The signed receipt from the attorney's office came back to IAD. USPS records reflect attempted delivery of the letter to the home of Rivera, but the envelope is presently being held at the post office as unclaimed mail. There has been no contact from the attorney or the victim.

Outcome: Closed – no conversion/no affidavit

Review of Loevy/Shane Spreadsheet: In this Case Log, which was logged based on a federal civil rights lawsuit, alleges that officers Martinez and Collazo searched victim David Rivera without probable cause and falsely arrested him.

The data created by the Loevy firm for Case Log #1024942 that Dr. Shane relied upon is misleading. For instance, they assert that no contact was made with the complainant, Attorney Jeffrey Granich, and no contact was made with victim David Rivera. However the CR contains certified letters sent to Granich's Chicago office and Rivera's home address, but these letters were not responded to. The CR also reflects that telephone calls were made to Attorney Granich's office, but Granich did not respond to those calls. Likewise, the data is misleading because it states "not applicable" for any witnesses contacted, witness statements, in person witness statements, and non-accused officer statements", and "no" for any accused officer statements or any officer submitted administrative reports. The Case Log was determined to be "closed, no conversion" with the following determination "No Affidavit" because no interview was conducted with the complainant or victim due to the failure to cooperate, and no sworn affidavits were submitted.

This investigation was reasonable.

CR #1026074 (CITY-WATTS CR-048766-CITY-WATTS CR-048695)

Complaint Received: May 5, 2009

Date of Incident: May 1, 2009

Address of Incident: 138 W. Cermak Rd.

Accused: PO Steven Burrell #17101

Victim: Chris Doty

Complainant: Chris Doty

Witnesses: PO Michael Crawford #17905

Allegations: The complainant alleges that the accused (1) directed profanities at him, (2) pushed him against a steel pole, (3) dragged him on the ground, and (4) took his person property and failed to inventory or return the items.

Investigation: In an interview with IPRA, the complainant related he was at the CTA Red Line Cermak station and decided to jump the turnstile because no one was watching. He ran to the train but missed it. Doty stood

on the platform watching the train and two male/black uniformed officers approached and said, "come here, motherfucker." PO Burrell grabbed Doty by the back of the neck and pushed him against the steel pole near the employee booth three times. Doty asked the officer why he was doing this and PO Burrell replied, "shut up, bitch." Doty struck his nose and forehead on the pole two times and the mouth one time. Doty chipped his tooth and was bleeding. He had a concussion (which was never diagnosed by a medical professional) from hitting the police and trying to fight the officers by kicking them. The officers dragged Doty on the ground before handcuffing him and raising him to his feet. The officers took Doty to the police station. After he was released, he went to Provident Hospital and was referred to a dentist. He related his property in his possession, including $3 USC, the back of his phone, condoms and house keys were taken from him in lockup and not returned.

Department records indicate that Doty was charged with trespassing on the CTA without paying. POs Burrell and Crawford were conducting a premises check and observed Doty jump over the turnstile. Officers approached Doty and asked for his ID, but he began to swear and refused to give them any information. Doty was placed under arrest and transported to the 001st District for processing. Doty became combative during transport by kicking, spitting, and banging his body around the inside of the squadrol, which required four officers and a sergeant to escort him from the squadrol. Inventory sheets indicate that Doty's bracelet, cellular phone and wallet containing various items were inventoried at the time of the arrest.

The video from the CTA contained images from four cameras. Doty is shown running behind someone and jumping over the turnstile. POs Burrell and Crawford approached Doty and escorted him past the employee booth and out of the paid area. The video shows Doty repeatedly kicking at the officers and trying to push and pull away from them, but the officers maintain their hold as they handcuffed and searched Doty. Doty fell to the ground at one point as he tried to pull away, but the officers helped him to his feet and brought him down the stairs. The video does not show PO Burrell committing any of the alleged actions. In a report, accused PO Burrell and witness PO Crawford provided an account of the incident that corroborates the related department reports.

Outcome: Unfounded – investigation revealed that the incident did not occur as alleged. Doty provided an account of the incident that directly contradicts the related department reports. The only portion of Doty's account that is supported by the CTA video evidence is the fact that he jumped over the turnstile and was subsequently arrested. The video shows he tried to get away from the officers, even after he was handcuffed, and he fell to the ground as he was struggling with them. Although the medical and dental records, as well as the ET photographs, show that Doty had a chipped tooth, when he sustained the injury is not clear. CB photos taken after Doty's arrest depict no swelling or bleeding on the face that would accompany his alleged facial injuries. Department reports indicate that Doty's personal property was inventoried at the time of the arrest. Because Doty's account of his physical contact with PO Burrell is refuted by video, he has no credibility regarding the verbal contact he had with the officers. PO Burrell denied that he directed profanities at Doty and PO Crawford also related that he did not observe that behavior.

Review of Loevy/Shane Spreadsheet: In this CR, the complainant/victim Chris Doty alleges P.O. Steven Burrell directed profanities at Doty, pushed Doty into a steel pole, dragged Doty on the ground, and took Doty's personal property and failed to inventory or return the items.

The data created by the Loevy firm for CR#1026074 that Dr. Shane relied upon is misleading. For instance, they assert that no statement was taken from the complainant/victim Chris Doty, however the CR contains Investigator Goodwin's report entitled "Summary of the Interview of Chris Doty, Complainant" (the Shane/Loevy data does indicate there was an "in person interview with complainant"). The data is also misleading because it states that no victim statement was taken, but the complainant is the alleged victim in this case (the data indicates there was an in person interview with the victim). The data is also misleading because it states "not applicable" as to whether witnesses were contacted/gave statements and states no non-accused officer gave statements, but the CR contains Officer Crawford's statement in the form of a To/From

CITY-BG-063077

report regarding the incident with Doty. The data is misleading because it states no accused officer was identified by the victim, but the investigation reveals the victim believed the officer was named "Barnes"; CPD investigation determined the accused officer to be Officer Burrell. Also, the data is misleading because it states no accused officer gave a statement, but the CR contains accused Officer Burrell's To/From report regarding the interaction with Doty (however, the Shane/Loevy data states that an administrative report was submitted).

The CR was found to be unfounded, based upon police department reports and Chicago Transit Authority video depicting Doty's interaction with police.

This investigation was reasonable.

---

CR #1026762 (CITY-WATTS CR-060163-CITY-WATTS CR-060189)

Complaint Received: June 2, 2009

Date of Incident: May 27, 2009

Address of Incident: 4338 W. Washington Blvd., Apt. 2

Accused: Unknown

Complainant: Sonja Evans

Witnesses: Sgt. Steven Konow #2003

Allegations: The complainant alleges that unknown civilian dressed officers kicked in her front door and searched her property without a search warrant.

Investigation: The r/inv was unable to contact the complainant despite numerous telephone calls and the mailing of a certified letter. Investigation revealed that numerous CPD units were dispatched to the complainant's residence on 5/27/09 responding to a 10-1. At which point, the responding officers gained entry to the location by forcibly knocking down the door. OEMC had given the officers the incorrect location of the 10-1. The 10-1 was located at 4332 W. Washington Blvd. The 10-1 involved an offender attempting to disarm a police officer. More than 25 units responded to the scene, therefore, the r/inv was unable to identify which units specifically entered the residence of the complainant. Sgt. Steven Konow was listed as a witness in that he completed the City Claim Notification relative to the destruction of the complainant's door.

Outcome: Closed – No Conversion – due to the lack of cooperation from the complainant and the inability to obtain a signed sworn affidavit.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane created is misleading. It is alleged that the accused kicked in the complainant/victim's front door and searched the complainant/victims' property without a warrant. Dr. Shane's sheet indicates "no investigation" was done. This is inaccurate. An investigator was unable to get in touch with the complainant despite numerous phone calls and the mailing of a certified letter. The investigation revealed that numerous CPD units were dispatched to the complainant's residence responding to a 10-1. At which point, the officers gained entry to the location by forcibly knocking down the door. OEMC had given the officers the incorrect location of the 10-1 (officer needs urgent help). The 10-1 involved an offender attempting to disarm a police officer. More than 25 units responded to the scene, and therefore, the investigator was unable to identify which units specifically entered the residence of the Complainant. Due to the lack of cooperation from the complainant and the inability to obtain a signed sworn affidavit, the investigator classified this investigation as "closed- no conversion".

This investigation was reasonable and a sergeant completed a claim form for the damage.

---

CR #1027607 (CITY-WATTS CR-049750-CITY-WATTS CR-049760)

Complaint Received: July 6, 2009

89

Date of Incident: June 24, 2009

Address of Incident: 5219 S. Wentworth

Accused: PO Roger Webster #18805, PO Quentin Brice #18730

Complainant: Sgt. Geoff Pienta #1387

Witnesses: William Cade, Andres Jaramillo, Angel Lopez

Allegations: The complainant alleges that PO Webster (1) failed to secure PMDT #5273 when he took vehicle #4115 to Area 1 Motor Maintenance for service, he left the PMDT in the vehicle and the PMDT was missing when he picked the vehicle up. The complainant alleges that PO Brice (2) failed to secure PMDT #5273 when he took vehicle #4115 to Area 1 Motor Maintenance for service, he left the PMDT in the vehicle and the PMDT was missing when he picked the vehicle up.

Investigation: The r/inv reviewed the initiation report which indicated that POs Webster and Brice took vehicle 4115 to garage one, fleet management for repairs on 6/21/09. PMDT 5273 was mounted in the vehicle and the officers did not have the key to remove it, so they left the PMDT in the vehicle. POs Webster and Brice returned to garage one to pick up vehicle 4115 on 6/24/09 and discovered that the PMDT was missing. On 8/5 and 8/6/09, the r/inv interviewed Mr. Cade and Mr. Lopez and both indicated that the PMDT was removed from the mount in vehicle 4115 and given to an unknown uniformed officer from the 002nd District.

Sgt. Pienta of the 002nd District tactical team was interviewed on 8/6/09 and it was suggested that he check the radio room to see if the PMDT had been returned. The r/inv accompanied Sgt. Pienta to the radio room and discovered the missing PMDT 5273 among the PMDTs in the room. Sgt. Pienta completed a supplementary report under RD HR392598.

Outcome: Unfounded

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. This CR was initiated after CPD Officers Roger Webster and Quentin Brice took their squad vehicle for repairs but failed to remove the PMDT. When Officers Brice and Webster retrieved their squad vehicle, the PMDT was missing. The Loevy/Shane spreadsheet incorrectly states that no witness was interviewed or provided a statement when in fact two repair maintenance employees, William Cade and Angel Lopez, were interviewed and stated that they removed the PMDT and gave it to an unknown officer who returned the PMDT to the District 002 radio room. (CITY-WATTS CR-049759). This fact is omitted from the spreadsheet, rendering it incomplete. Thus, OPS closed this investigation unfounded. The spreadsheet indicates there was no statement from the complainant or the accused officer. The review of this case reflects the absurdity of creating an investigative spreadsheet without the background and knowledge of internal affairs investigations.

A sergeant filed a report due to missing equipment; the equipment was located and there was no misconduct and the investigation was reasonable.

CR #1029429 (CITY-WATTS CR-061204-CITY-WATTS CR-061234)

Complaint Received: September 10, 2009

Date of Incident: August 21, 2009

Address of Incident: 4400 S. Wallace

Accused: PO Erin Murphy #16999, PO Joseph Pulia #6311, PO William Orsa #17885

Victim: Melissa Ligue

Complainant: Melissa Ligue

Allegations: The complainant states that for the past two weeks, her and her family have been stopped on a nightly basis by the accused. In addition, she alleges that the accused cursed at them and talked down to them. She also alleges that on today's date, she was stopped again by the accused. The complainant further alleges that the accused searched her vehicle for no reason. Officers in BT 935 pulled up, laughed and told them that whenever they see them, they are going to find a reason to give them tickets.

Investigation: The r/sgt called the complainant on 9/10/09 and left a detailed message for the complainant to call him back to arrange a good time to meet and discuss the allegations. On 9/11/09, the r/sgt stopped by the complainant's residence and left a letter with his contact information, explaining that it was necessary to speak with the complainant in regard to her complaint. On 9/12/09, the r/sgt followed up with an additional phone call and left another message. On 1/27/10, the r/sgt left another message in regard to the complaint. On 1/27/10, the r/sgt called the number on the face sheet of the complaint, only to find it not in service. On 2/3/10, the r/sgt mailed the complainant a letter via USPS registered mail. The complainant has not contacted the r/sgt in regard to the matter.

The r/sgt was able to determine the accused members' names by a search of the daily A&A sheets. The A&A sheets revealed that POs Orsa and Pulia were assigned to Beat 935 on 8/21/08. In addition, the A&A sheets revealed the only blond female officer assigned to Beat 911 on 8/21/08 was PO Murphy.

Outcome: Unfounded – based on the complainant's unwillingness to cooperate in the investigation, and the fact that there is no signed affidavit or any effort on the complainant's behalf to return any phone calls for an investigatory follow-up.

Review of Loevy/Shane Spreadsheet: The Loevy/Shane Spreadsheet is misleading. For instance, it states that the complainant and victim were not contacted, but as explained above, the investigator attempted to contact the complainant (who lived with the victim) on multiple occasions and in different ways, including a visit to their residence. This error is compounded 13 different times in the spreadsheet as it has 13 separate entries for this CR, a problem seen throughout the spreadsheet. There spreadsheet is also misleading because it states No instead of Not Applicable for a variety of columns, including whether photos of the victim or scene were taken and whether a camera was located. The spreadsheet shows the complainant was not contacted, but ignores the efforts to make contact. It states there was no statement from the accused officer, but there was no accused officer and it states there was no search for cameras, area canvas, or scene photos, but no indication exactly where the incidents occurred.

This investigation was reasonable.

CR #1029796 (CITY-WATTS CR-061394-CITY-WATTS CR-061723)

Complaint Received: September 9, 2009

Date of Incident: September 3, 2009

Address of Incident: 1152 N. Karlov Ave.

Accused: PO Javed Ali #8411, PO Ricky Villacis #5394

Victim: Zeta Davis

Complainant: Zeta Davis

Witnesses: PO Marvin Bonnstetter #15963, PO John Frano #11772, PO Joseph Simon #16497, PO Vincent Fico #6284, PO Michael Napoli #9560, PO William Betancourt #2276, PO Jesse Torres #10070, PO Kevin Garcia #4890, PO Salvator Reina #2622, Jeremy Watkins, Temeco Taylor

Allegations: The complainant alleges that during the execution of a search warrant, the accused (1) shot the complainant's dog without justification.

Investigation: Department reports indicate that during the execution of a search warrant, the officers approached the residence and observed the target of the warrant, Lamont Conley, on the front porch. Conley was subsequently detained for the search warrant investigation. Officers proceeded into the open door of the residence, secured the scene, and digital photographs were taken by PO Fico. A search of the residence revealed several zip-lock baggies containing various amounts of PCP, cannabis and ecstasy. Conley was placed under arrest and a custodial search of his person revealed $1853 USC. During the search of the backyard, Conley's Pitbull dog broke loose from his collar and attacked POs Ali and Villacis. Fearing for their lives, the officers drew their weapons and fired a total of 18 rounds, killing the dog. TRRs indicate that POs Ali and Villacis discharged their firearms 9 times each. ET photos depict the backyard, the dog's collar which is still connected to the leash tied to a fence post in the yard. The photos also depict the dog, still lying in the backyard appearing to have sustained several gunshot wounds.

In a statement to IPRA, the complainant stated that at the time of the incident, she was at a neighbor's house. She received a telephone call that the police were searching her home. Davis heard neighbors talking about two officers bragging that they wanted to kill a dog. From her neighbor's upstairs back porch, Davis attempted to look into the backyard. She saw her brother, Jimmy Watkins. Davis then saw three male uniformed officers repeatedly shoot her 2-year-old, 40 lb. Pitbull dog. Davis stated the dog was not chained up or tied up in the backyard. Her dog was running away from the officers, toward the garage, when the officers shot the dog. Davis's brother-in-law was arrested and taken from the house. Davis stated that an officer told her that he shot the dog because the dog charged at him.

Outcome: Unfounded – The witness, Jeremy Watkins, stated that when he told the officers that he could take care of the dog, the officers instructed him to secure the dog on its leash in the backyard. The officers also allowed Watkins to remain in the yard and watch the dog. Although Watkins did as instructed, the dog still managed to break free of its collar while the officers were searching in the backyard. Watkins also stated that the dog ran towards the officers, which is consistent with the statements provided by the involved officers, the witness officers, and department reports. The investigation revealed no credible evidence to support the allegation that use of force utilized by POs Ali and Villacis was unjustified.

Review of Loevy/Shane Spreadsheet: In this CR, the complainant Zeta Davis alleged accused officers Ali and Villacis shot Davis's dog without justification while officers executed a search warrant.

The data created by the Loevy firm for CR#1029796 that Dr. Shane relied upon is misleading. For instance, they assert that no accused officer statements and no non-accused officer statements were given. However, the CR contains numerous (11 total) statements in the form of To/From reports from both the accused officers and the multiple non-accused-officer witnesses regarding the incident (the Shane/Loevy data indicates officers submitted administrative reports).

The CR was determined to be unfounded based on witness reports, including the report of Jeremy Watkins, who took care of the dog and stated the dog charged after officers.

This investigation was reasonable.

CR #1030125 (CITY-WATTS CR-061931-CITY-WATTS CR-062032)

Complaint Received: January 18, 2011

Date of Incident: September 15, 2009

Address of Incident: 5740 S. Michigan Ave.

Accused: PO Richard McMillan #10978

Victim: Rasheed Cook

Complainant: Rasheed Cook

CITY-BG-063081

Witnesses: Johnnie Carthans, Erica Robinson, Sherman Igess, Vincent Smith, Conchetta Brown, Shawnae Irving

Allegations: The complainant alleges that the accused handcuffed her too tightly, causing minor scratches to her right wrist.

Investigation: Several attempts were made to have the complainant sign the sworn complaint affidavit as required by the Illinois Uniformed Peace Officers Disciplinary Act and advising the complainant that failure to do so many result in termination of the investigation, the complainant has failed to sign the sworn complaint affidavit.

Department reports indicate that Lisa Cook called at 0845 hours and reported her daughter was beaten up. A call was received from the Board of Education on the same date at 0956 hours stating that PO McMillan has a parent in custody for striking a student and he needed assistance. The caller went on to state that the parent was fighting with him and did not want to be arrested. Another call was received from Ms. Cook at 1323 hours and reported that a sergeant was needed at the Carter School because an officer assaulted and handcuffed her. The caller also requested and ambulance.

Outcome: Closed/No Affidavit – Statements and affidavits were obtained from four separate witnesses relative to the allegations of the complainant. Importantly, these four witnesses did not allege any misconduct of the accused officer. Each witness described the complainant as resisting the orders of the accused, using profanity and/or being argumentative with the accused in front of school children. The investigation yielded no evidence of misconduct on the part of the accused officer. The complainant has refused to provide an affidavit or otherwise give a statement to pursue her claims.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. The Loevy/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim, when in fact the complainant/victim is the same person, Rasheed Cook, and she submitted an initial statement on the day she alleged the handcuffs were too tight after she was arrested for assaulting a little girl. (CITY-WATTS CR-061946). The spreadsheet is also misleading because it asserts that no statement was taken from any witness, when four witnesses did provide statements, including Johnnie Carthans, Erica Robinson, Sherman Igess, and Vincent Smith. (CITY-WATTS CR-061980). The Loevy firm and Shane also suggests that no affidavit was obtained, but they omit that the complainant/alleged victim Ms. Cook scheduled two interviews with IPRA to provide a statement, but failed to appear both times, and never appeared to sign the affidavit or provide a follow-up statement. This CR was investigated by CPD and determined to be closed/no affidavit because the Ms. Reed failed to appear to sign the affidavit, and because the four witnesses provided statements that Ms. Reed pushed the accused officer, waived her arms back and forth, prevented the officer from placing handcuffs on her, was screaming in a loud voice and using profanity with multiple children around, and she also tried several times to pull the cuffs off her wrists, and finally, she refused treatment from the CFD paramedics when they attempted to evaluate at her wrists.

This investigation was reasonable.

CR #1030608 (CITY-WATTS CR-062050-CITY-WATTS CR-062222)

Complaint Received: September 9, 2009

Date of Incident: September 30, 2009

Address of Incident: 9500 S. State St.

Accused: Unknown

Victim: Antoine Jimerson

Complainant: Antoine Jimerson

CITY-BG-063082

Witnesses: Marion Jimerson

Allegations: The complainant alleged that the accused (1) detained him without justification for police battery after the victim bumped into him, (2) handcuffed him too tightly, (3) pushed him against the wall, (4) slapped him on the left side of his face, and (5) verbally abused him by telling him to "shut the fuck up."

Investigation: In a statement given to Inv. Marshall of IPRA, the complainant states he was meeting his friend Tyree at the CTA station. They were planning on catching the train to school. He and Tyree were talking as Mr. Jimerson passed through the turnstile, which led downstairs to the train. An officer bumped Mr. Jimerson. However, he wasn't aware it was an officer because he was not in uniform. Mr. Jimerson continued to walk when the officer suddenly pulled him around, showed him his badge and handcuffed him. Mr. Jimerson proceeded to ask the officer what he was being arrested for, but the officer kept yelling "shut up." The officer tightened the cuffs and started pulling back on his thumb to snap his wrist. The officer pushed him up on the wall and then sat him down in a chair and slapped him. The officer then proceeded to tell him, "you just go around bumping people on purpose?" and "you wouldn't have bothered me if I was no white police officer or I was Zeus, or any other little gang banger, see like, cause if you had did that, then they'd a been out here to get you." Mr. Jimerson was told he was being detained because he had bumped into the police officer and that action constituted battery. Mr. Jimerson believes he was in the office for about 40 minutes. Telephone contact was made with Mr. Jimerson for the purpose of having him view a photo array, but he failed to keep the appointment and failed to reschedule or cancel his appointment. Two certified letters were sent to the complainant for the purpose of furthering the investigation and having him present to view a photo array. Mr. Jimerson did not respond.

A field contact card search was conducted, and none were located. An email was sent to the CTA requesting video from CTA cameras 32 and 36 at the Dan Ryan-Red Line CTA location. Mr. Sherman reported saying they no longer had such video footage as their camera only went back to 10/17/09. The crime scene processing report shows that photos were taken of the complainant's face and wrists on 9/30/09 by the ET and the photographs show what appear to be two scratches on the left side of his face, no visible injuries to his wrists, and another scratch or crease to the right side of his face.

Outcome: Unfounded – The police action reported in this matter is not documented in any official CPD report. There is no field contact card nor was there any arrest report. The only possible identification as to the officers involved was the name Officer Penny. However, of the three officers employed by the CPD during that time period, only one fit the complainant's description and he was not on duty on the date of the incident. Extensive efforts to identify the accused have failed. The complainant failed to respond to any attempts to further this investigation. The complainant provided photos dated a full two days prior to the alleged incident. Photographs taken by the ET show only two scratches on the complainant's face which are not consistent with the mechanism of injury he reports.

Review of Loevy/Shane Spreadsheet: The spreadsheet created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet claims no photos were taken of the scene, but there was no reason to take any photos of the scene because the allegations included police battery and verbal abuse and evidence technicians took photos of the complainant/victim, Antoine Jimerson, which showed two scratches on victim's face– inconsistent with the injuries the victim reported. (CITY-WATTS CR-062059). The Loevy/Shane spreadsheet asserts the victim was injured, but the complainant/victim Antoine Jimerson provided photos of those alleged injuries dated two days prior to the alleged incident. (CITY-WATTS CR- 062058). Moreover, despite extensive efforts to identify the accused officers in this incident, none could be identified and Antoine Jimerson failed to respond to multiple attempts made by investigators to further the investigation, which investigation was omitted from the spreadsheet, rendering the complaint "unfounded." (CITY-WATTS CR- 062058-59). The spreadsheet indicates there was no statement from the accused officer, but no officer was identified. The spreadsheet shows there were no radio transmission or photos of the scene, but these were unnecessary.

94

This investigation was reasonable.

CR #1032011 (CITY-WATTS CR-062916-CITY-WATTS CR-062976)

Complaint Received: January 12, 2010

Date of Incident: November 20, 2009

Address of Incident: 11144 S. Edbrooke

Accused: PO Charmaine Smith #12887, PO Eric Holder #5319

Complainant: Calvin Winfield

Allegations: The complainant alleges that the accused officers failed to inventory his personal property that was inside his truck at the time of his arrest. The complainant further alleges that when he returned to his truck, he discovered his cell phone, credit cards and tools were missing.

Investigation: According to department reports, the complainant was placed under arrest for criminal trespass to residence at 11144 S. Edbrooke under RD HR652121. There is no indication that the complainant had a truck in the arrest report. He was arrested in the front yard of the residence on signed complaints of the owner and identification by a witness. The witness, Jerry Mackey, related to the a/o's that while in his residence, he heard a loud noise. He looked out the window and observed the complainant, Calvin Winfield and another unknown male inside the 2nd floor apartment throwing a sink out the window. Jerry Mackey relocated next door at which time the unknown male fled down the alley. Lakeisha Riley (the owner of the apartment) arrived on scene and related that she did not give the complainant or anyone else permission to enter her residence that was boarded up due to a recent fire. A/O's spoke with Sgt. Koren who related that the burglary charges will not be sought at this time. The r/sgt assigned PO Lopez to create a theft from vehicle report for the complainant recorded under RD HR653455.

The r/sgt spoke with the complainant on the phone and arranged to have the complainant come in to the 005th District to sign an affidavit. The complainant agreed to come in on 1/18/10 but failed to appear. The r/sgt after several additional phone conversations, arranged a second meeting with the complainant on 1/27/10 in the 005th District again but the complainant failed to appear. On 1/28/10, the r/sgt mailed the complainant a certified letter requesting him to contact the r/sgt regarding the incident. As of 2/14/10, the complainant has not made contact. R/sgt received verification that the letter was delivered to the complainant on 2/4/10.

Outcome: No Signed Affidavit – due to lack of complainant's cooperation.

Review of Loevy/Shane Spreadsheet: Complainant, arrested after a trespass to residence, alleged after being released on an I-bond that the officers failed to inventory personal property inside his truck at the time of his arrest. He claims when he was arrested in the yard of a residence he asked officers to remove his personal property from his truck and inventory it since his nearby truck could not be secured. He claims upon his release he discovered his phone, credit cards, and tools were missing from his truck. The intake officer prepared a theft from vehicle report for the complainant. Investigator made multiple attempts to secure an affidavit from the complainant, including by talking to the complainant and telling him he needed to come into the department to sign an affidavit and by certified letter that was accepted by complainant. Accused officers were notified but did not provide statements. Investigation closed due to lack of affidavit. The spreadsheet indicates no investigation was conducted despite conversations with complainant and the collection of relevant police reports.

This investigation was reasonable.

CR #1033162 (CITY-WATTS CR-063231-CITY-WATTS CR-063301)

Complaint Received: January 25, 2010

Date of Incident: January 10, 2010

CITY-BG-063084

Address of Incident: 5151 N. Milwaukee (016th District)

Accused: Unknown

Complainant: Sgt. Michael Janus #2458

Witnesses: PO David Mullany #10866, PO Harold Bone #4776

Allegations: It is reported that a box of latex gloves inventoried under 11895548 is missing from the bulk storage room of the 016th District.

Investigation: The r/sgt went to the bulk storage room of the 016th District which is a locked room, and the key was obtained through the watch commander. The r/sgt counted 93 boxes of latex gloves and also observed that each box was given a numerical number by the recovering officers marked 1-94. R/sgt looked at each box and found that box 93 is unaccounted for. The r/sgt obtained to/from reports from both the arresting officers on this case and also Sgt. Callaghan who had been the desk sergeant on the day in question and also counted the boxes. Each of the officers agrees to the count of 94 and agrees that the storage door was locked when they exited. Four days later, on 1/14/10, bulk storage personnel came to the 016th District to pick up this property and found said discrepancy, and this CL was obtained. The r/sgt generated a list of all inventories for the 016th District for the time period of 1/10-1/14/10, looked at each inventory and found that no other bulk storage items were inventoried during these four days.

Per department reports, the latex gloves were recovered under a deceptive practice – theft of lost/mislaid property report, RD HS114044. Hoang Ho and Terry Bridges were observed putting boxes of polymed gloves into a garage. The r/o's asked arrestee Ho where all the boxes came from and he said, "I bought them from a medical store." Arrestee Bridges was asked what he was doing there and he said, "I deliver the boxes for Rob." When asked what the name of the medical company was, they could not provide the name. R/o's asked arrestee Ho if he thought the gloves could have been stolen property and he stated "yes." Both arrestees could not provide any receipts or purchase orders for the boxes of latex gloves. Both Ho and Bridges were placed into custody, read their Miranda rights, and transported to the 016th District for processing. Recovered boxes of latex gloves were inventoried under 11895548 – 94 boxes of polymed powder free latex gloves, size small, each containing 10 individual boxes which contained 100 gloves.

Outcome: Not Sustained

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for CR#1033162 that Dr. Shane relied upon is misleading. For instance, they assert that the complainant was not contacted. However, complainant Sgt. Janus's initiation report is contained in the CR. Additionally, the Shane/Loevy data states no accused officer statements and no non-accused officer statements were given. However, no accused officers were identified, and four non-accused officers (PO Bone, PO Mullany, Sgt. Callaghan, and Sgt. Rucci) submitted statements in the form of To/From reports regarding the investigation (the Shane/Loevy data reflects that an officer submitted an administrative report). The CR was "not sustained" against the unknown officers.

This investigation was reasonable.

CR #1035919 (CITY-WATTS CR-050719-CITY-WATTS CR-050771)

Complaint Received: June 16, 2010

Date of Incident: May 1, 2010

Address of Incident: 4848 N. Winthrop #912

Accused: Sgt. Mary Boyle #1015, PO Kathleen Clyne #9821

Complainant: Wilma Pittman

Witnesses: PO Michael Maher #9724

96

Allegations: The victim alleges that Sgt. Boyle (1) did not provide police service because she did not order PO Clyne to complete a police report. The victim alleges that PO Clyne (2) failed to complete a police report after Pittman told her that the security officer, Andrew Peden, had threatened her and PO Clyne threatened to arrest her.

Investigation: The r/lt interviewed the victim, Ms. Pittman, who stated that Mr. Andrew Peden, the security officer, told her "I'm no punk. I know people. I can have people taken care of." She also admitted that Mr. Peden was instructed to let her know if someone in her apartment caused problems, and TJ is not connected to her apartment. Mr. Peden was interviewed and stated that he only went to Ms. Pittman's apartment to let her know about a situation involving TJ who is connected to her family (he was dropping off a car seat to Ms. Pittman's daughter who resides in another unit). Mr. Peden denied the allegations made by Ms. Pittman, and stated he was only trying to notify her as she had requested. Ms. Bridges, the building manager, was interviewed and related that she talked to Ms. Pittman after the alleged incident occurred and Ms. Pittman was "hollering that she was going down to city hall." Ms. Bridges witnessed Sgt. Boyle attempting to converse with Ms. Pittman in her apartment. She also witnessed the officers attempting to converse with Ms. Pittman in the lobby of the building.

PO Maher responded to the first call of a disturbance placed by Ms. Pittman and listened to PO Clyne and Sgt. Boyle speak with Ms. Pittman. PO Maher stated in his report that the problem was resolved, and no further service was required. Sgt. Boyle and PO Clyne stated in their reports that they interviewed Ms. Pittman after responding to her call, and that based on what she told them, an assault had not been committed. PO Clyne documented this incident on a contact card. When Ms. Pittman stated she would go somewhere else, PO Clyne explained to her that if she made a false police report, she could be arrested. Apparently, Ms. Pittman misinterpreted this statement of fact by PO Clyne as a threat to arrest her.

After reviewing all information available from the complainant and the witnesses, the r/lt has determined that the allegations made by Ms. Pittman are not factual. PO Clyne documented the incident on a contact card because there was no evidence to suggest that an assault had been committed. PO Clyne and Sgt. Boyle attempted to restore peace by speaking to Ms. Bridges, the building manager, about having Mr. Peden adjust his building patrols in order to minimize contact with Ms. Pittman. Sgt. Boyle and PO Clyne also advised Mr. Peden to no longer notify Ms. Pittman of any incidents involving persons related to her family. By attempting to problem solve during the situation, Sgt. Boyle and PO Clyne acted correctly and provided appropriate police services.

Outcome: Exonerated

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. The Loevys/Shane spreadsheet asserts that a statement was not taken from the complainant or the victim, when in fact the complainant/victim is the same person, Wilma Pittman, and she submitted a statement by way of her execution of an affidavit and in an interview on June 22, 2010. (CITY-WATTS CR-050732 and 50747). The spreadsheet is also misleading because it asserts that no statement was taken from any witness, when three witnesses did provide statements, including Officer Maher, Ms. Bridges, and Mr. Peden. The spreadsheet criticizes the investigation for not taking photos of the complainant/victim, but there was no reason to based on this allegation of failure to provide a report. It also misleadingly suggests that no accused officer was identified by any witness, when the accused officer and sergeant were identified. This CR was determined to be exonerated because there was no basis to the allegation that the officer should have written a report when she did complete a contact card, but the spreadsheet created by the Loevy firm relied on by Shane fails to acknowledge what actually happened in this investigation.

This investigation was reasonable.

CR #1036588 (CITY-WATTS CR-071432-CITY-WATTS CR-071448)

Complaint Received: June 1, 2010

Date of Incident: July 17, 2007

Address of Incident: 4647 S. Michigan Ave.

Accused: Det. Michael Tobin #20235, Det. Louis Vittori #21318

Victim: Kenneth Morris

Complainant: Kenneth Morris

Allegations: The complainant alleges that Det. Michael Tobin (1) falsely arrested him for burglary on 7/17/07, (2) gave false testimony in court relative to his arrest for burglary, (3) falsely charged him with residential burglary and robbery on 7/24/07, and (4) gave false testimony in court relative to residential burglary and robbery charges. It is alleged by the complainant that Det. Louis Vittori (5) falsely arrested him for burglary on 7/17/07, (6) gave false testimony in court relative to his arrest for burglary, (7) falsely charged him with residential burglary and robbery on 7/24/07, and (8) gave false testimony in court relative to residential burglary and robbery charges.

Investigation: The r/inv contacted the complainant, explained the sworn affidavit process to the complainant and attempted to schedule an appointment. The complainant states he is being represented by Attorney Kenneth Flaxman in this matter and he will confer with his attorney prior to signing the affidavit or giving a statement. Attorney Flaxman called the r/inv on 6/3/10 to inform the r/inv that he is filing a civil suit on behalf of the complainant and declined to grant the r/inv an interview with the complainant due to pending litigation. The complainant was sent and received a certified letter mailed on 6/5/10. The r/inv has not heard from the complainant.

Outcome: Closed – No Conversion; no affidavit – due to the complainant's lack of cooperation in the investigation.

Review of Loevy/Shane Spreadsheet: In this CR, complainant/victim Kenneth Morris alleged Detectives Tobin and Vittori falsely arrested him for burglary, gave false testimony against him in court, and falsely charged with residential burglary. Complainant's attorney Kenneth Flaxman refused to cooperate with the investigation, stating that a lawsuit was going to be filed. A certified letter to the complainant was not responded to. The CR was classified as "No Conversion" and "No Affidavit."

The data created by the Loevy firm for CR#1036588 that Dr. Shane relied upon is misleading. For instance, they assert that no statement was taken for complainant. However, an initial phone conversation with the complainant took place, but later interviews were rebuffed by complainant's attorney Ken Flaxman. Additionally, complainant failed to respond to a certified letter seeking his cooperation. For these same reasons, the Shane/Loevy data indicating that no interview with a victim took place is likewise misleading. Also, the Shane/Loevy data is misleading because it states no accused officer statements were taken, but that is because of the complainant's and Mr. Flaxman's failure to cooperate in the investigation.

This investigation was reasonable.

CR #1037911 (CITY-WATTS CR-051230-CITY-WATTS CR-051237)

Complaint Received: July 14, 2010

Date of Incident: July 8, 2010

Address of Incident: 2650 N. California

Accused: PO Stephen Machain #7963, PO Freddie DeLeon #8097

Complainant: Sgt. Gregory Gilfillan #1228

Allegations: It is alleged that the accused failed to obey a direct order to return to duty given by Sgt. Gilfillan.

Investigation: The accused officers arrived at IAD on 11/3/10 to submit reports and to express to the r/sgt that there have been numerous issues with the reporting sergeant that have resulted in other complaints against them. When asked, the officers stated the matters are currently under investigation. Both accused officers, in written reports, denied disobeying a direct order and related that this allegation stems from issues with the complainant. Those issues are being handled by another investigator.

Outcome: Not Sustained – insufficient evidence to prove or disprove the allegations made.

Review of Loevy/Shane Spreadsheet: It is alleged that the accused failed to obey a direct order to return to duty given by Sergeant Gilfillan. The accused officers denied disobeying a direct order. The officers related this allegation stemmed from issues with Complainant but those issues were being handled by another investigation. Based on the available evidence, it was recommended that this case be not sustained.

---

CR #1040120 (CITY-WATTS CR-072312-CITY-WATTS CR-072450)

Complaint Received: October 1, 2010

Date of Incident: September 24, 2010

Address of Incident: 7050 S. Maplewood Ave.

Accused: Sgt. Carmello Baglieri #2178, PO Donna Walsh #5273, PO Michael Durkin #10663, PO John Stanley #9024, PO James Johnson #12758, PO Leon Gaffen #19011, PO Daniel Aguilera #5152, FTO Roy Taylor #3153, PPO Zeyad Matlock #3891

Victim: Glenn Pickens

Complainant: Glenn Pickens

Witnesses: Redacted (15-year-old juvenile), Robert Webber

Allegations: The complainant reported that the accused entered and searched his house without a warrant or permission. The complainant further related that the accused damaged several items inside his home and took several personal items without returning or inventorying the items. The complainant related that he was arrested without justification and the accused verbally abused him.

Investigation: R/lt sent a copy of CPD 44.223 to the complainant at the address provided on the face sheet due to no telephone contact with the complainant on 10/22/10. On 12/1/10, the r/lt received information that the package was unclaimed and would be returned to sender. Copies of reports as submitted by the arresting officers for the arrest of complainant was documented under RD HS531608 were obtained and identified two witnesses (also arrested) as well as the accused officers as beats 863E, 863C, 832, 833 and 823 from the PCAD Report. Also identified was beat 863 as stated in the narrative of the supplementary report from the assigned sergeant who was on the scene during the alleged misconduct. R/lt attempted to contact the juvenile witness and the adult witness (both co-arrestees) without success.

The r/sgt attempted to contact the witness at home at the addresses provided on the arrest report. R/sgt went to the address of 7050 S. Maplewood where he was greeted by a female occupant of the building who accused the r/sgt of "being no help to us" and stated that "she doesn't want the police coming around here." R/sgt tried to explain that his intent was to contact the juvenile witness and was still denied entry to the household. The r/sgt adjourned to the address of 7629 S. Rhodes in an effort to contact witness Webber. R/sgt made contact with a m/1 subject in his early 20s who stated that Webber moved from the location. R/sgt inquired if he would have contact with Webber in the near future and the subject stated he "only sees him around once in a while." As of 12/1/10, the r/sgt had no contact with either individual.

The accused were responding to the location in an attempt to apprehend offenders as noted in HS531608. The responding officers found subjects matching the description of the offenders in the theft case report submitted and as they attempted to apprehend them, the offenders fled into a residence where they apparently barricaded

CITY-BG-063088

themselves in an effort to thwart apprehension. Forced entrance into the residence and a search of the immediate area of the avenue of flight is allowed per 725 ILCS 5/107.

Outcome: Unfounded – no affidavit or statement obtained – due to no contact with the complainant after numerous attempts that included sending a certified letter.

Review of Loevy/Shane Spreadsheet: The spreadsheet created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet claims that the complainant and victim were not contacted and no statement was taken, when in fact investigators attempted to contact the complainant and victim, Glenn Pickens, via telephone and then via certified mail on October 22, 2010, but could not reach the complainant/victim and thus could not obtain a statement. (CITY-WATTS CR-072376). The coded data also asserts no witnesses were contacted when in fact, the investigator attempted to contact juvenile witness and adult witness (who were both co-arrestees) without success. (CITY-WATTS CR-072378). These efforts are not reflected in the spreadsheet. It was alleged that the accused officers entered and searched complainant/victim's house without a warrant or permission, when in fact the investigation showed that the offenders fled into a residence in an effort to thwart apprehension. (CITY-WATTS CR- 072346). Moreover, because investigators could not contact complainant/victim, the complainant failed to sign the affidavit required by Illinois law and the CBA to proceed with the investigation, rendering the items the Loevy/Shane spreadsheet state were not done to be inapplicable.

---

CR #1040541 (CITY-WATTS CR-072451-CITY-WATTS CR-072462)

Complaint Received: October 15, 2010

Date of Incident: October 11, 2010

Address of Incident: 3600 N. Talman Ave.

Accused: Unknown; PO Thomas Flowers #23712

Complainant: Philip McGovern

Allegations: The complainant alleges that two male/female uniformed officers failed to listen to his side of the story and processed a false traffic accident report under RD HS559080. The complainant further alleges the accused was driving his personal vehicle erratically and cut him off in traffic, which caused the accident. The complainant alleges that the accused got out of his vehicle and began striking the hood and windshield of his vehicle.

Investigation: The r/inv telephoned the complainant a couple times regarding his complaint without success. The r/inv left recorded messages for the complainant to contact him at the Internal Affairs Division, but he failed to do so. The r/inv sent the complainant a certified letter to his residence requesting that he contact IAD. Again, the complainant failed to cooperate. The receipt from the certified letter was returned signed to IAD.

Outcome: Closed – No Conversion; No Affidavit. Based on the evidence gathered, an unsigned sworn affidavit, and an uncooperative complainant, the investigation supports a finding of no affidavit.

Review of Loevy/Shane Spreadsheet: The complainant/victim in this CL Phillip McGovern, after being in a traffic accident where the responding officers allegedly failed "to listen to his side of the story and processed a false traffic ticket," failed to respond to the investigator's efforts to contact him to give a detailed account of his story. Thus, while it is true the CL was not investigated because no affidavit was obtained, the Loevy/Shane spreadsheet omits any reference to the fact that IAD attempted to contact Mr. McGovern, but that he never cooperated.

This investigation was reasonable.

---

CR #1041093 (CITY-WATTS CR-072469-CITY-WATTS CR-072555)

CITY-BG-063089

Complaint Received: November 1, 2010

Date of Incident: October 29, 2010

Address of Incident: 3151 W. Harrison

Victim: Cavalas Prater

Complainant: Lt. Doreen Hlavaty

Allegations: Proper Care – Injury/Death (Extraordinary Occurrence #10-47 – Injury to Staff)

Investigation: The r/inv went to Loretto Hospital ER to speak with the victim, who was awaiting treatment. The victim refused to speak with the r/inv and acknowledged her presence by pulling his shirt over his head. The victim declined to sign any forms. ET McKitterick arrived and photographed an uncooperative victim who refused to open his eyes or lift his head. Due to the victim's behavior, the r/inv was unable to observe his face for injuries.

Department reports indicate Calvin Prater was arrested for arson and aggravated assault. Arresting officers observed the building at 3132 W. 15th Street on fire. As they approached the rear, they observed Calvin Prater seated in the alley. PO Martin, in the presence of AD Fujara asked how long the building had been on fire, at which time Prater stated, "I just set it on fire a minute ago." Per the watch commander comments, Prater became agitated when another prisoner was placed in his cell and began yelling and kicking the cellmate. Detention Aide Keith Spurlin responded and attempted to calm Prater. Prater spat at DA Spurlin twice. POs Stewart and Kincaid arrived to assist and as they entered the cell, Prater stepped further back in the cell and took a fighting stance. The officers attempted to perform an emergency takedown, Prater stiffened, broke free, swinging his arms and kicking his feet. The officers took Prater to the floor and attempted to gain control of his arms using writ and arm holds. Prater then reached for DA Spurlin's face and eyes with his hand and fingernails while still trying to kick PO Kincaid.

Outcome: Closed at COPA

Review of Loevy/Shane Spreadsheet:       This was an Extraordinary Occurrence and not a CR. Thus, there was no allegation against any officer in this log and the Loevy/Shane spreadsheet does not address this event. Rather, this was a notification of a battery on three officers by an arrestee.

---

CR #1041102 (CITY-WATTS CR-072556-CITY-WATTS CR-072557)

Complaint Received: October 30, 2010

Date of Incident: October 30, 2010

Address of Incident: 5926 S. Parnell Ave.

Accused: None Listed

Complainant: Capt. Edward Kulbida #54703

Allegations: Taser discharge.

Outcome: Administratively Closed

FACE SHEET ONLY

Review of Loevy/Shane Spreadsheet: Per Dr. Shane's report, page 29, footnote 38, this log was not included in the spreadsheet because it did not contain any allegation against a police officer. That is correct. Rather, this was a taser discharge case where the officer discharged his taser because the subject was very hostile, refused to give his hands, and continually resisted and was swinging his arms. Suspect then punched Officer Vargas about the left side of his face. (CITY-WATTS CR- 072559).

CR #1042276 (CITY-WATTS CR-064213-CITY-WATTS CR-064289)

Complaint Received: May 1, 2013

Date of Incident: December 26, 2010

Address of Incident: 4402 N. Sacramento

Accused: PO John Kaporis #19471

Complainant: Lt. Robert Delaney

Witnesses: Lisa Sherman, PO Richard Esquivel #7192

Allegations: It is alleged that the accused (1) used deadly force in violation of department directives, (2) made a false report that he accidentally discharged his weapon, (3) falsely reported the circumstances regarding the discharge of the weapon under RD No. HV676485, and (4) were inattentive to duty in that he accidentally discharged his firearm.

Investigation: In the detective supplementary report HS676485, Det. John Valkner reported that on 12/26/10, he was assigned to an incident involving an on-duty 017th District police officer who had discharged his weapon. Sgt. Nigro related that Beat 1731R had confronted a man slumped over the wheel of a running motor vehicle; the vehicle was facing southbound on Sacramento Ave. just north of Montrose. PO Kaporis discharged his firearm during the confrontation with the offender who appeared to be DUI and the offender was taken into custody and not injured. Lt. Delaney had been on the scene and PO Kaporis and his partner, PO Esquivel, remained on the scene to be interviewed.

PO Kaporis related that he was a passenger while working Beat 1731R with PO Esquivel when they monitored a call of a man slumped over the wheel at Montrose and Sacramento. The officers were down the street and responded to investigate. Upon arrival, he observed the white convertible that was stopped just north of the traffic light on Sacramento and the driver appeared to be asleep. Both officers exited their vehicle and approached. Kaporis was on the driver's side, but the driver did not respond to verbal commands. PO Kaporis was concerned for his safety and removed his weapon from his holster. He continued attempts to get the driver's attention. PO Kaporis knocked on the window and the driver awakened. The vehicle was in park and as the driver put the vehicle into drive and his foot on the gas pedal, the vehicle jolted forward. PO Kaporis stated that he accidentally discharged his firearm which was in his hand and pointed toward the ground, and the round may have struck the rear tire or pavement near the rear tire. PO Kaporis holstered his weapon and was able to remove the driver from the vehicle. PO Esquivel related events regarding the officers' approach to the white vehicle consistent with PO Kaporis. He added that as the driver awoke and put the vehicle into drive, the vehicle moved forward, and PO Kaporis yelled "watch out." PO Esquivel heard the gunshot and PO Kaporis informed him that he had discharged his weapon. The driver put the vehicle in park and unlocked the doors. He was taken into custody and PO Kaporis called a sergeant to the scene.

Jorge Blancas-Ruiz, the occupant of the white convertible, stated he had consumed 6 beers at his sister's house before leaving the residence around midnight. He was stopped at a stop sign when the police approached him and pulled him out of his vehicle. He did not hear anything unusual, including gunshots, and asked why the police were putting yellow tape up at the scene. Forensic investigators relocated the 017th District station and recovered, inspected, and inventoried PO Kaporis' firearm which was swabbed for DNA. The vehicle was towed to auto pound 4. Efforts were made to locate the fired bullet with negative results. Evidence was submitted to the ISP crime lab for testing and analysis.

A summary of the OEMC transmission in conjunction with the event query, showed that Beat 1742R was given the assignment of a man slumped over the wheel of a white Chrysler Sebring convertible at Montrose and Sacramento. At 0128 hours, Beat 1731R, PO Kaporis notified the dispatcher that he had the Chrysler and added that it wasn't stopping and it was aimed at him. He said that he deflated the tire(s) and requested one more car stating, "he's not gonna stop." Moments later, there is a transmission notifying responding units that

102

the subject was in custody. There was no notification by PO Kaporis at that time of shots fired and that he had discharged his firearm. An IPRA canvass was conducted and a witness, Lisa Sherman, stated she saw the incident.

Lisa Sherman stated she was getting ready to go to sleep when she heard honking outside of her bedroom window. After a few minutes, she got up and looked out the window to see a car stopped in the intersection and a red SUV behind the vehicle. The red SUV backed up and exited the intersection through an alley. The car that was stopped in the intersection remained there through 3-4 lights without moving. She walked away from her window and upon her return, saw the two police officers outside the car. The officer on the driver's side was yelling for the occupant to get out of the car but there was no response. The car began to move forward and the officer on the driver's side grabbed toward his radio on the left shoulder, motioned to the other officer, pulled his gun, dropped down in a squatting position and fired one shot at the driver's side rear tire. The car began to roll forward again and both officers grabbed at the side view windows of the car. Other officers arrived. The officers finally got the occupant out of the car, looked at his ID, placed him in handcuffs and walked him to one of the squad cars.

Outcome: Sustained – 1 day suspension. Per mediation agreement, PO Kaporis will not contest the allegations of misconduct against him or IPRA's finding of sustained. He agrees to waive all administrative rights available to him under the CBA between the City of Chicago and the FOP. IPRA will allow PO Kaporis the use of accumulated compensatory time to satisfy one day towards his suspension.

Review of Loevy/Shane Spreadsheet: This log was not included in the spreadsheet because it was outside the relevant time frame. Nevertheless, although Dr. Shane concluded this was outside the relevant time frame (Shane Report at p. 29, fn. 38), he then discusses this CR that he found outside the relevant time frame on pages 66 and 67 of his report. Dr. Shane then goes on to state that "even though the facts were straightforward and involved an integrity violation by the officer, the matter rested for more than four years until July 8, 2015, when the officer signed a mediation agreement, and a one-day suspension was imposed in Aril 2016." Because the file does not reflect how the mediator and the parties came to the agreement of a 1-day suspension, it is unclear how Dr. Shane reached his conclusion.

CR #1042453 (CITY-WATTS CR-064290-CITY-WATTS CR-064295)

Complaint Received: January 6, 2011

Date of Incident: December 10, 2010

Address of Incident: 800 W. Grand Ave.

Accused: Unknown

Complainant: Unknown

Witnesses: Unknown

Allegations: It is alleged by an anonymous caller/ complainant that an unknown accused officer was intoxicated, involved in an accident, and left the scene of said accident.

Investigation: Lt. Naleway, Commanding Officer of the General Investigation Section of IAD, received a telephone call from an anonymous caller who stated that a traffic accident occurred on 12/10/10 involving an intoxicated off duty police officer, who left the scene of the accident. On 1/3/11, Lt. Naleway did a preliminary search of service calls for the 013th District and the search revealed negative results for calls for service on that date for the address of 800 W. Grand. On 1/3/11, the r/sgt requested video from OEMC POD 2207 located at 800 W. Grand. The video requested was forwarded to the r/sgt. on 2/23/11. Due to the size of the video, it cannot be electronically uploaded, but the video is part of the physical file. On 1/5/11, the r/sgt requested a POD retrieval for CTA POD 2799 which is located at 800 W. Grand. The r/sgt spoke with Shawn Sherman of the CTA Investigation Section who informed the r/sgt that POD 2799 only had footage of the

CITY-BG-063092

CTA platform and not the street level. On 1/20/11, the r/sgt ran a service calls search specific to the beat of occurrence (1323) for 12/10-12/11/10. The search revealed negative results for the date, time and address given by the anonymous complaint.

Outcome: Not Sustained – due to the anonymous nature of the complaint and the inability to identify any of the parties involved.

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. This CR was initiated when an anonymous caller reported a traffic accident involving an intoxicated off duty officer who left the scene of the accident. The spreadsheet is incomplete when it suggests additional steps could have been taken to canvas and photograph the alleged accident scene when investigators searched service calls for that district which proved negative results and requested video from OEMC and CTA which also proved negative results. Due the anonymous nature of the complainant and the inability to identify any of the parties involved, this CR was closed as not sustained. (CITY-WATTS 064294).

This investigation was reasonable.

CR #1044716 (CITY-WATTS CR-064669-CITY-WATTS CR-064754)

Complaint Received: April 15, 2011

Date of Incident: January 12, 2011

Address of Incident: 4650 N. Pulaski

Accused: PO Thomas Norberg #13402

Complainant: Lt. Dolores Deloughery #31

Allegations: It is alleged that the accused (1) falsified his regular duty hours on his overtime compensatory report on 1/12/11 in traffic courtroom 408, (2) falsified his regular duty hours on his overtime compensatory report on 3/22/11 at Branch 50-4, (3) falsified his regular duty hours on his overtime compensatory report on 3/29/11 in Branch 50-4, (4) falsified his regular duty hours on his overtime compensatory report on 4/4/11 at Branch 50-4, and (5) falsified his regular duty hours on his overtime compensatory report on 4/5/11 at Branch 50-4.

Investigation: The r/sgt reviewed all documentation and scheduled a formal statement with the accused for 11/2/11. During his statement, the accused admitted to the fact that he had attended the assigned court dates and had subsequently signed and submitted the attached overtime/compensatory reports requesting compensation for the time attended. The accused stated it was his understanding that any time that was spent off-duty in court was an automatic 3-hour guarantee. The accused also stated that he understood that his regular duty hours to be 1530 hours based on his watch report and that's why he placed that time in his regular duty hour section of the overtime/compensatory reports. The accused stated he would not have intentionally falsified any department documents, and if there was an error in his report procedure, he would have corrected it.

The r/sgt reviewed GO 94-05-02 VI-B-9a which states "officers required to attend authorized court or pre-trial conference within one hour immediately preceding their normal tour of duty will be compensated at the overtime rate for one hour." Also, under GO 94-05-02 IX B-2c reads "regular duty hours: enter the regular duty hours for the date the overtime was earned." The department orders clearly state procedures regarding this incident and the accused's inattention to those procedures. There is no evidence in the investigation to suggest intentional deception by the accused, only a lack of knowledge regarding the policy and procedures of the CPD.

Outcome: Sustained – four-day suspension. Per grievance decision: reduced to a one-day suspension. The accused will be reimbursed for the three days already served at his rate of pay on 3/24/14.

CITY-BG-063093

Review of Loevy/Shane Spreadsheet: This CR resulted in sustained finding and recommended 4 day suspension reduced to 1 day after a grievance was filed. The officer violated the overtime policy of the CPD, but the IAD investigation concluded it was not intentional. The Loevy/Shane spreadsheet has a few minor errors, including stating that no affidavit was obtained when that column should have been marked not applicable because no affidavit was required for this CR, and stating that the complainant was not contacted, when that also should have been marked not applicable because there was no reason to contact the complainant.

This investigation was reasonable.

---

CR #1045100 (CITY-WATTS CR-073779-CITY-WATTS CR-073789)

Complaint Received: May 2, 2011

Date of Incident: May 2, 2011

Address of Incident: 15 W. CTA 69th St.

Accused: Unknown

Complainant: Stacey Young

Allegations: The complainant alleges that while she was working as a customer service agent for the CTA, the accused officer was rude and unprofessional in that he stated to her "if you piss hot, you are going to lose your job."

Outcome: Administratively Closed – allegation as stated does not warrant an IAD investigation.

FACE SHEET ONLY

Review of Loevy/Shane Spreadsheet: In this Case Log, the complainant, a customer service agent for the Chicago Transit Authority, alleged that an unknown member of CPD stated: "If you piss hot, you are going to lose your job." The Case Log was administratively closed with the explanation that "[a]llegation as stated does not warrant an IAD investigation." The data created by the Loevy firm for Case Log #1045100 that Dr. Shane relied upon is misleading. For instance, they assert that the complainant/victim was not contacted, and no accused officer gave a statement or submitted an administrative report. However, given the allegation giving rise to the case log "does not warrant an IAD investigation," no investigation was undertaken and these should have been listed as Not Applicable.

---

CR #1045272 (CITY-WATTS CR-065187-CITY-WATTS CR-065222)

Complaint Received: May 9, 2011

Date of Incident: May 9, 2011

Address of Incident: 3 W. Terminal St.

Accused: PO Alan Mercado #3201

Victim: Leurim Islami

Complainant: Leurim Islami

Witnesses: Moira Meninga

Allegations: The complainant alleges that the accused asked for his driver's license and disrespectfully stated "you guys just cause trouble in this country all the time. We just got one of your guys a few days ago." The complainant further alleges that the accused then accused him of picking up his passenger in Chicago instead of Arlington Heights. Mr. Islami states he picked up the far at the witnesses' address, but in fear of his safety, he left the scene and did not get his driver's license back.

Investigation: The complainant was interviewed on 5/11/11 via telephone and provided further information regarding the incident on 5/9/11. The complainant operates a limo service. One of the Lincolns he uses for his service was inoperable on 5/9/11, so he used his personal car, a Mercedes, to drive his client to the airport. When Leurim Islami brought his client to the Terminal 3 departures area, the accused approached and "harassed" him about using his personal vehicle for livery services. The accused also spoke with the complainant's client to ascertain whether the trip originated in Chicago or a suburb. The complainant stated he picked up his client from Arlington Heights. During the encounter, the officer mispronounced his last name, which he took as degrading to his Muslim faith. The complainant accused the officer of "harassing" him and the officer made a comment that referenced Osama Bin Laden's recent death. The complainant was offended and felt that the officer was comparing him to Bin Laden. At this point, he was afraid about what the officer was going to do and left the scene without retrieving his driver's license from the officer.

The complainant further alleged that his father, Ember Islami, was involved in an incident with the same officer on 5/11/11 at the same location. The complainant's father was using Leurim Islami's Audi to bring a client to the airport because the Lincoln was still being repaired. The officer told Ember that a personal vehicle could not be used as a limousine and instructed him to go to the police station at Mannheim and Zemke. While they were there, Ember Islami was issued two citations, and the Audi was impounded. Leurim Islami obtained the officer's star number and name from the ticket. He also objected to the officer's characterization of their clients as "fares" and stated that no money had changed hands because the clients prepaid for services online. He described the service he was providing as the same as someone dropping off a friend or family member at the airport. The complainant states he should not have to register the Mercedes or Audi as livery vehicles because they were not his personal cars and are not normally used in the limo service. They were only used in those instances because the regular Lincoln was inoperable.

During the telephone conversation, the complainant stated that he preferred to do a telephone interview for this investigation. On 5/12/11, the r/inv telephoned the complainant to see whether he had spoken to an attorney or wanted the attorney's advice before providing an interview. The complainant agreed to contact the r/inv after he spoke with an attorney.

Several attempts were made to have the complainant sign the sworn complaint affidavit required by the Illinois Uniform Peace Officers Disciplinary Act and advising him/her that failure to do so may result in termination of the investigation. The complainant has failed to sign the sworn affidavit.

Outcome: Closed/No Affidavit

Review of Loevy/Shane Spreadsheet: The spreadsheet created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. For instance, the Loevy/Shane spreadsheet claims that the complainant and victim were not contacted and the complainant and victim gave no statement, when in fact the complainant and the victim are the same person, Leurim Islami, and he was contacted three separate times on May 11, 2011; May 12, 2011; and May 16, 2011; providing a statement on May 11, 2011. (CITY-WATTS CR-065203-05). The coded data is also misleading because the Loevy firm and Shane claim no photos were taken of the scene, but there was no reason to take any photos as the allegations only asserted the accused made disparaging remarks about the victim's religion. (CITY-WATTS CR-065191). Moreover, despite several attempts to have the complainant sign the Sworn Complaint Affidavit, the complainant failed to sign the affidavit required by Illinois law and the CBA to proceed with the investigation, rendering the items the Loevy/Shane spreadsheet state were not done to be inapplicable. (CITY-WATTS CR- 065192).

This investigation was reasonable.

CR #1045374 (CITY-WATTS CR-051931-CITY-WATTS CR-051966)

Complaint Received: May 22, 2011

Date of Incident: May 12, 2011

CITY-BG-063095

Address of Incident: 2455 W. Division

Accused: PO Vincent Cecchin #18454

Complainant: Megan Montes

Allegations: The complainant alleges that she was involved in a traffic accident and the driver of the other vehicle "physically assaulted" her. The accused officer threatened the victim with arrest if she wanted to press charges against the offender. It is further alleged that the accused officer failed to file a case report on behalf of the victim regarding the traffic accident. It is alleged that the accused officer issued the victim a "bogus" RD number. (Related RD Number is HT292347).

Investigation: The r/sgt reviewed copies of pertinent reports and contact cards. The r/sgt scheduled several meetings with the complainant in the 014th District which she was unable to attend. The r/sgt finally interviewed the complainant on 7/13/01 and after a short interview, the complainant wished not to proceed and signed a letter of declination.

According to the department reports, there was a physical altercation at 2455 W. Division Street. Both parties refused EMS on scene and refused to sign complaints. Both parties agreed to separate and leave the scene and refused any further police service. No damage to vehicles was observed and contact cards were made. The complainant later came into the 014th District to make a report regarding the prior incident. Beat 1420 related to the complainant that the incident involving the vehicles did not meet the legal threshold to require separate documentation other than listed in this report (original case incident report).

Outcome: Unfounded – no affidavit/letter of voluntary termination.

Review of Loevy/Shane Spreadsheet: The Complainant was involved in a traffic accident and alleged the Accused threatened her with arrest if she wanted to press charges against the other person involved in the accident, failed to file a case report on the traffic accident and provided Complainant with a bogus RD number. The Complainant later signed a statement indicating he no longer wished to pursue her complaint, which the spreadsheet omits. Despite the investigator locating and attaching to the CR file a case incident report documenting the traffic accident and contact cards and having interviewed the Complainant, the spreadsheet indicates "no" investigation was completed. (This spreadsheet does indicate an in-person interview was conducted).

This investigation was reasonable.

CR #1048035 (CITY-WATTS CR-073875-CITY-WATTS CR-073876)

Complaint Received: August 26, 2011

Date of Incident: July 19, 2011

Address of Incident: 5310 N. Harlem

Accused: Unknown

Complainant: Michael Wilder

Allegations: The complainant alleges that during the traffic stop, a male white subject asked him for his license without justification. The complainant alleges that the accused officer questioned him and said something to the effect of "don't cut in so close, you almost hit me." Note: 2010 Toyota Camry, License Plate H519783 is registered to 4300 Neva in Harwood Heights to a marketing firm in Glen Ellyn.

Outcome: Administratively Closed – to be adjudicated in court.

FACE SHEET ONLY

Review of Loevy/Shane Spreadsheet: In this Case Log, the complainant/victim alleged that an unknown person driving a Toyota Camry with lights attached to the car's visor, pulled over the complainant/victim. The

CITY-BG-063096

unknown offender then asked for the complainant / victim's drivers license and said "don't cut in so close, you almost hit me." The offender was wearing a six point star, a glock, and radio. The complainant/victim was able to get the Camry's license plate number, and later observed the vehicle parked in Norridge, Illinois. The case log was administratively closed with the notation "to be adjudicated in court."

The data created by the Loevy firm for Case Log #1048035 that Dr. Shane relied upon is misleading. For instance, they assert that the complainant/victim was not contacted, and no accused officer gave a statement or any officer submitted an administrative report. However, the victim/complainant was contacted as reflected in the To/From report submitted by Sgt. Rucci. Moreover, besides the administrative report submitted by Sgt. Rucci, an original case incident report submitted by Officer Annette Ruiz Oquendo, which was generated based on the complainant's reporting of an alleged crime, is contained in the log. Additionally, investigation revealed the Toyota Camry was registered to a marketing firm in Glen Ellyn, Illinois, which is not reflected in the Shane/Loevy data.

This investigation was reasonable.

---

CR #1048559 (CITY-WATTS CR-073900-CITY-WATTS CR-073914)

Complaint Received: September 20, 2011

Date of Incident: September 15, 2011

Address of Incident: 7040 S. Cottage Grove

Accused: None Entered

Victim: Juvenile (Redacted)

Complainant: Sgt. Anthony Kaufmann

Allegations: Taser Discharge

Outcome: Administratively Closed

Review of Loevy/Shane Spreadsheet: There was no allegation against any officer in this log and the Loevy/Shane spreadsheet does not address that. Rather, this was a taser discharge case where the officer discharged his taser because the arrestee was an assailant. It is unclear why Dr. Shane left this log in the spreadsheet.

---

CR #1049035 (CITY-WATTS CR-053233-CITY-WATTS CR-053265)

Complaint Received: November 2, 2011

Date of Incident: October 3, 2011

Address of Incident: 1700 S. Kedzie

Accused: FTO Harold Rodriguez #17679, PPO Andrew Ohlson #8394

Victim: Jeremy Miller

Complainant: Jeremy Miller

Allegations: The complainant alleges that the accused officers arrested him without justification. The complainant further alleges that the officers damaged his vehicle.

Investigation: The r/sgt visited the listed residence of the complainant and interviewed an f/1 who identified herself as Tracy Nelson, who resided in the basement of the noted address. Ms. Nelson related that she is the former girlfriend of Jeremy Miller and he moved "several months ago." The r/sgt asked Ms. Nelson if she was aware of Miller's current address and replied that she was not. The r/sgt then provided Ms. Nelson with r/sgt's contact information and requested that she provide it to Miller in the event that she sees him or speaks with

CITY-BG-063097

him; she replied that she would do so. Nelson confirmed that the telephone number listed on the face sheet was the correct number of the complainant. The r/sgt attempted to contact Miller via telephone on 11/8/11 and left a message on voicemail that the complainant contact the r/sgt. On 11/16/11, a certified letter was sent to the complainant requesting that he contact the r/sgt. On 11/27/11, the r/sgt searched the USPS website and discovered there was a notice left at the residence on 11/23/11 regarding the letter. The complainant has not contacted the r/sgt regarding this matter.

Outcome: Closed no conversion – no affidavit

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. The Loevys/Shane spreadsheet asserts that neither the complainant nor the victim were contacted, when in fact the complainant/victim is the same person, Jeremy Miller, and the investigator attempted to contact Mr. Miller on multiple occasions, including by going to his listed residence in person, attempting to contact Mr. Miller by telephone, and by sending Mr. Miller a certified letter. Mr. Miller failed to respond to any of these contacts and therefore failed to sign the affidavit required by Illinois law and the CBA. The Loevy/Shane spreadsheet fails to report these facts.

---

CR #1049085 (CITY-WATTS CR-053266-CITY-WATTS CR-053308)

Complaint Received: October 6, 2011

Date of Incident: October 6, 2011

Address of Incident: 10548 S. Wabash Ave.

Accused: Unknown

Complainant: Timothy Johnson

Allegations: The complainant alleges that the accused exited his vehicle and pointed his weapon at him and stated "who the hell are you? I'm the police and I'll pop you." (Case Report – Aggravated Assault RD HT529861).

Investigation: The complainant alleges the accused was sitting in a black Silverado Illinois truck, license plate 33355L, when the vehicle was struck by a football thrown by some children. The complainant described the accused exiting the vehicle with a gun in his hand and shouted at the children playing football. The complainant stated he asked the accused to calm down and that they were only children. The accused then pointed the black semi-automatic pistol at his face stating "who the fuck are you, I'm the police. I'll pop you." The accused then drove away. The plate given is registered to Aaron Washington with the same date of birth as CPD officer Aaron Washington with star number 17568.

The r/inv conducted a canvass of the location of the incident on 10/7/11 and spoke with a female black who identified herself as Christine Wells. She indicated that the boys involved in the incident were her two sons and two nephews. Although all four boys live at the same address as Ms. Wells, her nephews' parents were not present at the time. The r/inv requested that Ms. Wells inform the other adults of the need for statements from the boys and that the r/inv would contact Ms. Wells to schedule statements from all the boys. A letter was sent to Ms. Wells on 11/2/11.

During the course of the canvass, the r/inv was approached by a male black who identified himself as the complainant, Timothy Johnson. He had previously been scheduled for a statement at the office on 10/7/11. He told the r/inv that someone had called him and indicated that he would meet Mr. Johnson at his residence to take a statement. The complainant stated he had a business card from that individual at his residence. Since his residence was only a short distance away, the r/inv suggested he go retrieve the card and return while the r/inv completed the canvass. The complainant indicated he would and left. When he did not return, the r/inv drove to the address given for the complainant and called him on his cell phone. Mr. Johnson was highly agitated because the r/inv blocked his number on the caller ID and Mr. Johnson's phone read "anonymous." The r/inv

informed the complainant that he was outside his residence. The complainant responded that he was leaving via the rear of the building at that very moment. The r/inv took the position that would allow him to observe anyone exiting the front or rear of the vehicle. After a reasonable period of time and no appearance by Mr. Johnson, the r/inv then rang doorbells at 124 W. 107th Street and was informed that no one named Timothy Johnson lived in the building. The r/inv attempted to contact the complainant again and left a message for him to contact the r/inv at the office. A letter was also sent to the complainant on 11/1/11.

Outcome: Closed – No Affidavit

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. The Loevys/Shane spreadsheet asserts that neither the complainant nor the victim provided a statement, when the complainant Timothy Johnson did provide a statement that he saw the accused exit his SUV after a football hit it, point a gun at some children, and then threaten complainant/victim that "I'm the police and I'll pop you." (CITY-WATTS CR- 053272 and 53277-78). Later, however, the complainant/victim actively evaded IPRA's attempts to re-contact him for another interview and to sign the affidavit required by Illinois law and the CBA, and the complainant/victim also failed to go to the police station to separately give an interview to the detective separately investigating the allegation. The spreadsheet is also inaccurate when it states the CR was not investigated, because IPRA obtained PODS cameras form the scene in question that did not show any activity as alleged by the complainant/victim and IPRA took steps to interview the complainant.

This investigation was reasonable.

---

CR #1049779 (CITY-WATTS CR-053463-CITY-WATTS CR-053550)

Complaint Received: November 17, 2011

Date of Incident: November 2, 2012

Address of Incident: 7040 S. Cottage Grove

Accused: PO Victor Razo #16254

Victim: Antonio Smith

Complainant: Antonio Smith

Witnesses: PO Salvador Lara #17286, PO Titus Moore #16838, PO Anthony Bruno #12212, PO Brandon Ternand #7808

Allegations: The complainant alleges that the accused (1) failed to return his ID card, (2) failed to inventory his ID card, (3) failed to return his keys, and (4) failed to inventory his keys.

Investigation: The face sheet alleged that PO Razo falsely arrested the complainant Antonio Smith for disorderly conduct. The face sheet further alleged that Razo told the complainant to bring the accused a weapon or risk being arrested again. PO Razo failed to return the complainant's driver's license and vehicle keys after his arrest.

The arrest documents for Smith were reviewed and the officers worked in District 003 and were responding to a battery in progress call when they encountered Smith. He was arrested for reckless conduct after he ran into the street causing vehicle traffic to swerve and alter their routes in order to avoid hitting Smith.

The complainant related in an interview that after having a fight with his girlfriend, she called 911. Smith related that he ran home upon learning of the arrival of the police, whereupon he was apprehended by responding officers. He was then arrested for disorderly conduct after responding officers failed to find narcotics in his possession. The complainant was taken into the 003rd District where he met an officer by the name of Razo. Smith related that Razo told him to get a gun and that if Smith "fucked" him, then he was going

110

to arrest Smith for possession of narcotics near a school. PO Razo took the keys of his vehicle and state ID and failed to return them when he was released from the 003rd District.

Ater conducting an integrity check based on the allegations by the complainant, there was found to be no evidence of misconduct against he involved officers. A review of the court records revealed that the complainant pled guilty to the offense he claimed he was falsely arrested for. Therefore, there was no basis for the allegations of false arrest. There was no evidence indicating that the accused failed to inventory the keys or ID of the complainant. The r/d did find evidence that Razo inventoried the money and other personal items belonging to Smith. Based on interviews of the accused and the personal property receipt, it does not stand to reason that the accused would inventory some items of value and not inventory or return other non-valuable items.

Outcome: Not Sustained – there is insufficient evidence to prove or disprove the allegations.

Review of Loevy/Shane Spreadsheet: In this CR, complainant/victim Antonio Smith alleged Officer Razo failed to return or inventory both his identification card and his keys. There were additional allegations, including that Razo falsely arrested the complainant/victim and ordered the complainant/victim to obtain a weapon for Razo. After determining that the complainant/victim pleaded guilty for the offense for which he was charged, and after conducting an "integrity check" of Razo wherein complainant/victim Smith was provided an inoperable weapon by Internal Affairs and told to contact Razo, which resulted in officers accurately documenting the recovery of the weapon, those allegations were determined to be not credible because there was "no evidence" and "no basis for allegations of false arrest." (CITY-WATTS CR-053474).

The data created by the Loevy firm for CR#1049779 that Dr. Shane relied upon is misleading. For instance, they assert that no statement was taken from the complainant or victim Antonio Smith, however the CR contains Smith's sworn affidavit regarding the allegations and Sgt. Barz's report entitled "Interview of Antonio Smith and Integrity Check" (the Shane/Loevy data indicates there was an "in person interview with complainant" and "in person interview with victim"). The data is also misleading because it states "not applicable" for any witnesses contacted, witness statements, and in person witness statements, and "no" for any non-accused officer statements. The CR reflects statements in the form of To/From reports from witnesses/non-accused officers Moore, Bruno, and Ternand (the Shane/Loevy data indicates that an administrative report was submitted). The data further reflects as "not applicable" whether any witness identified an accused officer, but the CR contains the photo array in which Smith identified Officer Razo (the Shane/Loevy data states that the complainant identified the accused). After reviewing all witness statements and reports, the allegations were not sustained against Razo.

This investigation was reasonable.

---

CR #1050687 (CITY-WATTS CR-074208-CITY-WATTS CR-074216)

Complaint Received: December 14, 2011

Date of Incident: December 12, 2011

Address of Incident: Redacted

Accused: PO Dillard Fisher #18879

Victim: Cashunda Robinson

Complainant: Cashunda Robinson

Allegations: The complainant alleges that the accused evicted the complainant without legal justification.

Investigation: The complainant/victim was contacted and stated she is two months behind on her rent. Further, she states her electricity was disconnected.

Outcome: No Sworn Affidavit

CITY-BG-063100

Review of Loevy/Shane Spreadsheet: The data created by the Loevy firm for this CR that Dr. Shane relied upon and audited is misleading. The Loevy/Shane spreadsheet asserts that neither the complainant nor the victim were contacted, when in fact the complainant/victim is the same person, Cashunda Robinson, and the investigator attempted to contact Ms. Robinson by telephone and by sending Ms. Robinson a certified letter. Ms. Robinson failed to respond to any of these contacts and therefore failed to sign the affidavit required by Illinois law and the CBA. The Loevy/Shane spreadsheet omits any reference to the fact that BIA attempted to contact Ms. Robinson but she never cooperated.

This investigation was reasonable.

**BAKER/GLENN V. CITY OF CHICAGO**
**SUMMARY OF THE CR FILES DISCUSSED IN DR. SHANE'S REPORT (PAGES 33-34, 57, 66-72, AND 102-107) AND REVIEW OF HIS OPINIONS REGARDING SAME**

CR #252153 (CITY-WATTS CR-000510-CITY-WATTS CR-000622)

Complaint Received: March 10, 1999

Date of Incident: March 10, 1999

Address of Incident: 2731 N. Drake

Accused: PO Phillip Greco #10659

Complainant: Eliezer Gonzalez

Witnesses:

Allegations: The complainant alleges that the accused (1) struck him on the face without justification.

Investigation: In the battery of a police officer report, Lt. Touhy #516 stated that on 3/10/99, she was notified by PO Greco of a battery of a police officer incident and a traffic accident that occurred at 2731 N. Drake. The traffic accident (property damage only) led to a verbal altercation between Elizer Gonzalez and the accused. PO Greco related that while driving past a double-parked vehicle, a passenger opened the door into traffic. The door struck the rear quarter panel of PO Greco's personal vehicle. He exited the vehicle to examine the extent of the damage. The driver of the double-parked vehicle, Eliezer Gonzalez, exited his vehicle and yelled at PO Greco that he should have known where he was going. PO Greco stated he informed Gonazlez that it was wrong to open a door into traffic and that the accident was the fault of the passenger. Eliezer Gonzalez then pushed PO Greco knocking him backwards to the ground. PO Greco said he struck Eliezer Gonzalez in the face and grabbed him as he was falling to the ground, fearing further attack. PO Greco got to his feet and called for police assistance. Assist units arrived and Eliezer Gonzalez was taken into custody and the investigation was relocated to the 014th District.

Rozhan Franklin, girlfriend of Eliezer Gonzalez, gave an account of the incident. She states they were on their way to visit relatives with their baby. Ms. Franklin opened the passenger door of the vehicle into traffic as another vehicle was passing. The passing car drove by and then stopped. PO Greco exited his vehicle as did Eliezer Gonzalez. She observed PO Greco step very close to Eliezer Gonzalez and spray spit at him. Gonzalez then pushed PO Greco away from him. PO Greco struck Gonzalez in the face and PO Greco fell to the ground. Both Gonzalez and PO Greco began participating in a physical altercation. Ms. Franklin attempted to break up the physical altercation, but Gonzalez told her to call the police, which she did.

Eliezer Gonzalez was interviewed and stated that due to the recent snowstorm, he was unable to park the vehicle, so he stopped the vehicle with the passenger side partially blocking the street. Rozhan Franklin opened the passenger side door as another vehicle passed. The vehicle stopped after it caught the edge of the door. Both Gonzalez and Greco exited their vehicles. Gonzalez told Greco that "he should slow down and watch where he's going." PO Greco then walked towards Gonzalez and said, "I don't have to." He struck Gonzalez on the right side of the face with the heel of his hand. Gonzalez grabbed PO Greco's jacket, put him on the ground and stepped away from him. Gonzalez yelled to Rozhan Franklin to call the police and PO Greco returned to his vehicle to place a call.

A canvass was conducted which produced a witness, Raul Rivera. Rivera observed the verbal altercation between Greco and Gonzalez, but he did not hear the specifics of the altercation, nor did he observe any physical altercation. PO Greco submitted a report relative to the investigation and stated that upon exiting his vehicle and making visual contact with Eliezer Gonzalez, he displayed his Chicago Police star and identification. PO Greco stated he never struck Gonzalez in the face, only that he made physical contact with

Eliezer Gonzale after he was physically attacked and knocked to the ground. PO Greco had to physically restrain Gonzalez to protect his well-being and himself from further injury.

Outcome: The investigation revealed insufficient evidence to prove the allegation made by Eliezer Gonzalez. Gonzalez alleged that PO Greco, without justification, struck him in the face. Mr. Gonzalez, Ms. Franklin, and Ms. Salas all refused to be interviewed by the r/inv relative to this investigation.

During the course of the investigation, PO Greco was required to submit a report relative to the allegations made against him. In his report, PO Greco denied he struck Gonzalez, which the OPS investigator opined was contradictory to what PO Greco stated to Lt. Touhy immediately following the incident. The investigation revealed that PO Greco admitted to Lt. Touhy that he struck Gonzalez in the face. Because PO Greco submitted a report to OPS in which he denied striking Gonzalez, OPS recommended that he be cited for violation of Rule 14 in that he submitted a false report to OPS and recommended a penalty of 2 days suspension. However, PO actually stated the following to OPS: "The r/o never struck Eliezer Gonzalez in the face. The r/o made physical contact with Eliezer Gonzales only after the r/o was physically attacked and knocked to the ground. The r/o had to physically restrain Eliezer Gonzales to protect his person from further injury by the offender." Thus, a Complaint Review Panel Hearing was held on 3/7/00 and after deliberations, they recommended that the allegation be unfounded.

Review of Dr. Shane's Discussion CR#252153: Dr. Shane discusses this CR at page 69 of his report. Dr. Shane does not explain in his report how it came to be that he reviewed this CR even though it is not one of the 127 he stated that he audited for coding purposes. Dr. Shane's summary of the complaint is inconsistent with the results of the CR investigation. While Dr. Shane is correct that the OPS investigator recommended sustaining the CR under Rule 14, all four members of the Command Channel Review panel did not concur and the Superintendent thereafter agreed. Thus, this CR was unfounded.

---

CR #259325 (CITY-WATTS CR-005522-CITY-WATTS CR-005781)

Complaint Received: January 19, 2000

Date of Incident: January 13, 2000

Address of Incident: 4516 S. Halsted (Stock Yards Truck Stop)

Accused: PO Eric Stampley #11029, PO Erik Johnson #11936, PO Herbert Walker #19537

Complainant: Charles Harris

Witnesses: Darlene Lockwood, Russell Raines, Sylvia Brown

Allegations: The complainant alleged that PO Stampley (1) grabbed him and dragged him out of the restaurant without justification, (2) punched him in the chest without justification, and (3) failed to provide him with medical assistance after he informed him that he was experiencing chest pains. The complainant alleged that POs Walker and Johnson (1) failed to provide him medical assistance after he informed him that he was experiencing chest pains and (2) failed to immediately notify a supervisor and (3) failed to submit a written report regarding PO Stampley's misconduct.

Investigation: The complainant states he was visiting Russell Raines, his former employer at the Stock Yards Truck Stop. While standing in the aisle at the rear of the truck stop, a young male/black walked up behind him. The complainant states he has difficulty hearing, so when the male/black approached him from the rear, he did not hear the man state he wanted to walk past him. The individual, PO Stampley, was very angry at him so he moved out of his way. PO Harris mumbled some words to Mr. Raines and at that point, PO Stampley grabbed him by the street and dragged him down and out the front door of the restaurant. The complainant states that PO Stampley continued to yell at him and punched him twice in the chest with the fist. The complainant further states that PO Johnson just stood and watched and did nothing to stop PO Stampley. The facts in the investigation revealed that the complainant provided an accurate physical description of the accused officers.

The license plates of the unmarked police vehicle of the accused provided by the complainant matched the license plates of the vehicle assigned to the accused officers on the date/time of the incident. In addition, the witnesses made a positive ID of the accused, PO Stampley, while viewing photographs at IAD. CFD records indicate a cardiac response to the complainant. His chief complaint was chest pain caused from a punch in the chest. The pain subsided, but the complainant wanted to be examined because of his history of a heart murmur. The ER report from Provident Hospital reflects the same information.

Outcome: PO Stampley – allegations 1-3 sustained (violation of rules 2, 8 and 10). PO Walker – allegations 1-3 unfounded (he was in court at 26th and California at the time of the incident). PO Johnson – allegations 1-3 sustained (violations of rules 2, 6 and 10). 10-day suspension for PO Johnson; 15-day suspension for PO Stampley. After a review of the suspension by the Police Board, the suspension for POs Johnson and Stampley were upheld.

Review of Dr. Shane's Discussion CR#259325: Dr. Shane discusses this CR at page 57 of his report. Dr. Shane does not explain in his report how it came to be that he reviewed this CR even though it is not one of the 127 he stated that he audited for coding purposes. Dr. Shane does not criticize the investigation itself, which resulted in a sustained finding and suspensions for the accused officers, but criticizes the length of time from the date of the complaint until the final order of suspension. Dr. Shane characterizes this investigation as "fairly straightforward," but does not mention that the CR file is 260 pages long and includes a 16 page single spaced report from the OPS investigator with 66 attachments. Nor does he mention that this CR was concluded at OPS in December 2000, that the accused challenged the sustained finding via the Complaint Review Panel and to the Police Board of the City of Chicago consistent with the procedures of the Collective Bargaining Agreement, and that at least one member during the review process disagreed with the sustained finding after conducting his review, but the CR remained sustained.

CR #275606 (CITY-WATTS CR-014016-CITY-WATTS CR-014119)

Complaint Received: October 26, 2001

Date of Incident: October 6-7, 2001

Address of Incident: 727 E. 111th St.

Accused: Det. David Fietko #21070, Det. Francis Heslin #20925

Complainant: APD Kathy Roller

Victim: Thomas White

Allegations: The complainant alleges that the accused questioned her client, Thomas White, without counsel present at the above location for the time period indicated despite the fact that the victim and the complainant both informed the detectives that the victim was exercising his right to have counsel present during any questioning. Reference RD G509702 – first degree murder.

Investigation: Thomas White was a friend of the homicide victim and detectives assigned to the investigation wished to interview him. An investigative alert was issued on 8/28/01 for Mr. White. On 9/10/01, Mr. White was arrested for possession of a controlled substance and Area 2 was notified by the 5th District due to the investigative alert. Mr. White was interviewed by the accused regarding his knowledge of the homicide. APD Roller arrived at Area Two Detective Division and after conferring with Mr. White, told Det. Fietko that she did not want her client questioned any further. Because Mr. White was only a witness, Det. Fietko related to APD Roller that Mr. White was not entitled to counsel, but at that time, no further interviews were needed. On 10/6/01, Mr. White was questioned again as a non-custodial witness by Detectives at Area Two Violent Crimes regarding the homicide. APD Roller then wrote a letter expressing her objections regarding Mr. White being questioned without counsel being present. The r/sgt made numerous telephone calls to the complainant's

115

office to arrange for an interview. APD made several return calls in response and on 11/21/01, the r/sgt interviewed APD Roller who indicated it was not her intention to file a formal complaint against the accused but felt that the Detectives had ignored her requests not to interview Mr. White without her being present. The r/sgt checked the watch assignment sheets and the attendance and assignment sheets for 10/6-10/7/01 and it was indicated that Det. Fietko worked the second watch on both days with no overtime worked and Det. Heslin was on the medical roll for both days. The accused officers submitted to/from reports denying the allegation.

Outcome: Unfounded – the accused did not violate the complainant's clients right to counsel in interviewing him as a witness during a homicide investigation on 9/10/01. On the dates of the allegation, neither detective was on duty. On 10/6/01, when Mr. White was interviewed at Area 2 Violent Crimes, he was not in custody and therefore not entitled to counsel. Based upon all available interviews and information in the investigation, there is no evidence to support the allegation made in the complaint register.

Review of Dr. Shane's Discussion CR#275606: Dr. Shane discusses this CR at page 68 of his report. Dr. Shane does not explain in his report how it came to be that he reviewed this CR even though it is not one of the 127 he stated that he audited for coding purposes. Dr. Shane's summary of the complaint omits certain facts, including that the alleged victim was a witness to a homicide and therefore was not entitled to counsel according to the case law cited in the investigator's report, "People V. DeSantis, decided 22Dec00, 1st District, Illinois Appellate Court." In addition, the alleged victim claimed that Detectives Fietko and Heslin declined his right to counsel, when they were not working on the day he says he was interviewed without counsel as a witness. The suggestion by Dr. Shane that more should have done is unsupported because the allegation did not rise to a department violation or a violation of the law.

CR #305652 (CITY-WATTS CR-032786-CITY-WATTS CR-032878)

Complaint Received: May 19, 2005

Date of Incident: April 9, 2005

Address of Incident: 1534 N. Laramie

Accused: PO John Haleas #6719

Complainant: ASA Ashley Campbell, ASA Jaclyn Lantz

Witnesses: PO Erin Hall #14132, PO Kevin Carlquist #11720

Allegations: (1) it is alleged that PO Haleas during the processing of the victim for DUI, failed to give a warning to motorist prior to conducting the DUI investigation. (2) it is alleged that the accused failed to observe the motorist for 20 minutes prior to administering the breath test. (3) it is alleged that the accused did not perform the standardized field sobriety test on the motorist.

Investigation: ASA Campbell and Lantz participated in a ride along program with the accused. The purpose of the ride along program is to increase the ASA's experience with the writing of DUIs which they handle in their assigned court rooms. In regards to allegation 1, the accused stated he did give Edward Beck the warning to motorist during the 20 minute observation period in the sergeant's room of the 015th District. PO Hall and PO Carlquist stated they did not observe the accused give the warning. Per GO 01-03-03-III-A, the warning to motorist is a form that is to be given to the driver in the station, not at the scene of the accident, prior to administering the breathalyzer. In regards to allegation 2, it is logical to believe that the complainants' version of events is more credible than that of the accused in that the allegations were detrimental to the court case, ultimately leading to the case not being pursued in court. It would not be in their best interests for the complainants to be untruthful. In regards to allegation 3, the accused reported that after arriving at the scene of the accident, he removed Edward Beck from the rear seat of Beat 2533's vehicle, brought him to the west sidewalk and inquired if he would take a field sobriety test. Edward Beck agreed, took the tests and failed. At this time, he was told he was under arrest and was returned to the back seat of Beat 2533's vehicle for the purpose of

116

transporting him to the 015th District Station. The witnesses' version of events lacks credibility in that it would be unlikely that both officers would remain in their vehicle leaving the accused alone on the sidewalk with a drunk driver.

Outcome:  Sustained – 1 day suspension.  Violation of Rule 6.

Review of Dr. Shane's Discussion CR#305652: Dr. Shane discusses this CR at page 68 of his report. Dr. Shane does not explain in his report how it came to be that he reviewed this CR even though it is not one of the 127 he stated that he audited for coding purposes. Dr. Shane's summary of the complaint is limited. He omits multiple facts, including that the sustained finding was rejected on command channel review and that the DUI suspect whom the officer arrested had a blood alcohol content of .334, well in excess of the legal limit. Dr. Shane also states that the accused was found to have lied on a report, but the finding was a violation of Rule 6, failing to provide the standardized field sobriety tests on the intoxicated suspect.

CR #309282 (CITY-BG-012903-CITY-BG-012927)

Complaint Received: November 2, 2005

Date of Incident: August 20, 2005

Address of Incident: 527 E. Browning #206

Accused: Sgt. Ronald Watts #2640

Complainant: Clarissa Glenn

Witnesses: Sambo

Allegations: (1) The accused searched her residence without a warrant or permission on 8/20/05. (2) The accused had the witness tell the victim that the accused would cause her bodily, and that he would arrest her for no reason. This allegation was to have happened on 10/23/05.

Investigation: The r/lt called the listed number and left a detailed message on the complainant's voicemail. On 11/5/05, the r/lt mailed the complainant a certified letter detailing how to get in contact with the r/lt and expressing the need for her to contact the r/lt so that the investigation could be completed. The complainant has failed to contact the r/lt, nor has she left any information as to how to get in contact with her. The investigation is classified as unfounded due to the lack of cooperation from the complainant.

Outcome: Unfounded. In a memo dated September 5, 2006, Debra Kirby directed that CR #309282 be reopened and assigned to CIS to be investigated with the ongoing criminal investigation (CITY-BG-012917), which resulted in the arrests and convictions of Watts and Mohammed.

Review of Dr. Shane's Discussion CR#309282: Clarissa Glenn's allegations are discussed in the report.

CR #309359 (CITY-BG-012928-CITY-BG-012936)

Complaint Received: November 5, 2005

Date of Incident: August 20, 2005

Address of Incident: 527 E. Browning #206

Accused:

Complainant: Clarissa Glenn

Witnesses:

Allegations: (1) The accused searched her residence without a warrant or her permission on an unknown date and time. (2) The complainant states that the accused is harassing her and on 10/28/05, the accused threatened to take her to jail.

CITY-BG-063106

Investigation: The r/lt called the listed number and left a detailed message on the complainant's voicemail. On 11/5/05, the r/lt mailed the complainant a certified letter detailing how to get in contact with the r/lt and expressing the need for her to contact the r/lt so that the investigation could be completed. The complainant has failed to contact the r/lt, nor has she left any information as to how to get in contact with her. The investigation is classified as unfounded due to the lack of cooperation from the complainant.

Outcome: Unfounded. However, it appears the investigator jointly investigated this CR along with CR #309282. In a memo dated September 5, 2006, Debra Kirby directed that CR #309282 be reopened and assigned to CIS to be investigated with the ongoing criminal investigation (CITY-BG-012917), which resulted in the arrests and convictions of Watts and Mohammed.

Review of Dr. Shane's Discussion CR#309359: Clarissa Glenn's allegations are discussed in the report.

---

CR #309372 (CITY-WATTS CR-012937-CITY-WATTS CR-012974)

Complaint Received: November 5, 2005

Date of Incident: October 29, 2005

Address of Incident: 3700 S. Indiana

Accused: Sgt. Ronald Watts #2640

Complainant: Moriah Mays

Witnesses: Sgt. Cornelius Brown #2235, PO Kenneth Young #17931, Deborah Williams

Allegations: The complainant alleges that she was threatened by an unknown male black inside a corner store located on the West side of 37th and Indiana. The complainant alleges that the accused had responded to the scene and refused to arrest the offender who was still at the scene. The complainant reported that the offender followed her home and beat her with a baseball bat inside of the building located at 3510 S. Rhodes.

Investigation: The complainant states she had a verbal altercation with an unknown male black near 3700 S. Indiana on the street. The altercation turned into threats by the unknown male, and at the time she displayed a knife to ward the male off. The complainant followed the offender and contacted the police on her cell phone. A couple of squad cars pulled up and stopped her and the offender near 3700 S. Rhodes. When questioned by Sgt. Watts, she told him that she did not know the offender, that the offender had threatened her and in self-defense she displayed a knife. Sgt. Watts told her that if he arrested the offender, he would have to arrest her for the knife. The complainant then went home and changed clothes and proceeded to Dunkin Donuts near 3500 S. Rhodes. As she was returning home, a maroon van pulled up and the offender jumped out of it with a baseball bat and chased her into the lobby of the building at 3510 S. Rhodes and struck her several times about the head and body. Police and Fire Ambulance arrived on scene, and she reused service because she was mad. The complainant went to Michael Reese Hospital for medical treatment and states she was treated for a concussion and a fracture to the right forearm.

Sgt. Watts relates he was approached by the complainant, and she stated that she and an unknown male black had an argument. When Sgt. Watts attempted to learn the facts, the complainant became irate and profane towards him, then turned to the male and stated to him "just stay the fuck away from me." Sgt. Watts relates there was not enough information given by either party to make a determination that a crime had been committed. Sgt. Watts was able to identify the male who battered the complainant as Percy Bolden. Attempts to apprehend this individual were met with negative results.

Outcome: Unfounded – a check of the data warehouse calls for service shows the complainant placed a call on 10/29/05 at 1136 hours to 911 and it was dispatched as information for the police, 3700 S. Indiana. A second call was made at 1235 hours and was dispatched as a person with a gun, 3700 S. Rhodes. Both calls were made by the cell phone in possession of the complainant. The complainant refused fire and police service but went to

the hospital and informed police personnel that she was refused police service in another district. The complainant's first call for service had no urgency to it, she did not indicate she was being threatened, and the second call was a fabrication by the complainant. It should be noted that the complainant has a prior arrest and court supervision for false reports. The r/sgt finds that the complainant is not being truthful in her account of events that occurred on 10/29/05.

Review of Dr. Shane's Discussion CR#309372: Dr. Shane discusses this CR at page 103 of his report. Dr. Shane's summary of the complaint is contradictory. He asserts that the investigator "never sought any statement from any officer," but then admits that the officers submitted statements in the form of to/from reports. In fact, the investigator obtained four statements from police officers and witnesses. Dr. Shane does not identify the other witnesses the investigator should have talked to. Finally, while Dr. Shane acknowledges the complainant's prior false complaint for making a false police report, he fails to recognize the significance of her alleged false reporting in light of the overall investigation of the event at issue as described above.

---

CR #309825 (CITY-WATTS CR-038595-CITY-WATTS CR-037612)

Complaint Received: November 29, 2005

Date of Incident: November 22, 2005

Address of Incident: 3939 W. 79th Street

Accused: Unknown

Complainant: Valerie Cain

Victim: Redacted (Juvenile)

Allegations: The complainant, who did not witness the incident, alleges two male casually dressed officers made her son take off all of his clothes and sit in front of them nude until he confessed to robbing a classmate of $1.35. ARREST – Felony Robbery.

Investigation: The r/sgt contacted the complainant on 12/1/05. Mr. Cain related she had to leave but would meet the r/sgt on 12/2/05 with her son, the alleged victim. On 12/2/05, the r/sgt went to 3737 W. 83rd and met with Ms. Cain but her son was not available. Ms. Cain asked the r/sgt to return the next day. A short time later, Ms. Cain contacted the r/sgt and related that she would not sign the sworn affidavit.

Outcome: Unfounded – complainant refused to sign the sworn affidavit.

Review of Dr. Shane's Discussion CR#309825: Dr. Shane discusses this CR at page 68 of his report. Dr. Shane does not explain in his report how it came to be that he reviewed this CR even though it is not one of the 127 he stated that he audited for coding purposes. Dr. Shane's summary of the complaint omits certain facts, including that the complainant did not witness the incident regarding her son, that the investigator attempted to interview the complainant with her son at their residence, but when the investigator appeared, the son was not present. The Complainant later called the investigator and "related she would not sign the Sworn Affidavit." In accordance with Illinois law, this investigation was unfounded when the complainant refused to sign the sworn affidavit and the alleged victim failed to appear for an interview.

---

CR #1025740 (CITY-WATTS CR-068742-CITY-WATTS CR-069979)

Complaint Received: April 23, 2009

Date of Incident: April 22, 2009

Address of Incident: 3257 W. 26th Street

119

Accused: PO Terry Southard #7670, Sgt. Andre Hasan #2083, PO Samuel Lopez #5628

Complainant: Nubia Guzman

Victims: Oscar Guzman, Isidro Nunez

Witnesses: Maria Guzman, Luis Castro, Jose Guzman, PO Samuel Lopez #5628, PO Larry Snelling #9919, Roberto Herrera, John Morgan, Thomas Torrence, Alejandro Cerna, Christopher Loper

Allegations: The complainant alleges that PO Southard (1) pushed Isidro Nunez, (2) unlawfully seized Oscar Guzman, (3) struck Oscar Guzman on his head with an expandable baton without justification, (4) carried/used an expandable baton without having certification, and (5) was inattentive to duty. The complainant alleges that Sgt. Hasan (1) threatened Nubia Gonzalez with arrest without basis, grabbed Nubia Gonzalez's wrist without justification, (3) failed to report misconduct, and (4) was inattentive to duty. The complainant alleges that PO Lopez (1) failed to report misconduct.

Investigation: CPD Reports indicate that due to high gang activity observed in the area, POs Southard and Lopez were on aggressive patrol when they observed Oscar Guzman standing on the corner with a dark colored hooded sweatshirt. When they approached Oscar Guzman, he motioned toward his waistband and fled. PO Southard, believing Guzman had a weapon, exited the squad car and chased after Guzman who fled into a restaurant, toward the rear of the restaurant and into the kitchen. PO Southard grabbed Guzman who then pulled away and struck PO Southard in the chest with his hand. PO Southard then used his ASP and truck Oscar Guzman on the left side of his head although he was attempting to strike the shoulder area. Oscar Guzman was transported to St. Anthony's Hospital where he received staples to his head. Notifications were made and due to Oscar Guzman's autism, no charges are being pursued. PO Southard's training history shows he was not certified to carry/use an expandable baton on the date of the incident. His certification was received 7 months after the incident.

It was found that PO Southard struck Oscar Guzman on his head with an expandable baton without justification and that he carried/used an expandable baton without having certification in violation of DSO 06-02. It was further found that PO Southard failed to properly document the use of an expandable baton. It was found that Sgt. Hasan failed to report misconduct after the Guzman family informed him that PO Southard struck Oscar Guzman with an ASP and that he failed to register a complaint against PO Southard when he was made aware that he was not certified to use the ASP during the incident. It was further found that Sgt. Hasan failed to make sure that PO Southard's TRR was properly completed in that boxes 38 and 40 were not properly completed by PO Southard. It was found that PO Lopez failed to report misconduct that PO Southard struck Oscar Guzman on the head with an ASP and that he was not certified to use/carry the ASP that he used.

Outcome: PO Southard – allegation 1 not sustained; allegation 2 exonerated; allegations 3-5 sustained (violation of rules 6, 8 and 10). Sgt. Hasan – allegation 1 exonerated; allegation 2 not sustained; allegation 3-4 sustained (violation of rule 3 and 10). PO Lopez – allegation 1 sustained (violation of rule 22). 15-day suspension for Sgt. Andre Hasan;1-day suspension for PO Samuel Lopez; 90-day suspension for PO Terry Southard. This case was referred to the CCSAO for potential felony prosecution, but on 4/16/10, it was decided that it would not be accepted for felony prosecution as the victim is unable to give an accurate account of what happened to him, no independent witnesses are identified that would corroborate or refute his accounts of what happened prior to the victim running from the accused.

Review of Dr. Shane's Discussion CR#1025740: Dr. Shane discusses this CR at page 57 of his report. Dr. Shane does not explain in his report how it came to be that he reviewed this CR even though it is not one of the 127 he stated that he audited for coding purposes. Dr. Shane does not criticize the investigation itself, which resulted in a sustained finding and suspension against the accused officer. He opines that the investigation took too long, but does not attempt discuss the extensive investigation conducted in this CR, which included at least 1,238 pages, a 24 page report from IPRA, and 187 attachments.

120

Dr. Shane also discusses this CR at page 67 in his report relative the sustained finding against Sgt. Hasan of "failure to promote department efforts to implement policy/goals" and "inattention to duty." The investigator recommended a sustained finding that Sgt. Hasan failed to report misconduct and Sg.t Hasan was disciplined. Dr. Shane's statement that Sgt. Haan engaged in a cover up was not found in the CR and the complaint was not covered up.

CR #1028321 (CITY-BG-018774-CITY-BG-018826)

Complaint Received: August 28, 2009

Date of Incident: July 17, 2009

Address of Incident: 5101 S. Wentworth

Accused: PO Douglas Nichols #12415, PO Manuel Leano #4303, Unknown

Complainant: Rachelle Powell

Victim: Bruce Powell

Allegations: (1) The victim was falsely arrested. (2) The victim had a cavity search (anus) three times looking for drugs. (3) An unknown sergeant instructed him not to say anything about what occurred and that the police would take care of him in court.

Investigation: The complainant made the allegations after she had received a phone call from the victim. The complainant, when asked to sign a sworn affidavit, refused and refused to cooperate any further in the investigation. The victim in this complaint pleaded guilty to possession of a controlled substance and is currently being held at the Pontiac Correctional Center.

Outcome: Unfounded – the complainant has refused to cooperate with the investigation to include refusing to sign the sworn affidavit.

Review of Dr. Shane's Discussion CR#1028321: Dr. Shane discusses this CR at page 104 of his report. Dr. Shane acknowledges that Sgt. Watts properly requested reassignment from this CR because the complaint included an allegation against an "unknown sergeant" and he was the supervisor of the accused officers. Despite the claim of a false arrest, Dr. Shane also acknowledges the alleged victim was "imprisoned," though he does not mention that Mr. Powell pleaded guilty to possession of a controlled substance in connection with this same arrest, refuting the false arrest allegation. This complaint was then closed when the complainant failed to execute the sworn affidavit required by Illinois law and the CBA.

CR #1029240 (CITY-BG-019361-CITY-BG-019530)

Complaint Received: September 11, 2009

Date of Incident: August 15, 2009

Address of Incident: 604 E. 50th St.

Accused: Sgt. Ronald Watts #2640, PO Lamonica Lewis #16172, PO Kallatt Mohammed #14122, PO Derek Cross #19108, PO Thomas Herman #16312, PO Gary Hughes #10709, PO Marek Grobla #11686

Complainant: Trisa Slaughter

Victim: Jasmine Slaughter

Witnesses: Chiquita Slaughter, Kimberly Slaughter

Allegations: (1) Sgt. Watts directed profanities at her and called her a "smart bitch." (2) Sgt. Watts threatened her daughter when he stated I'm going to bust your head" and directed profanities at her too. (3) Sgt. Watts allowed other responding officers to direct profanities at her to be rude and disrespectful when they stated to

CITY-BG-063110

her "get the fuck out of here." (4) Sgt. Watts cancelled all of her requests for a captain to come to the scene and issued her a citation. (5) An unknown female black officer inappropriately searched her daughter in plain view flashing her flashlight at her daughters' undergarments. (6) Sgt. Watts forced her to sign the citation, that she was threatened and scared.

Investigation: The complainant states that Sgt. Watts was profane towards her and her daughter, Jasmine Slaughter, that Sgt. Watts allowed other POs to be rude and disrespectful to her. That her daughter was improperly stopped and searched for no reason, that she was forced to sign an ANOV, and she was threatened and scared. Attempts to contact the victim at her phone number listed were met with negative results. A certified letter was composed and sent. The item was signed for at the residence on 2/12/10 and as of 2/18/10, no contact has been made. Attempts to contact the witnesses via telephone and certified letter were also met with negative results.

Sgt. Watts states he had responded to a foot chase in the area of 600 E. 50th Street. He encountered the complainant when she double parked her vehicle and when she was asked to park it, she disregarded the request. The complainant was issued a parking violation complaint. The complainant tore up the parking violation and stated "there's your fucking ticket" and threw it into the street. She was then issued an ANOV for littering. Sgt. Watts denies the allegations against him. PO Lewis stated she was instructed by Sgt. Watts to search the victim, she complied and nothing was found. PO Lewis further relates that at no time did she flash her flashlight into the victim's undergarments, nor did she observe any other officer doing so. PO Lewis stated she has no knowledge of any conflicts or verbal altercations between the complainant, her daughter, Sgt. Watts or any other responding officers.

Outcome: Allegations 1-3 unfounded; allegations 4-6 exonerated.

Review of Dr. Shane's Discussion CR#1029240: Dr. Shane discusses this CR at page 104-05 of his report. Dr. incorrectly asserts that the investigator did not contact the victim or witnesses; as explained above and in the CR, efforts were made to contact the victim but she did not respond nor did the witnesses respond. Dr. Shane also asserts that the investigator did not interview the officers, but the officers provided statements (seven total) in the form of to/from reports.

---

CR #1030958 (CITY-BG-019892-CITY-BG-019944)

Complaint Received: October 21, 2010

Date of Incident: October 13, 2009

Address of Incident: 5501 S. State and 5101 S. Wentworth

Accused: Sgt. Ronald Watts #2540

Complainant: Mable Price

Witnesses: Dominique Horton, Sgt. Michael Jamison #2065, PO Mark Warner #19341, PO Daryl Edwards #160280, PO Cynthia Tornes #18648, PO Elsworth Smith #11737, PO Alvin Jones #19462

Allegations: (1) The accused verbally abused the complainant by stating "I know your mother fucking ass." (2) The complainant went to the 002nd District to pick up her daughter and file a complaint on the accused unknown officer stated that he would call for a "white shirt," but called for Watts instead. (3) The accused verbally abused the complainant by stating "what's your problem? Get the fuck out of my office for being too loud."

Investigation: The r/lt met with the complainant and witness and they related they observed police activity at the listed location and went to see what was going on. The complainant observed her daughter was in custody by the police. She requested to enter the location, was allowed to enter and was then confronted by the accused who was belligerent and profane. The complainant states this stems from the time that she lived with her

122

husband at the former Ida B. Wells housing complex, and that the accused sent her husband to prison. The witness states she remained outside of the location and did not hear what, if any, conversation the complainant and accused had. The complainant further states she was told by the accused to pick up her daughter at the JISC Center and that she felt like the accused was giving her the runaround.

The accused relates that at the location of the arrest, the complainant was instructed to pick up her daughter at the JISC Center. The accused states that at the 002nd District, the complainant came into the station being loud and using profanities. The accused states he informed her to cease her actions, or she would be arrested. The accused denies using any profanities towards the complainant. It should be noted that the arrestee's grandmother was allowed to remain with the child during processing at the 002nd District. When the r/lt inquired about the complainant's mother, the complainant stated that her mother was sickly and did not witness anything.

Outcome: Allegations 1 and 3 not sustained; allegation 2 exonerated.

Review of Dr. Shane's Discussion CR#1030598: Dr. Shane discusses this CR at page 105 of his report. Dr. Shane incorrectly states that the investigator did not contact witnesses or take statements from the accused or involved officers, when the CR reflects that the investigator obtained ___ statements from witnesses, including the police officers at the Second District. Dr. Shane also claims that the police officer witnesses who provided statements indicate "that they did not hear what Defendant Watts said or could not remember the interaction" but multiple officers described that the complainant entered the police station and was "hollering" and "shouting loudly" about her daughter, and that while they did not hear what was said by Watts in the conversation, it was brief and nobody stated they heard what the complainant asserted.

---

CR #1035196 (CITY-WATTS CR-070825-CITY-WATTS CR-071362)

Complaint Received: April 8, 2010

Date of Incident: April 3, 2010; October 7, 2009; June 14, 2009; November 27, 2009; May 15, 2009; June 9, 2006

Address of Incident: Redacted

Accused: Det. Terance Nalls #20797

Complainant: Redacted

Victim: Redacted

Witnesses: Redacted

Allegations: It is alleged by the complainant that the accused (1) initiated false reports against her, (2) verbally abused her, (3) harassed her, (4) initiated false reports against her on 4/3/10, (5) broke household items on 6/9/06, (6) put her in a headlock on 6/14/09, (7) violated a court order on 6/14/09, (8) broke household items on 10/7/09, (9) entered her bedroom in violation of a court order, and (10) grabbed her by her t-shirt and pushed her to the ground.

Investigation: The complainant and the accused lived together in 2009 and filed for divorce in February of 2009. The Nalls' are engaged in an acrimonious divorce battle. In accordance with a court order, the accused moved out of their marital home in early January 2010. The marital home is the location of all the allegations. The complainant maintained temporary residential custody of the children while the accused had visitation rights. As of March 2010, the Nalls' were ordered to list their martial home for sale as part of the divorce proceeding. The accused petition for residential custody of the children. Despite their disagreements, the Nalls are devoted to their children and attempted to co-parent their children outside of the constructs of the formal custodial agreement.

123

Outcome: Allegations 1, 3, 5-6, 8 and 10 not sustained; allegation 4 unfounded; allegations 2, 7 and 9 sustained (violation of rules 2 and 9) – 2 day suspension.

Review of Dr. Shane's Discussion CR#1035196: Dr. Shane discusses this CR at page 67 of his report. Dr. Shane does not explain in his report how it came to be that he reviewed this CR even though it is not one of the 127 he stated that he audited for coding purposes. Dr. Shane's summary of the complaint is limited. He omits the fact that the victim and accused were involved in an "acrimonious divorce" proceeding and that the victim had allegedly threatened to kill the accused and get him fired from the police department. Dr. Shane references an order of protection, but omits that the victim and accused entered into an Agreed Mutual Restraining Order. He includes the sustained finding that the accused sent offensive texts but omits that those were part of a larger text string where the victim sent offensive texts to the accused according to his statement. Without explanation, Dr. Shane concludes that the City made no "real effort to investigate whether the accused officer had committed falsehoods." Without identifying what should have been done, Dr. Shane concludes that IPRA should have sought "external evidence that could be used to confront the accused officer." Dr. Shane's conclusions are unsupported by analysis.

---

CR #1042360 (CITY-WATTS CR-072776-CITY-WATTS CR-072790)

Complaint Received: January 5, 2011

Date of Incident: December 28, 2010

Address of Incident: 2828 W. Polk St.

Accused: Unknown

Complainant: Jacquelin Davis

Victim: Jacquelin Davis

Allegations: The complainant alleges that an unknown officer(s) entered her home without a warrant and removed $500 USC which was not inventoried or returned.

Investigation: The r/inv spoke with the complainant on 1/12/11 regarding her complaint. The complainant informed the r/inv that she would contact him on her decision to sign the required sworn affidavit no later than Tuesday, 1/18/11. As of the submission of the investigation (1/28/11), the complainant has not contacted IAD. The r/inv mailed the complainant a certified letter essentially requesting her cooperation in this investigation. The US Track and Confirm showed that the letter was attempted to be delivered on 1/14/11 and that a notice was left at the complainant's residence for her to pick up said letter at the post office. The complainant has not contacted IAD. As a result, a sworn affidavit was not signed. Due to a lack of cooperation from the complainant, and an unsigned sworn affidavit, the investigation supports a finding of no affidavit.

Outcome: Closed – No Conversion; No Affidavit

Review of Dr. Shane's Discussion CR#1042360: Dr. Shane discusses this CR at page 34 of his report. Dr. Shane does not explain in his report how it came to be that he reviewed this CR even though it is not one of the 127 he stated that he audited for coding purposes. Dr. Shane states that the complainant told the investigator she would need to decide whether to sign an affidavit in accordance with Illinois state law swearing that the officer removed $500. Dr. Shane does not mention that the complainant initially stated that she did not see the officers take $500, but then changed her story. Dr. Shane also does not mention that the complainant told the investigator she would contact him by January 18, 2011 if she would sign the affidavit for the investigation to proceed, and that she failed to sign the affidavit or contact the investigator to cooperate. In addition, Dr. Shane states that the search warrant report does not "include a detailed description of what property was taken," but the report states "Guns Found – Yes." While the search warrant report states "other" in another section of the

CITY-BG-063113

report addressing "Property Type," it is unclear why Dr. Shane believes this would have proven or disproven the allegation: if $500 was inventoried, it would demonstrate the complainant to have been mistaken that it was not inventoried; on the other hand, if $500 was not inventoried, then the complainant's cooperation would have been necessary to move forward with the investigation, as without her cooperation that she saw $500 taken by the officers, it would not be possible to prove the CR.

---

CR #1042823 (CITY-WATTS CR-072848-CITY-WATTS CR-072584)

Complaint Received: January 19, 2011

Date of Incident: November 9, 2010

Address of Incident: 6300 S. Wolcott Ave.

Accused: Unknown

Complainant: Herman English

Witnesses:

Allegations: The complainant alleges that he was falsely arrested for several traffic violations and a UUW. The complainant states that the weapon was in his waistband. The complainant alleges that his weapon was not registered at the time he was arrested.

Investigation:

Outcome: Administratively Closed

Review of Dr. Shane's Discussion CR#1042823: Dr. Shane discusses this CR at page 34 of his report. Dr. Shane does not explain in his report how it came to be that he reviewed this CR even though it is not one of the 127 he stated that he audited for coding purposes. Dr. Shane states that the complainant alleged that he was falsely arrested for traffic violations and unlawful use of a weapon, but Dr. Shane omits that the complainant admitted that the weapon was in his waist band and that it was not registered at the time he was arrested..

---

CR #1044797 (CITY-WATTS CR-064844-CITY-WATTS CR-065080)

Complaint Received: April 19, 2011

Date Complaint Reassigned: August 8, 2014

Date of Incident: June 28, 2010

Address of Incident: 1024 N. Lavergne

Accused: PO Jose Velez #19367, PO Joseph Ceglarek #6728, PO Roberto Ruiz #19472

Complainant: Attorney Jacqueline Schultz

Victim: Lance Conley

Witnesses:

Allegations: The complainant alleges that her client was falsely arrested by the accused. The complainant further alleges that PO Velez made a false report in that he committed perjury by testifying in court regarding the case.

Investigation: Initial Investigation: On 4/20/11, the r/inv sent a letter to the complainant requesting to interview her client regarding the allegations. The letter was returned marked "unclaimed." On 4/25/11, the r/inv conducted a telephone interview with the complainant at which time she stated she would send a copy of the video referenced in her letter. The r/inv received and subsequently reviewed a copy of the video tape and found it to contain no audio or any other means to verify that PO Velez made the comments to the victim "you

look like one slick nigger. It's your lucky day. You're going to take this case." On 5/5/11, the r/inv contacted the complainant and inquired how she wanted to file a lawsuit regarding the incident by 6/28/11 and that she would consult with her partners and get back to the r/inv with a response. However, the complainant has not contacted the r/inv with a response. A sworn affidavit was not obtained in the investigation. Due to lack of cooperation and no further objective evidence, the investigation cannot proceed.

Re-Investigation: The r/sgt received a package on 8/7/14 which included the report of the Inspector General's Investigation along with several copies of CDs and DVDs containing video surveillance footage, investigative case file 11-0382 and court reports along with transcripts provided by the CCSAO. The r/sgt reviewed all the materials provided, physical evidence inclusive of the reports and the accused officers' statements. The r/sgt determined the arrest of Conley was a mistake which could have easily been avoided if PO Velez would have exercised proper police tactics. The facts listed on the original case report contradict what was on the surveillance videos. PO Velez was conducting surveillance of an offender placing an item at the base of a sign pole. Although the offender was wearing dark clothing similar to Lance Conley, there was something distinct that the offender was wearing such as white shoes that would have made it a bit easier to identify the true offender. PO Velez authored the reports which did not reflect anything that was shown on the video surveillance. PO Velez falsely testified on both the preliminary and bench trials to the facts that were documented on the case and arrest reports. POS Ceglarek and Ruiz were merely acting as enforcement officers and could not have made any observations as PO Velez stated he personally observed.

Outcome: Initial Investigation – closed – no conversion; no affidavit. Re-Investigation – not sustained as to POS Ceglarek and Ruiz. Sustained as to PO Velez – Violation of Rules 2 and 14. PO Velez to be separated from the CPD. Police Board findings confirm the separation of PO Velez effective 11/24/15.

Review of Dr. Shane's Discussion CR#1044797: Dr. Shane discusses this CR at page 69-70 of his report. Dr. Shane does not explain in his report how it came to be that he reviewed this CR even though it is not one of the 127 he stated that he audited for coding purposes and that it outside any relevant time frame for this case. In this CR, the complainant (the victim's criminal attorney) did not cooperate in the initial investigation, and indicated her intent to file a civil lawsuit instead. Nonetheless, after the victim's acquittal, the City's Inspector General reviewed the allegations, and ultimately the Superintendent filed charges to separate the accused Officer Velez from the department due to a Rule 14 violation. Rather than support an opinion critical of the City's disciplinary process, this case supports the opposite conclusion.

---

CR #1047968

Complaint Received: August 24, 2011

Date of Incident: July 8, 2011

Address of Incident: 7600 S. Exchange

Accused: Unknown

Complainant: Quiana Wright

Witnesses:

Allegations: The complainant alleges that the accused officer used his police powers to put a false investigative alert against her regarding her and another subject by the name of Tiffany Edwards, who she had a fight with but was not arrested. The complainant alleges that the detective is a friend of the subject's family.

Investigation:

Outcome: Administratively Closed

---

CITY-BG-063115

Review of Dr. Shane's Discussion CR#1047968: Dr. Shane discusses this CR at page 34 of his report. Dr. Shane does not explain in his report how it came to be that he reviewed this CR even though it is not one of the 127 he stated that he audited for coding purposes. Dr. Shane states that the complainant accused the officer of putting a false investigative alert against her, but he does not mention that the complainant admitted that she was in a fight with the alleged victim and that she was not arrested. Dr. Shane also fails to mention that this complaint was administratively closed after it was forwarded to the District Commander, presumably for review.

CITY-BG-063116